LEONARDO M. RAPADAS
United States Attorney
MIKEL SCHWAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam  96910
PHONE:  (671) 472-7332
FAX:  (671) 472-7334

GREGORY G. KATSAS
Assistant Attorney General
DAVID J. KLINE
Director
VICTOR M. LAWRENCE
Principal Assistant Director
SAMUEL P. GO
Trial Attorney
Office of Immigration Litigation
District Court Section
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C.  20044
PHONE:  (202) 353-9923
FAX:  (202) 616-8962

Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOHAMMAD KAMAL HOSSAIN,<br><br>Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, and MATTHEW GREGORY, in his official capacity as Attorney General of the Commonwealth of the Northern Mariana Islands, and UNITED STATES OF AMERICA,<br><br>Defendants. | CIVIL CASE N0. 08-0016<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT UNITED STATES OF AMERICA** |

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................... 2

II.   STATEMENT OF FACTS ........................................................................................... 4

III.  RELEVANT LEGAL PROVISIONS........................................................................... 4

A.    THE INA AND REGULATORY PROVISIONS RELATED TO THE ADMISSION OF
      AN ASYLEE'S OR REFUGEE'S SPOUSE OR CHILDREN ................................. 4

B.    INAPPLICABILITY OF THE INA TO THE CNMI........................................... 6

IV.   LEGAL ARGUMENT.................................................................................................. 7

A.    PLAINTIFF HAS NOT STATED A COGNIZABLE LEGAL THEORY AGAINST THE
      UNITED STATES BECAUSE NEITHER THE INA NOR INTERNATIONAL
      AGREEMENTS PROVIDE HIM WITH THE REMEDY THAT HE SEEKS ................... 7

      1.    Standards for Rule 12(b)(6) Motion .................................................. 7

      2.    Admission of an Asylee or Refugee's Spouse and Child Under the INA Are Not
            Available to CNMI-Situated Asylees or Refugees, Including Plaintiff ...................... 7

      3.    International Agreements Do Not Provide Plaintiff with a Cause of Action Against
            United States........................................................................................... 10

B.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
      AND SHOULD BE DISMISSED ........................................................................ 13

      1.    Plaintiff Has Not Asserted a Legal Basis for His Claims of Due Process Violations 13

      2.    Plaintiff Has Not Asserted a Legal Basis for His Claims of Equal Protection
            Violations............................................................................................... 17

      3.    Plaintiff Claim for Derivative Protection is Barred by the Doctrine of Res Judicata 19

V.    CONCLUSION............................................................................................................ 21

i

# TABLE OF AUTHORITIES

**Cases**

Ahmed v. Goldberg, 2001 WL 1842398 (D.N.M.I. 2001) ............................................................ 8

Armstrong v. United States, 182 U .S. 243 (1901) ................................................................. 14

Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991) ............................ 19

Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) .................................... 7

Balzac v. Porto Rico, 258 U.S. 298 (1922) ............................................................................. 15

Barapind v. Reno, 225 F.3d 1100, 1107 (9th Cir. 2000) ......................................................... 11

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) ........................................... 7

Board of Regents v. Roth, 408 U.S. 564, 577 (1972) ............................................................... 16

Chadwick v. Northwest Airlines, 654 P.2d 1215, 1217 (Wash. Ct. App. 1982) ....................... 20

De Lima v. Bidwell, 182 U.S. 1 (1901) ................................................................................... 14

Dillingham v. I.N.S., 267 F.3d 996, 1007 (9th Cir. 2001) ....................................................... 18

Dooley v. United States, 182 U.S. 222 (1901) ........................................................................ 14

Dooly v. United States, 183 U.S. 151 (1901) .......................................................................... 14

Dorr v. United States, 195 U.S. 138 (1904) ....................................................................... 14, 15

Dowdell v. United States, 221 U.S. 325 (1911) ...................................................................... 14

Downes v. Bidwell, 182 U.S. 244 (1901) ............................................................................... 14

Examining Board v. Flores de Otero, 426 U.S. 572, 599-600 n.30 (1976) .............................. 14

Fourteen Diamond Rings v. United States, 183 U.S. 176 (1901) ............................................ 14

Goetze v. United States, 182 U.S. 221 (1901) ........................................................................ 14

Gonzalez v. Williams, 192 U.S. 1 (1904) ................................................................................ 14

Grafton v. United States, 206 U.S. 333 (1907) ....................................................................... 14

Grossman v. United States, 182 U.S. 221 (1901) .................................................................... 14

Hawaii v. Mankichi, 190 U.S. 197 (1903) .............................................................................. 15

Heller v. Doe, 509 U.S. 312, 319 (1993) ................................................................................ 18

Hillblom v. United States, 896 F.2d 426, 429 (9th Cir. 1990) ................................................. 14

Huus v. New York and Porto Rico Steamship Co., 182 U.S. 392 (1901) .................................... 14

In re Imperial Corp. of America, 92 F.3d 1503, 1506 (9th Cir. 1996) ......................................... 20

INS v. Stevic, 467 U.S. 407, 416 n.9 (1984) .................................................................................... 10

Jiang Xui Ying v. United States, Civ. Action Nos. 02-0023, 00-0005, 99-0046 (D.N.M.I.) ....... 19

Kent v. Porto Rico, 207 U.S. 113 (1907) ......................................................................................... 14

Kepner v. United States, 195 U.S. 100 (1904) .................................................................................. 14

Kopel v. Bingham, 211 U.S. 468 (1909) ........................................................................................... 14

Mack v. South Bay Bee Distributors, 789 F.2d 1279, 1282 (9th Cir. 1986) ................................ 19

Mendiondo v. Centinela Hosp. Medical Center, 521 F.3d 1097, 1104 (9th Cir. 2008) ................. 7

Mendozana v. United States, 195 U.S. 158 (1904) ........................................................................... 14

MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) ............................................ 19

Nordhorn v. Ladish Co., 9 F.3d 1402, 1404 (9th Cir. 1993) ......................................................... 20

Northern Mariana Islands v. Atalig, 723 F.2d 682, 685 (9th Cir. 1984) ......................... 13, 14, 15

Ocampo v. United States, 234 U.S. 91 (1914) .................................................................................. 14

Ochoa v. Hernandez, 230 U.S. 139 (1913) ....................................................................................... 14

Olim v. Wakinekona, 461 U.S. 238, 250 & n.12 (1983) .................................................................. 17

Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 551 (9th Cir. 1990) ........................................ 10

Papasan v. Allain, 478 U.S. 265, 286 (1986) ..................................................................................... 7

Rasmussen v. United States, 197 U .S. 516 (1905) .......................................................................... 14

Rayphand v. Sablan, 95 F. Supp.2d 1133, 1140 (D.N.M.I. 1999),
    aff'd, Torres v. Sablan, 528 U.S. 1110 (2000) ........................................................................... 15

Rui Liang, et. al. v. Robert Goldberg, et al., Civil Case No. 99-0046 (D.N.M.I.) ........................... 4

Sagana v. Tenorio, 384 F.3d 731, 740 (9th Cir. 2004) ................................................................... 17

SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002) ........................ 19

Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008) ..................................................................... 18

Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) ............................................ 18

Tran v. Northern Mariana Islands, 780 F. Supp. 709, 713 (D.N.M.I. 1991),
    aff'd, 993 F.2d 884 (9th Cir. 1993) ..................................................................................... 6, 12

<u>Trono v. United States</u>, 199 U.S. 521 (1905)..................................................................... 14

<u>United States v. De Leon Guerrero</u>, 4 F.3d 749, 754 (9th Cir. 1993).......................... 14

<u>United States v. Lopez-Flores</u>, 63 F.3d 1468, 1472 (9th Cir. 1995)............................ 17

<u>United States v. Real Property Located at 22 Santa Barbara Drive</u>,
    264 F.3d 860 (9th Cir. 2001) .............................................................................. 20

<u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259, 269 (1990) ................................ 16

<u>Velasco-Gutierrez v. Crossland</u>, 732 F.2d 792, 798 (10th Cir. 1984) ......................... 17

<u>Wabol v. Villacrusis</u>, 958 F.2d 1450 (9th Cir. 1990) ................................................... 15

**Statutes**

154 Cong. Rec. S2861-01, 2008 WL 994650 at *S2862 (Cong. Rec.) ......................... 9

42 U.S.C. § 1983 ................................................................................................ 2, 19

8 U.S.C. § 1101(a)(36) ............................................................................................. 6

8 U.S.C. § 1101(a)(38) ............................................................................................. 6

8 U.S.C. § 1107 ........................................................................................................ 8

8 U.S.C. § 1107(c)(2)(A) ...................................................................................... 5, 8

8 U.S.C. § 1108(b)(3) ............................................................................................... 5

8 U.S.C. § 1158 ................................................................................................ 3, 8, 9

8 U.S.C. § 1158(b)(3) ............................................................................................... 8

8 U.S.C. §§ 1101 ...................................................................................................... 5

INA § 101(a)(38) ...................................................................................................... 6

INA § 207 ................................................................................................................. 8

INA § 207(c)(2)(A) ............................................................................................... 5, 8

INA § 208 ......................................................................................................... 8, 9, 10

INA § 208(b)(1)(A) ................................................................................................. 16

INA § 208(b)(3) ....................................................................................................... 8

Pub. L. No. 110-229, § 702, 122 Stat. 754, 853 (2008)............................................. 3

Pub. L. No. 94-241, 90 Stat. 263, <u>reprinted in</u> 48 U.S.C. § 1801 (1994) ............................ passim

iv

**Rules**

Rule 12(b)(6)................................................................................................................. 7

**Regulations**

8 C.F.R. § 207.7 ............................................................................................................. 5

8 C.F.R. § 207.7(g) ........................................................................................................ 6

8 C.F.R. § 208.21(d) ................................................................................................... 5, 6

# I.    **INTRODUCTION**

On March 18, 2008, Plaintiff Mohammed Kamal Hossain ("Hossain" or "Plaintiff") filed a Complaint for Declaratory, Injunctive, Compensatory and Further Relief ("Complaint") against the Commonwealth of the Northern Mariana Islands ("CNMI"); Matthew Gregory, in his official capacity as Attorney General of CNMI; and the United States of America ("United States"). Plaintiff's Complaint, which was served on Defendant United States on July 3, 2008, broadly alleges violations of the Equal Protection Clause of the 14th Amendment of the U.S. Constitution, the Covenant to Establish the Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"), the 1951 United Nations Convention Relating to the Status of Refugees ("1951 Convention"), treaties and international law applicable to the CNMI, and customary international law.  Complaint at 2.

Plaintiff's specific claim against Defendant United States is that Defendant United States, along with CNMI, have not provided him and his family outside the CNMI derivative protections as a result of Plaintiff's alleged asylee status, although Plaintiff has requested it repeatedly.  Id. at 9, ¶ 23.  Plaintiff contends that the denial of derivative protection laws or regulations for family members outside the CNMI denies him equal protection of the law under the 14th Amendment.  Id. at 9, ¶ 22.  Plaintiff claims that the lack of available legal processes to apply to bring his family members to join him in CNMI, such as are available under federal immigration laws for asylees/refugees granted protection in the United States, renders Defendant United States liable for depriving him of his rights, privileges and immunities secured by the U.S. Constitution, and rights available under 42 U.S.C. § 1983.  Complaint at 10, ¶ 25.

The particular claims in the case, as pleaded by Plaintiff, do not state cognizable legal theories against Defendant United States and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).    The domestic immigration law of the United States -- The

Immigration and Nationality Act (INA) -- does not currently apply within the CNMI, thus preventing Plaintiff from being eligible for the derivative protection for family members that the INA provides to refugees and asylees within the United States. Nor do international agreements provide Plaintiff with the remedies he seeks. The international agreements relied on by Plaintiff are not self-executing and, to the extent that they may be considered to embody customary international law principles, they have been displaced by intervening domestic legislation for purposes of judicial review. Indeed, the current state of affairs is that the CNMI has authority to control its own immigration, and has created a limited system of immigration.

After Plaintiff filed his Complaint, on May 8, 2008, the United States Congress enacted the Consolidated Natural Resources of Act of 2008 (CNRA). The CNRA applies the INA, with certain exceptions, to CNMI effective June 2009. See Consolidated Natural Resources Act of 2008, Pub. L. No. 110-229, § 702, 122 Stat. 754, 853 (2008) (stating that the CNRA is effective on the first day of the first full month commencing 1 year after the date of enactment). However, the CNRA expressly states that affirmative asylum provisions, as codified in INA § 208, 8 U.S.C. § 1158, will not apply to CNMI until the end of the transition period, which is December 31, 2014. Id. at 856. Thus, Congress continues to give CNMI control over asylum matters for the next six years, and Plaintiff should not be able to sue the United States because he is unhappy with Congress's judgment.

In any event, to the extent that the INA provides procedures for applying for derivative protection for family members outside the United States, Plaintiff has not demonstrated that he is eligible to apply for such admission, thus making his claims for relief against Defendant United States subject to dismissal. Moreover, Plaintiff fails to state a due process or equal protection claim upon which relief can be granted, as he fails to satisfy the elements for these claims.

Accordingly, Plaintiff's Complaint must be dismissed.

## II.   STATEMENT OF FACTS

Plaintiff is a citizen of the Islamic Republic of Bangladesh who has resided in the CNMI since 1996.  Complaint at 4, ¶ 6.  Plaintiff was previously a party plaintiff in Rui Liang, et. al. v. Robert Goldberg, et al., Civil Case No. 99-0046 (D.N.M.I.), which involved the protection of refugees in CNMI.  Id. at 5, ¶ 11.  Liang was resolved through settlement, and thereafter, CNMI promulgated regulations for protection of refugees in CNMI, in accordance with a Memorandum of Understanding between CNMI and the U.S. Department of the Interior, Office of Insular Affairs on September 12, 2003.  Id. at 5, ¶¶ 10-11.  On March 3, 2006, Plaintiff filed an Application for Protection from Refoulement with CNMI's Office of Refugee Protection.  Id. at 5, ¶ 12.  According to Plaintiff, he presented at his protection hearing testimony of death threats, vandalism of his home in Bangladesh and on Saipan and of violence against his wife, child and brother in Bangladesh.  Id. at 5-6, ¶ 12.  Plaintiff was found to be provisionally eligible for protection from refoulement in CNMI on August 22, 2006.  Id. at 6, ¶ 13; August 22, 2006 Grant of Protection from Refoulement, attached to the Complaint as Exhibit A.  Plaintiff now seeks through his lawsuit to obtain derivative protection for his family.  Id. at 17-18.

## III.   RELEVANT LEGAL PROVISIONS

### A.   THE INA AND REGULATORY PROVISIONS RELATED TO THE ADMISSION OF AN ASYLEE'S OR REFUGEE'S SPOUSE OR CHILDREN

At issue in this case are statutory and regulatory provisions pertaining to the admission of an asylee or refugee's spouse or children.  According to the Complaint, Plaintiff was granted asylum.[1]  See Complaint at 12, ¶¶ 30, 32.  By way of explanation, the following summary of the provisions, and the processes associated with those provisions, is provided.

---

[1]Defendant United States disputes Plaintiff's claim that he is an asylee.  Indeed, in Liang, Hossain, along with the other party plaintiffs, sought determination of their status as refugees and regulations to be protected from refoulement.  Id. at 5, ¶ 11.  While CNMI has provisions for protection from refoulement, CNMI law does not offer asylee status.  As shown below, the INA accords different treatment to asylees and refugees.

4

The INA, 8 U.S.C. §§ 1101 et seq., represents the domestic law of the United States with regard to immigration matters, and provides the basis for the admission of an asylee or refugee's spouse and children.  As set forth in INA § 207(c)(2)(A), 8 U.S.C. § 1107(c)(2)(A), and INA § 208(b)(3), 8 U.S.C. § 1108(b)(3), a spouse or child of certain refugees or aliens granted asylum may, if not otherwise eligible for asylum or admission, be granted the same status as the refugee or asylee if accompanying, or following to join, such refugee or asylee.  Id.

When a spouse or child of a refugee qualified for admission, or an alien granted asylum, is outside the United States, the asylee may request accompanying or following-to-join benefits for his/her spouse or child(ren) by filing a separate Form I-730, Refugee/Asylee Relative Petition, for each qualifying family member with the designated Service office.  See 8 C.F.R. § 207.7; 8 C.F.R. § 208.21(d).  In order for a refugee to file a Form I-730, the refugee must be found to have been admitted into the United States as the principal refugee within the previous two years, unless USCIS determines that the filing period should be extended for humanitarian reasons.  See 8 C.F.R. § 207.7 Similarly, in order for an asylee to file a Form I-730, the asylee must be found to be have been granted status in the United States as an asylee as the principal applicant within the previous two years, unless USCIS determines that the filing period should be extended for humanitarian reasons.  See 8 C.F.R. § 208.21(d).

The approval of the Form I-730 shall remain valid for the duration of the relationship to the refugee or asylee and, in the case of a child, while the child is under 21 years of age and unmarried, provided also that the principal's status has not been revoked.  See 8 C.F.R. § 207.7; 8 C.F.R. § 208.21(d).  However, the approved Form I-730 will cease to confer immigration benefits after it has been used by the beneficiary for admission to the United States as a derivative of a refugee or an asylee.  Id.  If the spouse or child is found to be ineligible for derivative status accorded under section 207 or 208 of the Act, no appeal shall lie from this

5

1   decision.  See 8 C.F.R. § 207.7(g); 8 C.F.R. § 208.21(e).

2   **B.     INAPPLICABILITY OF THE INA TO THE CNMI**

3       The INA explicitly provides that, "The term 'United States', except as otherwise

4   specifically herein provided, when used in a geographical sense, means the continental United

5   States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States."  INA §

6   101(a)(38), 8 U.S.C. § 1101(a)(38); see also 8 U.S.C. § 1101(a)(36) ("The term 'State' includes

7   the District of Columbia, Puerto Rico, Guam, and the Virgin Islands of the United States.").

8   Thus, the CNMI is not within the definition of "United States" for purposes of the applicability

9   of the INA.

10       The Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political

11   Union with the United States of America, Act of Mar. 24, 1976, Pub. L. No. 94-241, 90 Stat.

12   263, reprinted in 48 U.S.C. § 1801 (1994) (note at 400) ("Covenant"), which governs the current

13   relationship between Defendant United States and the CNMI, provides that the CNMI controls

14   its own immigration.   The Covenant addresses the applicability of United States laws to the

15   CNMI in Article V.  The Covenant provides that the immigration and naturalization laws of the

16   United States do not apply to the CNMI, except for limited purposes.  Covenant § 503(a).  Those

17   purposes pertain to citizenship of children born abroad, immediate relatives, and loss of

18   nationality.  Covenant § 506.

19       Aside from the limited exceptions set forth above, the CNMI exercises plenary authority

20   over its own immigration pursuant to CNMI domestic law.   Tran v. Northern Mariana Islands,

21   780 F. Supp. 709, 713 (D.N.M.I. 1991), aff'd, 993 F.2d 884 (9th Cir. 1993) (table).  Accordingly,

22   immigration and naturalization law provisions concerning asylum do not apply within the CNMI.

23       Although the United States has international "non-refoulement" obligations, which it

24   fully acknowledges, the Covenant has placed upon the CNMI the responsibility of implementing

6

1  those obligations with respect to the particular aliens located there. While the CNRA *may*

2  change the United States' role in the future, the current law does not obligate the United States to

3  provide derivative protection for families of refugees or asylees.

## IV.    LEGAL ARGUMENT

### A.    PLAINTIFF HAS NOT STATED A COGNIZABLE LEGAL THEORY AGAINST THE UNITED STATES BECAUSE NEITHER THE INA NOR INTERNATIONAL AGREEMENTS PROVIDE HIM WITH THE REMEDY THAT HE SEEKS

Neither the domestic laws of the United States nor the international agreements relied upon by the Plaintiff provide for the specific remedies that he seeks from the United States.

### 1.    Standards for Rule 12(b)(6) Motion

Even construing the Complaint in the most positive terms for the Plaintiff, he has failed to state legally sufficient claims and the Complaint should be dismissed under Rule 12(b)(6). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See also Mendiondo v. Centinela Hosp. Medical Center, 521 F.3d 1097, 1104 (9th Cir. 2008)(citing Twombly). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. Id. (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990)). This action should be dismissed under Rule 12(b)(6), as Plaintiff has failed to allege a cognizable legal theory. Id.

### 2.    Admission of an Asylee or Refugee's Spouse and Child Under the INA Are Not Available to CNMI-Situated Asylees or Refugees, Including Plaintiff

As explained above at III. B., the INA is inapplicable to the CNMI. This Court recognized this Congressionally-established division of responsibility in its May 11, 2001 Order

1    in the case of <u>Ahmed v. Goldberg</u>, 2001 WL 1842398 (D.N.M.I. 2001).  In <u>Ahmed</u>, the Court

2    noted that because of the INA's geographical exclusion of the CNMI, the INA's asylum

3    procedures are not available to the Plaintiff.  <u>Id.</u> at *4.  The Court further noted that the

4    inapplicability of the INA was consistent with the mandate of the Covenant, specifically Sections

5    503(a) and 506.  Pursuant to the Covenant, "the applicability of the INA is limited in order to

6    allow the CNMI to exercise authority over its own immigration."  <u>Id.</u> at *5 (footnote omitted).

7        Accordingly, except for immediate relatives of United States citizens, current law does

8    not provide asylees or refugees who are located within the CNMI with the opportunity to apply

9    for the admission of their spouses and children under the INA.  As Plaintiff is an asylee or

10   refugee located in CNMI, he is ineligible to apply for admission of his spouse and child under

11   INA § 207(c)(2)(A), 8 U.S.C. § 1107(c)(2)(A), or INA § 208(b)(3), 8 U.S.C. § 1158(b)(3).

12       At present, the CNMI has sole authority to control admission onto its islands.  This

13   arrangement may change in the coming years, as the Consolidated Natural Resources Act of

14   2008 (CNRA), Pub. 110-229, federalizes immigration in CNMI and makes the INA applicable to

15   CNMI.  Much of the INA will apply to CNMI by June 2009, approximately one year after

16   enactment.  However, the new law also specifically states that INA § 208, 8 U.S.C. § 1158 will

17   <u>not</u> apply to persons physically present in CNMI or arriving in CNMI until the end of the

18   transition period, which is December 31, 2014.  If this Court were to order Defendants to allow

19   Plaintiff, as a person within the CNMI, to apply for admission of his spouse and child prior to the

20   dates established by the CNRA, the Court would establish judicial precedent contrary to the

21   intent of the United States Congress, and would cause the very problems Congress sought to

22   prevent when it established the dates for INA § 207, 8 U.S.C. § 1107, and INA § 208, 8 U.S.C. §

23   1158 to apply.

24

8

1        **a.    The Consolidated Natural Resources Act of 2008 and Its Application**
2             **of INA § 208, 8 U.S.C. § 1158 to CNMI at the End of the Transition**
              **Period**

3        In including language in the Consolidated Natural Resources Act of 2008 that expressly

4    states that INA § 208, 8 U.S.C. § 1158 shall not apply until the end of the transition period

5    (December 31, 2014), Congress made clear its intent for asylum in CNMI to remain under

6    CNMI's control during this time.    Indeed, Senate Report 110-324, submitted by the Senate

7    Committee on Energy and Natural Resources, states the intent of federalizing immigration in

8    CNMI:

9             We believe that S. 1634 is generally sound legislation that embodies the
         concept of `Flexible Federalization'--that is, federalization of the CNMI's
10       immigration system in a manner designed to minimize damage to the CNMI's
         fragile economy and maximize the potential for economic growth.    We also
11       believe that S. 1634 reflects the principles previously spelled out by the
         Administration as those that should guide the federalization of the CNMI's
12       immigration system. Therefore, the Administration supports the Northern
         Marianas Covenant Implementation Act, subject to the following:

13
              . . .
14
              *Protection from Persecution and Torture.* -- Consistent with the general
15       transfer of immigration to Federal control on the transition period effective date,
         the bill should clarify that U.S. protection law, including withholding of removal
16       on the basis of persecution or torture, would apply and be administered by Federal
         authorities beginning on the transition period effective date.    However, <u>given the</u>
17       <u>uncertainties inherent in changing the CNMI immigration regimen, we</u>
         <u>recommend that extension of the affirmative asylum process under section 208 of</u>
18       <u>the INA to the CNMI be delayed until the end of the transition period.</u>

19   S. Rep. No. 110-324, at 18 (2008) (emphasis added).    Indeed, Congress enacted the CNRA "to

20   respond to longstanding Federal concerns regarding immigration, labor, and law enforcement -

21   concerns that are greatly heightened following the September 11 attacks."    154 Cong. Rec.

22   S2861-01, 2008 WL 994650 at *S2862 (Cong. Rec.).    Congress's intent in enacting this

23   legislation is to ensure effective border control procedures and protect national and homeland

24   security.    Congress also determined that having CNMI maintain control of its asylum matters

1   until the end of the transition period is the best way to accomplish this objective, given the

2   numerous changes that need to occur in transition from the affirmative asylum process in CNMI-

3   based legislation to the INA.  If this Court were to order INA § 208 to apply prior to Congress's

4   intended date of December 31, 2014, this Court would abrogate Congress's intent regarding

5   transition of CNMI's asylum matters in an orderly manner that preserves the national security in

6   CNMI and the United States.  Thus, the CNRA, and the congressional record preceding it,

7   further demonstrate the inapplicability of the INA to CNMI-situated asylees or refugees, such as

8   Plaintiff.

9   **3.    International Agreements Do Not Provide Plaintiff with a Cause of Action
           Against United States**

10

11  Throughout the allegations, Plaintiff asserts rights under Article 33 of the Convention

    Relating to the Status of Refugees ("1951 Convention"),[2] the Protocol Relating to the Status of

12  Refugees ("1967 Protocol"),[3] and the Convention Against Torture.  See Complaint at 12-14.  As

13  discussed below, these treaties provide no basis for Plaintiff's claims.

14      **a.    The International Agreements Relied on by the Plaintiff Are Not Self-
                Executing**

15

16  Initially, United States notes that it is not a signatory to the 1951 Convention.  See INS v.

17  Stevic, 467 U.S. 407, 416 n.9 (1984).    Thus, Plaintiff cannot rely directly on the 1951

18  Convention in support of his claims.

19  Rather, the United States acceded to the 1967 Protocol in 1968.  The Protocol binds

20  parties to comply with the substantive provisions of Articles 2 through 34 of the 1951

21  Convention.  Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 551 (9th Cir. 1990).  Plaintiff

22  cannot rely on the 1967 Protocol, however, because it is not self-executing -- the Protocol was

23

24  _____

[2]July 28, 1951, 19 U.S.T. 6259, 189 U.N.T.S. 150.
[3]Entered into force for the United States, Nov. 1, 1968, 19 U.S.T. 6223, 606 U.N.T.S. 267.

not intended to have the force of law, but only to serve as a useful guide for the United States Congress in enacting its own laws.  Barapind v. Reno, 225 F.3d 1100, 1107 (9th Cir. 2000).

Congress's implementing legislation consists of the 1980 Refugee Act, which amended the INA, by creating the right of certain aliens in the United States to apply for asylum and withholding of deportation.  As discussed previously, however, with certain exceptions, the INA is currently inapplicable in the CNMI.  Thus, the obligations under the 1967 Protocol applicable to aliens situated in the CNMI are not addressed by the INA.

Instead, Congress delegated to the CNMI, with the CNMI's agreement, authority over immigration matters within the CNMI.  Covenant § 503(a).  Absent legislation expanding the applicability of the INA to aliens situated in the CNMI, however, Defendant United States does not possess the statutory authority to adopt immigration procedures in the CNMI to ensure compliance with the 1967 Protocol.  Moreover, the Covenant requires that the CNMI administer its authority over immigration matters in a manner that is consistent with the provisions of the Constitution, laws, and treaties of the United States that are applicable to the CNMI.  Covenant § 102.

**b.    Defendant United States Has Implemented Its International Obligations By Providing for the Applicability of Treaties Via the Covenant**

The Covenant places on the CNMI, not the United States, the responsibility for complying with the United States's treaty obligations to address claims within the CNMI for refugee and torture protection.  The Covenant specifically provides that:

> The relations between the Northern Mariana Islands and the United States will be governed by this Covenant which, together with those provisions of the Constitution, treaties and laws of the United States applicable to the Northern Mariana Islands, will be the supreme law of the Northern Mariana Islands.

Covenant § 102.  This provision, combined with Covenant § 503 making the INA generally

11

1    inapplicable to the CNMI, makes clear that the CNMI exercises plenary authority over its own

2    immigration pursuant to CNMI domestic law. Tran, 780 F. Supp. at 713.

3        The United States has implemented its international obligations, with regard to the 1967

4    Protocol and the Convention Against Torture, by mandating, through Covenant § 102, that

5    treaties to which the United States is a State Party are the supreme law of the CNMI.  Thus, both

6    the Protocol and the Convention Against Torture are applicable in the CNMI.

7        Defendant United States acknowledges that Covenant § 104 states that "The United

8    States will have complete responsibility for and authority with respect to matters relating to

9    foreign affairs and defense affecting the Northern Mariana Islands."  This provision, however,

10   does not absolve the CNMI from complying with the Protocol and the Convention Against

11   Torture under Covenant § 102 or somehow transfer that responsibility back to the United States.

12   Control of immigration inherently "relat[es] to foreign affairs" and yet Covenant § 503(a) has

13   never been deemed inconsistent with Covenant § 104.  The U.S. Congress has implemented the

14   Protocol and the Convention Against Torture within its immigration statutes, from which it has

15   expressly excluded the CNMI.  The only way the Covenant provisions and the INA can be read

16   in harmony is by concluding that the CNMI is bound to effectuate the Protocol and the

17   Convention Against Torture within the CNMI.  If the United States already had authority over

18   CNMI immigration matters, Congress would have had no need to enact the CNRA.  Congress's

19   enactment of the CNRA further demonstrates that, at least at the current time, the United States

20   has limited authority over CNMI immigration matters.

21       Moreover, because the CNMI exercises authority over its immigration pursuant to CNMI

22   domestic law, the Executive Branch of the federal government is prohibited from regulating in

23   this area.  The geographical exclusion of the CNMI from the INA limits the ability of the United

24   States to exercise authority over immigration in the CNMI.  However, it does not limit the

1   independent obligations of the CNMI under international agreements as imposed on the CNMI

2   by the Covenant.  Section 102 of the Covenant, operating together with Sections 503(a) and 506,

3   thus imposes on the CNMI the responsibility to act consistently with the terms of these

4   international agreements, but permits the CNMI autonomy in determining how to satisfy its

5   obligations.

6         c.      **Plaintiff Must Look to CNMI's Domestic Law, Which Indicates Its
                  Plenary Authority Over Immigration and Sets Forth Its Immigration
7                 Law**

8         Through its own immigration law, the CNMI has acknowledged that it has the primary

9   responsibility for implementation and enforcement of such international agreements as the

10  Protocol.  The non-refoulement provision found at 4 CMC § 4344(d) is evidence of the CNMI's

11  recognition of its obligations in this area.

12        Based on Article V of the Covenant, it is the ultimate responsibility of the CNMI to

13  devise and implement policies and procedures to the extent it wishes to grant derivative

14  protections to asylees or refugees.

15  **B.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
            GRANTED AND SHOULD BE DISMISSED**
16
          **1.     Plaintiff Has Not Asserted a Legal Basis for His Claims of Due Process
17                  Violations**

18        Plaintiff alleges that Defendant United States has violated due process by failing to

19  provide Plaintiff and his family outside the CNMI derivative protections.  Complaint at ¶¶ 23,

20  26.  However, Plaintiff -- an asylee or refugee within the CNMI -- has no such constitutional due

21  process right relating to his immigration status.

22        The Ninth Circuit Court of Appeals has acknowledged that Section 501 of the Covenant

23  limits the application of constitutional provisions to CNMI.  <u>Northern Mariana Islands v. Atalig</u>,

24  723 F.2d 682, 685 (9th Cir. 1984).  Whereas the United States's authority over the CNMI

                                          13

originally emanated from the United Nations Trusteeship Agreement, since the Trusteeship was terminated in 1986, that authority now "arises solely under the Covenant." Hillblom v. United States, 896 F.2d 426, 429 (9th Cir. 1990). "The Covenant has created a 'unique' relationship between the United States and the CNMI, and its provisions alone define the boundaries of those relations." United States v. De Leon Guerrero, 4 F.3d 749, 754 (9th Cir. 1993) (citing Atalig, 723 F.2d at 687). This constitutes a vital aspect of United States-CNMI relations. Atalig, 723 F.2d at 685-86.

Covenant provisions limiting the federal Constitution's applicability in CNMI must be understood alongside the series of United States Supreme Court opinions collectively referred to as the Insular Cases.[4] The Insular Cases considered Congress's authority to govern United States off-shore territories acquired toward the close of the nineteenth century. The doctrine of "territorial incorporation" announced in the Insular Cases distinguishes between incorporated territories, which are intended for statehood from the time of acquisition and in which the entire Constitution applies ex proprio vigore, and unincorporated territories, which are not intended for statehood and in which only fundamental constitutional rights apply by their own force. Examining Board v. Flores de Otero, 426 U.S. 572, 599-600 n.30 (1976). In identifying "fundamental rights" for purposes of territorial incorporation, the Court considered whether the asserted right was one of "those fundamental limitations in favor of personal rights" which are "the basis of all free government." Dorr v. United States, 195 U.S. 138, 147 (1904). With regard

---

[4] The Insular Cases include: De Lima v. Bidwell, 182 U.S. 1 (1901); Goetze v. United States, 182 U.S. 221 (1901); Grossman v. United States, 182 U.S. 221 (1901); Dooley v. United States, 182 U.S. 222 (1901); Armstrong v. United States, 182 U.S. 243 (1901); Downes v. Bidwell, 182 U.S. 244 (1901); Huus v. New York and Porto Rico Steamship Co., 182 U.S. 392 (1901); Dooly v. United States, 183 U.S. 151 (1901); and Fourteen Diamond Rings v. United States, 183 U.S. 176 (1901). Other cases frequently cited as part of the Insular Cases include: Hawaii v. Mankichi, 190 U.S. 197 (1903); Gonzalez v. Williams, 192 U.S. 1 (1904); Kepner v. United States, 195 U.S. 100 (1904); Dorr v. United States, 195 U.S. 138 (1904); Mendozana v. United States, 195 U.S. 158 (1904); Rasmussen v. United States, 197 U.S. 516 (1905); Trono v. United States, 199 U.S. 521 (1905); Grafton v. United States, 206 U.S. 333 (1907); Kent v. Porto Rico, 207 U.S. 113 (1907); Kopel v. Bingham, 211 U.S. 468 (1909); Dowdell v. United States, 221 U.S. 325 (1911); Ochoa v. Hernandez, 230 U.S. 139 (1913); Ocampo v. United States, 234 U.S. 91 (1914); Balzac v. Porto Rico, 258 U.S. 298 (1922).

to unincorporated territories like CNMI, the <u>Insular Cases</u> held that certain constitutional rights, such as the Fifth Amendment right to grand jury indictment and the Sixth Amendment right to trial by jury, are nonfundamental rights that do not apply in unincorporated territories.  <u>e.g.</u>, <u>Balzac v. Porto Rico</u>, 258 U.S. 298, 309 (1922); <u>Dorr</u>, 195 U.S. at 149; <u>Hawaii v. Mankichi</u>, 190 U.S. 197, 216-18 (1903).

However, in <u>Atalig</u>, the Ninth Circuit Court of Appeals distinguished the standards for determining "fundamental rights" for due process purposes from that of the <u>Insular Cases</u>. <u>Atalig</u>, 723 F.2d at 689.  "For due process purposes, at least regarding procedural matters, a procedure is fundamental if it 'is necessary to an Anglo-American regime of ordered liberty.'" <u>Id.</u> In <u>Wabol v. Villacrusis</u>, 958 F.2d 1450 (9th Cir. 1990), the court further analyzed the concept of "fundamental rights" applicable to the CNMI when it addressed whether Covenant § 805, which restricts long term interest in CNMI land to persons of CNMI descent, violated the Equal Protection Clause.  958 F.2d at 1450.  In determining this question, the court noted:

> It is . . . important to distinguish between the right claimed under the equal protection clause and the right to equal protection itself. <u>Atalig</u> held that not every right subsumed within the due process clause can ride the fundamental coattails of due process into the territories. The same must be true of the equal protection clause. It is the specific right of equality that must be considered for purposes of territorial incorporation, rather than the broad general guarantee of equal protection.

<u>Wabol</u>, 958 F.2d at 1460, n.19.

A more recent federal decision considering a fundamental rights challenge to the Covenant is <u>Rayphand v. Sablan</u>, 95 F. Supp.2d 1133, 1140 (D.N. Mar. I. 1999), <u>aff'd</u>, <u>Torres v. Sablan</u>, 528 U.S. 1110 (2000).  Recounting <u>Atalig</u> and <u>Wabol</u>, the court again framed the operative question as whether Congress, in authorizing the malapportioned senate, encroached upon "one of those fundamental limitations in favor of personal rights which are the basis of all free government;" a right "fundamental in the international sense."  <u>Id.</u> at 1138 (internal

15

quotations and citations omitted).

Consequently, insofar as the CNMI is concerned, even inhabitants lack the full panoply of constitutional rights. Rather, they are guaranteed fundamental constitutional rights only.[5] <u>See</u> <u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259, 269 (1990). This is so because the CNMI is an unincorporated territory.[6] Accordingly, Plaintiff lacks any constitutional due process right relating to his United States immigration status, as it is not a fundamental constitutional right as defined by the Ninth Circuit Court of Appeals in <u>Atalig</u> and <u>Wabol</u>.

Even assuming <u>arguendo</u> that Plaintiff can somehow claim a constitutionally-protected liberty or property interest, under the same standards as inhabitants of the CNMI, and sufficient to trigger application of the Due Process Clause, no such interest can be created with respect to an application or desire by an asylee or refugee to apply for admission of his spouse or child. This is because admission of an asylee or refugee's spouse or children is not an entitlement, even for asylees or refugees who meet the statutory eligibility criteria in the United States, but is subject to an exercise of unfettered discretion by the Executive Branch of the United States Government.

The Supreme Court has firmly held that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). Under this governing analysis, Plaintiff can establish no liberty or property interest in applying for or obtaining admission of an asylee or refugee's spouse or children, as the ultimate decision as to such admission is purely discretionary. <u>See</u>, <u>e.g.</u>, INA § 208(b)(1)(A) ("the Attorney General <u>may</u> grant asylum")

---

[5]These rights are codified at Covenant § 501(a).
[6]Unincorporated territories are those territories not "clearly destined for statehood." <u>Verdugo-Urquidez</u>, 494 U.S. at 268.

(emphasis added).

Where the substantive benefit sought -- in this case, admission of an asylee's spouse and children -- is not mandatory, then the Plaintiff is not entitled to procedures complying with the Due Process Clause. "It is settled that an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause. . . . Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Velasco-Gutierrez v. Crossland, 732 F.2d 792, 798 (10th Cir. 1984) (quoting Olim v. Wakinekona, 461 U.S. 238, 250 & n.12 (1983)(internal quotes omitted)); see also Velasco-Gutierrez, 732 F.2d at 798 (rejecting alien's claim that he had constitutionally protected interest in "being considered" for "deferred action" status; "Absent a substantive interest in deferred action, the procedures . . . for making deferred action determinations are not in themselves constitutionally compelled."). Accordingly, Plaintiff has no due process claim pursuant to INA § 208. The Court should therefore dismiss this claim as to the United States.

## 2.    Plaintiff Has Not Asserted a Legal Basis for His Claims of Equal Protection Violations

Plaintiff also alleges that United States has violated the Equal Protection Clause of the U.S. Constitution by failing to provide Plaintiff and his family outside the CNMI derivative protections. Complaint at ¶ 22. Equal protection claims are considered under a two-step analysis. First, a plaintiff must show that the statute in question "results in members of a certain group being treated differently from other persons based on membership in that group." Sagana v. Tenorio, 384 F.3d 731, 740 (9th Cir. 2004)(quoting United States v. Lopez-Flores, 63 F.3d 1468, 1472 (9th Cir. 1995). Second, a court assesses the legitimacy of a discriminatory statute under the appropriate level of scrutiny. Id.

The Equal Protection Clause requires the State to treat all similarly situated people

17

1   equally. Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). In order to succeed on his

2   challenge, Plaintiff must establish that his treatment differed from that of similarly situated

3   persons. Dillingham v. I.N.S., 267 F.3d 996, 1007 (9th Cir. 2001). Here, Plaintiff, as an asylee

4   located within CNMI, is not similarly situated to asylees located in the United States. As stated

5   previously, CNMI inhabitants lack the full panoply of constitutional rights, but instead are

6   guaranteed fundamental constitutional rights only, pursuant to Covenant § 501(a). See supra

7   Section IV. B. 1. This is so because the CNMI is an unincorporated territory. Id.

8       Moreover, the Ninth Circuit Court of Appeals has determined that under equal protection

9   analysis, "a classification neither involving fundamental rights nor proceeding along suspect

10  lines is accorded a strong presumption of validity." Dillingham, 267 F.3d at 1005 (citing Heller

11  v. Doe, 509 U.S. 312, 319 (1993)). Such classifications are reviewed to determine whether they

12  are supported by a rational basis. Id. (citing Heller, 509 U.S. at 319-320.) In the instant action,

13  the classification at issue -- between asylees located within CNMI, as opposed to asylees located

14  within the United States -- is not set forth by the United States, but by CNMI. Additionally,

15  CNMI controls its own immigration. See supra Section III. B. However, assuming arguendo that

16  federal immigration law did apply, Plaintiff's equal protection claim would fail, as the challenged

17  classification is not protected, and there is not fundamental right at stake. Thus, the proper

18  standard of review is rational basis. See Heller, 509 U.S. at 319-20 ("Such a classification

19  cannot run afoul of the Equal Protection Clause if there is a rational relationship between the

20  disparity of treatment and some legitimate governmental purpose." (citations omitted)). Under

21  the rational basis standard of review, Plaintiff bears the burden of proving that he "has been

22  intentionally treated differently from others similarly situated and that there is no rational basis

23  for the difference in treatment." Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.

24  2005). (quoting SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir.

2002)).  Plaintiff's Complaint fails to satisfy these requirements.  Accordingly, Plaintiff fails to sufficiently allege an equal protection claim against the United States.[7]  While the CNRA *may* change the United States's role regarding immigration in CNMI in the future, the current law does not obligate the United States to provide derivative protection for families of refugees or asylees.

### 3.    Plaintiff Claim for Derivative Protection is Barred by the Doctrine of Res Judicata

On August 1, 2003, Plaintiff entered into a settlement agreement, as a plaintiff, with the United States ("Settlement Agreement") in connection with consolidated actions titled <u>Jiang Xui Ying v. United States</u>, Civ. Action Nos. 02-0023, 00-0005, 99-0046 (D.N.M.I.) ("Consolidated Action")[8].  The Settlement Agreement is attached hereto as "Exhibit 1"[9].  Subsequent to executing the Settlement Agreement, the parties stipulated to a dismissal and the Court dismissed Plaintiff's claims with prejudice.  <u>Jiang Xui Ying</u>, Civ. Case. No. 02-0023, Order of Dismissal with Prejudice, filed December 4, 2003, attached hereto as "Exhibit 2".  The preclusive effect of the Settlement Agreement and the stipulated dismissal with prejudice bars Plaintiff's claims[10].

---

[7]As stated <u>supra</u> in Section III. B and Section IV. A respectively, no U.S. or CNMI law bestows the particular rights, privileges and immunities that Plaintiff is asking for.  Consequently, 42 U.S.C. § 1983 is inapplicable, as Plaintiff has not been deprived of any rights, privileges, or immunities secured by the Constitution and laws.

[8] When cited individually, the underlying cases to the consolidated actions (i.e., civil case numbers 00-0005, 02-0023, 99-0046) our referenced herein by the underlined case name and case number.

[9] "On a motion to dismiss, [the court] may take judicial notice of matters. . . outside the pleadings."  <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986).  The court may, accordingly, consider matters of public record, including pleadings, orders, and other papers filed with the court.  <u>See Mack v. South Bay Bee Distributors</u>, 789 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by <u>Astoria Federal Savings and Loan Ass'n v. Solimino</u>, 501 U.S. 104 (1991)).

[10] The United States adopts Section A of the CNMI's Motion to Dismiss filed on September 17, 2008 in regards to the preclusive effect of Plaintiff's settlement agreement based upon res judicata and collateral estoppel.  Although the CNMI entered into separate settlement agreement with the Plaintiff, Plaintiff's release in paragraph 12 of the agreement with the CNMI is substantially similar to the release in paragraph 4 of the Settlement Agreement with the United States.  Besides identifying different defendants, the most significant difference is the last lines of paragraph 12 of the CNMI settlement agreement, which states that the Plaintiff releases the defendants from all claims "arising from or related in any way to the Consolidated Action and the conduct of the litigation thereunder"; whereas the last lines of paragraph 4 of the Settlement Agreement provides that a release from all claims "arising from the circumstances or occurrences alleged in the Consolidated Action."  The effect of paragraph 12 of the CNMI settlement agreement and paragraph 4 of the Settlement Agreement with the United States is the identical – Plaintiff discharged any claims arising from the relief he sought in the Consolidated Action.

19

1    Under the doctrine of res judicata, a subsequent action will be barred if: (1) a prior

2 adjudication involved the same claim or cause of action as the later suit; (2) a final judgment on

3 the merits was reached in the earlier litigation; and (3) the prior suit involves the same parties or

4 privies. See Nordhorn v. Ladish Co., 9 F.3d 1402, 1404 (9th Cir. 1993). Res judicata operates to

5 bar any claims actually litigated as well as any claims that could have been presented in the

6 earlier case. See In re Imperial Corp. of America, 92 F.3d 1503, 1506 (9th Cir. 1996). A release

7 in a settlement agreement extends to all matters within the parties' contemplation at the time it

8 was executed. See Chadwick v. Northwest Airlines, 654 P.2d 1215, 1217 (Wash. Ct. App.

9 1982); see United States v. Real Property Located at 22 Santa Barbara Drive, 264 F.3d 860 (9th

10 Cir. 2001) (holding that a party's stipulation to dismiss certain claims bars future action on those

11 claims).

12    Here, the Settlement Agreement operates to bar Plaintiff's claims. The genesis of

13 Plaintiff's claims in the Consolidated Action was Plaintiff's request for protection for himself

14 and his family residing in Bangladesh. See Ahmed v. United States, Civ. Action No. 00-0005,

15 Fifth Amended Complaint, filed on May 10, 2002, ¶47; Liang v. Goldberg, Civ. Case No. 99-

16 0046, Second Amended Complaint, filed on June 30, 2000, ¶¶ 24, 53, 100 and Exhibits 2, 3, and

17 6 (pertinent parts attached hereto as "Exhibit 3"). Plaintiff alleged in the Consolidated Action

18 that he and his family had been the target of threats of death and physical violence. The Plaintiff

19 sought protection against refoulement (or refugee status) and protection for his family in

20 Bangladesh. When Plaintiff did not receive the relief he requested, Plaintiff challenged the

21 CNMI's non-refoulement program, of lack thereof. The present case involves the same

22 allegations of threats of physical violence and the same request for Plaintiff's right to seek

23 protection for Plaintiff's family still located in Bangladesh.

24    Paragraph 4 of the Settlement Agreement provides:

20

> The Plaintiffs in the Consolidated Action acknowledge and agree that they may have claims against the Federal Defendants either singularly, jointly, or collectively which are unknown at present. The Plaintiffs, nonetheless, singularly, jointly, or collectively warrant, covenant, and agree that, except as provided herein, this Agreement forever **releases and discharges any and all claims**, obligations, demands, causes of action, suits or debts, contracts, agreements, or liabilities of any kind whatsoever, in law or equity, that they ever had, now have or may now have against the Federal Defendants and any and all current and former officers, directors, agents, servants, employees (including, but not limited to, Colin Powell, John Ashcroft, Tom Ridge, Secretary of the Department of Homeland Security ), attorneys, or representatives of the United States, Colin Powell, John Ashcroft, and Tom Ridge **arising from the circumstances or occurrences alleged in the Consolidated Actions**.

(Emphasis added). Plaintiff signed the Settlement Agreement through his legal counsel and effectively waived any right, if any, to seek derivative protection for his family located outside of the Commonwealth of the Northern Mariana Islands. Not only did Plaintiff contemplate a release of any right to seek derivative protection, Plaintiff intended and waived such right in paragraph 4 of the Settlement Agreement because his right to seek refugee status, and any derivative rights as a refugee, were at issue in the Consolidated Action. Thus, Plaintiff's claims are barred by the doctrine of res judicata and Plaintiff's Complaint should be dismissed.

## V.   CONCLUSION

For the foregoing reasons, United States respectfully requests that this Court grant its motion to dismiss the Complaint with prejudice insofar as it relates to or seeks relief from them.

//

//

//

//

//

//

//

21

1     RESPECTFULLY SUBMITTED: this 17th day of September, 2008.

2                                    LEONARDO M. RAPADAS
                                     United States Attorney
3                                    Districts of Guam and NMI

4
                               By: /s/ Jessica F. Cruz
5                                    JESSICA F. CRUZ
                                     Assistant U. S. Attorney
6                                    MIKEL W. SCHWAB
                                     Assistant U.S. Attorney
7

8                                    Office of Immigration Litigation
                                     District Court Section
9                                    Civil Division
                                     U.S. Department of Justice
10

11
                               By: /s/ Samuel P. Go
12                                   SAMUEL P. GO
                                     Trial Attorney
13                                   GREGORY G. KATSAS
                                     Assistant Attorney General
14                                   DAVID J. KLINE
                                     Director
15                                   VICTOR M. LAWRENCE
                                     Principal Assistant Director
16

17

18

19

20

21

22

23

24