Kevin Lynch, Chief Prosecutor
Katie Busenkell, Assistant Attorney General
Division of Immigration Service
Commonwealth of the Northern Mariana Islands
Civic Center, Susupe
Saipan, MP 96950
(670) 664-2426 (voice)
(670) 234-7016 (fax)

Attorneys for the Commonwealth of the Northern Mariana Islands and the Attorney General of the Commonwealth of the Northern Mariana Islands, in his official capacity.

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOHAMMED KAMAL HOSSAIN,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMONWEALTH OF THE<br>NORTHERN MARIANA ISLANDS and<br>MATTHEW GREGORY, in his official<br>capacity as Attorney General of the<br>Commonwealth of the Northern Mariana<br>Islands, and the UNITED STATES OF<br>AMERICA,<br><br>        Defendants. | Civil Action  08-0016<br><br><br><br><br><br>COMMONWEALTH'S MEMORANDUM<br>OF POINTS AND AUTHORITIES IN<br>SUPPORT OF A MOTION TO DISMISS<br><br>Hearing:  October _____, 2008. |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Commonwealth of the Northern Mariana Islands ("CNMI") and the Attorney General for the CNMI ("Attorney General"), in his official capacity, respectfully move this Court to dismiss with prejudice all claims contained in the Plaintiff Mohammad Kamal Hossain's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12 (b)(6), or alternatively under the doctrines of *res judicata*, and/or collateral estoppel.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
COMMONWEALTH'S MOTION TO DISMISS**

## I.      INTRODUCTION

This motion addresses two issues: (1) Whether Plaintiff's claims are barred under the doctrines of *res judicata* and collateral estoppel by a 2003 Settlement Agreement and a subsequent Order of Dismissal; and alternatively, (2) Whether the Plaintiff's complaint has failed to state individual claims upon which relief can be granted, and thus should be wholly and/or partially dismissed under Fed. R. Civ. P. 12(b)(6).   As set forth below, both issues require dismissal of this action.[1]

## II.      APPLICABLE LAW

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). In considering a motion to dismiss for failure to state a claim, a court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. The court construes all material allegations in the light most favorable to the plaintiff. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir.2001). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See, e.g., Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir.1994) (internal quotation omitted).

---

[1] At the time of this filing, Plaintiff and the CNMI were in the process of finalizing a stipulation dismissing paragraphs 39-46 of the Complaint, and paragraph 6 of the Request for Relief.  Thus, these paragraphs are not addressed in this motion. Should negotiations break down, the CNMI reserves the right to file a supplement response addressing the claims raised in the above-mentioned paragraphs.

### III.   ARGUMENT

**A. Plaintiff's causes of action are barred from judicial review under the doctrines of *res judicata* and collateral estoppel.**

Plaintiff has already brought suit against the CNMI regarding these identical issues as part of a large scale consolidated action later dismissed pursuant to a settlement agreement. On September 2, 1999, Rui Liang and Liao Da Nian, both of whom were represented by Bruce Jorgenson, Esq., filed a complaint in CV- 99-0046[2], against the CNMI and the United States of America ("United States") for failure to enact various protocols for refugee and asylum protections in the Commonwealth. Compl., CV-99-0046 (attached as "Ex. A"). Plaintiff's name first appears in CV-99-0046 in the Second Amended Complaint, filed on June 30, 2000. Second Amend. Compl., CV-99-0046 (attached as "Ex. B"). Civil Action 99-0046 was later consolidated with CV- 00-0005 in a Third Amended Complaint, filed on July 16, 2001. Third Amend. Compl., CV-00-0005 (attached as "Ex. C"). On December 26, 2002, the Court ordered that CV-02-0023, CV-00-0005, and CV-99-046 be consolidated into one case referred to collectively as CV-02-0023. Order Consolidating CV-02-0023, CV-99-0046, and CV-00-0005 (Dec. 26, 2002) (attached as "Ex. D"). The Court noted that consolidation of the cases was appropriate because the parties and the issues were the same, and the consolidation would serve the interest of judicial economy.

After numerous filings, Plaintiff, represented by Bruce Jorgenson, Esq., filed the fifth and final amended complaint in consolidated CV- 00-0005 before entering into a settlement agreement and moving the District Court to dismiss the consolidated cases with prejudice. Fifth Amend. Compl., CV-00-0005 ("5AC") (attached as "Ex. E"). The 5AC alleged five claims for relief, all of which are directly related to the present case CV-08-0016.

---

[2] All cases mentioned in this section were addressed by the United States District Court for the Northern Mariana Islands.

In sum, Plaintiff sought the following relief from the CNMI in the 5AC: (1) a declaration on his rights under international law to a determination by the CNMI of his eligibility for refugee status, *Id.* at ¶ 120; (2) a declaration and injunction preserving his rights to be free from torture, cruel and inhuman treatment, degrading treatment, or degrading punishment arising under the Convention Against Torture, the FARR, and under international law, *Id.* at ¶ 136; (3) compensatory and punitive damages against the CNMI, and Does 1-25, pursuant to the Alien Tort Claims Act and RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAWS OF THE UNITED STATES § 702, *Id.* at ¶ 150; (4) an enforcement of Plaintiff's right to apply for refugee status, to be free from refoulement and deportation, and to be free from arbitrary and prolonged detention, to be free from torture, and other forms of cruel and inhuman treatment or punishment under international law, to equal protection, and to due process. Plaintiff also sought compensatory and punitive damages under the Fourth Claim of Relief, *Id.* at ¶ 153 & 157; and (5) punitive damages against the CNMI to deter future wrongful, wanton, and willful conduct concerning the protections required to be made available pursuant to the 1985 Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), including but not limited to protection from torture and protection afforded by the effect of non-refoulement, *Id.* at ¶ 164 & 179.

In early August of 2003, the Plaintiff, through his attorney Bruce Jorgenson, entered into a settlement agreement with the CNMI and the United States forever releasing and discharging the CNMI and the United States, as well as their agents and officers, "from any and all complaints, claims, obligations, demands, causes of action, suits or debts or appeals whatsoever, in law, equity, or an administrative proceeding, known and unknown, that they ever had, now have or may have arising from or *related in any way* to the Consolidated Action and the conduct of the litigation thereunder." Settlement Agreement and Release (Aug. 2003) ¶ 12 [*emphasis added*]

("Settlement Agreement") (attached as "Ex. F").  All parties of the consolidated actions signed

the settlement agreement by August 4, 2003, and based on the settlement agreement, submitted a

Stipulation to Dismissal to the District Court on August 6, 2003.  Stipulation to Dismissal and

Order for 03-0017 and 02-0023 (Aug. 6, 2003) ("Order of Dismissal") (attached as "Ex. G").

Based on the stipulation, the Court dismissed with prejudice, all claims concerning non-

refoulement protection and programs asserted against the CNMI and its agents. *Id.*

Despite the prior dismissal, on June 2, 2008, Plaintiff filed a Complaint[3] ("Complaint") in

CV- 08-0016 against the CNMI and the United States[4] alleging the following relief: (1) a

permanent injunction forever restraining and enjoining the defendants and each of them from

denying Plaintiff the right to apply for derivative protection for his family members. [Compl. at

p. 17, ¶ 2]; (2) requesting an order that imposes upon the CNMI an obligation and requirement to

immediately create and perpetuate a meaningful and impartial procedure for considering

applications for derivative protection. [Compl. at p. 17, ¶ 3]; (3) an order compelling the CNMI

and the Attorney General to cooperate with the Federal Government and/or the United Nations

officials regarding the processes, regulations, and procedures for implementing a derivative

protection program. [Compl. at p. 18, ¶ 4]; (4) declaratory judgment finding the CNMI's lack of

an application process for derivative family members violates the Fourteenth Amendment and

Commonwealth Constitution. [Compl. at p. 18, ¶ 5]; and (5) an injunction restraining the CNMI

from bringing any retaliatory action toward the Plaintiff for commencing and prosecuting this

lawsuit. [Compl. at p. 18, ¶ 7].

---

[3] Plaintiff incorrectly refers to CNMI Public Law 13-61 as "asylum regulations."  The Commonwealth regulations do not afford an individual the ability to apply for asylum protection.  Rather, the Commonwealth only affords an individual an opportunity to apply for refugee protection, which is what Plaintiff applied for and was granted in 2006.  Thus, for the purpose of this motion, the Commonwealth will address the Plaintiff's claims by discussing the relevant laws that apply to Plaintiff as a refugee under Commonwealth law.

1    Based on the above-mentioned facts, Plaintiff's complaint under CV-08-0016 should be

2    dismissed under the doctrines of *res judicata* and collateral estoppel.

3    1. The claims raised in Plaintiff's Complaint are barred by *res judicata.*

4    *Res judicata* serves to protect adversaries from the expense of attending multiple lawsuits, as

5    well as conserving judicial resources and maintaining reliance on judicial action by minimizing

6    the possibility of inconsistent decisions. *American Fabrics, Inc. v. L& L Textiles, Inc.,* 754 F.2d

7    1524, 1529 (1985) (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979) (hereinafter

8    "*Montana*")). The doctrine applies to jurisdictional issues as well as substantive issues. *Id.* (citing

9    *Durfee v. Duke,* 375 U.S. 106 (1963); *Stoll v. Gottlieb,* 305 U.S. 165 (1938); *Yanow v.*

10   *Weyerhauser Steamship Co.,* 274 F.2d 274, 277 (9th Cir.1959); *Title v. United States,* 263 F.2d

11   28, 30 (9th Cir.1959)).

12   As a general rule, affirmative defenses must be raised in an answer pursuant to Rule 8(c), not

13   in a motion to dismiss under Rule 12(b)(6). *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th

14   Cir.1984).    However, Ninth Circuit Courts have permitted parties to raise *res judicata* in a

15   motion to dismiss when there is no issue of fact in dispute, particularly when the Court's own

16   records contain all the information needed to determine whether *res judicata* bars the subsequent

17   litigation. *Id.* Similarly, courts have taken judicial notice of prior complaints and judgments and

18   dismissed claims. Fed.R.Evid. 201(b)(2) & (f); *see Commodity Futures Trading Comm'n v. Co.*

19   *Petro Mktg. Group, Inc.,* 680 F.2d 573, 584 (9th Cir.1982).

20   In order to bar a later suit under the doctrine of *res judicata*, an adjudication must: (1)

21   involve the same "claim" as the later suit; (2) have reached a final judgment on the merits; and

22   (3) involve the same parties or their privies. *Blonder-Tongue Lab. v. Univ. of Ill. Found.,* 402

23   U.S. 313, 323-24 (1971); *Davis Wright & Jones v. Nat'l Union Fire Ins. Co.,* 709 F.Supp. 196

24   (W.D.Wa.1989), *aff'd,* 897 F.2d 1021 (9th Cir.1990).

25

1    There are no facts in dispute in this case.  As the previous cases were litigated in this Court,

2    the record clearly supports a finding of claim preclusion and issue preclusion.  Thus, applying

3    the above-mentioned three-prong test is appropriate in this situation to conserve resources of the

4    parties and the Court.

5        In applying the above-mentioned three-prong test, it is evident that the Plaintiff's complaint

6    is barred by the doctrine of *res judicata*.  First, CV- 02-0023 involves the same claim as CV- 08-

7    0016, which is that the Commonwealth lacks a non-refoulement program and/or opportunities

8    for refugees that mirror international treaties and/or United States law.  In CV-08-0016, Plaintiff

9    states a claim that clearly falls within the scope of non-refoulement programs and/or the

10   procedures.  Furthermore, Plaintiff has failed to state any additional or new facts that are in

11   dispute and/or are unrelated to the issue of non-refoulement.

12       Second, the District Court issued a final judgment on the merits of CV-02-0023 on August 6,

13   2003, wherein the Court reviewed and signed a Stipulation to Dismissal that dismissed with

14   prejudice all claims asserted against the Defendants.  Judgment based on a settlement between

15   parties has full *res judicata* effect with respect to claims that were, or should have been, decided

16   in a prior proceeding. *Hadley v. Cowan*, 60 Wash.App. 433, 439 (1991). *See also LeBire v. Dep't*

17   *of Labor & Indus.*, 14 Wash.2d 407, 418 (1942) ("[A] final order of judgment, settled and

18   entered by agreement or consent of the parties, is no less effective as a bar or estoppel than is one

19   which is rendered upon contest and trial.")  Thus, any claims based on derivative protection

20   and/or a non-refoulement program should have been made prior to entering into a settlement

21   agreement and/or submitting a stipulation to dismissal that is based on a settlement agreement to

22   the Court for approval.  Even if Plaintiff's claims were viewed as new legal theories, the doctrine

23   bars "all grounds for recovery which could have been asserted, whether they were or not, in a

24   prior suit between the same parties." *Taha v. Portland State Univ.*, 875 F.2d 319 (CA 9th Cir.

25

7

1989) (citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982); see also *Sidney v. Zah*, 718 F.2d 1453, 1458 (9th Cir.1983) (res judicata "bars litigation of all matters which could have been raised in support of a cause of action previously litigated").

Lastly, CV-02-0023 and CV-08-0016 involve the same parties. Mr. Hossain was a plaintiff in CV- 02-0023, wherein he pursued alleged causes of action against defendants CNMI and the United States based on the Commonwealth's deficiencies concerning non-refoulement and refugee protection. 5AC at ¶ 21 (Ex. E). Likewise, in CV-08-0016, Plaintiff Hossain is alleging causes of action and relief against the CNMI and the United States based on the Commonwealth's non-refoulement and refugee protection program.

Thus, it is evident in applying the three-prong test of the doctrine of *res judicata* that the Court is barred from revisiting, reviewing, or considering the claims which the Plaintiff has raised in his Complaint, as none of these claims fall outside the scope of the 2003 Settlement Agreement and Release entered into for CV-02-0023, and the final judgment decree signed by the Court on August 6, 2003.

2. The issues raised in Plaintiff's Complaint are barred by collateral estoppel.

The related doctrine of issue preclusion, or collateral estoppel, bars relitigation, even in an action on a different claim, of all "issues of fact or law that were actually litigated and necessarily decided" in the prior proceeding. *American Fabrics, Inc. v. L& L Textiles, Inc.*, 754 F.2d 1524, 1529 (1985) (citing *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir.1979)); *see also Montana*, 440 U.S. at 153. A court may rule on the merits of a collateral estoppel defense on a motion to dismiss if it relies only on materials included in the pleadings or of which the court may take judicial notice. "While the general rule in this circuit, as in others, is that a district court may not grant a motion to dismiss" where the district court relies on materials outside the pleadings, "that rule does not pertain when the additional facts

1   considered by the court are contained in materials of which the court may take judicial notice."

2   *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994) (citing *Mack v. South Bay Beer Distribs.,*

3   *Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

4       In the Ninth Circuit, collateral estoppel applies where it is established that: (1) the issue

5   necessarily decided at the previous proceeding is identical to the one which is sought to be

6   relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party

7   against whom collateral estoppel is asserted was a party or in privity with a party at the first

8   proceeding. *Hydranautics v. Filmtec Corp.*, 204 F.3d 880, 885 (9th Cir.2000). "The party

9   asserting preclusion bears the burden of showing with clarity and certainty what was determined

10  by the prior judgment." *Id.* at 885 (citing *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114

11  F.3d 848, 850 (9th Cir.1997).

12      The Court needs to look no further than its own records and the Stipulation of Agreement

13  and Release to recognize the facts of CV-02-0023 and CV-08-0016 satisfy the three-prong

14  collateral estoppel test. Analysis governing the "same parties" and "final judgment" tests are

15  identical for our purposes under *res judicata* and collateral estoppel. Thus, for the purpose of

16  brevity, the following subsection will only address the "identical issues" test.

17      The Court granted a stipulation for dismissal, with prejudice, on August 6, 2003 in CV-02-

18  0023.   The stipulation for dismissal and order in CV-02-0023 was based upon a Settlement

19  Agreement and Release, signed by all parties through their legal counsel. The Settlement

20  Agreement forever released the CNMI from any and all known and unknown claims that were

21  related to the claims in CV-02-0023, or more specifically, to non-refoulement and refugee

22  protection. Settlement Agreement at ¶¶ 12, 3, 7, and 8.

23      Ordinarily, stipulated or consent judgments do not provide basis for collateral estoppel,

24  because the very purpose of stipulated or consent judgment is to avoid litigation, so that

25  requirement of "actual litigation" will always be missing. *In re Berr*, 172 B.R. 299 (9th Cir.

BAP 1994). However, a stipulation or consent judgment may have preclusive effect in a subsequent action if the parties have so agreed. *See, e.g., Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1381 (9th Cir.1978) (finding that judgment was the result of parties' stipulation of settlement does not detract from its being considered a conclusive determination of merits of action for purposes of collateral estoppel where it is clear that parties intended that the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action.) Here, Plaintiff expressly waived all claims, future and existing, upon dismissal of the former action, thus the settlement and dismissal have a preclusive effect on the instant case under collateral estoppel.

In the 5AC for CV-02-0023, Plaintiff sought damages and relief for the Commonwealth's lack of a non-refoulement program. More specifically, Plaintiff sought a remedy that would create a non-refoulement program and refugee protections for him and his "IRB-situated family." 5AC at ¶¶ 47, 65-68. However, Paragraph 12 of the Settlement Agreement, clearly states it dismisses and/or releases the CNMI from providing Plaintiff's "IRB-situated family" refugee protections. Undoubtedly, the intent of the parties in CV-02-0002 was to "forever release and discharge" the Commonwealth from "any and all...complaints, claims, obligations, demands, causes of action, suits or debts or appeals, whatsoever, in law, equity, or an administrative proceeding, known and unknown, *that they ever had, now have, or may now have* arising from or related in any way to the Consolidated Action and the conduct of the litigation thereunder." Settlement Agreement at ¶ 1 [*emphasis added*]. The key words that directly link the issues of CV-02-0023 to CV-08-0016 are "related in anyway to the Consolidated Action and the conduct of the litigation thereunder."

The consolidated civil actions under CV-02-0023 were solely based upon the absence of a non-refoulement program and/or refugee protection in the Commonwealth. Any claim(s) that Plaintiff has or had regarding the CNMI non-refoulement program, or its deficiencies, including

the prohibition against derivative protection for family members of refugees that are located outside of the Commonwealth, fall under the umbrella of the unquestionable terms of the agreement, which Plaintiff signed through his legal counsel.    Based on the Settlement Agreement, the parties stipulated to a dismissal of the consolidated cases, and the Court signed an order on August 6, 2003, dismissing with prejudice, any and all claims related to CV-02-0023.    Thus, the August 6, 2008 dismissal has the effect precluding the exact issues the Plaintiff asserts in his Complaint in CV-08-0016.    Thus, Plaintiff's claims are barred by collateral estoppel because these identical issues were previously litigated and necessary decided by this Court.

Having failed to state a claim that falls outside the scope of the Settlement Agreement and the subsequent Stipulation to Dismissal, the Plaintiff's complaint and the claims therein, should be dismissed under *res judicata,* collateral estoppel, and/or Rule 12(b)(6).

**B. Plaintiff's Complaint fails to state a claim upon which relief can be granted.**

Plaintiff has alleged three claims that can be parsed into three theories of relief: (1) asserting various human rights through the application of international law in the Commonwealth, through treaties ratified by the United States; (2) an equal protection and due process claim under the Fourteenth Amendment of the Constitution, made applicable to the Commonwealth through Section 501 (a) of the Commonwealth Covenant; and (3) an identical due process claim under the Constitution of the Commonwealth.    None of the above-mentioned theories states a claim upon which relief can be granted.

1. Plaintiff has failed to state a claim upon which relief can be granted under international, federal, or local law.

1    United States treaty obligations are not self-executing. The United States Supreme Court has

2    long recognized the distinction between treaties that automatically have effect as domestic law,

3    and those that while they constitute international law commitments do not by themselves

4    function as binding federal law. *Medellin v. Texas,* 128 S.Ct. 1346, 1356 (U.S. Tex. 2008).

> The distinction was well explained by Chief Justice Marshall's opinion in *Foster v.*
> *Neilson,* 2 Pet. 253, 315, 7 L.Ed. 415 (1829), overruled on other grounds, *United States v.*
> *Percheman,* 7 Pet. 51, 8 L.Ed. 604 (1833), which held that a treaty is "equivalent to an
> act of the legislature," and hence self-executing, when it "operates of itself without the
> aid of any legislative provision." *Foster,* supra, at 314. When, in contrast, "[treaty]
> stipulations are not self-executing they can only be enforced pursuant to legislation to
> carry them into effect." *Whitney v. Robertson,* 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed.
> 386 (1888). In sum, while treaties "may comprise international commitments ... they are
> not domestic law unless Congress has either enacted implementing statutes or the treaty
> itself conveys an intention that it be 'self-executing' and is ratified on these terms."
> Igartua-De La Rosa v. United States, 417 F.3d 145, 150 (C.A.1 2005) (en banc) (Boudin,
> C. J.).

12    *Id.* Even when treaties are self-executing in creating federal law, the background presumption is

13    that "[i]nternational agreements, even those directly benefiting private persons, generally do not

14    create private rights or provide for a private cause of action in domestic courts." 2

15    RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 907, Cmt. a, p.

16    395 (1986). Accordingly, a number of the Courts of Appeals have presumed that treaties do not

17    create privately enforceable rights in the absence of express language to the contrary. *Medellin*

18    *v. Texas,* 128 S.Ct. 1346, 1357 (U.S. Tex. 2008) (citing e.g., *United States v. Emuegbunam,* 268

19    F.3d 377, 389 (C.A.6 2001); *United States v. Jimenez-Nava,* 243 F.3d 192, 195 (C.A.5 2001);

20    *United States v. Li,* 206 F.3d 56, 60-61 (C.A.1 2000) (en banc); *Goldstar (Panama) S.A. v.*

21    *United States,* 967 F.2d 965, 968 (C.A.4 1992); *Canadian Transp. Co. v. United States,* 663

22    F.3d 1081, 1092 (C.A.D.C.1980); *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d 1287,

23    1298 (C.A.3 1979)).

24    Plaintiff relies on two international treaties to allege Plaintiff's right to apply for derivative

25    protection for his family members located outside of the Commonwealth: (1) 1967 United

12

1   Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6224, 606 U.N.T.S.

2   8791 (herein after "Protocol"); and (2) the Convention Against Torture and Other Cruel,

3   Inhuman, or Degrading Treatment or Punishment ("CAT").    However, neither treaty is self-

4   executing and/or has a binding effect in its entirety upon the Commonwealth. *See Medellin,* 128

5   S.Ct. 1346, 1366 (finding that Congress chooses to use certain language to demonstrate how to

6   accord the domestic effect of international obligations when it desires such a result.  In support

7   of this position, the Supreme Court cited *Pierre v. Gonzales*, 502 F.3d 109, 119-120 (C.A.2

8   2007), which held that the United Nations Convention Against Torture and Other Cruel,

9   Inhuman or Degrading Treatment or Punishment is non-self-executing)).

10    Quite the contrary, the United States and the Commonwealth have chosen, in accordance

11   with the Conventions, to limit the international legal obligations under the Protocol to Article 33,

12   and CAT to Article 3. Neither Article expressly requires that the United States or the

13   Commonwealth extend the rights afforded under these conventions to persons *outside* the

14   territory of the United States. *See also* Executive Order No. 12,807 (May 24, 1992) (addressing

15   the interdiction of illegal aliens, but clearly stating that treaty rights do no extend to persons

16   outside of the territory of the United States.)   Furthermore, neither article expressly requires that

17   refugees be afforded an opportunity to apply for derivative protection for family members,

18   whether those family members are located inside or outside of the territories of the United States.

19    Thus, Plaintiff erroneously rests the crux of his argument on international law that has urged,

20   though not mandated, the United States government to create a non-refoulement program that

21   affords a person granted refugee status in the United States an opportunity to apply for derivative

22   protection for family members that are located outside of the United States. *See* 8 U.S.C. §§

23   1101, *et seq.*   Section 207.7 provides claimants of a refugee an opportunity to apply for

24   derivative protection. 8 C.F.R. § 207.7 (d) (2008).   However, it is well recognized, that federal

25

immigration law does not apply to the Commonwealth until at least June of 2009, when the

transition period for Public Law 110-229 takes effect. *See* U.S. Public Law 110-229, 122 Stat.

754, 854 (May 8, 2008) (Public Law 110-229) (attached as "Ex. H").

Under the Commonwealth Covenant, the Commonwealth's right to self-govern was

preserved under Sections 105, which states:

> The United States *may* enact legislation in accordance with its constitutional processes
> which will be applicable to the Northern Mariana Islands, but if such legislation cannot
> also be made applicable to the several States *the Northern Mariana Islands must be
> specifically named* therein for it to become effective in the Northern Mariana Islands. In
> order to respect the right of self-government guaranteed by this Covenant the United
> States agrees to limit the exercise of that authority so that the fundamental provisions of
> this Covenant, namely Articles I, II and III and Sections 501 and 805, may be modified
> only with the consent of the Government of the United States and the Government of the
> Northern Mariana Islands.

N.M.I. Covenant § 105 [*emphasis added*]. Included in the right to self-governance was the

Commonwealth's express authority to regulate it's own borders under Section 503. N.M.I.

Covenant § 503; U.S. Public Law 94-241, 90 Stat. 263. Under this express right to self-

govern, the Commonwealth passed a law that implemented non-refoulement obligations under

the Protocol and CAT. 3 CMC § 4301, *et seq.* (also known as Public Law 13-61); *See also*

Memorandum of Agreement entered into between the Commonwealth of the Northern Mariana

Islands and the United States Department of Interior, Office of Insular Affairs, executed on

September 12, 2003 ("MOA") (attached as "Ex. I"). In furtherance of the law and agreement,

the Commonwealth implemented immigration regulations that specifically address derivative

protection to family members of refugees. *Commonwealth Immigration Regulations,* §5-40.1-

944. However, the Commonwealth's regulations expressly require that family members be

included in the initial application for refugee status, and requires unequivocally that the family

members must be present in the Commonwealth. *Id.*

On May 8, 2008, the United States passed Public Law 110-229, which implements federal

immigration laws in the Commonwealth. According to the law, the CNMI is to administer its

non-refoulement protection in accordance with the terms and procedures set forth in the MOA

and P.L. 13-61, until the transition program effective date in June of 2009, or within 180 days

thereafter.

> During the period beginning on the date of enactment of this Act and ending on the
> transition program effective date described in section 6 of Public Law 94-241 (as added
> by subsection (a)), the Government of the Commonwealth shall…administer its
> nonrefoulement protection program (A) according to the terms and procedures set forth
> in the Memorandum of Agreement entered into between the Commonwealth of the
> Northern Mariana Islands and the United States Department of Interior, Office of Insular
> Affairs, executed on September 12, 2003 (which terms and procedures, including but not
> limited to funding by the Secretary of the Interior and performance by the Secretary of
> Homeland Security of the duties of "Protection Consultant" to the Commonwealth, shall
> have effect on and after the date of enactment of this Act), as well as CNMI Public Law
> 13-61 and the Immigration Regulations Establishing a Procedural Mechanism for
> Persons Requesting Protection from Refoulement….

U.S. Public Law 110-229, 122 Stat. 754, 866 (May 8, 2008).  Thus, the Commonwealth's non-

refoulement program under Public Law 13-61, and its regulations setting forth the terms and

procedures for which an application will be considered, has been recognized by the United

States and incorporated, though in a limited capacity, by Public Law 110-229.    Until the

beginning of the transition period, or the date the transition program implements INS § 207.7 in

the Commonwealth, whichever is sooner, the Commonwealth's non-refoulement program shall

remain in effect and thus is the law that governs in the Commonwealth.

In sum, under the Commonwealth immigration regulations regarding non-refoulement and

derivative protection, which has been recognized and incorporated into the United States Public

Law 110-229, Plaintiff cannot be afforded an opportunity to apply for derivative protection for

his family members that are located outside of the Commonwealth.  Thus, Plaintiff has failed to

state a claim upon which relief can be granted.

2. Plaintiff has failed to state a claim upon which relief can be granted under the United States Constitution or the Commonwealth Constitution.[5]

   a. **Plaintiff stated no claim for equal protection under Fourteenth Amendment of the United States Constitution or Article 1, section 6 of the Commonwealth Constitution.**

The Fourteenth Amendment of the United States Constitution, made applicable to the Commonwealth through Section 501 (a) of the Commonwealth Covenant[6], prohibits the government from depriving a person of equal protection under the law.  Plaintiff alleges in his complaint that the Commonwealth's failure to provide a derivative protection process has deprived Plaintiff of equal protection under the law, when compared to refugees granted protection in the United States.  [Compl. at ¶ 20 & 22.]

Courts have employed a two-prong test for determining whether an individual has been deprived equal protection under the law.  Under the equal protection analysis, the Plaintiff must show: (1) that the statute in question "results in members of a certain group being treated differently from other persons based on membership in that group." *Sagana v. Tenorio*, 384 F.3d 731, 740 (9th Cir. 2004) (*quoting United States v. Lopez-Flores*, 63 F.3d 1468, 1472 (9th Cir. 1995); and (2) if it is demonstrated that cognizable class is treated differently, court must analyze under appropriate level of scrutiny whether distinction made between the groups is justified. *McLean v. Crabtree*, 173 F.3d 1176, 1186 (C.A.9 Or. 1999).

Applying the facts of this case to the equal protection analysis, it is evident that the Plaintiff has not been deprived of equal protection under the Commonwealth law.  First, Plaintiff failed to

---

[5]  The CNMI adopts in relevant part the United States' position with respect to the Equal Protection and Due Process analysis as discussed in the United States' Motion to Dismiss filed on September 17, 2008.

[6]  According to the *Analysis of the Constitution of the Commonwealth of the Northern Mariana Islands,* Art. 1, § 6, p. 25 (Dec. 6, 1976) ("*Analysis of the Constitution*"), "No substantive change from section 1 of the Fourteenth Amendment or the interpretation of that section by the United States Supreme Court is intended."  Thus, for the purpose of brevity, the CNMI will conduct one equal protection analysis for the Fourteenth Amendment of the United States and the Commonwealth Constitution, Article 1, section 6.

show that he is being treated differently than other members of the same group, or more specifically, persons granted refugee status in the Commonwealth.    Plaintiff is a member of a certain group, and that group can be safely be labeled, "individuals granted refugee protection in the Commonwealth under Commonwealth law."    Thus, a comparison should be made between the Plaintiff and other refugees that were granted non-refoulement protection under Commonwealth law.    Yet, Plaintiff compares himself to individuals that were granted refugee status in the United States, through federal immigration laws.    These refugees are members of a different group, and thus may permissibly be treated differently from refugees in the Commonwealth.

Plaintiff has also failed to allege facts that would pass the appropriate level of scrutiny.    The Commonwealth Covenant, section 501(a), only guarantees fundamental constitutional rights. N.M.I. Covenant § 501(a).    Plaintiff does not specifically allege a deprivation of a fundamental right, thus the applicable test is the rational basis test.    Equal protection challenges that do not involve suspect classifications or fundamental rights are subject to rational basis review; under this standard, discriminatory classification is presumed valid and will be sustained if there is rational relationship between disparity of treatment and some legitimate governmental purpose. *Cammermeyer v. Aspin,* 850 F.Supp. 910, 914 (W.D. Wash. 1994). Under the "rational basis" protection standard, all that is needed to uphold state's classification scheme is to find that there are "plausible," "arguable," or "conceivable" reasons which may have been basis for distinction. *Jackson Water Works, Inc. v. Public Utilities Com'n of State of Cal.,* 793 F.2d 1090, 1094 (C.A.9 1986).    The moving party carries the burden of proving the unconstitutionality of a statute under "rational basis" review, because statutes are presumed to be constitutional. *Id.*

Even if the Court finds the Plaintiff to be a member of the same class as those refugees provided protection under the United States laws, there still exists any number of plausible and conceivable explanation for the different procedures and/or protections provided by the United

1   States and the Commonwealth: (1) the Commonwealth does not have the same resources as the

2   United States government, and thus lacks the same ability to process, review, and research

3   applications for refugee family members located outside of the Commonwealth; and/or

4   alternatively, (2) the CNMI, as an autonomous protectorate of the United States, that choose to

5   comply with the minimum obligations set forth under the Protocol and CAT, and as such, as

6   provided what protections it can manage to person seeking refugee protection. Either plausible

7   reason satisfies the rational basis test.

8       Thus, Plaintiff has failed to successfully argue that he was denied equal protection under the

9   applicable law, Commonwealth immigration law.

        **b. Plaintiff has not asserted a claim upon which relief can be granted for**
10          **violation of due process, under the Fifth or Fourteenth Amendment of the**
            **United States, or Article 1, section 5 of the Commonwealth Constitution.**
11

12      As it is stated above, the Commonwealth Covenant only guarantees fundamental rights.

13  N.M.I. Covenant §501(a). Plaintiff has failed to incorporate or specifically claim a deprivation

14  of a fundamental right protected by the Commonwealth Covenant. Rather, Plaintiff asserts a

15  deprivation of due process because the Commonwealth does not provide for a system or

16  procedure wherein Plaintiff may apply for derivative protection for family members located

17  outside the Commonwealth.

18      This argument is insufficient to trigger a due process analysis, as the application process

19  and/or consideration of an application for derivative protection is not an entitlement, even for

20  those granted refugee protection under the United States immigration laws pertaining to non-

21  refoulement. As discussed above, the Commonwealth regulations do provide for a derivative

22  protection process. *Commonwealth Immigration Regulations*, §5-40.1-944.   Under the

23  Commonwealth immigration regulations, "[I]mmediate family members of an applicant whose

24  request for refugee protection or CAT protection is granted will automatically receive the same

25  status, provided that the family member is present in the Commonwealth, was included on the

1  initial application, and is not barred from relief pursuant to §5-40.1-932(b)(1)." *Id.* Thus, the

2  Commonwealth has a program and process that allows for derivative protection, though certain

3  elements are required for the application to be considered. Plaintiff has failed to meet those

4  requirements because his family is not located in the Commonwealth, and therefore, they are not

5  entitled to apply for derivative protection. This may not be the same procedure that exists in the

6  United States, but again, the Commonwealth was expressly given authority to govern its own

7  immigration policies and procedures.

8      The Supreme Court has firmly held that "[t]o have a property interest in a benefit, a person

9  clearly must have more than an abstract need or desire for it. He must have more than a

10  unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

11  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Plaintiff has set forth nothing more than a

12  theory that he is entitled to apply for derivative protection for family members outside of the

13  Commonwealth, based on federal law that is currently inapplicable in the Commonwealth.

14  Accordingly, Plaintiff has no due process claim pursuant under the Commonwealth Covenant.

15  The Court should therefore dismiss this claim as to the United States.

16

17                                **CONCLUSION**

18      For the foregoing reasons, Plaintiff's claims are barred under the doctrines of *res judicata*

19  and collateral estoppel. Alternatively, and/or additionally, Plaintiff has substantively failed to

20  state a claim upon which relief can be granted. Accordingly, assuming the truth of each factual

21  allegation of Plaintiff's complaint, the Commonwealth respectfully requests that this Court grant

22  its motion to dismiss the Complaint with prejudice.

23

24

25

Respectfully submitted 17th day of September of 2008.

9/17/08
Date

Katie Busenkell (CNMI Bar T-0054)
Assistant Attorney General – Immigration Division
Office of the Attorney General