Bruce L. Jorgensen
Lizama Building, 2d Floor
P.O. Box 5682 CHRB
Saipan, MP 96950
(670) 233-5261 (tel/fax)
Attorney for Plaintiffs

COPY of
Original Filed
on this date

JUN 3 0 2000

Clerk
District Court

IN THE UNITED STATES DISTRICT COURT For The Northern Mariana Islands

FOR THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| RUI LIANG, LIAO DA NIAN, MOHAMMED KAMAL HOSSAIN, and JANE ROE I, | ) ) ) ) | Civil Action No. 99-0046 |
| Plaintiffs, | ) ) ) | SECOND AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND FURTHER RELIEF; EXHIBITS "1"-"6" |
| v. | ) ) | |
| ROBERT GOLDBERG in his personal capacity, UNITED STATES OF AMERICA, COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, and DOES 1-25, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### SECOND AMENDED COMPLAINT
#### FOR INJUNCTIVE, DECLARATORY AND FURTHER RELIEF

Plaintiffs, through counsel, allege the following:

1.    Plaintiff RUI LIANG ("Liang") is a citizen of the Peoples' Republic of China ("PRC") who is presently within the Commonwealth of the Northern Islands ("CNMI").

2.    Plaintiff LIAO DA NIAN ("Nian") is a PRC citizen presently within the CNMI.

3.    Plaintiff MOHAMMED KAMAL HOSSAIN ("Hossain") is a citizen of the Islamic Republic of Bangladesh ("IRB") who is presently within the CNMI.

1


COMMONWEALTH'S
EXHIBIT
B

4.    Plaintiff JANE ROE I ("Roe") is a PRC citizen presently within the CNMI. Roe has filed this lawsuit using a pseudonym, in place of Roe's actual name, for the reason that special circumstances justify such secrecy, including the need to protect Roe, and Roe's PRC-situated family members, from harassment, injury, ridicule, serious risk of bodily harm, risk of retaliatory physical and/or mental harm, employer reprisals, and governmental reprisals.

5.    Defendant ROBERT GOLDBERG ("Goldberg") is a U.S. citizen presently within the Commonwealth of the Northern Mariana Islands.

6.    Defendant UNITED STATES OF AMERICA ("U.S." and/or "Federal Government")) is a governmental entity.

7.    Defendant COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS ("CNMI" and/or "CNMI Government")

8.    Defendant DOES 1-25 ("Does" and/or "Doe Defendants") are sued herein under fictitious names for the reason that, despite diligent and good faith efforts to obtain information, Does' true names, identities, and capacities, are presently unknown to Plaintiffs, except that they include but are not limited to persons and/or entities who have injured and/or harmed Plaintiffs, who have violated rights and protections guaranteed to Plaintiffs by effect of the Commonwealth Code, CNMI common law, the Commonwealth Constitution, Federal statutory law (including but not limited to 42 U.S.C. §§1983/1985 and 28 U.S.C. §1350), Federal common-law, the Constitution of the United States of America, the 1951 Convention

2

Relating to the Status of Refugees ("1951 Convention")[1], the United Nations Protocol Relating to the Status of Refugees ("1967 Protocol")[2], the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment of Punishment ("1985 Torture Convention")[3], International/Customary law (relating to human rights) binding upon the Federal and CNMI governments by effect of jus cogens and other principles[4], the law of nations and/or treaties of the U.S. and/or CNMI governments, and the Torture Victim Protection Act of 1991 ("1991 Alien Torts Claims Act")[5], who have violated those laws/treaties to Plaintiffs' detriment, who have otherwise harmed and damaged Plaintiffs or, in some manner presently unknown to Plaintiffs, were engaged or shall engage in those activities or other activities alleged in this civil action.

9.    Doe  Defendants  conducted  the  previously  described activities, or intend to conduct such activities, in an intentional or in an inequitable, or in a negligent and/or otherwise wrongful

---

[1]    (July 28, 1951), 19 U.S.T. 6259, 6275, T.I.A.S. No. 6577, 189 U.N.T.S. 150; see also, 7 CMC §3401; Restatement (Third) of Foreign Relations Law, at §§102(1)(), 102(2), 111(1).

[2]    (Jan. 31, 1967), 19 U.S.T. 6223, T.I.A.S. No. 6577; see also, 7 CMC §3401; Restatement (Third) of Foreign Relations Law, at §§102(1)(), 102(2), 111(1).

[3]    G.A.O.R. A/39/506 (1984), 23 I.L.M. 1027 (1984) (modified in 24 I.L.M. 535 (1985)), S.Treaty Doc. No. 110-20, 100th Cong. 2d Sess. 7 (1988).

[4]    See e.g., 7 CMC §3401; Restatement (Third) of Foreign Relations Law, at §§ 102(1)(a), 102(2), 701(b), 702(d)(e).

[5]    See, Pub.L. 102-256, Mar. 12, 1992, 106 Stat. 73, §§2, 3(b).

manner, which activities were or shall be a legal cause of injuries or damages to Plaintiffs, and/or conducted some other activities in an intentional or in a negligent or dangerous manner which activities were or shall be a legal cause of injuries or damages to Plaintiffs, and/or were in some manner (or shall be) related to the named Defendants.

10.    Plaintiffs and/or their representatives have made diligent and good faith efforts to ascertain the full names and identities, and the extents and natures of interests, of Additional Defendants, and the events upon which Plaintiffs' claims are premised.

11.    Plaintiffs remain unable, at this time, to identify with particularity Doe Defendants (and/or their nationalities and/or their titles and/or their relationship to Defendants as employees or independent contractors or officers or directors or shareholders) against whom Plaintiffs have additional prospective claims, and seek leave to amend this Second Amended Complaint ("Complaint"), in order to more specifically name and identify Doe Defendants, if an when the identities of those various Doe Defendants is more fully and accurately determined.

### JURISDICTION

12.    Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

13.    This court has personal jurisdiction over Plaintiffs

4

14.   This court  has  personal  jurisdiction  over  Defendant Goldberg.

15.   This  court  has  personal  jurisdiction  over  Defendant Federal Government.

16.   This court has personal jurisdiction over Defendant CNMI Government.

17.   This court has original subject matter jurisdiction over this  civil  action,  pursuant  to  28  U.S.C.  §§1331/1350,  in  that Plaintiff's claims involve:

(i) the construction or interpretation of treaties and/or international agreements, the law of nations, and/or international/ customary law, and/or international protocols (including the 1951 Convention, the 1967 Protocol, and the 1985 Torture Convention), to which  the  U.S.  Government  has  acceded,  and  to  which  the  CNMI Government is thereby bound and obligated; and/or,

(ii) conduct made unlawful by effect of 42 U.S.C.§1983; and/or,

(iii) conduct made unlawful by effect of 42 U.S.C. §1985; and/or,

(iv) conduct made unlawful by effect of the 1991 Alien Torts Claims Act.

18.   This  court,  pursuant  to  28  U.S.C.  §1367(a),  has supplemental  jurisdiction  over  all  other  claims  alleged  by Plaintiffs in this civil action, which claims form part of the same controversy.

19.   This court, additionally, has supplemental jurisdiction

pursuant to Article X section 9 of the <u>Commonwealth Constitution</u>.

20.   The   factual   and   jurisdictional   grounds   upon   which
Plaintiffs' claims are premised entitle Plaintiffs to equitable as
well as legal relief.

21.   Venue of the claims at issue in this proceeding lies with
this court in accordance with 28 U.S.C. §1391, 28 U.S.C. §1391, and
other legal and equitable principles.

## BACKGROUND ALLEGATIONS COMMON TO ALL CLAIMS

22.   Plaintiffs repeat and reallege, and incorporate herein by
reference, each and every allegation contained in the preceding
paragraphs.

23.   Plaintiffs include PRC nationals who, if repatriated to
return to PRC, would be persecuted and/or tortured by effect of
inhumane policies adopted and perpetuated by the PRC Government,
including but not limited to the PRC Government's increasingly
severe prosecution of members of the Falun Gong movement, the
infliction   of   pain/torture   upon   PRC   nationals   by   the   PRC
Government, and/or other PRC Government policies.

24.   Plaintiffs include Bangladesh national Hossain who, as
the result of having provided testimony on behalf of the United
States Government in Criminal Proceeding No. 1:96 CR 00037-001, <u>see</u>
**Exhibit "1"**, has been subjected to threats of physical violence and
reprisal (including death) against himself, and his IRB-situated
family, <u>see</u> **Exhibits "2"-"6"**.  Despite this cooperation with law
enforcement officials, as acknowledged in letters dated December

17, 1998 and November 23, 1999 from Assistant U.S. Attorney Gregory Baka, see **Exhibits "3" and "6"**, letters dated July 8, 1998 and March 22, 1999 from U.S. Office of Insular Affairs Director Allen P. Stayman, see **Exhibits "2" and "4"**, and others from the U.S. Justice Department, see e.g. **Exhibit "5"**, neither the Federal Government nor the CNMI have provided to Hossain and his family any of the protections Hossain has requested.

25.   Plaintiffs include Plaintiff Roe who, as the result of having challenged policies and procedures involving the CNMI garment industry, the CNMI's Department of Labor and Immigration, and/or asylum issues, has been subjected to threats of physical violence and reprisal (including death) against herself, and her PRC-situated family.

26.   The U.S. Government is empowered with authority over all U.S. treaties, international human rights obligations, and matters falling with the scope of the Immigration and Naturalization Act ("INA").

27.   The U.S. Government was required to serve as fiduciary to the CNMI, prior to enactment of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"), in accordance with that entity known as the Trust Territory of the Pacific Islands ("TT").

28.   Throughout the TT's existence, the U.S. Government's fiduciary duties obligated the U.S. Government to regulate human rights and immigration matters within the CNMI, including but not

7

limited to issues relating to asylum/refugee requests, and requests for protection from torture, by persons situated within the CNMI, who are originally from PRC, Sri Lanka, Bangladesh, and elsewhere.

29.   Following enactment of the <u>Covenant</u>, the U.S. Government retained control of various matters, including the application of the INA within the CNMI, under various circumstances.

30.   The INA is applicable today within the CNMI under various circumstances.

31.   Following enactment of the <u>Covenant</u>, the U.S. Government retained control, and today maintains control, over various matters, including:

(i)   the application of international human rights obligations within the CNMI;

(ii) the processing of asylum/refugee/torture protection applications; and,

(iii)   the   resolution   of   issues   relating   to asylum/refugee/torture protection requests by persons from Sri Lanka, Bangladesh, PRC and elsewhere.

32.   The U.S. Government has acceded to the <u>1967 Protocol</u> which, together with customary/international law, the law of nations, and the doctrine of <u>jus cogens</u>, mandates compliance by the U.S. with both the <u>1967 Protocol</u> and the <u>1951 Convention</u>.

33.   The U.S. Government has acceded to the <u>1985 Torture Convention</u> ("1985 Torture Convention") which, together with customary/international law, the law of nations, and the doctrine of <u>jus cogens</u>, mandate compliance by the U.S. with the <u>1985 Torture</u>

8

Convention.

34.    The U.S. Government has enacted the <u>Alien Tort Claims Act</u> mandating compliance by U.S. Government officials with that law.

35.    The U.S. Government's accession to the <u>1967 Protocol</u> binds and obligates the CNMI Government as to both the <u>1967 Protocol</u> and to the <u>1951 Convention</u> by effect of Article I, §102 of the <u>Covenant</u>.

36.    The U.S. Government's accession to the <u>1985 Torture Convention</u> binds and obligates the CNMI Government to the <u>1985 Torture Convention</u> by effect of Article I, §102 of the <u>Covenant</u>.

37.    The U.S. Government's enactment of the <u>Alien Torts Claims Act</u> binds and obligates the CNMI Government and CNMI Government officials to comply with all portions of the act.

38.    The U.S. Government's enactment of the <u>Alien Torts Claims Act</u> binds and obligates the CNMI Government and CNMI Government officials to comply with all portions of the act, by effect of Article I, §§102 and 105 of the <u>Covenant</u>.

39.    The <u>Convention</u> and the <u>1967 Protocol</u>, having been adopted within the Restatement (Third) of Foreign Relations Law, at §701 <u>et. seq</u>., also constitute CNMI law, binding within and upon the CNMI Government, by effect of 7 CMC §3401.

40.    The <u>1985 Torture Convention</u>, having been adopted within the Restatement, also constitutes CNMI law, binding within and upon the CNMI Government, by effect of 7 CMC §3401.

41.    The CNMI, independent of the U.S. Government, is further bound and obligated to comply with the <u>1967 Protocol</u>, the <u>1951</u>

Convention, and the <u>1985 Torture Convention</u>, by effect of customary/international human rights law statutorily binding upon the CNMI by effect of 7 CMC §3401 which adopts Restatement (Third) of Foreign Relations Law sections §§111(1), 102(1), 102(2), 701 <u>et. seq</u>.

42.  The CNMI, independent of the U.S. Government, is also bound and obligated to provide to Plaintiffs, those protections made available via the <u>1967 Protocol</u>, the <u>1951 Convention</u>, and the <u>1985 Torture Convention</u>, by effect of the law of nations and the doctrine of <u>jus cogens</u>.

43.  Neither the Federal Government, nor the CNMI Government, have enacted meaningful policies or procedures by which those governments adequately ensure that they uphold their obligations to persons seeking asylum/refugee status, within the CNMI, under either Federal law, or under the <u>1967 Protocol</u> and the <u>1951 Convention</u>, or in accordance with customary/international human rights, the law of nations, or the doctrine of <u>jus cogens</u>.

44.  Neither the Federal Government, nor the CNMI Government, have enacted meaningful policies or procedures by which those governments adequately ensure that they uphold their obligations to persons seeking protection within the CNMI, from those activities deemed improper under the <u>1985 Torture Convention</u>, or from torture as such torture is defined and deemed unlawful by effect of customary/international human rights, the law of nations, or the doctrine of <u>jus cogens</u>.

45.  On at least one prior occasion, a person then situated

within the CNMI sought asylum with the assistance of Mr. Phil
Kaplan, via the Karidat office funded by the CNMI and Federal
governments, which asylum applicant was eventually granted asylum,
and then departed the CNMI to reside in New Zealand.

46. On at least one prior occasion, during May-June 2000,
there was transmitted to U.S. Immigration and Naturalization
("INS") officials, from the CNMI, an asylum application on behalf
of a CNMI-situated person. In response, INS officials caused to be
transmitted a notification letter which, upon information and
belief, advised the applicant to proceed to the Territory of Guam
during a by-then-lapsed-multi-day time period, to undergoe asylum-
applicant fingerprinting. Subsequently, upon further information
and belief, CNMI-situated INS officer Oscar Martinez, after
learning of this situation, notified the applicant's attorney, Paul
Lawlor, that the notification letter would be retracted by INS
officials in the near future.

47. On at least one prior occasion, during April 2000, CNMI-
situated asylum seekers boarded a United States naval vessel
situated in Saipan harbor, requested that the vessel's commanding
officer entertain their asylum requests and provide asylum
processing, which request was denied while those persons were
aboard the vessel and after the commanding officer had been
provided relevant asylum documentation pertaining to that request.

48. The U.S. Government's Immigration and Naturalization
Service ("INS") regularly publishes and distributes a document
known as Form I-590.

11

49.  Plaintiffs have each completed a Form I-590, as exemplified by Plaintiff Rui Liang's August 30, 1999 Form I-590 application, a true and correct copy of which is appended to this Complaint and designated **Exhibit "7"**.

50.  The I-590 forms completed by Plaintiffs have been transmitted to INS offices situated at Saipan, Honolulu, Bangkok, and Manila, for processing by INS officials in accordance with INS asylum/refugee standards made applicable under U.S. law, but INS' Saipan representative Oscar Martinez has refused to accept Plaintiffs' I-590 applications, has refused to accept other documents transmitted to his INS/Saipan office, and has returned Plaintiffs' completed I-590 forms to Plaintiffs' attorney's office both physically, and by causing to be indicated on documents mailed to his office that delivery was being refused---after which Martinez represented, in documents filed with the CNMI Superior Court, that INS records reflected the existence of no "pending" asylum applications.

51.  The I-590 forms completed by Plaintiffs have been transmitted to INS offices situated at Saipan, Honolulu, Bangkok, and Manila for processing by INS officials in accordance with United Nations and/or Federal asylum/refugee standards made applicable under treaties and/or international agreements, and/or customary international law, and/or international protocols (including the 1951 Convention and the 1967 Protocol).

52.  Persons seeking protection under the 1985 Torture Convention are required, as a prerequisite, to exhaust asylum

procedures.

53.   Plaintiffs have attempted to acquire the protections required to be made available pursuant to the <u>1985 Torture Convention</u>, including but not limited to protection from torture, and protection afforded by effect of <u>non refoulement</u>.

54.   On August 10, 1999, Mr. Oscar Martinez, the INS official assigned to operate the only CNMI-situated INS office, provided notice to Plaintiffs and other similarly situated persons, that neither the CNMI-situated INS office manned by Mr. Martinez, nor any other INS office, will accept for submission and processing any I-590 forms.

55.   Neither Mr. Martinez, any U.S. official, nor any CNMI official, have since August 10, 1999 refuted, recanted, or overruled Mr. Martinez' August 10, 1999 notice.

56.   On August 12, 1999, information pertaining to the CNMI Government's policy respecting I-590 applicants, and the recent involvement of federal INS officials on the island of Tinian, was sought from both the CNMI Office of the Attorney General ("OAG") via letter to Acting Attorney General Maya Kara, and from the CNMI's Department of Labor and Immigration ("DOLI") via letter to DOLI Secretary Mark Zachares, pursuant to 1 CMC Division 9 (the "Open Government Act").

57.   On August 20, 1999, Ms. Kara responded to the <u>Open Government Act</u> request by providing none of the requested information.

58.   Neither Mr. Zachares nor any other DOLI official has ever

13

responded to the <u>Open Government Act</u> request.

59. To date, zero documents, zero information, and zero other material have been provided by Ms. Kara, Mr. Zachares, the CNMI Office of the Attorney General, the CNMI's Department of Labor and Immigration, or any other CNMI representative or entity, in response to the August 20, 1999 <u>Open Government Act</u> request.

60. Defendant CNMI, through the CNMI's Office of the Attorney General ("OAG") and the CNMI's Department of Labor and Immigration ("DOLI"), is responsible for the administration, supervision, and enforcement of laws applicable to and within the CNMI.

61. Defendant U.S., through the Federal Government's Justice Department, is responsible for the administration, supervision, and enforcement of Federal laws applicable to and within the CNMI.

62. Defendant CNMI hired and/or appointed Defendant Goldberg as the CNMI's Assistant Attorney General tasked with primary responsibility for the administration, supervision, and enforcement of CNMI immigration laws.

63. Defendant Goldberg's salary is paid by DOLI.

64. Defendant Goldberg creates, administers, supervises, and enforces DOLI policies and procedures, and makes policy decisions, including but not limited to policies and procedures relating to the imprisonment of persons at DOLI's prison facility.

65. Defendant Goldberg creates, administers, supervises, and enforces CNMI policies and procedures, and makes policy decisions, including but not limited to policies and procedures relating to the applications for political asylum and requests for protection

from torture.

66. Defendant Goldberg provides instructions and directions, and instructs and directs, DOLI personnel, including but not limited to DOLI personnel employed at DOLI's prison facility.

67. Plaintiff Liang was imprisoned at DOLI's prison facility between August 1999 and January 2000.

68. Plaintiff Nian was imprisoned at DOLI's prison facility between August 1999 and January 2000.

69. Defendant Goldberg devised, planned, and implemented policies and procedures relating to the imprisonment of various DOLI prisoners, including Plaintiffs Liang and Nian.

70. Defendant Goldberg devised, planned, and implemented policies and procedures relating to the imprisonment of Plaintiffs Liang and Nian.

71. In devising, planning, and implementing policies and procedures relating to the imprisonment of Plaintiffs Liang and Nian, Defendant Goldberg authorized, condoned, and acquiesced in ignoring and disregarding the liberty interests of Plaintiffs Liang and Nian.

72. In devising, planning, and implementing policies and procedures relating to the imprisonment of Plaintiffs Liang and Nian, Defendant Goldberg authorized, ratified, condoned, and acquiesced in Defendants' adopting a custom and pattern of practice of ignoring and disregarding the liberty interests of Plaintiffs Liang and Nian, in violation of and disregard for liberty interests guaranteed to those Plaintiffs by effect of CNMI law, Federal law,

the CNMI's Constitution, and the U.S. Constitution.

73.    Plaintiffs possess a liberty interest and property right
to be free from arbitrary and indefinite and capricious detention,
which interest/right arises by effect of CNMI law, Federal law, the
CNMI's Constitution, and the U.S. Constitution. See e.g., 3 CMC §§
4341(d), 4382(b), 4382(c).

### COUNT 1

### AHMED/LIANG/NIAN---UNLAWFUL IMPRISONMENT

74.    Plaintiffs repeat and reallege, and incorporate by
reference, each and every allegation contained in the preceding
paragraphs.

75.    Defendant Goldberg, at all times described in this
complaint, was acting under color of CNMI law.

76.    The imprisonment of Plaintiffs Liang and Nian, at DOLI's
prison, violated liberty interests precluding those Plaintiffs from
being    subjected    to    arbitrary,    indefinite,    and    capricious
imprisonment.

77.    Defendant Goldberg initiated, perpetuated, supervised,
and/or acquiesced to the arbitrary, indefinite, and capricious
imprisonment of Plaintiffs Liang and Nian.

78.    The above-described events constitute a violation of
procedural and substantive due process rights to which Plaintiffs
Liang and Nian are entitled under the 14th amendment of the U.S.
Constitution, and under the CNMI Constitution.

79.    The above-described violation of rights was the direct

16

result of a CNMI/DOLI policy.

80. Defendant Goldberg either knew, or should have known, that the above-described CNMI/DOLI policy ignored, disregarded, and/or otherwise violated the liberty interests, and the procedural and substantive due process rights, to which Plaintiffs Liang and Nian are entitled under the 14th amendment of the U.S. Constitution, and under the CNMI Constitution.

81. The imprisonment of Plaintiffs Liang, and Nian was the direct and proximate result of the above-described CNMI/DOLI policy, which ignored, disregarded, and/or otherwise violated the liberty interests, and the procedural and substantive due process rights, to which Plaintiffs Liang and Nian were entitled under the 14th amendment of the U.S. Constitution, and under the CNMI Constitution.

82. The above-described violation has caused and continues to cause Plaintiffs Liang and Nian, to suffer damages and injuries.

83. The damages and injuries suffered by Plaintiffs Liang and Nian, as a direct and proximate result of Defendant Goldberg's acts, actions, and omissions, are recoverable pursuant to 42 U.S.C. §1983 and, are further recoverable, pursuant to 28 U.S.C. §1350.

84. The above-described acts, actions, and omissions, including Defendant Goldberg's making, developing, implementing, commanding, and/or perpetuating the imprisonment of Plaintiffs Liang and Nian, was done by Defendant Goldberg in a willful, wanton, and intentional manner, for which those Plaintiffs are entitled to an award of **punitive damages**.

17

COUNT 2

AHMED/LIANG/NIAN---UNLAWFUL POLICY/PRACTICE

85. Plaintiffs repeat and reallege, and incorporate by reference, each and every allegation contained in the preceding paragraphs.

86. Defendant Goldberg, at all times described in this complaint, was acting under color of CNMI law.

87. Defendant Goldberg either knew, or should have known, that the above-described CNMI/DOLI policy, custom, pattern, and practice, relating to the imprisonment of Plaintiffs Liang and Nian, violated those Plaintiffs rights to due process.

88. The arbitrary, indefinite, and capricious imprisonment, of Plaintiffs Liang and Nian, was a direct and proximate result of the above-described CNMI/DOLI policy, custom, pattern, and practice, which practice was made, developed, implemented, commanded, and/or perpetuated by Defendant Goldberg.

89. The above-described CNMI/DOLI policy, custom, pattern, and practice constituted a violation of, and disregard for, the liberty interests, and the procedural and substantive due process rights, to which Plaintiffs Liang and Nian were entitled under the 14th amendment of the U.S. Constitution, and under the CNMI Constitution.

90. The above-described violation has caused and continues to cause Plaintiffs Liang and Nian, to suffer damages and injuries.

91. The damages and injuries suffered by Plaintiffs Liang and Nian, as a direct and proximate result of Defendant Goldberg's

18

acts, actions, and omissions, are recoverable pursuant to **42 U.S.C. §1983** and, are further recoverable pursuant to **28 U.S.C. §1350**.

92. The above-described acts, actions, and omissions, including Defendant Goldberg's making, developing, implementing, commanding, and/or perpetuating the imprisonment of Plaintiffs Liang and Nian, was done by Defendant Goldberg in a willful, wanton, and intentional manner, for which those Plaintiffs are entitled to an award of **punitive damages**.

### COUNT 3

### AHMED/LIANG/NIAN---UNLAWFUL/INDEFINITE/ARBITRARY SEIZURE

93. Plaintiffs repeat and reallege, and incorporate by reference, each and every allegation contained in the preceding paragraphs.

94. Defendant Goldberg either knew, or should have known, that the above-described CNMI/DOLI policy, procedure, and practice, would result in the violation of rights, guaranteed to Plaintiffs Liang and Nian, by effect of the 4th amendment of the U.S. Constitution, and under the CNMI Constitution.

95. The indefinite and arbitrary nature of the imprisonment of Plaintiffs Liang and Nian violated their constitutional right to be free from unreasonable seizure of their person, in violation of the 4th amendment of the U.S. Constitution, and the CNMI Constitution.

96. The above-described violation has caused and continues to cause Plaintiffs Liang, and Nian, to suffer damages and injuries.

19

97.  The damages and injuries suffered by Plaintiffs Liang and Nian, as a direct and proximate result of Defendant Goldberg's acts, actions, and omissions, are recoverable pursuant to **42 U.S.C. §1983** and, are further recoverable pursuant to **28 U.S.C. §1350**.

98.  The above-described acts, actions, and omissions, including Defendant Goldberg's making, developing, implementing, commanding, and/or perpetuating the imprisonment of Plaintiffs Liang and Nian, was done by Defendant Goldberg in a willful, wanton, and intentional manner, for which those Plaintiffs are entitled to an award of **punitive damages**.

### COUNT 4

### ALL PLAINTIFFS---ASYLUM/PROTECTION FROM TORTURE

99.  Plaintiffs repeat and reallege, and incorporate by reference, each and every allegation contained in the preceding paragraphs.

100.  Plaintiffs have attempted to acquire the protections required to be made available pursuant to the 1985 Torture Convention, including but not limited to protection from torture, and protection afforded by effect of non refoulement.

101.  Defendants' previously and subsequently described conduct, including but not limited to the failure and/or unwillingness of Defendant U.S. and Defendant CNMI to create, devise, initiate, and perpetuate meaningful policies and procedures to ensure and facilitate an impartial determination of Plaintiffs' pending asylum applications/requests for protection from torture,

constitutes a violation of INS asylum/refugee standards made applicable to and within the United States and the CNMI.

102. Defendants' previously and subsequently described conduct, including but not limited to the failure and/or unwillingness of Defendant U.S. and Defendant CNMI to create, devise, initiate, and perpetuate meaningful policies and procedures to ensure and facilitate an impartial determination of Plaintiffs' pending asylum applications/requests for protection from torture, constitutes a violation of United Nations asylum/refugee standards and torture protections, made applicable, to and within the United States and the CNMI, by effect of treaties and/or international agreements, and/or customary international/human rights law, and/or international protocols (including the <u>Convention</u>, the <u>1967 Protocol</u>, and the <u>1985 Torture Convention</u>), and/or the law of nations, and/or the doctrine of <u>jus cogens</u>.

103. Defendants' previously and subsequently described conduct constitutes a violation of rights guaranteed to Plaintiffs by effect of the <u>CNMI Constitution</u>.

104. Defendants' previously and subsequently described conduct constitutes a violation of rights guaranteed to Plaintiffs by effect of the <u>U.S Constitution</u>.

105. Defendants' previously and subsequently described conduct constitutes a violation of rights guaranteed to Plaintiffs by effect of U.S. laws.

106. Defendants' previously and subsequently described conduct constitutes a violation of rights guaranteed to Plaintiffs by

effect of CNMI laws.

107. Defendants' previously and subsequently described conduct constitutes a violation of treaties and/or international agreements, and/or customary international/human rights law, and/or international protocols (including the Convention, the 1967 Protocol, and the 1985 Torture Convention), and/or the law of nations, and/or the doctrine of jus cogens.

108. Defendants are liable to each Plaintiff as a consequence of the previously-described conduct for which recovery will be sought in an amount which will be proven at trial.

COUNT 5

INJUNCTIVE RELIEF RE. VIOLATIONS: ARTICLE 33 & TORTURE CONVENTION

109. Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

110. Defendant CNMI, upon information and belief, is currently attempting to deport one or more of the Plaintiffs (including but not limited to Plaintiff Ahmed), and others similarly situated, which deportation would constitute refoulement (return) to Plaintiffs' respective countries of origin.

111. Any attempt by Defendant CNMI to deport Plaintiffs (including but not limited to Plaintiff Ahmed), and others similarly situated, by subjecting those persons to refoulement to their countries of origin absent, first, a full, impartial, meaningful, and final determination of Plaintiffs' pending

asylum/torture protection requests, constitutes a violation of Article 33 of the <u>1951 Convention</u>, and a violation of the <u>1985 Torture Convention</u>.

112. Any attempt by the CNMI Government to imprison or to detain Plaintiffs, and others similarly situated, absent, first, a full, impartial, meaningful, and final determination of Plaintiffs' pending asylum/torture protection requests, constitutes a violation of Article 33 of the <u>1951 Convention</u>, and a violation of the <u>1985 Torture Convention</u>.

113. Pursuant to the Federal Government's accession to the <u>1967 Protocol</u>, the <u>1951 Convention</u>, and the <u>1985 Torture 1951 Convention</u>, the binding effect of the <u>1967 Protocol</u> and the <u>1985 Torture Convention</u> on the CNMI Government, the adoption of the Restatement (Third) of Foreign Relations Law as CNMI law pursuant to 7 CMC §3401, and the binding effect of customary/international human rights law, the law of nations, and the doctrine of <u>jus cogens</u>, Defendants U.S., CNMI, and Goldberg are deemed responsible for ensuring that persons seeking refugee/asylum within the CNMI, including Plaintiffs, are not subject to <u>refoulement</u> to their countries of origin in violation of Article 33 of the <u>1951 Convention</u>, and the <u>1985 Torture Convention</u>.

114. Defendants U.S., CNMI, and Goldberg, have shirked their responsibility to ensure that persons seeking refugee/asylum within the CNMI, including Plaintiffs, are not subject to <u>refoulement</u> to their countries of origin in violation of Article 33 of the <u>1951 Convention</u>, and the <u>1985 Torture Convention</u>.

23

115. Pursuant to the Federal Government's accession to the 1967 Protocol, the 1951 Convention, and the 1985 Torture Convention, the binding effect of the 1967 Protocol and the 1985 Torture Convention on the CNMI Government, the adoption of the Restatement (Third) of Foreign Relations Law as CNMI law pursuant to 7 CMC §3401, and the binding effect of customary/international human rights law, the law of nations, and the doctrine of jus cogens, Defendants U.S., CNMI, and Goldberg are deemed responsible for ensuring that persons seeking refugee/asylum within the CNMI, including Plaintiffs, are not subject to arrest or imprisonment in violation of Article 31 of the 1951 Convention, and the 1985 Torture Convention.

116. Defendants U.S., CNMI, and Goldberg have, to date, shirked their responsibility to ensure that persons seeking refugee/asylum within the CNMI, including Plaintiffs, are not subject to arrest or imprisonment in violation Article 31 of the 1951 Convention, and the 1985 Torture Convention.

117. Pursuant to the U.S. Government's accession to the 1967 Protocol, the 1951 Convention, and the 1985 Torture Convention, the binding effect of the 1967 Protocol and the 1985 Torture Convention on the CNMI Government, the adoption of the Restatement (Third) of Foreign Relations Law as CNMI law pursuant to 7 CMC §3401, and the binding effect of customary/international human rights law, the law of nations, and the doctrine of jus cogens, Defendants U.S., CNMI, and Goldberg are deemed responsible for ensuring that there exists within the CNMI a meaningful and impartial procedure for accepting

24

and processing asylum applications, and for accepting and processing requests for protection from torture, from persons seeking refugee/asylum/torture protection within the CNMI, including Plaintiffs.

118. Defendants U.S., CNMI, and Goldberg have, to date, shirked their responsibility to ensure that persons seeking refugee/asylum/torture protection within the CNMI, including Plaintiffs, are provided a meaningful and impartial procedure for accepting and processing asylum applications, and requests for protection from torture, within the CNMI.

119. If this Court does not grant injunctive relief restraining and enjoining Defendants from subjecting Plaintiffs and others similarly situated to <u>refoulement</u>, restraining and enjoining Defendants from arresting or imprisoning Plaintiffs and others similarly situated, and imposing upon the Federal and CNMI governments the requirement that those governments **immediately** create and perpetuate a meaningful and impartial procedure for accepting and processing asylum applications within the CNMI, and for accepting and processing requests within the CNMI for protection from torture elsewhere, then Plaintiffs and others similarly situated shall, upon information and belief, face the imminent prospect of continued unlawful imprisonment, unlawful arrest, future unlawful imprisonment, refoulement, and/or torture, and shall continue to suffer from deprivation of their constitutional and lawfully required rights to due process of law with respect to their human rights.

Case 1:08-cv-00016   Document 19-2   Filed 09/17/08   Page 26 of 60

120. Plaintiffs therefore seek injunctive relief:

a.   restraining and enjoining Defendants and all others from subjecting Plaintiffs and others similarly situated to refoulement;

b.   restraining and enjoining Defendants and all others from arresting or imprisoning Plaintiffs and others similarly situated; and,

c.   imposing upon Defendants U.S. and CNMI the requirement that those governments **immediately** create and perpetuate a meaningful and impartial procedure for accepting and processing asylum applications within the CNMI, and for accepting and processing requests within the CNMI for protection from torture elsewhere; and,

d.   preserving the status quo pending the acceptance and processing, by U.S. officials, and/or United Nations officials, and/or both INS and United Nations officials, of:

1)   Plaintiffs' pending I-590 asylum applications; and,

2)   Plaintiffs' pending requests for protection under the 1985 Torture Convention.

## COUNT 6

OPEN GOVERNMENT ACT DEFIANCE:   ZERO RECORDS SINCE 8/12/99

121.   Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

26

122. Plaintiffs, through counsel, sought records which the CNMI Government is required by law to keep or which are necessary for the CNMI Government to keep in discharge of duties imposed by law, and: (a) include written and printed reports, papers, maps, and/or planned; and, (b) consist of documents and information which fell within the ambit of the August 12, 1999 <u>Open Government Act</u> request submitted on behalf of Plaintiffs Liang and Nian, and the CNMI Government's response dated August 20, 1999.

123. The records/documents sought constitute **1 CMC §9902(f)** **"public records"**.

124. The documents sought were required, by effect of **1 CMC §9917(a)**, to be made available for inspection and copying, within **ten (10) days** of the **August 12, 1999** receipt of Plaintiffs' request.

125. The failure by AGO and DOLI officials to make the records and documents available on or before **August 22, 1999** for inspection and copying, constitutes a violation of the CNMI's <u>Open Government Act</u>, for which Defendant CNMI is liable to Plaintiffs Liang and Nian.

## COUNT 7

### CONSPIRACY

126. Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

127. Defendant Goldberg conspired with others to directly

and/or indirectly deprive aliens, including Plaintiffs, of due process and/or equal protection and immunities, to which process, protection, and immunities Plaintiffs were entitled under the law.

128. In furtherance of the above-described conspiracy, Defendant Goldberg committed overt acts which included but were not limited to initiating, devising, authorizing, instructing, commanding, ordering, ratifying, condoning and/or acquiescing in conduct and or omissions, which conduct and omissions Defendant Goldberg knew or should have known would directly and/or indirectly deprive aliens, including Plaintiffs, of due process and/or equal protection and immunities.

129. In additional furtherance of the above-described conspiracy, Defendant Goldberg committed overt acts which included but were not limited to subjecting Plaintiffs Ahmed, Liang, and Nian, to indefinite, arbitrary, capricious, and unlawful imprisonment.

130. In still additional furtherance of the above-described conspiracy, Defendant Goldberg committed overt acts which included delaying for 20 months the retrieval of travel documents, causing Plaintiff Ahmed to remain imprisoned throughout that 20 month period, and ultimately obtaining those travel documents, within five (5) days after issuance of the CNMI Superior Court's initial habeas corpus ruling issued March 9, 2000, in order to facilitate Defendant Goldberg's intention to hasten Plaintiff Ahmed's departure from the CNMI after Plaintiff Ahmed's claims against Defendant Goldberg became apparent to Defendant Goldberg.

28

131. In yet additional furtherance of the above-described conspiracy, Defendant Goldberg committed overt acts which included subjecting Plaintiffs to cruel and unusual punishment, unlawful discrimination, arbitrary and capricious punishment, and other illegal conduct.

132. As the result of the deprivations of due process and/or equal protection and immunities, which deprivations resulted from a conspiracy between Defendant Goldberg and others, Defendant Goldberg has violated **42 U.S.C. §1985**.

133. Defendant Goldberg's previously and subsequently described conduct constitutes a violation of rights guaranteed to Plaintiffs by effect of CNMI laws.

134. Defendant Goldberg is liable to each Plaintiffs Liang and Nian as a consequence of the previously-described conduct for which recovery will be sought in an amount which will be proven at trial, pursuant to **42 U.S.C. §1985**, and further pursuant to both **42 U.S.C. §1983** and **28 U.S.C. §1350**.

135. The above-described conspiracy, acts, actions, and omissions, were done by Defendant Goldberg in a willful, wanton, and intentional manner, for which Plaintiffs are entitled to an award of **punitive damages**.

### COUNT 8

### CONCEALMENT:   CONCEALED KNOWLEDGE OR INFORMATION·   .

136. Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding

paragraphs.

137. For more than two (2) years, Defendants U.S., CNMI, and Goldberg, intentionally and/or negligently concealed Defendants' knowledge or information concerning the acceptance and processing of asylum/refugee and torture protection applications by PRC, Sri Lankan, and Bangladesh citizens within the CNMI, including but not limited to the claims now being asserted by Plaintiffs, and the unconstitutional and unlawful deprivations to which Plaintiffs and others similarly situates where, thereby, subjected by Defendants.

138. Since Plaintiffs were unaware of the concealed knowledge or information, and had relied upon Defendants to comply with Defendants' obligations to provide that knowledge or information to Plaintiffs and others, Plaintiffs were misled by Defendants.

139. Defendants' above-described concealment was intentional and/or negligent.

140. Defendants' above-described concealment has caused Plaintiffs to suffer, and to continue suffering, injuries and damages.

141. Defendants are liable to Plaintiffs as a consequence of the above-described concealment for all of the previously-described damages and injuries, and for further damages, for which Defendants are liable to Plaintiffs.

142. In order to deter Defendants' previously-described wrongful, wanton, and wilful conduct, Plaintiffs further request that **punitive damages** be imposed against Defendants in an amount to be determined at trial.

30

## COUNT 9

### EMOTIONAL DISTRESS

143. Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

144. Defendants U.S., CNMI, and Goldberg, have inflicted severe emotional distress and psychological damage upon Plaintiffs, to Plaintiffs' detriment.

145. The conduct described in the immediately preceding paragraph constitutes intentional and/or negligent infliction of emotional distress for which Defendants are liable to Plaintiffs for damages.

146. The conduct described in the immediately preceding paragraphs, and otherwise engaged in by Defendants, was willful, wanton, and reckless, for which Defendants are liable to Plaintiffs for punitive damages.

## COUNT 10

### ESTOPPEL

147. Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

148. By effect of their prior conduct and/or representations and/or omissions, Defendants made promises, inducements, and/or public representations, to Plaintiffs and others, upon which Plaintiffs and others relied to Plaintiffs' detriment.

31

149. By effect of having permitted and assisted the efforts by at least one CNMI-situated person, to apply for and obtain political asylum, the CNMI and/or Federal governments made and/or perpetuated promises, inducements, and/or public representations, to Plaintiffs and others, upon which Plaintiffs and others have relied.

150. By effect of having transported Federal INS official Robert Stamerra from Washington D.C. to Saipan for the purpose of interrogating asylum applicants then detained within DOLI's prison, which official acted in concert with and/or with the knowledge or acquiescence of CNMI officials including Defendant Goldberg, the CNMI and/or Federal governments made promises, inducements, and/or public representations, to Plaintiffs and others, upon which Plaintiffs and others have relied.

151. By effect of having transported multiple Federal INS agents to Tinian---for the purpose of interrogating asylum applicants then detained within a prison erected on Tinian, and accepting and processing asylum applications from those applicants, and thereafter transporting some of those applicants to the U.S. Mainland including but not limited to Carbondale, Illinois---which agents acted in concert with and/or with the knowledge and acquiescence of CNMI officials, the CNMI and/or Federal governments made promises, inducements, and/or public representations, to Plaintiffs and others, upon which Plaintiffs and others have relied.

152. By effect of having, on at least one prior occasion

32

during May-June 2000, responded to receipt of an asylum application from a CNMI-situated person by transmitting a notification letter which advising the applicant to proceed to the Territory of Guam to undergoe asylum-applicant fingerprinting---which acts occurred in concert with and/or with the knowledge and acquiescence of CNMI officials and/or Federal officials---the CNMI and/or Federal governments made promises, inducements, and/or public representations, to Plaintiffs and others, upon which Plaintiffs and others have relied.

153. By effect of having, on at least one prior occasion during April 2000, permitted asylum seekers to board a United States naval vessel situated in Saipan harbor, and converse there with the vessel's commanding officer respecting asylum requests--- which acts occurred in concert with and/or with the knowledge and acquiescence of CNMI officials and/or Federal officials---the CNMI and/or Federal governments made promises, inducements, and/or public representations, to Plaintiffs and others, upon which Plaintiffs and others have relied.

154. Defendants' previously described conduct has caused Plaintiffs to suffer the previously described damages including continued lack of due process required for enforcement of lawful human rights within the CNMI.

155. Defendants, having made the previously described promises, inducements, and/or public representations, and having caused Plaintiffs and others to detrimentally rely upon those promises, inducements, and/or representations, are prohibited and

33

estopped from denying the substance and effect of Defendants' promises, inducements, and/or public representations.

## COUNT 11

### PUNITIVE DAMAGES

156. Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

157. Defendants' above-described conduct was calculated, wilful, wanton, reckless, malicious, and/or engaged in by Defendants with conscious indifference to the consequences and to Plaintiffs' rights.

158. Defendants' above-described conduct has caused and will continue to cause Plaintiffs to suffer the previously described damages.

159. Defendants' above-described conduct, by and through Defendants, and Defendants' employees (including Defendant Goldberg), agents, partners, joint venturers, designees, assignees, affiliates, associates, subagents, servants, employers, supervisors, representatives, associates, officers, directors, administrators, and/or relates persons and/or entities designated Doe Defendants, has been ratified, validated, endorsed, defended, supported, initiated, perpetuated, acquiesced to, and/or approved by Defendants (including Defendant Goldberg) or with other lawful authority on behalf of Defendants and/or one another.

160. Plaintiffs are entitled to an award of punitive damages

against Defendants to deter Defendants in the future from initiating, engaging, perpetuating, and/or acquiescing to such previously-described and unlawful conduct, to the detriment of Plaintiffs and others (including but not limited to all non-resident persons situated within the CNMI).

## COUNT 12

### JOINT/SEVERAL LIABILITY

161. Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

162. Defendants are liable, jointly and severally, for each and every allegation alleged in this complaint.

## COUNT 13

### ARTICLE X SECTION 9 DAMAGE/ATTORNEY FEE AWARD

163. Plaintiffs repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

164, Pursuant to Article X, section 9 of the Commonwealth Constitution, Plaintiffs are entitled to an award of compensation including but not limited to attorneys' fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request issuance of the following:

1.    A declaration confirming that:

35

a.    the CNMI Government is precluded from deporting Plaintiffs, and others similarly situated, by subjecting them to refoulement to their countries of origin, which is unlawful and in violation of both Article 33 of the 1951 Convention, and the 1985 Torture Convention; and,

b.    the Federal Government is deemed responsible for ensuring that Plaintiffs, and other persons within the CNMI seeking refugee/asylum/torture protection relief, are not subject to refoulement to their countries of origin; and,

c.    the Federal Government has, to date, taken no adequate steps to ensure that Plaintiffs, and persons within the CNMI seeking refugee/asylum/torture protection relief, are not subject to refoulement to their countries of origin; and,

d.    the CNMI Government has, to date, taken no adequate steps to ensure that Plaintiffs, and persons within the CNMI seeking refugee/asylum/torture protection relief, are not subject to refoulement to their countries of origin; and,

e.    Defendant Goldberg has, to date, taken no adequate steps to ensure that Plaintiffs, and persons within the CNMI seeking refugee/asylum/torture protection relief, are not subject to refoulement to their countries of origin.

2.    **Issuance of injunctive relief which:**

a.    enjoins    and    restrains    Defendants    from subjecting Plaintiffs to arrest, imprisonment, and refoulement, relating in any manner to Plaintiffs' asylum applications, immigration status, and requests for protection from torture; and,

36

b.    imposes upon the Federal and CNMI governments the requirement that those governments **immediately** create and perpetuate a meaningful and impartial procedure for accepting and processing asylum applications within the CNMI, and requests within the CNMI for protection from torture elsewhere; and,

c.    preserves the status quo pending the acceptance and processing of Plaintiffs' Form I-590 applications and requests for protection from torture, by INS officials, and/or United Nations officials, and/or both INS and United Nations officials; and,

d.    compels INS officials to accept and process Plaintiffs' Form I-590 applications and requests for protection from torture; and,

e.    compels INS officials to forward Plaintiffs' Form I-590 applications, and requests for protection from torture, to United Nations officials for acceptance and processing.

3.    **An order declaring that:**

a.    any attempt by the CNMI and Federal governments, to continue imprisoning, or to arrest, detain, or deport Plaintiffs, where such imprisonment, arrest, detention, or deportation relates in any manner to Plaintiffs' pending asylum applications, immigration status, and/or requests for protection from torture, and where such imprisonment, arrest, detention or deportation occurs prior to full and final resolution of Plaintiffs' pending asylum applications and requests for protection from torture, pursuant to a meaningful and impartial proceeding,

37

shall constitute unlawful and impermissible conduct; and,

        b.    pursuant to the U.S. Government's accession to the 1967 Protocol, the 1951 Convention, and the 1985 Torture Convention, the binding effect of the 1967 Protocol and the 1985 Torture Convention on the CNMI Government, and the laws of the CNMI itself, the Federal and CNMI governments are deemed responsible for ensuring that persons seeking refugee/asylum/torture protection within the CNMI, including Plaintiffs, are not subject to continued imprisonment, arrest, future imprisonment, or refoulement, pending full and final resolution of Plaintiffs' pending asylum applications and torture protection requests, pursuant to a meaningful and impartial proceeding, shall constitute unlawful and impermissible conduct; and,

        c.    the Federal and CNMI governments have, to date, taken no adequate steps to ensure that persons seeking refugee/asylum/torture protection within the CNMI, including Plaintiffs, are not subject to continued imprisonment, arrest, future imprisonment, or refoulement, pending full and final resolution of Plaintiffs' pending asylum applications and/or torture protection requests, pursuant to a meaningful and impartial proceeding, shall constitute unlawful and impermissible conduct; and,

        d.    the Federal and CNMI governments have, to date, violated rights guaranteed to Plaintiffs and others, with respect to accepting and processing asylum applications, in violation of 42 U.S.C. §1983, the Commonwealth Constitution, the Constitution of

the United States of America, the Commonwealth Code, and other applicable laws.

    4.   A judgment, jointly and severally against all Defendants, for:

        a.   General Damages;

        b.   Punitive Damages;

        c.   Prejudgment Interest;

        d.   Postjudgment Interest;

        e.   Attorneys' Fees and Costs; and,

        f.   Such other and further legal and

equitable relief as is deemed appropriate given the above-described circumstances.

    Dated:  Saipan, MP, June 30, 2000.

 

                        Bruce L. Jorgensen
                        Attorney for Plaintiffs

# United States District Court

## District of the Northern Mariana Islands

UNITED STATES OF AMERICA

v.

**AKM ALAMGIR KASEM**

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number: **1:96CR00037-001**

**V.K. Sawhney, Esq. (Court Appointed)**
Defendant's Attorney

## THE DEFENDANT:

| | |
|---|---|
| ☐ | pleaded guilty to count(s) _____ |
| ☐ | pleaded nolo contendere to count(s) _____ which was accepted by the court. |
| ☒ | was found guilty on count(s) **I and II** after a plea of not guilty. |

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. ' 1341 | **Mail Fraud** | **10/31/1996** | **I** |
| 18 U.S.C. ' 1343 | **Wire Fraud** | **10/31/1996** | **II** |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.: | **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** |
| Defendant's Date of Birth: | **10/12/1962** |
| Defendant's USM No.: | **00151-005** |

Defendant's Residence Address:

**91 Deena Nathsen Road**

**P.O. Basail P.S.**

**Siisirathi Khan  Monshigonj**

**Bangladesh**

Defendant's Mailing Address:

**91 Deena Nathsen Road**

**P.O. Basail P.S.**

**Siisirathi Khan  Monshigonj**

**Bangladesh**

**06/26/1997**
Date of Imposition of Judgment

_Marty WK Taylor_
Signature of Judicial Officer

**Honorable Marty W. K. Taylor**

**Designated Judge**
Name & Title of Judicial Officer

**JUN 26 1997**
Date

**EXHIBIT 1**



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

**JUL 8 1998**

Mr. Md. Kamal Hossain
PIC, HSKP Dept.
P.O. Box 2370
Saipan, MP 96950

Dear Mr. Hossain:

Thank you for your letter of June 24, 1998, requesting protection for your family in Bangladesh. The Department of the Interior is not a law enforcement agency and, thus, is unable to investigate cases or provide protection.

In response, I have forwarded your letter to the Office of the Deputy Attorney General in the U.S. Department of Justice and have asked them to follow-up on your request for protection of your family. In addition, I have alerted the Bureau of South Asian Affairs at the State Department of your situation.

If you should need additional information or have questions, please contact our Field Representative in Saipan, Mr. Jeff Schorr, at 670-234-8861.

Sincerely,

*for* Allen P. Stayman
Director
Office of Insular Affairs



EXHIBIT "2"



United States Attorney
District of the Northern Mariana Islands

P.O. Box 377                              (670) 234-9133
Saipan, MP 96950-0377                FAX (670) 233-7833

Thursday, 17 December 1998    gregory.baka@usdoj.gov

Mr. Kamal Hossain
c/o Housekeeping Department
Pacific Islands Club
P. O. Box 2370
Saipan, MP 96950-2370

Dear Mr. Hossain:

I have been asked to prepare a written response to your letter to Department of the Interior's Director of the Office of Insular Affairs, Allen P. Stayman.

You served as a trial witness against the defendant in the mail and wire fraud case of United States v. Akm. Alamgir Kasem, Crim. No. 96-00037 (D.N.M.I. sentenced June 26, 1997). In a related case, another defendant pleaded guilty to a one count information for retaliating against a testifying witness on 10 May 1997. See United States v. Abdur Rahim, Crim. No. 97-00026 (D.N.M.I. sentenced Dec. 4, 1997). As you know, you have met with me and Special Agent Steven K. Stokes of the Federal Bureau of Investigation on several occasions to discuss your request that the government relocate you, and your family in Bangladesh, to the United States because of alleged death threats received as a result of your cooperation in the Kasem case.

Although the matter is still under review, we continue to encourage you to provide any further information substantiating the alleged threats against your family and showing that a criminal organization or enterprise is responsible for the threats. Beyond this, we are precluded by legal and ethical considerations from commenting further on this matter because of its pending nature.

Please be assured of our commitment to full and fair consideration of your safety concerns. If you have any further information which might be of assistance, please provide that information to Special Agent Steven K. Stokes, Federal Bureau of Investigation, P.O. Box 2030, Saipan, MP 96950-2030.

Please also provide FBI Special Agent Steven K. Stokes with your current contact information.

Very truly yours,

Gregory Baka

Gregory Baka
Assistant U. S. Attorney

cc:    FBI SA Steven K. Stokes
       ADAG Jonathan D. Schwartz



EXHIBIT "3"



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

## MAR 22 1999

Mr. Md. Kamal Hossain
PIC, HSKP Dept.
P.O. Box 2370
Saipan, MP 96950

Dear Mr. Hossain:

We have referred your letter of February 22, 1999, to the Departments of State and Justice for appropriate action. Unfortunately, our Department is unable to assist you any further since we do not have law enforcement capability.

The ombudsman's office will be open in Saipan soon. Hopefully, this office will be a means to help workers such as yourself.

Sincerely,

Allen P. Stayman
Director
Office of Insular Affairs

EXHIBIT "4"





**U.S. Department of Justice**

**Office of the Deputy Attorney General**

Associate Deputy Attorney General                    Washington, D.C. 20530

November 8, 1999

Mr. Md. Kamal Hossain
Pic, Hskp, Dept.
PO Box 502370
Saipan, MP 96950

Dear Mr. Hossain:

    Thank you for your recent letter.  I have sent it to Mr.
Frederick Black, the United States Attorney for the Commonwealth
of the Northern Mariana Islands, with the request that he respond
directly to you.  Mr. Black is the Chief Federal law enforcement
officer in the CNMI and will be best able to assist you.

                  Sincerely,

                  Nicholas M. Gess
                  Associate Deputy Attorney General



EXHIBIT "5"



U.S. Department of Justice

**United States Attorney**

*District of the Northern Mariana Islands*

**Hand Delivered**

Tuesday, 23 November 1999

Sixth Floor, Nauru Bldg.
P.O. Box 377    500377
Saipan, CM 96950
Saipan, MP 96950-0377

(670) 236-2986
Overseas Operator
(670) 234-9155
FAX (670) 236-2945
gregory.baka@usdoj.gov

Mr. Kamal Hossain
c/o Housekeeping Department
Pacific Islands Club
P. O. Box 502370
Saipan, MP 96950-2370

                    Re:    Moving your family within Bangladesh

Dear Mr. Hossain:

    This is in response to your letter of 25 October 1999 to Associate Deputy Attorney General Nicholas M. Gess. In your letter you seek "protection" for your wife and child in Bangladesh due to the deportation of a federal inmate, against whom you testified in a mail and wire fraud case. United States v. Akm. Alamgir Kasem, Crim. No. 96-00037 (D.N.M.I. verdict Apr. 2, sentenced June 26, 1997) (41 months imprisonment).

    For over two years now, you have been working at the Pacific Islands Club—a major resort hotel on Saipan—employment that was arranged through the FBI. During 1998 and 1999 you have met numerous times with FBI agents and with myself concerning alleged ongoing threats in Dhaka to your family. As of this time you have not provided the FBI with any substantiation of these threats, other than letters from your wife. You have apparently disregarded their advice to report the incidents to the police in Bangladesh, to provide copies of such official reports to the FBI, and to relocate your family within Bangladesh if necessary.

    If you do have additional official corroboration, please furnish it to us. As you are aware, the Islamic Republic of Bangladesh is a sovereign nation with its own law enforcement. Based upon the evidence you have provided so far, the United States has no jurisdiction over the offenses you allege.

                                    Very truly yours,

                                    FREDERICK A. BLACK
                                    United States Attorney

                                    *Gregory Baka*

                                    GREGORY BAKA
                                    Assistant United States Attorney

n:\ . . . \gbaka\criminal\cases\immign\hossain\hossain2.ltr



EXHIBIT "6"

1   Bruce L. Jorgensen
    c/o Unit D-5, Miller's Estates
2   Capitol Hill, Saipan, MP 96950
    c/o (670) 233-5501/2 (tel)
3   c/o (670) 233-5503 (fax)

4   Attorney for Plaintiffs

COPY on
Original Filed
on this date

MAY 1 0 2002

Clerk
District Court
For The Northern Mariana Islands

5         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN MARIANA ISLANDS

6

7   **JUYEL AHMED, UTHAYACHANDRAN R.**          Civil Action No. 00-0005
    **KANDIAH, JAYAKUMAR A.**
8   **SEVARATNAM, KANABASABAI**                  **FIFTH AMENDED**
    **SELVALINGNAM, JANAKA P. H.**               **COMPLAINT FOR**
9   **NADUNGODAGE, MADPATHAGE D. U. D.**         **INJUNCTIVE,**
    **SENANAYAKE, YU REN HUANG, LI**             **DECLARATORY, AND**
10  **TONG DENG, ZHI PING HU, YIN PING**         **FURTHER RELIEF;**
    **GUO, XI CHENG JIN, LAN TING ZHANG,**       **EXHIBITS "A"-"Z", "A-1"-**
11  **QIN YIN, CHUN FANG YUE, HUI PING**         **"Q-1", AND "1"-"6"**
    **ZHANG, MHING ZHUO LING, LIN**
12  **ZHENG and JIAN SHAN ZHENG,**

13              **Plaintiffs**

14                **v.**

15  **UNITED STATES OF AMERICA,**
    **COMMONWEALTH OF THE NORTHERN**
16  **MARIANA ISLANDS, COLIN POWELL in**
    **his official capacity, JOHN ASCHROFT in**
17  **his official capacity, JOAQUIN AGULTO**
    **TENORIO in his official capacity, ROBERT**
18  **TENORIO TORRES in his official capacity,**
    **and DOES 7-25,**

19              **Defendants.**

20

21            **Caption Continued on Next Page**

22  \\

23. \\

24  \\

1    **Caption Continued from Preceding Page**

2    RUI LIANG, LIAO DA NIAN,                    Civil Action No. 00-0005
     MOHAMMED KAMAL HOSSAIN and
3    JANE ROE I,

4                **Plaintiffs**

5                    **v.**

6    UNITED STATES OF AMERICA,
     COMMONWEALTH OF THE NORTHERN
7    MARIANA ISLANDS, COLIN POWELL in
     his official capacity, JOHN ASHCROFT in
8    his official capacity, JOAQUIN AGULTO
     TENORIO in his official capacity, ROBERT
9    TENORIO TORRES in his official capacity,
     and DOES 7-25,
10
                **Defendants.**
11

12

13            **FIFTH AMENDED COMPLAINT FOR
     INJUNCTIVE, DECLARATORY AND FURTHER RELIEF**
14

15        Plaintiffs, through counsel, allege the following:

     **PARTY PLAINTIFFS (Consolidated Action (Civil Action No. 00-0005)**
16

17        1.    Plaintiff JUYEL AHMED is a citizen of the Islamic Republic of

     Bangladesh ("IRB")  who is currently within the Commonwealth of the Northern Mariana
18
     Islands ("CNMI") and who, between July 1998 and March 2000, was imprisoned at the
19
     CNMI's  Department of Labor and Immigration ("DOLI") prison.
20
          2.    Plaintiff UTHAYACHANDRAN R. KANDIAH is a Sri Lankan citizen of
21
     Tamal ethnicity who is presently within the CNMI.
22

23

24

                                    -2-

1       3.     Plaintiff JAYAKUMAR A. SEVARATNAM is a Sri Lankan citizen of

2 Tamal ethnicity who is presently within the CNMI.

3       4.     Plaintiff KANABASABAI SELVALINGNAM is a Sri Lankan citizen of

4 Tamal ethnicity who is presently within the CNMI.

5       5.     Plaintiff JANAKA P.H. NADUNGODAGE is a Sri Lankan citizen of

6 Sinhalhese ethnicity who is presently within the CNMI.

7       6.     Plaintiff MADPATHAGE D.U.D. SENANAYAKE is a Sri Lankan citizen

8 of    Sinhalhese ethnicity who is presently within the CNMI.

9       7.     Plaintiff YU REN HUANG is a citizen of the People's Republic of China

10 ("PRC") who is presently within the CNMI.

11       8.     Plaintiff LI TONG DENG is a PRC citizen who is presently within the

12 CNMI.

13       9.     Plaintiff ZHI PING HU is a PRC citizen who is presently within the

14 CNMI.

15       10.    Plaintiff YIN PING GUO is a PRC citizen who is presently within the

16 CNMI.

17       11.    Plaintiff XI CHENG JIN is a PRC citizen who is presently within the

18 CNMI.

19       12.    Plaintiff LAN TING ZHANG is a PRC cititzen who is presently within the

20 CNMI.

21       13.    Plaintiff QIN YIN is a PRC citizen who is presently within the CNMI.

22       14.    Plaintiff CHUN FANG YUE is a PRC citizen who is presently within the

23 CNMI.

24

1   15. Plaintiff HUI PING ZHANG is a PRC citizen who is presently within the

2 CNMI.

3   16. Plaintiff MHING ZHUO LING is a PRC citizen who is presently within

4 the CNMI.

5   17. Plaintiff LIN ZHENG is a PRC citizen who is presently within the CNMI.

6   18. Plaintiff JIAN SHAN ZHENG is a PRC citizen who is presently within the

7 CNMI.

8   **PARTY PLAINTIFFS (Consolidated Civil Action No. 99-0046)**

9   19. Plaintiff RUI LIANG ('Liang") is a PRC citizen who is presently within

10 the CNMI.

11   20. Plaintiff LIAO DA NIAN ("Nian") is a PRC citizen who is presently

12 within the CNMI.

13   21. Plaintiff MOHAMMED KAMAL HOSSEIN is an IRB citizen who is

14 presently within the CNMI.

15   22. Plaintiff JANE ROE 1 ("Roe") is a PRC citizen presently within the

16 CNMI. Roe has filed this lawsuit using a pseudonym in place of Roe's actual name for

17 the reason that special circumstances justify the use of this pseudonym, including the

18 need to protect Roe and Roe's PRC-situated family members from harassment, injury,

19 ridicule, serious risk of bodily harm, risk of retaliatory physical and/or mental harm,

20 employer reprisals and governmental reprisals.

21   **PARTY DEFENDANTS (Both Consolidated Civil Actions)**

22   23. Defendant UNITED STATES OF AMERICA ("U.S." and/or "Federal

23 Government") is a governmental entity.

24

1       24.    Defendant COMMONWEALTH OF THE NORTHERN MARIANAS

2  ISLANDS ("CNMI" and/or "CNMI Government") is a governmental entity.

3       25.    Defendant COLIN POWELL ("Powell") is Secretary of the U.S.

4  Department of State ("State Department"), and is named as a Defendant in his official

5  capacity.

6       26.    Defendant JOHN ASHCROFT ("Ashcroft") is the U.S. Attorney General,

7  head of the U.S. Department of Justice ("Justice Department"), and is named as a

8  Defendant in his official capacity.

9       27.    Defendant JOAQUIN AGULTO TENORIO ("Tenorio") is Acting

10 Secretary of the CNMI Department of Labor and Immigration ("DOLI"), and is named as

11 a Defendant in his official capacity.

12      28.    Defendant ROBERT TENORIO TORRES ("Torres") is the CNMI

13 Attorney General, and is named as a Defendant in his official capacity.

14      29.    Defendants Does 7 – 25 ("Does" and/or "Doe Defendants")[1] are sued

15 herein under fictitious names for the reason that, despite diligent and good faith efforts to

16 obtain information, Does' true names, identities, and capacities are presently unknown to

17 Plaintiffs, except that they include but are not limited to persons and/or entities who have

18 injured and/or harmed Plaintiffs, who have violated rights and protections guaranteed to

19 Plaintiffs by effect of the Commonwealth Code, CNMI common law, the Commonwealth

20

21 [1]    Two previously-named Doe Defendants were later dismissed with prejudice as
party-defendants in this lawsuit. Those defendants were: (i) former CNMI Assistant

22 Attorney General Robert Goldberg ("Goldberg"), a CNMI-licensed lawyer; and, (ii)
former DOLI Secretary Mark Zachares ("Zachares"), also a CNMI-licensed lawyer. With

23 the naming of four new defendants in this Fifth Amended Complaint—Powell, Ashcroft,
Tenorio, and Torres—a total of five Doe Defendants have been identified to date.

24

1    Constitution, Federal statutory law (including but not limited to 28 U.S.C. sec. 1350),

2    Federal common law, the Constitution of the United States of America, the 1951

3    Convention Relating to the Status of Refugees ("1951 Convention"),[2] the United Nations

4    Protocol Relating to the Status of Refugees ("1967 Protocol"),[3] the United Nations

5    Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment of

6    Punishment ("1985 Torture Convention"),[4] the Foreign Affairs Reformation and

7    Restructuring Act ("FARR Act"),[5] the Immigration and Naturalization Act, 8 U.S.C.A.

8    sec. 1157, the Restatement (Third) of Foreign Relations Law, International/Customary

9    Law (relating to human rights) binding on the Federal and CNMI governments by effect

10   of *jus cogens* and other principles,[6] the law of nations and/or treaties of the U.S. and/or

11   CNMI governments, and the Torture Victim Protection Act of 1991 ("1991 Alien Torts

12

13

14   ───────────────────────

15   [2]      (July 28, 1951), 19 U.S.T. 6259, 6275, T.I.A.S. No 6577, 189 U.N.T.S. 150; see
     also 7 C,C sec. 3401; Restatement (Third) of Foreign Relations Law, at secs. 102(1),
16   102(2), 111(1).

17   [3]      (Jan. 31, 1967), 10 U.S.T. 6223, T.I.A.S. No. 6577; see also, 7 CMC sec. 3401;
     Restatement (Third) of Foreign Relations Law, at secs. 102(1), 102(2), 111(1).
18

19   [4]      G.A.O.R. A/39/506 (1984), 23 I.L.M. 1027 (1984) (modified in 24 I.L.M. 535
     (1985)), S. Treaty Doc. No. 110-20, 100th Cong. 2d Sess. 7 (1988).
20

21   [5]      Pub. L. No. 105-277, §2242, 1999 U.S.C.C.A.N. §871.

22
     [6]      See e.g., 7 CMC §3401; Restatement (Third) of Foreign Relations Law, at
23   §§102(1)(a), 102(2), 701(b), 702(d)(e).

24
                                      -6-

1  Claim Act" or "ATCA"),[7/] who have violated those laws/treaties to Plaintiffs' detriment,

2  who have otherwise harmed and damaged Plaintiffs or, in some manner presently

3  unknown to Plaintiffs, were engaged or shall engage in those activities or other activities

4  alleged in this civil action.

5      30.    Doe Defendants conducted the previously described activities, or intend to

6  conduct such activities, in an intentional or in an inequitable or in a negligent and/or

7  otherwise wrongful manner, which activities were or shall be a legal cause of injuries or

8  damages to the Plaintiffs, and/or were in some manner (or shall be) related to the named

9  Defendants.

10      31.    Plaintiffs and/or their representatives have made diligent and good faith

11  efforts to ascertain the full names and identities, and the extent and nature of interests, of

12  additional defendants, and the events upon which Plaintiffs' claims are premised.

13      32.    Plaintiffs remain unable at this time to identify with particularity Doe

14  defendants (and/or their nationalities and/or their titles and/or their relationships to

15  Defendants as employees or independent contractors or officers or directors or

16  shareholders) against whom Plaintiffs have additional prospective claims, and seek leave

17  to amend this Fifth Amended Complaint ("Complaint") in order to name and identify Doe

18  defendant if and when the identities of those various Doe defendants is more fully and

19  accurately determined.

20  \\

21  \\

22

23  [7/]    See Pub.L. 102-256, Mar. 12, 1992, 106 Stat. 73, §§2, 3(b), 28 U.S.C.A. §1350.

24

## JURISDICTION

Plaintiffs repeat and reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

33.    This Court has personal jurisdiction over the Plaintiffs.

34.    This Court has personal jurisdiction over Defendant U.S..

35.    This Court has personal jurisdiction over Defendant CNMI.

36.    This Court has personal jurisdiction over Defendant Powell.

37.    This Court has personal jurisdiction over Defendant Ashcroft.

38.    This Court has personal jurisdiction over Defendant Tenorio.

39.    This Court has personal jurisdiction over Defendant Torres.

40.    This Court has original subject matter jurisdiction over this civil action pursuant to federal law including 28 U.S.C. §§1331/1350 and/or the Administrative Procedure Act, 5 U.S.C. §702, and/or 42 U.S.C. §§1983 and 1985, in that Plaintiffs' claims involve:

    a.    the construction or interpretation of treaties and/or international agreements, the law of nations, and/or international/customary law, and/or international protocols (including the 1951 Convention, the 1967 Protocol [as incorporated in customary international law through the Restatement] and the 1985 Torture Convention) to which the U.S. Government has acceded and to which the CNMI Government is thereby bound and obligated pursuant, inter alia, to the Restatement (Third) of Foreign Relations Law and principles of *jus cogens*; and/or

1    b.  conduct made unlawful by effect of federal law--- including the

2  Alien Tort Claims Act—and CNMI law; and/or,

3    c.  conduct made unlawful by effect of the CNMI Constitution and/or

4  the Constitution of the United States of America.

5   41.  This Court, pursuant to federal law including 28 U.S.C. §1367 (a), has

6  supplemental jurisdiction over all other claims alleged by Plaintiffs in this civil action,

7  which claims form part of the same controversy.

8   42.  The factual and jurisdictional grounds upon which Plaintiffs' claims are

9  premised entitle Plaintiffs to equitable, injunctive, and declaratory relief, as well as to

10  legal relief including monetary damages and attorneys' fees.

11   43.  Venue of the claims at issue in this proceeding lies with this Court in

12  accordance with federal law including 28 U.S.C. §1391, and in accordance with other

13  legal and equitable principles.

14   44.  The CNMI is the situs of the wrongs committed against the Plaintiffs and

15  the witnesses and parties are, in the main, situated within the CNMI.

16  **BACKGROUND ALLEGATIONS COMMON TO ALL CLAIMS**

17   45.  Plaintiffs repeat and reallege and incorporate herein by reference each and

18  every allegation contained in the preceding paragraphs.

19   46.  Plaintiffs include IRB national JUYEL AHMED, a practitioner of the

20  Muslim religion, who, as described in his February 24, 2000, declaration appended to this

21  Complaint and designated as Exhibit "A" and his supplemental February 27, 2000,

22  declaration appended to this Complaint and designated as Exhibit "B", has previously

23  been persecuted and tortured in Bangladesh, <u>see</u>, <u>e.g.</u>, Exhibit "A" at ¶4, and who, if

24

1  repatriated and forced to return to Bangladesh will be further persecuted and/or tortured

2  by effect of Bangladesh governmental and/or institutional policies/procedures and/or lack

3  of policies/procedures.

4       47.  Plaintiffs include IRB national Hossain who, as the result of having

5  provided testimony on behalf of the U.S. in the criminal proceeding designated No. 1:96,

6  CR 00037-001, see, Exhibit "1", has been subjected to threats of physical violence

7  (including death) against himself and his IRB-situated family.  See, Exhibits "2" – "6".

8  Despite this cooperation with U.S. law enforcement officials, as acknowledged in letters

9  dated December 17, 1998 and November 23, 1999, from Assistant U.S. Attorney Gregory

10  Baka, see, Exhibits "3" and "6", letters dated July 8 1998, and March 22, 1999 from U.S.

11  Office of Insular Affairs Director Allen P. Stayman, see Exhibits "2" and "4", and others

12  from the U.S. Department of Justice, see e.g., Exhibit "5", neither the U.S. Government

13  nor the CNMI Government has provided to Hossain and his family any of the protections

14  Hossain has requested.

15       48.  Plaintiffs include Plaintiff Roe who, as the result of having challenged

16  policies and procedures involving the CNMI garment industry, the CNMI's Department

17  of Labor and Immigration ("DOLI") and/or asylum/refugee/torture protection issues, has

18  been subjected to threats of physical violence and reprisal (including death) against

19  herself and her PRC-situated family.

20       49.  Plaintiffs include Sri Lankan nationals who, if repatriated and forced to

21  return to Sri Lanka, would be persecuted by the government of Sri Lanka, and by the

22  effect of the violent 10-plus year civil war now raging in Sri Lanka between persons of

23  Tamil and Sinhalse ethnicity.

24

-10-

1    50.    Plaintiffs include PRC nationals who, if repatriated and forced to return to

2  PRC, would be persecuted and/or tortured by effect of inhumane policies adopted and

3  perpetuated by the PRC Government, including, but not limited to, the PRC's well-

4  documented and continuing persecution of the Falun Gong movement, the infliction of

5  pain/torture upon PRC nationals by the PRC Government upon PRC nationals  who have

6  criticized their government in a manner similar to that of the Plaintiffs in this case, the

7  PRC-based persecution of persons based on religion including persons who practice

8  Catholicism, PRC-based persecution of female adults who give birth to more than one

9  child, and/or other PRC Government policies.

10    51.    The U.S. Government is empowered with authority over all U.S. treaties,

11  protocols, international human rights obligations, matters of international law and matters

12  falling within the scope of and/or delegated to the U.S. Department of State, the U.S.

13  Department of Justice (including the U.S. Immigration and Naturalization Service), and

14  by effect of federal laws including the U.S. Immigration and Naturalization Act ("INA").

15    52.    The U.S. Government, by virtue of its sovereignty, has jurisdiction over all

16  persons within the borders of the U.S. mainland, within all of the 50 U.S. states, and

17  within all U.S. territories, commonwealths, and possessions—including the CNMI.

18    53.    The U.S. Government was required to serve as fiduciary to the CNMI prior

19  to enactment of the Covenant to Establish a Commonwealth of the Northern Mariana

20  Islands in Political Union with the United States of America ("Covenant") in accordance

21  with that entity established and recognized by the United Nations as the Trust Territory of

22  the Pacific Islands ("TT").

23

24

1    54.    Throughout the TT's existence the U.S. Government's fiduciary duties

2    obligated the U.S. Government to provide, administer, protect, and otherwise regulate

3    human rights and immigration matters within the CNMI, including, but not limited to,

4    issues relating to asylum/refugee requests and protection, and requests for protection from

5    torture by persons situated within the CNMI who originated from PRC, Sri Lanka,

6    Bangladesh and elsewhere.

7    55.    Following enactment of the Covenant, the U.S. Government retained

8    control of various matters, including the application of the INA within the CNMI, under

9    various circumstances.

10    56.    The INA continues to be applicable today, within the CNMI, under various

11    circumstances.

12    57.    Following enactment of the Covenant, the U.S. Government retained

13    control, and today retains control, over various matters, including:

14    a.    the application of international human rights obligations within the

15    CNMI;

16    b.    the processing of, and due process relating to,

17    asylum/refugee/torture protection applications and obligations, within the CNMI;

18    and,

19    c.    the resolution of issues relating to asylum/refugee/torture

20    protection requests by, and related due process measures relating to, persons

21    within the CNMI who originated from Sri Lanka, Bangladesh, the PRC and

22    elsewhere.

23

24

-12-

1    58.    The U.S. Government has acceded to the 1967 Protocol which, together

2  with customary/international law, the law of nations and the doctrine of *jus cogens*,

3  mandates compliance by the U.S. with both the 1967 Protocol and the 1951 Convention.

4    59.    The U.S. Government has acceded to the 1985 Torture Convention

5  ("1985 Torture Convention") which, together with customary/international law, the law

6  of nations and the doctrine of *jus cogens*, mandates compliance by the U.S. with the 1985

7  Torture Convention.

8    60.    The U.S. has enacted the Alien Tort Claims Act ("ATCA"), the FARR

9  Act, civil rights protections under 42 U.S.C. §§1983 et. seq., and other laws,  mandating

10  compliance by U.S. Government officials with those laws, and providing rights of action

11  for the benefit of those subjected to violation of the terms of those laws.

12    61.    The U.S. Government's accession to the 1967 Protocol binds and obligates

13  the CNMI Government as to both the 1967 Protocol and the 1951 Convention by effect of

14  Article 1, sec. 102 of the Covenant.

15    62.    The U.S. Government's accession to the 1985 Torture Convention binds

16  and obligates the CNMI Government as to both the 1985 Torture Convention by effect of

17  Article 1, sec. 102 of the Covenant.

18    63.    The U.S. Government's enactment of the ATCA, the FARR Act, and 42

19  U.S.C. §§1983 et. seq., binds and obligates the CNMI Government and CNMI

20  Government officials to comply with all portions of those laws by effect of Article 1,

21  §§102 and 105 of the Covenant.

22    64.    The Convention,  and the 1967 Protocol, having been adopted within the

23  Restatement (Third) of Foreign Relations Law, at §§701 et seq., also constitutes CNMI

24

1 | law independent of any CNMI-U.S. political relationship, and is binding and obligatory
2 | within and upon the CNMI Government by effect of 7 CMC §3401.

3 | 65.    The CNMI, independent of the U.S. Government, is further bound and
4 | obligated to comply with the 1967 Protocol, the 1951 Convention and the 1985 Torture
5 | Convention by effect of customary/international human rights law statutorily binding
6 | upon the CNMI by effect of 7 CMC §3401 which adopts Restatement (Third) of Foreign
7 | Relations Law §§111(1), 102(1), 102(2), in addition to §701 et seq.

8 | 66.    The CNMI, independent of the U.S. Government, is also bound and
9 | obligated to provide to Plaintiffs those protections made available via the 1967 Protocol,
10 | the 1951 Convention, and the 1985 Torture Convention by effect of the law of nations
11 | and the doctrine of *jus cogens*.

12 | 67.    Neither the Federal Government nor the CNMI Government has enacted
13 | meaningful policies or procedures by which those governments adequately ensure that
14 | they uphold their obligations to persons seeking asylum/refugee status within the CNMI
15 | under either Federal law, or the 1967 Protocol and the 1951 Convention or in accordance
16 | with customary/international human rights, the law of nations or the doctrine of *jus*
17 | *cogens*.

18 | 68.    Neither the Federal Government nor the CNMI Government has enacted
19 | meaningful policies or procedures by which those governments adequately ensure that
20 | they uphold their obligations to persons seeking protection within the CNMI from those
21 | activities deemed improper under the 1985 Torture Convention or from torture as such
22 | torture is defined and deemed unlawful by effect of customary/international human rights
23 | laws, the law of nations or the doctrine of *jus cogens*.

24

-14-

1    69.   On at least one prior occasion a person then situated within the CNMI

2    sought asylum/refugee/torture protection with the assistance of Mr. Phil Kaplan via the

3    Karidat office funded by the CNMI and Federal governments, which asylum applicant

4    was eventually granted asylum, and then departed the CNMI to reside in New Zealand.

5    70.   On at least one prior occasion, during May-June 2000, there was

6    transmitted to U.S. INS officials from the CNMI an asylum/refugee/torture protection

7    application on behalf of a CNMI-situated person.  In response, INS officials in the

8    Mainland U.S. caused to be transmitted to the CNMI-situated applicant a notification

9    letter which, upon information and belief, advised the applicant to proceed to the

10   Territory of Guam during a by-then-lapsed-multi-day time period, to undergo asylum

11   fingerprinting.  Subsequently, upon further information and belief, CNMI-situated INS

12   officer Oscar Martinez, after learning of this situation, notified the applicant's lawyer,

13   CNMI-based attorney Paul Lawlor, that the notification letter would be retracted by INS

14   officials in the near future.

15   71.   On at least one prior occasion during April 2000, CNMI-situated

16   asylum/refugee/torture protection seekers, including Plaintiff Ahmed, boarded a United

17   States naval vessel situated within the CNMI, at Saipan Harbor, requested that the

18   vessel's Commanding Officer entertain their asylum/refugee/torture protection requests

19   and provide asylum/refugee/torture protection processing, which request was denied

20   while those persons were aboard the vessel and after the Commanding Officer had been

21   provided relevant asylum/refugee/torture protection documentation pertaining to that

22   request.  During this encounter, at least one CNMI-employed police officer attempted to

23   board the U.S. naval vessel and to arrest Plaintiff Ahmed and his fellow-seekers, which

24