Bruce L. Jorgensen
Palau/Micronesia Law & Mediation Center
P.O. Box 10,146
Koror, Palau 96940
Tel.: (680) 488-4686
Fax: (680) 488-4594

COPY on
Original Filed
on this date

JUL 1·8 2001

Clerk
District Court
For The Northern Mariana Islands

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN MARINA ISLANDS

| | | |
|---|---|---|
| JUYEL AHMED, UTHAYACHANDRAN R. KANDIAH, JAYAKUMAR A. SEVARATNAM, KANABASABAI SELVALINGNAM, JANAKA P.H. NADUNGODAGE, MADPATHAGE D.U.D. SENANAYAKE, YU REN HUANG, LI TONG DENG, ZHI PING HU, YIN PING GUO, XI CHENG JIN, LAN TING ZHANG, QIN YIN, CHUN FANG YUE, HUI PING ZHANG, MHING ZHUO LING, LIN ZHENG and JIAN SHAN ZHENG, | ) ) ) ) ) ) ) ) ) ) ) ) | **Third Amended Complaint for Injunctive, Declaratory and Further Relief; Exhibits "A" – "Z" and "A-1" – "F-1"** |
| Plaintiffs, | ) ) ) | Civil Action No. 00-0005 |
| v. | ) ) | |
| ROBERT GOLDBERG, in his personal capacity, UNITED STATES OF AMERICA, COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, and DOES 1-25, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| ———————————— | ) ) | |
| RUI LIANG, LIAO DA NIAN, MOHAMMED KAMAL HOSSAIN and JANE ROE I, | ) ) ) | Civil Action No. 99-0046 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ROBERT GOLDBERG, in his personal capacity, UNITED STATES OF AMERICA, COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, and DOES 1-25, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| ———————————— | ) | |

COMMONWEALTH'S
**EXHIBIT**
_C_

**THIRD AMENDED COMPLAINT FOR**
**INJUNCTIVE, DECLARATORY AND FURTHER RELIEF**

Plaintiffs, through counsel, allege the following:

**First Consolidated Action (Civil Action No. 00-0005) (Exhibits "A" – "F-1")**

1.  Plaintiff JUYEL AHMED is a citizen of the Islamic Republic of Bangladesh ("IRB") who is currently within the Commonwealth of the Northern Mariana Islands ("CNMI") and who, between July 1998 and March 2000, was imprisoned at the CNMI's Department of Labor and Immigration ("DOLI") prison.

2.  Plaintiff UTHAYACHANDRAN R. KANDIAH is a Sri Lankan citizen of Tamal ethnicity who is presently within the CNMI.

3.  Plaintiff JAYAKUMAR A. SEVARATNAM is a Sri Lankan citizen of Tamal ethnicity who is presently within the CNMI.

4.  Plaintiff KANABASABAI SELVALINGNAM is a Sri Lankan citizen of Tamal ethnicity who is presently within the CNMI.

5.  Plaintiff JANAKA P.H. NADUNGODAGE is a Sri Lankan citizen of Sinhalhese ethnicity who is presently within the CNMI.

6.  Plaintiff MADPATHAGE D.U.D. SENANAYAKE is a Sri Lankan citizen of Sinhalhese ethnicity who is presently within the CNMI.

7.  Plaintiff YU REN HUANG is a citizen of the People's Republic of China ("PRC") who is presently within the CNMI.

8.  Plaintiff LI TONG DENG is a PRC citizen who is presently within the CNMI.

9.  Plaintiff ZHI PING HU is a PRC citizen who is presently within the CNMI.

10.  Plaintiff YIN PING GUO is a PRC citizen who is presently within the CNMI.

11. Plaintiff XI CHENG JIN is a PRC citizen who is presently within the CNMI.

12. Plaintiff LAN TING ZHANG is a PRC citizen who is presently within the CNMI.

13. Plaintiff QIN YIN is a PRC citizen who is presently within the CNMI.

14. Plaintiff CHUN FANG YUE is a PRC citizen who is presently within the CNMI.

15. Plaintiff HUI PING ZHANG is a PRC citizen who is presently within the CNMI.

16. Plaintiff MHING ZHUO LING is a PRC citizen who is presently within the CNMI.

17. Plaintiff LIN ZHENG is a PRC citizen who is presently within the CNMI.

18. Plaintiff JIAN SHAN ZHENG is a PRC citizen who is presently within the CNMI.

**Second Consolidated Action (Civil Action No. 99-0046) (Exhibits "1" – "6")**

19. Plaintiff RUI LIANG ("Liang") is a PRC citizen who is presently within the CNMI.

20. Plaintiff LIAO DA NIAN ("Nian") is a PRC citizen who is presently within the CNMI.

21. Plaintiff MOHAMMED KAMAL HOSSEIN is a citizen of the Islamic Republic of Bangladesh ("IRB") who is presently within the CNMI.

22. Plaintiff JANE ROE I ("Roe") is a PRC citizen presently within the CNMI. Roe has filed this lawsuit using a pseudonym in place of Roe's actual name for the reason that special circumstances justify the use of such pseudonym, including the need to

3

protect Roe and Roe's PRC-situated family members from harassment, injury, ridicule, serious risk of bodily harm, risk of retaliatory physical and/or mental harm, employer reprisals and governmental reprisals.

**Common Allegations**

23. Defendant ROBERT GOLDBERG ("Goldberg") is a U.S. citizen who is presently within the CNMI.

24. Defendant UNITED STATES OF AMERICA ("U.S." and/or "Federal Government") is a governmental entity.

25. Defendant COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS ("CNMI" and/or "CNMI Government") is a governmental entity.

26. Defendants Does 1 – 25 ("Does" and/or "Doe Defendants") are sued herein under fictitious names for the reason that, despite diligent and good faith efforts to obtain information, Does' true names, identities, and capacities are presently unknown to Plaintiffs, except that they include but are not limited to persons and/or entities who have injured and/or harmed Plaintiffs, who have violated rights and protections guaranteed to Plaintiffs by effect of the Commonwealth Code, CNMI common law, the Commonwealth Constitution, Federal statutory law (including but not limited to 28 U.S.C. sec. 1350), Federal common law, the Constitution of the United States of America, the 1951 Convention Relating to the Status of Refugees ("1951 Convention"),[1] the United Nations Protocol Relating to the Status of Refugees ("1967 Protocol"),[2] the United Nations

---

[1]    (July 28, 1951), 19 U.S.T. 6259, 6275, T.I.A.S. No. 6577, 189 U.N.T.S. 150; see also 7 C,C sec. 3401; Restatement (Third) of Foreign Relations Law, at secs. 102(1), 102(2), 111(1).

[2]    (Jan. 31, 1967), 10 U.S.T. 6223, T.I.A.S. No. 6577; see also, 7 CMC sec. 3401; Restatement (Third) of Foreign Relations Law, at secs. 102(1), 102(2), 111(1).

Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment of

Punishment ("1985 Torture Convention"),[3] the Foreign Affairs Reformation and

Restructuring Act ("FARR Act"),[4] the Immigration and Naturalization Act, 8 U.S.C.A.

sec. 1157, the Restatement (Third) of Foreign Relations Law, International/Customary

Law (relating to human rights) binding on the Federal and CNMI governments by effect

of *jus cogens* and other principles,[5] the law of nations and/or treaties of the U.S. and/or

CNMI governments, and the Torture Victim Protection Act of 1991 ("1991 Alien Torts

Claim Act" or "ATCA"),[6] who have violated those laws/treaties to Plaintiffs' detriment,

who have otherwise harmed and damaged Plaintiffs or, in some manner presently

unknown to Plaintiffs, were engaged or shall engage in those activities or other activities

alleged in this civil action.

    27. Doe defendants conducted the previously described activities, or intend to

conduct such activities, in an intentional or in an inequitable or in a negligent and/or

otherwise wrongful manner, which activities were or shall be a legal cause of injuries or

damages to the Plaintiffs, and/or were in some manner (or shall be) related to the named

Defendants.

    28. Plaintiffs and/or their representatives have made diligent and good faith

efforts to ascertain the full names and identities, and the extent and nature of interests, of

additional defendants, and the events upon which Plaintiffs' claims are premised.

---

[3]    G.A.O.R. A/39/506 (1984), 23 I.L.M. 1027 (1984) (modified in 24 I.L.M. 535 (1985)), S. Treaty Doc. No. 110-20, 100th Cong. 2d Sess. 7 (1988).

[4]    Pub. L. No. 105-277, sec. 2242, 1999 U.S.C.C.A.N. sec. 871.

[5]    See, e.g., 7 CMC sec. 3401; Restatement (Third) of Foreign Relations Law, at secs. 102(1)(a), 102(2), 701(b), 702(d)(e).

[6]    See Pub.L. 102-256, Mar. 12, 1992, 106 Stat. 73, secs. 2, 3(b), 28 U.S.C.A. sec. 1350.

29.  Plaintiffs remain unable at this time to identify with particularity Doe defendants (and/or their nationalities and/or their titles and/or their relationships to Defendants as employees or independent contractors or officers or directors or shareholders) against whom Plaintiffs have additional prospective claims, and seek leave to amend this Third Amended Complaint ("Complaint") in order to name and identify Doe defendant if and when the identities of those various Doe defendants is more fully and accurately determined.

<u>**JURISDICTION**</u>

30.  Plaintiffs repeat and reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

31.  This Court has personal jurisdiction over the Plaintiffs.

32.  This Court has personal jurisdiction over Defendant Goldberg.

33.  This Court has personal jurisdiction over Defendant Federal Government.

34.  This Court has personal jurisdiction over Defendant CNMI Government.

35.  This Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. secs. 1331/1350 and the Administrative Procedure Act, 5 U.S.C. sec. 702, in that Plaintiffs' claims involve:

(i)  the construction or interpretation of treaties and/or international agreements, the law of nations, and/or international/customary law, and/or international protocols (including the 1951 Convention, the 1967 Protocol [as incorporated in customary international law through the Restatement] and the 1985 Torture Convention) to which the U.S. Government has acceded and to which the CNMI Government is

thereby bound and obligated pursuant, inter alia, to the Restatement (Third) of Foreign

Relations Law and principles of *jus cogens*; and/or

        (ii)  conduct made unlawful by effect of the Alien Tort Claims Act; and/or

        (iii)  conduct made unlawful by the United States Constitution.

36.  This Court, pursuant to 28 U.S.C. sec. 1367(a), has supplemental jurisdiction

over all other claims alleged by Plaintiffs in this civil action, which claims form part of

the same controversy.

37.  This Court, additionally, has supplemental jurisdiction pursuant to Article X,

sec. 9 of the Commonwealth Constitution.

38.  The factual and jurisdictional grounds upon which Plaintiffs' claims are

premised entitle Plaintiffs to equitable as well as legal relief.

39.  Venue of the claims at issue in this proceeding lies with this Court in

accordance with 28 U.S.C. sec. 1391 and other legal and equitable principles.  The CNMI

is the situs of the wrongs committed against the Plaintiffs and the witnesses and parties

are, in the main, located in the CNMI.

## BACKGROUND ALLEGATIONS COMMON TO ALL CLAIMS

40.  Plaintiffs repeat and reallege and incorporate herein by reference each and

every allegation contained in the preceding paragraphs.

41.  Plaintiffs include IRB national JUYEL AHMED, a practitioner of the Muslim

religion, who, as described in his February 24, 2000, declaration appended to this

Complaint and designated as Exhibit "A" and his supplemental February 27, 2000,

declaration appended to this Complaint and designated as Exhibit "B", has previously

been persecuted and tortured in Bangladesh (see, e.g., Exhibit "A" at para. 4), and who, if

7

repatriated and forced to return to Bangladesh will be further persecuted and/or tortured

by effect of Bangladesh governmental and/or institutional policies/procedures and/or lack

of policies/procedures.

42. Plaintiffs include IRB national Hossain who, as the result of having provided

testimony on behalf of the United States Government in Criminal Proceeding No. 1:96

CR 00037-001 (see Exhibit "1"), has been subjected to threats of physical violence

(including death) against himself and his IRB-situated family (see Exhibits "2" – "6").

Despite this cooperation with law enforcement officials, as acknowledged in letters dated

December 17, 1998, and November 23, 1999, from Assistant U.S. Attorney Gregory

Baka (see Exhibits "3" and "6"), letters dated July 8, 1998, and March 22, 1999, from

U.S. Office of Insular Affairs Director Allen P. Stayman (see Exhibits "2" and "4") and

others from the U.S. Department of Justice (see, e.g., Exhibit "5"), neither the Federal

Government nor the CNMI has provided to Hossain and his family any of the protections

Hossain has requested.

43. Plaintiffs include Plaintiff Roe who, as the result of having challenged

policies and procedures involving the CNMI garment industry, the CNMI's Department

of Labor and Immigration and/or asylum issues, has been subjected to threats of physical

violence and reprisal (including death) against herself and her PRC-situated family.

44. Plaintiffs include Sri Lankan nationals who, if repatriated and forced to return

to Sri Lanka, would be persecuted by the effect of the violent 10-plus year civil war now

raging in Sri Lanka between persons of Tamil and Sinhalese ethnicity.

45. Plaintiffs include PRC nationals who, if repatriated and forced to return to

PRC, would be persecuted and/or tortured by effect of inhumane policies adopted and

perpetuated by the PRC Government, including, but not limited to, the PRC's well-documented and continuing persecution of the Falun Gong movement, the infliction of pain/torture upon PRC nationals by the PRC Government and/or other PRC Government policies.

46. The U.S. Government is empowered with authority over all U.S. treaties, international human rights organizations, matters of international law and matters falling within the scope of the United States Immigration and Naturalization Act ("INA").

47. The U.S. Government, by virtue of its sovereignty, has jurisdiction over all persons within its borders.

48. The U.S. Government was required to serve as fiduciary to the CNMI prior to enactment of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant") in accordance with that entity established and recognized by the United Nations as the Trust Territory of the Pacific Islands ("TT").

49. Throughout the TT's existence the U.S. Government's fiduciary duties obligated the U.S. Government to regulate human rights and immigration matters within the CNMI, including, but not limited to, issues relating to asylum/refugee requests, and requests for protection from torture by persons situated within the CNMI who are originally from PRC, Sri Lanka, Bangladesh and elsewhere.

50. Following enactment of the Covenant, the U.S. Government retained control of various matters, including the application of the INA within the CNMI, under various circumstances.

51. The INA continues to be applicable today under various circumstances.

9

52. Following enactment of the Covenant, the U.S. Government retained control, and today retains control, over various matters, including:

     (i) the application of international human rights obligations within the CNMI;

     (ii) the processing of asylum/refugee/torture protection applications; and

     (iii) the resolution of issues relating to asylum/refugee/torture protection requests by persons from Sri Lanka, Bangladesh, the PRC and elsewhere.

53. The U.S. Government has acceded to the 1967 Protocol which, together with customary/international law, the law of nations and the doctrine of *jus cogens*, mandates compliance by the U.S. with both the 1967 Protocol and the 1951 Convention.

54. The U.S. Government has acceded to the 1985 Torture Convention ("1985 Torture Convention") which, together with customary/international law, the law of nations and the doctrine of *jus cogens*, mandates compliance by the U.S. with the 1985 Torture Convention.

55. The U.S. has enacted the Alien Tort Claims Act mandating compliance by U.S. Government officials with that law and providing a right of action for the benefit of those subjected to violation of its terms.

56. The U.S. Government's accession to the 1967 Protocol binds and obligates the CNMI Government as to both the 1967 Protocol and the 1951 Convention by effect of Article 1, sec. 102 of the Covenant.

57. The U.S. Government's accession to the 1985 Torture Convention binds and obligates the CNMI Government as to both the 1985 Torture Convention by effect of Article 1, sec. 102 of the Covenant.

58. The U.S. Government's enactment of the ATCA binds and obligates the CNMI Government and CNMI Government officials to comply with all portions of the act by effect of Article 1, secs. 102 and 105 of the Covenant.

59. The Convention and the 1967 Protocol, having been adopted within the Restatement (Third) of Foreign Relations Law, at sec. 701 et seq., also constitutes CNMI law, binding within and upon the CNMI Government by effect of 7 CMC sec. 3401.

60. The CNMI, independent of the U.S. Government, is further bound and obligated to comply with the 1967 Protocol, the 1951 Convention and the 1985 Torture Convention by effect of customary/international human rights law statutorily binding upon the CNMI by effect of 7 CMC sec. 3401 which adopts Restatement (Third) of Foreign Relations Law sections 111(1), 102(1), 102(2), 701 et seq.

61. The CNMI, independent of the U.S. Government, is also bound and obligated to provide to Plaintiffs those protections made available via the 1967 Protocol, the 1951 Convention, and the 1985 Torture Convention by effect of the law of nations and the doctrine of *jus cogens.*

62. Neither the Federal Government nor the CNMI Government has enacted meaningful policies or procedures by which those governments adequately ensure that they uphold their obligations to persons seeking asylum/refugee status within the CNMI under either Federal law, or the 1967 Protocol and the 1951 Convention or in accordance with customary/international human rights, the law of nations or the doctrine of *jus cogens.*

63. Neither the Federal Government nor the CNMI Government has enacted meaningful policies or procedures by which those governments adequately ensure that

11

they uphold their obligations to persons seeking protection within the CNMI from those activities deemed improper under the 1985 Torture Convention or from torture as such torture is defined and deemed unlawful by effect of customary/international human rights laws, the law of nations or the doctrine of *jus cogens*.

64. On at least one prior occasion a person then situated within the CNMI sought asylum with the assistance of Mr. Phil Kaplan via the Karidat office funded by the CNMI and Federal governments, which asylum applicant was eventually granted asylum, and then departed the CNMI to reside in New Zealand.

65. On at least one prior occasion, during May-June 2000, there was transmitted to U.S. INS officials from the CNMI an application on behalf of a CNMI-situated person. In response, INS officials in the Mainland U.S. caused to be transmitted to the CNMI-situated applicant a notification letter which, upon information and belief, advised the applicant to proceed to the Territory of Guam during a by-then-lapsed-multi-day time period, to undergo asylum fingerprinting. Subsequently, upon further information and belief, CNMI-situated INS officer Oscar Martinez, after learning of this situation, notified the applicant's lawyer, Paul Lawlor, that the notification letter would be retracted by INS officials in the near future.

66. On at least one prior occasion during April 2000, CNMI-situated asylum-seekers, including plaintiff Ahmed, boarded a United States naval vessel situated in Saipan harbor, requested that the vessel's commanding officer entertain their asylum requests and provide asylum processing, which request was denied while those persons were aboard the vessel and after the commanding officer had been provided relevant asylum documentation pertaining to that request.

67. The INS regularly publishes and distributes a document known as Form I-590.

68. Plaintiffs have each completed a Form I-590, as exemplified by a sample Form I-590 application appended to this Complaint and designated Exhibit "C".

69. The I-590 forms completed by Plaintiffs have been transmitted to INS offices situated at Saipan, Honolulu, Bangkok and Manila (see, e.g., Exhibits "D" – "F") for processing by INS officials in accordance with INS asylum/refugee standards made applicable under U.S. law, but INS's Saipan representative Oscar Martinez has refused to accept Plaintiffs' I-590 applications (see, e.g., Exhibits "E" – "G"), has also refused to accept other documents transmitted to his INS office in Saipan (see, e.g., Exhibit "H") and has returned Plaintiffs' completed I-590 forms to Plaintiffs' attorney's office.

70. The I-590 forms completed by Plaintiffs have been transmitted to INS offices situated in Saipan, Honolulu, Bangkok and Manila for processing by INS officials in accordance with United Nations and/or Federal asylum/refugee standards made applicable under treaties and/or international law agreements, and/or customary international law, and/or international protocols (including the 1951 Convention and the 1967 Protocol).

71. Persons seeking protection under the 1985 Torture Convention are required, as a prerequisite, to exhaust asylum procedures.

72. Plaintiffs have attempted to acquire the protections required to be made available pursuant to the 1985 Torture Convention, including, but not limited to, protection from torture and protection afforded by effect of non refoulement. See, e.g., Exhibit "F".

13

73. On August 10, 1999, Mr. Oscar Martinez, the INS official assigned to operated the only CNMI-situated INS office, provided notice to Plaintiffs and other similarly situated persons that neither the CNMI-situated INS office manned by Mr. Martinez nor any other INS office will accept for submission and processing any I-590 forms. See Exhibits "E" and "G". This statement was and is false and contrary to law and had the intended purpose and effect of misleading the Plaintiffs to believe that they had no refugee/asylum rights available to them under U.S. law.

74. Neither Mr. Martinez, any other U.S. official, nor any CNMI official has, since August 10, 1999, refuted, recanted or overruled Mr. Martinez's August 10, 1999, notice.

75. On August 12, 1999, information pertaining to the CNMI Government's policy respecting I-590 applicants and the recent involvement of INS officials on the Island of Tinian was sought from both the CNMI Office of the Attorney General ("OAG") via letter to Acting Attorney General Maya Kara, and from the CNMI's Department of Labor and Immigration ("DOLI") via letter to DOLI Secretary Mark Zachares, pursuant to 1 CMC Division 9 (the CNMI "Open Government Act"). See Exhibit "I".

76. Neither Mr. Zachares nor any other DOLI official has ever responded to the Open Government Act request.

77. To date, no documents, no information and no other material – responsive or otherwise – has been provided by Ms. Kara, Mr. Zachares, the OAG, DOLI, or any other CNMI representative or entity in response to the August 20, 1999, Open Government Act request.

14

78. Defendant CNMI, through the CNMI's OAG and DOLI, is responsible for the administration, supervision and enforcement of laws applicable to and within the CNMI.

79. Defendant U.S., through the Federal Government's Justice Department, is responsible for the administration, supervision and enforcement of Federal laws applicable to the CNMI for the benefit of persons within the CNMI.

80. Defendant CNMI hired and/or appointed Defendant Goldberg as the CNMI Assistant Attorney General charged with primary responsibility for the administration, supervision and enforcement of CNMI immigration laws.

81. Upon information and belief, Defendant Goldberg's salary is paid by DOLI.

82. Upon information and belief, Defendant Goldberg's salary, although paid by DOLI, is funded in whole or in part by the Federal government.

83. Defendant Goldberg creates, administers, supervises and enforces CNMI policies and procedures and makes policy decisions, including, but not limited to, policies and procedures relating to applications for political asylum and requests for protection from torture.

84. Defendant Goldberg provides instruction and direction and instructs and directs DOLI personnel, including, but not limited to, DOLI personnel employed at DOLI's prison facility.

85. Plaintiff AHMED was imprisoned at DOLI'S prison facility between July 1998 and March 2000. Plaintiffs Liang and Nian were similarly imprisoned in DOLI's prison facility at or around the same period(s) of time.

86. Defendant Goldberg devised, planned and implemented policies and procedures relating to the imprisonment of various DOLI prisoners, including Plaintiffs AHMED, LIANG AND NIAN.

87. Defendant Goldberg devised, planned and implemented policies and procedures relating specifically and exclusively to the imprisonment of Plaintiffs AHMED, LIANG AND NIAN.

88. In devising, planning and implementing policies and procedures relating to the imprisonment of Plaintiffs Ahmed, Liang and Nian, Defendant Goldberg authorized, condoned and acquiesced in ignoring and disregarding the liberty interests of Plaintiffs Ahmed, Liang and Nian.

89. In devising, planning and implementing policies and procedures relating to the imprisonment of Plaintiffs Ahmed, Liang and Nian, Defendant Goldberg authorized, ratified, condoned and acquiesced in Defendants' adopting a custom and pattern of practice of ignoring and disregarding the liberty interests of Plaintiffs AHMED, LIANG AND NIAN, in violation of and disregard of the liberty interests guaranteed to AHMED, LIANG AND NIAN by effect of CNMI law, Federal law, the CNMI Constitution and the U.S. Constitution.

90. Plaintiffs possess a liberty interest and property right to be free from arbitrary and indefinite and capricious detention, which interest/right arises by effect of CNMI law, Federal law, the CNMI Constitution and the U.S. Constitution. See, e.g., 3 CMC secs. 4341(d), 4382(b), 4382(c).

## COUNT 1

## UNLAWFUL IMPRISONMENT BY GOLDBERG AND THE CNMI

91. Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 - 90" above as if fully set forth at length hereat.

92. Defendant Goldberg, at all times described in this Complaint, was acting under color of CNMI law.

93. Plaintiffs Ahmed, Liang and Nian were subjected to prolonged arbitrary imprisonment by Goldberg acting in his individual capacity to perpetuate the policy of the CNMI.

94. As a matter of CNMI policy, which policy was acceded to and perpetuated by Defendant Goldberg, the CNMI practices, encourages and condones the prolonged arbitrary detention of aliens

95. The imprisonment of Plaintiffs Ahmed, Liang and Nian at DOLI's prison, violated liberty interests precluding those Plaintiffs from being subjected to arbitrary, indefinite and capricious imprisonment.

96. Plaintiffs are entitled to redress their grievances under the Alien Tort Claims Act, 28 U.S.C.A. sec. 1350 ("ATCA").

97. Defendant Goldberg initiated, perpetuated, supervised, and/or acquiesced in the arbitrary, indefinite and capricious imprisonment of Plaintiffs Ahmed, Liang and Nian.

98. The above-described events constitute a violation of procedural and substantive due process rights to which Plaintiffs Ahmed, Liang and Nian are entitled under U.S. law, CNMI law, the law of nations and treaties of the United States, which violation entitles the Plaintiffs to relief under ATCA.

17

99. The above-described violation of rights was the direct result of a

CNMI/DOLI policy.

100. Defendant Goldberg either knew or should have known that the above-

described CNMI/DOLI policy ignored, disregarded and/or otherwise violated the liberty

interests and the procedural and substantive due process rights to which Plaintiffs

Ahmed, Liang and Nian are entitled under U.S. law, CNMI law, the law of nations and

treaties of the United States.

101. The imprisonment of Plaintiffs Ahmed, Liang and Nian was the direct and

proximate result of the above-described CNMI/DOLI policy, which ignored, disregarded

and/or otherwise violated the liberty interests and the procedural and substantive to which

Plaintiffs are entitled under U.S. law, CNMI law, the law of nations and treaties of the

United States.

102. The above-described violation has caused and continues to cause Plaintiffs

Ahmed, Liang and Nian to suffer damages and injuries, entitling them to relief under

ATCA.

103. The damages and injuries suffered by Plaintiffs Ahmed, Liang and Nian, as

a direct and proximate result of Defendant Goldberg's acts, actions and omissions, are

recoverable pursuant to 28 U.S.C. sec. 1350, the Alien Tort Claims Act and by virtue of

the laws set forth, incorporated and embodied in the Restatement (Third) of Foreign

Relations Law and made part of CNMI Law by virtue of 7 CMC sec. 3401.

104. The above-described acts, actions and omissions, including Defendant

Goldberg's making, developing, implementing, commanding and/or perpetuating the

imprisonment of Plaintiffs Ahmed, Liang and Nian, were done by Defendant Goldberg in

18

a willful, wanton and intentional manner, for which Plaintiffs are entitled to an award of punitive damages.

## COUNT 2

### GOLDBERG'S AND CNMI'S UNLAWFUL POLICY/PRACTICE REGARDING AHMED, LIANG AND NIAN

105. Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 - 104" above as if fully set forth at length hereat.

106. Defendant Goldberg, at all times described in this Complaint, was acting under color of CNMI law.

107. Defendant Goldberg either knew or should have known that the above-described CNMI/DOLI policy, custom, pattern and practice relating to the imprisonment of Plaintiffs Ahmed, Liang and Nian violated Plaintiffs' rights to due process.

108. As a matter of CNMI policy, which policy was acceded to and perpetuated by Defendant Goldberg, the CNMI practices, encourages and condones the prolonged arbitrary detention of aliens.

109. Defendant Goldberg either knew or should have known that the detention of Plaintiffs without recourse to a lawyer or to judicial review was unlawful under both CNMI and United States law.

110. Defendant Goldberg is a lawyer and is presumed to have knowledge and familiarity with the laws of the United States and the laws of the CNMI as they relate to his professional responsibility.

111. Goldberg at all relevant times was responsible, through the Office of the CNMI Attorney General ("AGO"), for implementing the immigration laws of the CNMI.

112. At all times Goldberg justified his actions in detaining and imprisoning Plaintiffs by claiming the detention and imprisonment was pursuant to CNMI law and that United States and international law did not apply to the detention.

113. The arbitrary, indefinite and capricious imprisonment of Plaintiffs Ahmed, Liang and Nian, was a direct and proximate result of the above-described CNMI/DOLI policy, custom, pattern and practice, which practice was made, developed, implemented, acceded to, commanded and/or perpetuated by Defendant Goldberg.

114. At all times Goldberg was acting under color of CNMI law in wrongfully detaining and perpetuating the detention of Plaintiffs in the DOLI prison facility.

115. The above-described CNMI/DOLI policy, custom, pattern and practice constituted a violation of, and disregard for, the liberty interests and the procedural and substantive due process rights to which Plaintiffs Ahmed, Liang and Nian were and are entitled under U.S. law, CNMI law, the law of nations and treaties of the United States.

116. The above-described violation has caused and continues to cause Plaintiffs Ahmed, Liang and Nian to suffer damages and injuries.

117. The damages and injuries suffered by Plaintiffs Ahmed, Liang and Nian, as a direct and proximate result of Defendant Goldberg's acts, actions and omissions are recoverable pursuant to 28 U.S.C. sec. 1350, the Alien Tort Claims Act and pursuant to generally accepted principles of International Law as embodied and incorporated in the Restatement (Third) of Foreign Relations Laws and elsewhere.

118. The above-described acts, actions and omissions, including Defendant Goldberg's making, developing, implementing, commanding and/or perpetuating the imprisonment of Plaintiffs Ahmed, Liang and Nian, was done by Defendant Goldberg in

a willful, wanton and intentional manner, for which Plaintiffs are entitled to an award of punitive damages.

## COUNT 3

### ALL PLAINTIFFS – ASYLUM/PROTECTION FROM TORTURE

119.  Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 - 118" above as if fully set forth at length hereat.

120.  Plaintiffs have attempted to acquire the protections required to be made available pursuant to the 1985 Torture Convention, including, but not limited to, protection from torture and protection afforded by effect of non refoulement. See, e.g., Exhibit "F".

121.  Defendants' previously and subsequently described conduct, including but not limited to the failure and/or unwillingness of Defendant U.S. and Defendant CNMI to create, devise initiate, implement and perpetuate meaningful policies and procedures to ensure and facilitate an impartial determination of Plaintiffs' pending asylum applications/requests for protection from torture, constitutes a violation of INS asylum/refugee standards made applicable to and within the United States and the CNMI.

122.  Defendants' previously and subsequently described conduct, including but not limited to the failure and/or unwillingness of Defendant U.S. and Defendant CNMI to create, devise initiate, implement and perpetuate meaningful policies and procedures to ensure and facilitate an impartial determination of Plaintiffs' pending asylum applications/requests for protection from torture, constitutes a violation of United Nations asylum/refugee standards and torture protections made applicable to and within the U.S. and the CNMI by effect of statutes, treaties and/or international agreements and/or

21

customary international/human rights law and/or international protocols (including the Convention and the 1985 Torture Convention) and/or the law of nations and/or the doctrine of *jus cogens*.

123. Plaintiffs are entitled to apply for admission to the U.S. by asserting their refugee/asylum status, and this right applies to persons outside of the United States wheresoever situated, pursuant to INA sec. 207, 8 U.S.C.A. sec. 1157.

124. Plaintiffs are similarly entitled to apply for refugee/asylum status from within the CNMI.

125. Plaintiffs have exercised that right and have applied for I-590 refugee/asylum status pursuant to INA sec. 207, as set forth above.

126. Defendants' activities within the CNMI as described above and below violate the Plaintiffs' rights to apply for asylum pursuant to INA sec. 207.

127. By detaining and/or attempting to detain and/or threatening to detain and attempting to refoule the Plaintiffs the CNMI has impinged upon and failed and refused to recognize Plaintiffs' rights under U.S. law.

128. By failing and/or refusing to create procedures to protect the Plaintiffs from detainment and/or refoulement during the pendency of their lawful asylum/refugee applications pursuant to INA sec. 207, the CNMI has failed and refused to recognize Plaintiffs' rights under U.S. law.

129. The CNMI is a Territory of the United States.

130. With limited exceptions, not including INA sec. 207, which applies to everyone world-wide, including persons situated within the CNMI, the CNMI is under the jurisdiction of the United States.

22

131. By failing and/or refusing to create procedures to protect the Plaintiffs from detainment and/or refoulement during the pendency of their lawful asylum/refugee applications pursuant to INA sec. 207, the United States has failed and refused to recognize Plaintiffs' rights under U.S. law.

132. By reason of the failure and/or refusal of the CNMI to create and implement policies and procedures to protect applicants for refugee/asylum status from refoulement during the pendency of their refugee/asylum applications pursuant to INA sec. 207, the Plaintiffs have been damaged and placed in jeopardy of refoulement.

133. By reason of the failure and/or refusal of the United States to create and implement policies and procedures to protect applicants for refugee/asylum status from refoulement during the pendency of their I-590 refugee/asylum applications pursuant to INA sec. 207, the Plaintiffs have been damaged and placed in jeopardy of refoulement.

134. As a consequence of the failure and/or refusal of the CNMI to create and implement policies and procedures to protect applicants for refugee/asylum status from refoulement during the pendency of their refugee/asylum applications pursuant to INA sec. 207, the CNMI is liable to Plaintiffs in damages and Plaintiffs are further entitled to an order granting them permanent injunctive relief enjoining the CNMI from taking any steps to detain and/or refoule them during the pendency of their I-590 applications.

135. As a consequence of the failure and/or refusal of the United States to create and implement policies and procedures to protect CNMI applicants for refugee/asylum status from refoulement during the pendency of their refugee/asylum applications pursuant to INA sec. 207, the Plaintiffs are entitled to an order granting them permanent injunctive relief against the United States, directing the United States to implement

policies and procedures to protect CNMI applicants for refugee/asylum status from

detainment or refoulement during the pendency of their refugee/asylum applications.

136. Defendants' previously and subsequently described conduct further

constitutes a violation of rights guaranteed to Plaintiffs by effect of the CNMI

Constitution and by effect of U.S. laws applicable to the CNMI.

137. Defendants' previously and subsequently described conduct further

constitutes a violation of rights guaranteed to Plaintiffs by effect of the Constitution of

the United States of America.

138. Defendants' previously and subsequently described conduct constitutes a

violation of rights guaranteed to Plaintiffs by effect of U.S. laws, as specifically set forth

above.

139. The CNMI is subject to the application of Customary International Law.

140. The CNMI, as set forth above, is in violation of principles of customary

international law relating to asylum claims.

141. Specific universal and obligatory principles of international law relating to

asylum claims which are violated, and have been violated, by the CNMI include, without

limitation, the refusal of the CNMI to implement meaningful procedures for the taking

and processing of asylum applications and the protection of asylum applicants pending

processing of those claims; violation of United Nations asylum/refugee standards and

torture protections and the law of nations.

142. Defendants' previously and subsequently described conduct constitutes a

violation of treaties and/or international agreements and/or customary

international/human rights law and/or international protocols (including the Convention,

the 1967 Protocol and the 1985 Torture Convention – as incorporated in the FARR Act,

INA sec. 207, ACTA and the Restatement (Third) of Foreign Relations Law) and/or the

law of nations and/or the doctrine of *jus cogens*.

143. Defendants, and each of them, are liable to each Plaintiff as a consequence

of the previously-described conduct for which recovery will be sought in the form of

permanent injunctive relief and an amount which will be proven at trial.

### COUNT 4

### INJUNCTIVE RELIEF:
### VIOLATIONS OF THE TORTURE CONVENTION
### AS INCORPORATED IN THE FARR ACT AND A FURTHER
### VIOLATION OF THE ALIEN TORT CLAIMS ACT

144. Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 -

143" above as if fully set forth at length hereat.

145. Defendant CNMI, upon information and belief, is currently attempting to

deport one or more of the Plaintiffs (including, but not limited to Plaintiffs AHMED,

LIANG AND NIAN) and others similarly situated, which deportation would constitute

refoulement (involuntary return) to Plaintiffs' respective countries of origin.

146. The CNMI is subject to the application of Customary International Law.

147. The CNMI, as set forth above, is in violation of principles of customary

international law relating to asylum claims.

148. Specific universal and obligatory principles of international law relating to

asylum claims which are violated, and have been violated, by the CNMI include, without

limitation: the refusal of the CNMI to defer refoulement prior to implementing

meaningful procedures for the taking and processing of asylum applications and the

protection of asylum applicants pending processing of those claims; violation of United Nations asylum/refugee standards and torture protections and the law of nations.

149. Any attempt by Defendant CNMI to deport Plaintiffs (including but not limited to Plaintiffs AHMED, LIANG AND NIAN) and others similarly situated by subjecting those persons to refoulement to their countries of origin – absent, first, a full, impartial, meaningful and final determination of Plaintiffs' pending asylum/torture protection requests – constitutes a violation of Article 3 of the 1985 Torture Convention by virtue of its implementation and incorporation in the Foreign Affairs Reform and Restructuring Act ("FARR Act"), Pub. L. No. 105-277, sec. 2242, 1999 U.S.C.C.A.N. 871.

150. The FARR Act is the implementing legislation that makes the Torture Convention applicable to the CNMI and is applicable to the CNMI and aliens seeking protection therein.

151. The failure and/or refusal of the United States to implement regulations for the protection of refugee/asylum applicants is in violation of Plaintiffs' rights under the Alien Tort Claims Act ("ACTA"), thereby rendering the rights accorded aliens in the position of Plaintiffs unrealizable and nugatory.

152. The United States is liable to the Plaintiffs for its failure and/or refusal to implement regulations for their protection in the CNMI pursuant to the ACTA.

153. Any attempt by Defendant CNMI to imprison or to detain Plaintiffs and others similarly situated – absent, first, a full, impartial, meaningful and final determination of Plaintiffs' pending asylum/torture protection requests – constitutes a

violation of Article 3 of the 1985 Torture Convention as incorporated in and made part of the FARR Act.

154. The failure and/or refusal of Defendant United States to implement and enforce procedures for the enforcement of the FARR Act is in violation of Plaintiffs' rights under ATCA.

155. Pursuant to the Federal Government's accession to the 1985 Torture Convention and the incorporation of Article 3 thereof in the FARR Act, the consquent binding effect of the 1985 Torture Convention on the CNMI Government, the adoption of the Restatement (Third) of Foreign Relations Law as CNMI law pursuant to 7 CMC sec. 3401, and the binding effect of customary/international human rights law, the law of nations and the application of ACTA to the CNMI, CNMI and Goldberg are responsible for ensuring that persons seeking refuge/asylum within the CNMI, including Plaintiffs, are not subject to refoulement to their countries of origin in violation of the FARR Act.

156. Pursuant to the Federal Government's accession to the 1985 Torture Convention and the incorporation of Article 3 thereof in the FARR Act, and the binding effect of customary/international human rights law, the law of nations and the application of the Alien Tort Claims Act, the United States is responsible for ensuring that persons seeking refuge/asylum within the CNMI, including Plaintiffs, are not subject to refoulement to their countries of origin in violation of the FARR Act.

157. Defendants U.S., CNMI and Goldberg have shirked their responsibility to ensure that persons seeking refuge/asylum within the CNMI, including Plaintiffs, are not subject to refoulement to their countries of origin in violation of Article 3 of the 1985 Torture Convention as incorporated in the FARR Act.

158. All Defendants are similarly liable to the Plaintiffs pursuant to ACTA.

159. Pursuant to the Federal Government's accession to the 1985 Torture Convention and the incorporation of Article 3 thereof in the FARR Act, and the binding effect of customary/international human rights law, the law of nations and the application of the Alien Tort Claims Act, the United States is responsible for ensuring that persons seeking refuge/asylum within the CNMI, including Plaintiffs, are not subject to arrest or imprisonment in violation of the 1985 Torture Convention and the incorporation of Article 3 thereof in the FARR Act.

160. Defendants U.S., CNMI and Goldberg have, to date, shirked their responsibility to ensure that persons seeking refuge/asylum within the CNMI, including Plaintiffs, are not subject to arrest or imprisonment in violation of applicable law.

161. Pursuant to the Federal Government's accession to the 1985 Torture Convention and the incorporation of Article 3 thereof in the FARR Act, the binding effect of the 1985 Torture Convention on the CNMI Government, the adoption of the Restatement (Third) of Foreign Relations Law as CNMI law pursuant to 7 CMC sec. 3401, and the binding effect of customary/international human rights law, the law of nations and the application of the Alien Tort Claims Act to the CNMI ("ACTA"), Defendants U.S., CNMI and Goldberg are deemed responsible for ensuring that there exists within the CNMI a meaningful and impartial procedure for accepting a processing asylum applications and for accepting and processing requests for protection from torture from persons seeking refugee/asylum/torture protection within the CNMI, including Plaintiffs.

162. Defendants U.S., CNMI and Goldberg have, to date, shirked their responsibility to ensure that persons seeking refugee/asylum/torture protection within the CNMI, including Plaintiffs, are provided a meaningful and impartial procedure for accepting and processing asylum applications and requests for protection from torture within the CNMI.

163. All Defendants are similarly liable to the Plaintiffs pursuant to ACTA.

164. Violation of international law by the Defendant United States is cognizable as a cause of action pursuant to ACTA.

165. By refusing to acknowledge and implement customary international law, and thereby by violating international law through its failure to implement meaningful protections in the CNMI for CNMI-situated aliens, such as Plaintiffs, applying for U.S. refuge/asylum, the United States, pursuant to ACTA, is in violation of customary international law and principles of *jus cogens*.

166. If this Court does not grant injunctive relief restraining and enjoining Defendants from subjecting Plaintiffs and others similarly situated (with respect to the claims against the CNMI) from refoulement, restraining and enjoining Defendants from arresting and detaining Plaintiffs and others similarly situated (with respect to the claims against the CNMI) and imposing on the Federal and CNMI Governments the requirement that those governments **immediately** create and implement a meaningful and impartial procedure for accepting and processing asylum applications within the CNMI and for accepting and processing requests within the CNMI for protection from torture elsewhere, then Plaintiffs and others similarly situated (with respect to the claims against the CNMI) shall, upon information and belief, face the imminent prospect of continued

29

unlawful imprisonment by the CNMI, unlawful arrest by the CNMI, future unlawful

imprisonment by the CNMI, refoulement by the CNMI and/or subsequent torture and

abuse in their countries of origin and shall continue to suffer from deprivation of their

constitutional and lawfully required rights to due process of law with respect to the

protection of their human rights.

167. Plaintiffs therefore seek injunctive relief:

a.    restraining and enjoining Defendants (including the CNMI

government and its representatives) and all others from subjecting Plaintiffs and others

similarly situated (with respect to the claims against the CNMI) to refoulement;

b.    restraining and enjoining Defendants and all others from arresting

and/or imprisoning Plaintiffs and others similarly situated (with respect to the claims

against the CNMI);

c.    imposing upon Defendants U.S. and CNMI the requirement that

those governments **immediately** create and perpetuate and implement a meaningful and

impartial procedure for accepting and processing asylum applications within the CNMI

and for accepting and processing requests within the CNMI for protection from torture

elsewhere; and

d.    preserving the status quo pending the acceptance and processing,

by U.S. officials and/or United Nations officials and/or both U.S. and United Nations

officials of:

(1)    Plaintiffs' pending I-590 asylum applications; and

(2)    Plaintiffs' pending requests for protection under the

1985 Torture Convention.

30

## COUNT 5

### VIOLATION OF PLAINTIFFS' RIGHTS TO DUE PROCESS

168.  Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 - 167" above as if fully set forth at length hereat.

169.  Plaintiffs, and each of them, by virtue of their presence on United States land, are entitled under the Constitution of the United States to Due Process of law pursuant to the Fifth Amendment to the U.S. Constitution.

170.  Plaintiffs are entitled to similar protections under the CNMI Constitution and the Commonwealth Code.

171.  The Due Process to which Plaintiffs are entitled includes, without, limitation, the right to meaningful procedural protections prior to the governmental deprivation of life, liberty and/or property.

172.  Plaintiffs' liberty interests are directly implicated herein by virtue of their allegations that they will be deprived of liberty if they are imprisoned by the CNMI pending refoulement.

173.  Plaintiffs' liberty interests are further implicated here virtue of their allegations that they will suffer harm, torture, ridicule, imprisonment, abasement or other abuse if they are involuntary relocated to a place where such abuse is likely.

174.  Plaintiffs' right to life is implicated here by virtue of their allegations that they may be subject to death in the event of refoulement.

175.  Plaintiffs' property interests are implicated here in that, upon information and belief, plaintiffs are currently gainfully employed in the CNMI and employment – which will be taken from them by refoulement – is a property interest.

31

176.  As set forth above, neither the United States nor the CNMI has implemented meaningful procedural safeguards either to process Plaintiffs' applications for refuge/asylum within the CNMI.

177.  Procedural due process requires that meaningful procedures be put in place before Plaintiffs may be deprived of their constitutional or statutory rights.

178.  Plaintiffs' rights to due process have been violated and continue to be violated in that Defendants have not established any procedural due process safeguards to enable Plaintiffs to assert their rights effectively under INA sec. 207 and the FARR Act prior to the governmental deprivation of Plaintiffs' rights.

179.  Plaintiffs therefore seek damages in an amount to be determined at trial and the following injunctive relief:

a.    restraining and enjoining Defendants (including the CNMI government and its representatives) and all others from subjecting Plaintiffs and others similarly situated (with respect to the claims against the CNMI) to refoulement, arrest, imprisonment pending a meaningful and impartial procedure for accepting and processing their asylum applications within the CNMI;

b.    imposing upon Defendants U.S. and CNMI the requirement that those governments **immediately** create and implement and maintain a meaningful and impartial procedure for accepting and processing asylum applications within the CNMI and for accepting and processing requests within the CNMI for protection from torture elsewhere in accordance with Plaintiffs' rights to due process of law; and

c.      preserving the status quo pending the implementation of a

meaningful and impartial procedure for the acceptance and processing, by U.S. officials

and/or United Nations officials and/or both U.S. and United Nations officials of:

(1)     Plaintiffs' pending I-590 asylum applications; and

(2)     Plaintiffs' pending requests for protection under the

1985 Torture Convention, as incorporated in the FARR

Act.

## COUNT 6

### RIGHT TO COUNSEL:
### UNCONSTITUTIONAL CNMI *PRO HAEC VICE* RESTRICTION

180.    Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 -

179" above as if fully set forth at length hereat.

181.  By order dated August 23, 1999 (Exhibit "K") the CNMI Supreme Court

purported in part to:  (a) terminate all then-existing CNMI Supreme Court and CNMI

Superior Court *pro haec vice* admissions, with September 30, 1999, the purported

termination date; (b) require attorneys seeking *pro haec vice* admission, on or after

August 23, 1999, to submit an annual $5,000 application fee; (c) institute an automatic

annual expiration of all CNMI Superior/Supreme Court *pro haec vice* admissions; (d)

preclude from *pro haec vice* admission any attorney who resides or maintains an office in

the CNMI; and (e) limit *pro haec vice* admissions in other ways.

182.  Attorney Bruce L. Jorgensen ("Jorgensen"), counsel here for Plaintiffs,

resides in the CNMI and Palau, is admitted to practice law in several jurisdictions

(including the State of Hawaii, the Republic of Palau, the U.S. District Court for the

Northern Mariana Islands and the United States Court of Appeals for the Ninth Circuit),

33

and is not admitted to practice law in the CNMI Superior Court or the CNMI Supreme Court.[7]

182-a.  Plaintiff AHMED is an IRB citizen who has no money, no job and no assets.  Plaintiff AHMED was incarcerated in the DOLI prison between July 1998 and March 15, 2000, and cannot afford to pay an attorney for legal services.  The other named plaintiffs are similarly situated and are similarly unable to pay for legal services.

183.  Pursuant to this Court's Order dismissing Count 6 of the Second Amended Complaint challenging the constitutionality of the CNMI *pro haec vice* rule, Plaintiffs maintain a right to replead this claim in order to state an actual case or controversy.

184.  Plaintiffs' claim based on the CNMI Open Government Act was also dismissed with prejudice since, pursuant to CNMI statute, such claim may only be brought in the CNMI Superior Court.

185.  A proceeding challenging violation of the Open Government Act may only be prosecuted in the CNMI Superior Court.

**Open Government Act Representation**

186.  The records described in Exhibit "I" hereto constitute records which the CNMI Government is required by law to keep or which are necessary for the CNMI Government to keep in order to discharge its duties imposed by law, which records:  (a) include written and printed reports, papers, maps and/or plans; and (b) consist of documents and information which fall within the ambit of the August 12, 1999 Open

---

[7]     Jorgensen is also one of multiple attorneys who, having been previously admitted pro haec vice as counsel of record in the Hillblom probate proceeding, Civil Action No. 95-626 (CNMI Superior Court), was purported to have that admission divested automatically effective September 30, 1999, due to implementation of the CNMI Supreme Court's August 23, 1999, General Order No. 99-900.

Government Act request submitted on behalf of Plaintiffs, and the CNMI's response dated August 20, 1999 (see Exhibit "K").

187.  Pursuant to 1 CMC sec. 9902(f), the records/documents described in Exhibit "J" constitute "public records."

188.  The documents described in Exhibit "J" were required, by effect of 1 CMC sec. 9917(a), to be made available for inspection and copying within ten (10) days of the August 12, 1999, service of Exhibit "J."

189.  The failure and/or refusal of AOG and DOLI officials to make the records and documents described in Exhibit "J" available on or before August 22, 1999, for inspection and copying constitutes a violation of the CNMI's Open Government Act, for which the CNMI is liable to Plaintiffs.

190.  Because Jorgensen is precluded by the Supreme Court's order imposing restrictions on pro haec vice representation, Plaintiffs are unable to vindicate their rights under the Open Government Act.

191.  Plaintiffs are unable to afford separate counsel or to pay the pro haec vice fee required to permit Jorgensen to challenge the CNMI's lack of disclosure in Superior Court.

192.  Because Jorgensen is precluded from being able to prosecute Plaintiffs' Open Government Act claims in the CNMI courts, an actual controversy exists requiring this Court's intervention.

**Prospective Habeas Corpus Representation**

193.  On February 23, 2000, after learning of Plaintiff AHMED's inability to pay for legal service, Jorgensen agreed to represent AHMED, LIANG AND NIAN in this lawsuit and in any related habeas corpus proceedings in this Court.

194.  Between February 23, 2000, and March 15, 2000, Plaintiff AHMED was in imminent danger of being deported from the CNMI to Bangladesh by Defendants CNMI and Goldberg.

195.  On February 24, 2000, Plaintiff AHMED requested that he be provided representation in a CNMI Superior Court habeas corpus proceeding by his counsel of choice, Jorgensen, in an effort to gain Plaintiff AHMED's release from indefinite, arbitrary and unlawful imprisonment at DOLI.

196.  On February 24, 2000, and subsequently, Plaintiff AHMED has been unable to pay the $5,000 required in order for Jorgensen to pay the CNMI's annual $5,000 *pro haec vice* application fee.

197.  On February 24, 2000, Jorgensen agreed to sign Plaintiff AHMED's habeas corpus application for submission to the CNMI Superior Court, as permitted by CNMI law (6 CMC sec. 7102).

198.  As a consequence of having signed Plaintiff AHMED's habeas corpus application while Plaintiff AHMED was incarcerated at the DOLI prison, which signing was permitted by 6 CMC sec. 7102, Jorgensen was subjected to "investigation" for purported "unauthorized practice of law," which investigation was initiated by both Defendant Goldberg's co-worker/office-mate (CNMI Assistant Attorney General L.

David Sosebee) and by the CNMI Bar Association (at the direction, upon information and belief, of CNMI Superior Court Presiding Judge Edward Manibusan).

199. Plaintiff AHMED, subsequently, was granted a temporary release from DOLI's prison on March 15, 2000, by CNMI Superior Court Associate Judge Timothy H. Bellas. See Exhibits "L" – "M".

200. Defendant Goldberg's co-worker/office-mate Sosebee then wrote a March 15, 2000, letter to Hon. Alex R. Munson, Presiding Judge of the U.S. District Court for the Northern Mariana Islands (Exhibit "U"), in which Sosebee requested that Judge Munson remove Jorgensen from the Federal Court's bar, id. at p. 2, and in so doing intimated both that the request was being made in the course of Sosebee's "investigation" (id. at p. 1), that Jorgensen had been provided a copy of Sosebee's March 15, 2000, letter to Judge Munson (id. at p. 2) (designating Jorgensen as a "cc" recipient), when in fact Sosebee had not provided a copy of the letter to Jorgensen. See Exhibit "W" at p. 1, para. 2; see also Exhibit "V," Exhibits "N" – "Z," Exhibits "A-1" – "D-1."

201. Sosebee's office then sought a continuance of a May 18, 2000, hearing in this Court (in Hollman v. CNMI, Civil Action No. 00-0012), in which Jorgensen is Plaintiff's counsel, claiming the continuance to be necessary due to Sosebee's non-availability.

202. Later, on May 18, 2000, Sosebee then signed and caused to be filed a complaint by which the CNMI sued Jorgensen, claiming in part that the services provided to AHMED by Jorgensen constituted the unauthorized practice of law (see CNMI v. Jorgensen, CNMI Superior Court Civil Action No. 00-0255-E) and requesting that CNMI

Superior Court Judge Edward Manibusan immediately enjoin Jorgensen from practicing

law within the CNMI and this Court. No injunction was issued.

203. Plaintiff AHMED's habeas corpus proceeding before the CNMI Superior

Court, with the prospect of being appealed to the CNMI Supreme Court and/or remanded

and/or re-appealed, raises the likely prospect that the proceeding will extend over a

period of more than one year before there occurs a full and final resolution and/or any

prospect of Federal habeas corpus relief from this Court.

204. Although the question of Plaintiff Ahmed's representation before the CNMI

courts in connection with his habeas corpus proceeding appears to be moot, it is a matter

"capable of repetition yet evading review" unless this Court acknowledges jurisdiction.

Moreover, Jorgensen, if he were to attempt to prosecute a habeas corpus petition in the

absence of *pro haec vice* admission to the CNMI courts, would be subject to a contempt

citation.

**Unconstitutionality of *Pro Haec Vice* Limitations**

205. Given the above-described circumstances, the August 23, 1999, CNMI

Supreme Court Order, designated General Order No. 99-900, has deprived and continues

to deprive Plaintiff AHMED and other CNMI-situated persons of their right to counsel of

their choice, deprives constitutional rights of those attorneys purported to have had their

previous *pro haec vice* admissions automatically terminated on September 30, 2000, and

is otherwise facially unconstitutional.

206. Plaintiff AHMED, therefore, seeks an order declaring the August 23, 1999,

CNMI Supreme Court Order designated General Order No. 99-900 to be unlawful in its

entirety as violative of the 14th Amendment to the U.S. Constitution and the CNMI

Constitution.

## COUNT 7

## CONSPIRACY

207.    Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 -

206" above as if fully set forth at length hereat.

208.  Defendant Goldberg conspired with others to directly and/or indirectly

deprive aliens, including Plaintiffs, of due process and/or equal protection of the law and

constitutional immunities to which they are entitled under the law.

209.  In furtherance of the above-described conspiracy, Defendant Goldberg

committed overt acts which included but were not limited to initiating, devising,

authorizing, instructing, commanding, ordering, ratifying, condoning and/or acquiescing

in conduct and omissions which Defendant Goldberg knew or should have known would

directly and/or indirectly deprive aliens, including Plaintiffs, of due process of law and/or

equal protection under law and immunities available to them under Federal and CNMI

law.

210.  In additional furtherance of the above-described conspiracy, Defendant

Goldberg committed overt acts which included but were not limited to subjecting

Plaintiffs Ahmed, Liang and Nian to indefinite, arbitrary, capricious and unlawful

imprisonment.

211.  In still additional furtherance of the above-described conspiracy, Defendant

Goldberg committed overt acts which included delaying for 20 months the retrieval of

travel documents, causing Plaintiff AHMED to remain imprisoned throughout that 20-

39

month period, and ultimately obtaining those travel documents within five (5) days after

issuance of the CNMI Superior Court's initial habeas corpus ruling issued March 9, 2000,

in order to facilitate Defendant Goldberg's intention to hasten Plaintiff Ahmed's

departure from the CNMI after Plaintiff AHMED's claims against Defendant Goldberg

became apparently to Goldberg.

212.  In still additional furtherance of the above-described conspiracy, Defendant

Goldberg committed overt acts which included subjecting Plaintiffs Ahmed, Liang and

Nian at DOLI's prison to cruel and unusual punishment, unlawful discrimination,

arbitrary and capricious punishment and other illegal conduct, including but not limited

to that conduct described in Exhibit "A" at paras. 7 – 9 and in Exhibit "B" at paras. 2 – 8,

which descriptions Defendant Goldberg, prior to Judge Bellas's March 15, 1999, habeas

corpus ruling (see Exhibit "M") had neither contested nor refuted in the habeas corpus

proceeding. See Exhibit "E-1" at p. 3, lines 7-8 (finding, as a matter of fact, that the

CNMI Government did not dispute Plaintiff AHMED's factual allegations concerning

Defendant Goldberg's previously-described misconduct); see also Exhibit "F-1"

(correcting the record to reflect that CNMI-licensed attorney Bruce Berline, and not

Jorgensen, had appeared for Plaintiff AHMED at the habeas corpus hearing).

213.  As the result of the violations of law alleged above, together with the

deprivations of due process and/or equal protection and immunities, which deprivations

resulted from a conspiracy between Defendant Goldberg and others, Defendant Goldberg

has violated Plaintiffs' rights, entitling them to redress their injuries resulting from the

tortious conduct of Goldberg and others under ATCA.

214. Defendant Goldberg's previously and subsequently described conduct constitutes a violation of rights guaranteed to Plaintiffs by effect of CNMI law.

215. Defendant Goldberg is liable to each Plaintiff, including Plaintiff AHMED as a consequence of the previously-described conduct, for which recovery will be sought in an amount which will be proven at trial pursuant to 42 U.S.C. sec 1985 and further pursuant to both 42 U.S.C. sec. 1983 and 28 U.S.C. sec. 1350.

216. The above-described conspiracy, acts, actions and omissions were done by Defendant Goldberg in a willful, wanton, malicious and intentional manner, for which Plaintiffs are entitled to an award of punitive damages.

**COUNT 8**

**CONCEALMENT: CONCEALED KNOWLEDGE OR INFORMATION**

217.    Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 - 216" above as if fully set forth at length hereat.

218. For more than two (2) years, Defendants U.S., CNMI and Goldberg intentionally and/or negligently concealed Defendants' knowledge or information concerning the acceptance and processing of asylum/refugee and torture protection applications by plaintiffs PRC, Sri Lanka and Bangladesh citizens within the CNMI, including but not limited to the claims now being asserted by Plaintiffs, and the unconstitutional and unlawful deprivations to which Plaintiffs and others similarly situated (with respect to the claims against the CNMI) were thereby subjected by the Defendants.

41

226. Plaintiffs have attempted to acquire the protections required to be made available pursuant to the 1985 Torture Convention, including, but not limited to, protection from torture and protection afforded by effect of non refoulement. See, e.g., Exhibit "F".

227. On August 10, 1999, Mr. Oscar Martinez, the INS official assigned to operated the only CNMI-situated INS office, provided notice to Plaintiffs and other similarly situated persons that neither the CNMI-situated INS office manned by Mr. Martinez nor any other INS office will accept for submission and processing any I-590 forms. See Exhibits "E" and "G".

228. This statement implied, and Plaintiffs were led to believe, and did believe, that the INS office in the CNMI was not empowered to accept asylum applications from CNMI-situated aliens.

229. This statement was and is false and contrary to law and had the intended purpose and effect of misleading the Plaintiffs to believe that they had no refugee/asylum rights available to them under U.S. law.

230. Mr. Martinez knew or should have known that refuge/asylum petitions pursuant to INA sec. 207 were and are available to alien persons situated outside the United States.

231. Mr. Martinez knew or should have known that refuge/asylum petitions pursuant to INA sec. 207 were available to alien persons situated in the CNMI.

232. Neither Mr. Martinez, any other U.S. official, nor any CNMI official has, since August 10, 1999, refuted, recanted or overruled Mr. Martinez's August 10, 1999,

notice, which constituted concealing knowledge or information that he was under an affirmative duty not to conceal.

233. On August 12, 1999, information pertaining to the CNMI Government's policy respecting I-590 applicants and the recent involvement of INS officials on the Island of Tinian was sought from both the CNMI Office of the Attorney General ("OAG") via letter to Acting Attorney General Maya Kara, and from the CNMI's Department of Labor and Immigration ("DOLI") via letter to DOLI Secretary Mark Zachares, pursuant to 1 CMC Division 9 (the CNMI "Open Government Act"). See Exhibit "I".

234. Since Plaintiffs were unaware of the concealed knowledge or information, and had relied upon Defendants to comply with Defendants' obligations to provide that knowledge or information to Plaintiffs and others, Plaintiffs were misled by Defendants.

235. Defendants' concealment of relevant knowledge and information from the Plaintiffs was intentional and/or negligent.

236. Defendants had a duty to disclose true and relevant information to them and an affirmative duty not to mislead Plaintiffs to their detriment.

237. Defendants' concealment of relevant knowledge and information from the Plaintiffs was and is in violation of law applicable in the CNMI, including, without limitation, the Open Government Act and the Restatement (Second) of Torts. See Restatement (Second) of Torts, secs. 536, 551, 557A.

238. Defendants' conduct was further in violation of the Alien Tort Claims Act, 28 U.S.C. sec. 1350, in that the conduct committed by the Defendants was tortious and

44

was directed against the Plaintiffs, intentionally or negligently, and it intended to cause

harm to the Plaintiffs and did, in fact, cause harm to the Plaintiffs.

239. Defendants' concealment of relevant knowledge and information from the

Plaintiffs has caused Plaintiffs to suffer, and to continue suffering, injuries and damages.

240. Defendants are liable to the Plaintiffs as a consequence of the above-

described concealment for all of the previously-described damages and injuries and for

further consequential damages directly or indirectly resulting therefrom.

241. In order to deter Defendants and others similarly situated from further

engaging in the previously described wrongful, wanton and willful conduct, Plaintiffs

further request that punitive damages be imposed against Defendants in an amount to be

determined at trial.

## COUNT 9

## EMOTIONAL DISTRESS

242.    Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 -

241" above as if fully set forth at length hereat.

243. Defendants U.S., CNMI and Goldberg have inflicted severe emotional

distress and psychological damage upon the Plaintiffs, to Plaintiffs' detriment.

244. The conduct by the Defendants resulting in the Plaintiffs' having suffered

severe emotional distress include, without limitation, the following:  wrongful threats of

deportation (refoulement) by the CNMI and Goldberg; wrongful imprisonment of

Plaintiffs Ahmed, Liang and Nian and others by the CNMI and Goldberg, as set forth

above; intentional and/or negligent misrepresentations by all Defendants to Plaintiffs

and/or their representative regarding the rights available to them under law, as set forth

above; and generally improper conduct amounting nearly to governmental terrorism to an extent that will be proven at trial.

245. The conduct described in the immediately preceding paragraph constitutes intentional and/or negligent infliction of emotional distress for which the Defendants are liable to the Plaintiffs in damages.

246. As a result of the Defendants' aforementioned misconduct and, in the case of the CNMI and Goldberg and the INS's Oscar Martinez, of affirmative misrepresentations and failure to disclose relevant and truthful information, the Plaintiffs have been caused to suffer extreme emotional distress, including fears of deportation, torture, death, loss of family, extreme insecurity, sleeplessness and nervousness, resulting, in instances to be developed through discovery and/or at trial, in illness.

247. The aforementioned misconduct constitutes tortious misconduct under the law of nations and/or a treaty or treaties of the United States, as well as the Restatement (Second) of Torts.

248. Defendants, by engaging in conduct causing Plaintiffs emotional distress, are further liable to Plaintiffs for damages pursuant to ATCA,

249. The conduct described and otherwise engaged in by the Defendants which caused the Plaintiffs emotional distress was willful, wanton and reckless and entitles the Plaintiffs to an award of compensatory and punitive damages as against the Defendants.

## COUNT 10

## ESTOPPEL

250. Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 - 249" above as if fully set forth at length hereat.

251. By effect of their prior conduct and/or representations and/or omissions, as set forth in detail above, including the misrepresentations of the INS (Martinez), Goldberg and other CNMI officials to Plaintiffs and their representative, the failure and/or refusal to disclose truthful, accurate and public information, and other statements and misrepresentation to be more fully developed through discovery and at trial, Defendants made promises, inducements and/or public representations to Plaintiffs and others upon which Plaintiffs and others relied to their detriment.

252. By effect of having permitted and assisted the efforts by at least one CNMI-situated person, to apply for and obtain political asylum, the CNMI and/or Federal governments made and/or perpetuated implied and express promises, inducements and/or other public representations to Plaintiffs and others that they had asylum rights in the CNMI that would be acknowledged and vindicated, upon which Plaintiffs and others have relied.

253. By effect of having transported Federal INS Official Robert Stamerra from Washington, D.C. to Saipan for the purpose of interrogating asylum applicants then detained within DOLI's prison, which official acted in concert with and/or with the knowledge or acquiescence of CNMI officials including Defendant Goldberg, the CNMI and/or Federal governments made promises, inducements and/or public representations to Plaintiffs and others upon which Plaintiffs and others have relied.

254. By effect of having transported several Federal INS agents to Tinian – for the purpose of interrogating asylum applicants then detained within a prison erected on Tinian and accepting and processing asylum applications from those applicants, and thereafter transporting some of those applicants to the U.S. Mainland, including, but not

limited to Carbondale, Ill. – which agents acted in concert with and/or with the knowledge and acquiescence of CNMI officials, the CNMI and/or Federal governments made promises, inducements, and/or public representations to Plaintiffs and others upon which Plaintiffs and others have relied.

255. By effect of having on at least one prior occasion during May – June 2000 responded to receipt of an asylum application from a CNMI-situated person by transmitting a notification letter advising the applicant to proceed to the Territory of Guam to undergo asylum-applicant fingerprinting – which acts occurred in concert with and/or with the knowledge and acquiescence of CNMI officials and/or Federal officials – the CNMI and/or Federal governments made promises, inducements and/or public representations to Plaintiffs and others upon which Plaintiffs and others relied.

256. By effect of having on at least on prior occasion during April 2000 permitted asylum seekers to board a U.S. naval vessel situated in Saipan harbor, and converse there with the vessel's commanding officer regarding asylum requests – which acts occurred in concert with and/or with the knowledge and acquiescence of CNMI officials and/or Federal officials – the CNMI and/or Federal governments made promises, inducements and/or public representations to Plaintiffs and others upon which Plaintiffs and others relied.

257. Defendants were at all times were apprised, or should have been apprised, of the true facts at issue in their dealings with the Plaintiffs and others and their representatives.

258. Defendants at all times intended that their conduct and representations and misrepresentations would be relied upon by the Plaintiffs and others.

48

259. Plaintiffs were ignorant of the true state of facts about which they inquired.

260. Plaintiffs relied upon the representations and misrepresentations of the Defendants.

261. Plaintiffs, in their reliance upon the representations and misrepresentations of the Defendants, were injured.

262. Defendants' previously described conduct was affirmative misconduct that has caused Plaintiffs to suffer the previously described damages including, without limitation, continued lack of due process required for enforcement of lawful human rights and immigration/refuge/asylum procedures within the CNMI.

263. As a result of the Defendants' previously described promises, inducements and/or public representations, Plaintiffs reasonably relied on the prospect of availing themselves of the opportunity to apply for asylum and to remain in the CNMI pending the orderly processing of their applications.

264. Defendants, having made the previously described promises, inducements and/or public representations, and having cause Plaintiffs and others to detrimentally rely upon those promises, inducements and/or representations, are prohibited and estopped from denying the substance and effect of Defendants' promises, inducements and/or public representations.

265. In spite of the Defendants' affirmative misconduct in making, explicitly and impliedly, promises, inducements and/or public representations, Plaintiffs have been injured by continuing to be threatened with deportation and refoulement in violation of such promises, inducements and/or public representations.

49

266.  As a result, Plaintiffs have been plagued with uncertainty about their immigration status and live with fears of imprisonment, refoulement, torture, death, and harm to their family members.

267.  Plaintiffs demand that Defendants be estopped from denying the substance of Defendants' promises, inducements and/or public representations.

## COUNT 11

### ARTICLE X sec. 9 DAMAGE/ATTORNEYS' FEE AWARD

268.  Plaintiffs repeat and reallege each of the allegations set forth in paras. "1 - 267" above as if fully set forth at length hereat.

269.  Plaintiffs are taxpayers in the CNMI.

270.  Plaintiffs seek to enjoin the wrongful conduct of the Defendants CNMI and Goldberg as set forth above, and thereby seek to enjoin the improper expenditure of public funds in connection with the wrongful conduct alleged.

271.  Upon information and belief, the operation of the DOLI prison and the payment, at least in part, of Goldberg's government salary derived from CNMI public funds.

272.  Plaintiffs therefore demand damages and attorneys' fees incurred in connection with their claims to enjoin the improper expenditure of public funds by Defendants in connection with the wrongful conduct alleged herein.

## REQUEST FOR RELIEF

WHEREFORE, plaintiffs respectfully request judgment granting them the following relief:

50

1.  On Count 1 of the Complaint, Judgment against Defendants Goldberg and CNMI:

    a.  Granting Plaintiffs compensatory (against CNMI and Goldberg jointly and severally) and punitive (Goldberg) damages against such Defendants in an amount to be determined at trial; and

    b.  Permanently enjoining such Defendants, or any person acting on their behalf, from imprisoning Plaintiffs pending resolution of their asylum/refugee applications.

2.  On Count 2 of the Complaint, Judgment against Defendants Goldberg and CNMI:

    a.  Granting Plaintiffs compensatory (CNMI and Goldberg, jointly and severally) and punitive damages (Goldberg) against such Defendants in an amount to be determined at trial; and

    b.  Permanently enjoining such Defendants, or any person acting on their behalf, from pursuing the CNMI policy of imprisoning Plaintiffs and wrongfully detaining and perpetuating the detention of Plaintiffs in a DOLI prison;

3.  On Count 3 of the Complaint, Judgment against All Defendants:

    a.  Granting Plaintiffs a permanent injunction directing Defendants CNMI and United States to implement and establish meaningful procedures for the taking and processing of asylum applications and the protection of asylum applicants pending processing of those applications; and

51

b. permanently enjoins and restrains Defendants from subjecting Plaintiffs to arrest, imprisonment and refoulement for reasons relating to Plaintiffs' asylum applications, immigration status and requests for protection from torture;

c. permanently imposes upon the Federal and CNMI governments the affirmative obligation and requirement that those governments **immediately** create and perpetuate and enforce a meaningful and proper procedure for accepting and processing asylum applications within the CNMI and requests within the CNMI for protection from torture elsewhere;

d. preserving the status quo pending the acceptance and processing of Plaintiffs' Form I-590 application and requests for protection from torture by INS officials and/or United Nations officials;

e. compelling INS officials to accept and process Plaintiffs' Form I-590 applications and requests for protection from torture; and

f. compelling INS officials to forward Plaintiffs' Form I-590 applications and requests for protection from torture to United Nations officials for acceptance and processing; and

g. granting Plaintiffs such other and further relief which to the Court seems just and proper.

4. On Count 4 and 5 of the Complaint, Judgment against All Defendants:

a. A Declaration that

i. the Federal Government is deemed responsible for ensuring that Plaintiffs and other persons within the CNMI seeking

refugee/asylum/torture protection relief are not subject to refoulement to their countries of origin;

ii. the Federal Government has, to date, taken no adequate steps to ensure that Plaintiffs and persons within the CNMI seeking refugee/asylum/torture protection relief are not subject to refoulement to their countries of origin;

iii. the CNMI Government has, to date, taken no adequate steps to ensure that Plaintiffs and persons within the CNMI seeking refugee/asylum/torture protection relief are not subject to refoulement to their countries of origin; and

iv. Defendant Goldberg has, to date, taken no adequate steps to ensure that Plaintiffs and persons within the CNMI seeking refugee/asylum/torture protection relief are not subject to refoulement to their countries of origin; and

b. A permanent injunction directing Defendants CNMI, Goldberg and the United States from subjecting Plaintiffs and others similarly situated (with respect to the CNMI Defendants) to refoulement;

c. A permanent injunction restraining and enjoining all Defendants and all others from arresting and/or imprisoning Plaintiffs and others similarly situated (with respect to the CNMI Defendants)

d. imposing upon Defendants U.S. and CNMI the requirement that those governments **immediately** create and perpetuate and implement a meaningful and impartial procedure for accepting and processing asylum applications within the

53

CNMI and for accepting and processing requests within the CNMI for protection from torture elsewhere; and

e. preserving the status quo pending the acceptance and processing, by U.S. officials and/or United Nations officials and/or both U.S. and United Nations officials of:

      (1)     Plaintiffs' pending I-590 asylum applications; and

      (2)     Plaintiffs' pending requests for protection under the 1985 Torture Convention.

5.  An order declaring the August 23, 1999, CNMI Supreme Court order, designated General Order No. 99-900, to be unlawful in its entirety, violative of the U.S. Constitution and violative of the CNMI Constitution because it:

a. deprives Plaintiff AHMED and others of their right to counsel of their choice;

b. deprives constitutional rights of those attorneys purported to have their previous *pro haec vice* admissions automatically terminated on September 30, 2000; and

c. is otherwise facially unconstitutional.

6.  On Count 7 of the Complaint, Judgment against Defendant Goldberg for compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial.

7.  On Count 8 of the Complaint, Judgment against all Defendants for the wrongful concealment from Plaintiffs and misrepresentations made to Plaintiffs of relevant information relating to their refuge/asylum status and applications and the remedies and rights and procedures available to them under United States and

International and Commonwealth law and damages against each defendant, jointly and severally, in an amount to be determined at trial.

8. On Count 9 of the Complaint, Judgment against all Defendants for the wrongful infliction of emotional distress suffered by Plaintiffs and damages against each defendant, jointly and severally, in an amount to be determined at trial.

9. On Count 10 of the Complaint, a Judgment estopping Defendants from denying the substance of their promises, inducements and/or public representations that had the purpose, intention and effect of misleading the Plaintiffs in order to persuade them to rely on such promises, inducements and/or public representations.

10. Granting Plaintiffs costs and attorneys' fees under all relevant statutory and common law provisions, including, without limitation, the CNMI Constitution, the Commonwealth Code and the United States Equal Access to Justice Act; and

11. Granting Plaintiffs such other and further relief which to this Court seems just and proper.


Dated: Saipan, MP
       July 13, 2001


                                      Bruce L. Jorgensen
                                      Attorney for Plaintiffs