

PUBLIC LAW 110–229—MAY 8, 2008

# CONSOLIDATED NATURAL RESOURCES ACT OF 2008



PUBLIC LAW 110–229—MAY 8, 2008  122 STAT. 853

"(A) 1862 Institutions (as defined in section 2 of the Agricultural Research, Extension, and Education Reform Act of 1998 (7 U.S.C. 7601));

"(B) 1890 Institutions (as defined in section 2 of that Act); and

"(C) 1994 Institutions (as defined in section 2 of that Act).

"(i) AUTHORIZATION OF APPROPRIATIONS.—In addition to amounts otherwise authorized to be appropriated in section 911, there are authorized to be appropriated for the program under this section such sums as may be appropriated.".

### SEC. 602. AMENDMENTS TO THE STEEL AND ALUMINUM ENERGY CONSERVATION AND TECHNOLOGY COMPETITIVENESS ACT OF 1988.

(a) AUTHORIZATION OF APPROPRIATIONS.—Section 9 of the Steel and Aluminum Energy Conservation and Technology Competitiveness Act of 1988 (15 U.S.C. 5108) is amended to read as follows:

"SEC. 9. AUTHORIZATION OF APPROPRIATIONS.

"There are authorized to be appropriated to the Secretary to carry out this Act $12,000,000 for each of the fiscal years 2008 through 2012.".

(b) STEEL PROJECT PRIORITIES.—Section 4(c)(1) of the Steel and Aluminum Energy Conservation and Technology Competitiveness Act of 1988 (15 U.S.C. 5103(c)(1)) is amended—

(1) in subparagraph (H), by striking "coatings for sheet steels" and inserting "sheet and bar steels"; and

(2) by adding at the end the following new subparagraph:

"(K) The development of technologies which reduce greenhouse gas emissions.".

(c) CONFORMING AMENDMENTS.—The Steel and Aluminum Energy Conservation and Technology Competitiveness Act of 1988 is further amended—

(1) by striking section 7 (15 U.S.C. 5106); and

(2) in section 8 (15 U.S.C. 5107), by inserting ", beginning with fiscal year 2008," after "close of each fiscal year".

# TITLE VII—NORTHERN MARIANA ISLANDS

## Subtitle A—Immigration, Security, and Labor

### SEC. 701. STATEMENT OF CONGRESSIONAL INTENT.

48 USC 1806 note.

(a) IMMIGRATION AND GROWTH.—In recognition of the need to ensure uniform adherence to long-standing fundamental immigration policies of the United States, it is the intention of the Congress in enacting this subtitle—

(1) to ensure that effective border control procedures are implemented and observed, and that national security and homeland security issues are properly addressed, by extending the immigration laws (as defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101 (a)(17)), to apply to the Commonwealth of the Northern Mariana Islands

122 STAT. 854 PUBLIC LAW 110–229—MAY 8, 2008

(referred to in this subtitle as the "Commonwealth"), with special provisions to allow for—

(A) the orderly phasing-out of the nonresident contract worker program of the Commonwealth; and

(B) the orderly phasing-in of Federal responsibilities over immigration in the Commonwealth; and

(2) to minimize, to the greatest extent practicable, potential adverse economic and fiscal effects of phasing-out the Commonwealth's nonresident contract worker program and to maximize the Commonwealth's potential for future economic and business growth by—

(A) encouraging diversification and growth of the economy of the Commonwealth in accordance with fundamental values underlying Federal immigration policy;

(B) recognizing local self-government, as provided for in the Covenant To Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America through consultation with the Governor of the Commonwealth;

(C) assisting the Commonwealth in achieving a progressively higher standard of living for citizens of the Commonwealth through the provision of technical and other assistance;

(D) providing opportunities for individuals authorized to work in the United States, including citizens of the freely associated states; and

(E) providing a mechanism for the continued use of alien workers, to the extent those workers continue to be necessary to supplement the Commonwealth's resident workforce, and to protect those workers from the potential for abuse and exploitation.

(b) AVOIDING ADVERSE EFFECTS.—In recognition of the Commonwealth's unique economic circumstances, history, and geographical location, it is the intent of the Congress that the Commonwealth be given as much flexibility as possible in maintaining existing businesses and other revenue sources, and developing new economic opportunities, consistent with the mandates of this subtitle. This subtitle, and the amendments made by this subtitle, should be implemented wherever possible to expand tourism and economic development in the Commonwealth, including aiding prospective tourists in gaining access to the Commonwealth's memorials, beaches, parks, dive sites, and other points of interest.

SEC. 702. IMMIGRATION REFORM FOR THE COMMONWEALTH.

(a) AMENDMENT TO JOINT RESOLUTION APPROVING COVENANT ESTABLISHING COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS.—The Joint Resolution entitled "A Joint Resolution to approve the 'Covenant To Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America', and for other purposes", approved March 24, 1976 (Public Law 94–241; 90 Stat. 263), is amended by adding at the end the following new section:

48 USC 1806.

"SEC. 6. IMMIGRATION AND TRANSITION.

"(a) APPLICATION OF THE IMMIGRATION AND NATIONALITY ACT AND ESTABLISHMENT OF A TRANSITION PROGRAM.—

Effective date.

"(1) IN GENERAL.—Subject to paragraphs (2) and (3), effective on the first day of the first full month commencing 1

PUBLIC LAW 110–229—MAY 8, 2008          122 STAT. 855

year after the date of enactment of the Consolidated Natural Resources Act of 2008 (hereafter referred to as the 'transition program effective date'), the provisions of the 'immigration laws' (as defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))) shall apply to the Commonwealth of the Northern Mariana Islands (referred to in this section as the 'Commonwealth'), except as otherwise provided in this section.

"(2) TRANSITION PERIOD.—There shall be a transition period beginning on the transition program effective date and ending on December 31, 2014, except as provided in subsections (b) and (d), during which the Secretary of Homeland Security, in consultation with the Secretary of State, the Attorney General, the Secretary of Labor, and the Secretary of the Interior, shall establish, administer, and enforce a transition program to regulate immigration to the Commonwealth, as provided in this section (hereafter referred to as the 'transition program').

"(3) DELAY OF COMMENCEMENT OF TRANSITION PERIOD.—

"(A) IN GENERAL.—The Secretary of Homeland Security, in the Secretary's sole discretion, in consultation with the Secretary of the Interior, the Secretary of Labor, the Secretary of State, the Attorney General, and the Governor of the Commonwealth, may determine that the transition program effective date be delayed for a period not to exceed more than 180 days after such date.

"(B) CONGRESSIONAL NOTIFICATION.—The Secretary of Homeland Security shall notify the Congress of a determination under subparagraph (A) not later than 30 days prior to the transition program effective date. *Deadline.*

"(C) CONGRESSIONAL REVIEW.—A delay of the transition program effective date shall not take effect until 30 days after the date on which the notification under subparagraph (B) is made. *Effective date.*

"(4) REQUIREMENT FOR REGULATIONS.—The transition program shall be implemented pursuant to regulations to be promulgated, as appropriate, by the head of each agency or department of the United States having responsibilities under the transition program.

"(5) INTERAGENCY AGREEMENTS.—The Secretary of Homeland Security, the Secretary of State, the Secretary of Labor, and the Secretary of the Interior shall negotiate and implement agreements among their agencies to identify and assign their respective duties so as to ensure timely and proper implementation of the provisions of this section. The agreements should address, at a minimum, procedures to ensure that Commonwealth employers have access to adequate labor, and that tourists, students, retirees, and other visitors have access to the Commonwealth without unnecessary delay or impediment. The agreements may also allocate funding between the respective agencies tasked with various responsibilities under this section.

"(6) CERTAIN EDUCATION FUNDING.—In addition to fees charged pursuant to section 286(m) of the Immigration and Nationality Act (8 U.S.C. 1356(m)) to recover the full costs of providing adjudication services, the Secretary of Homeland Security shall charge an annual supplemental fee of $150 per nonimmigrant worker to each prospective employer who is issued a permit under subsection (d) of this section during

the transition period. Such supplemental fee shall be paid into the Treasury of the Commonwealth government for the purpose of funding ongoing vocational educational curricula and program development by Commonwealth educational entities.

"(7) ASYLUM.—Section 208 of the Immigration and Nationality Act (8 U.S.C. 1158) shall not apply during the transition period to persons physically present in the Commonwealth or arriving in the Commonwealth (whether or not at a designated port of arrival), including persons brought to the Commonwealth after having been interdicted in international or United States waters.

"(b) NUMERICAL LIMITATIONS FOR NONIMMIGRANT WORKERS.—An alien, if otherwise qualified, may seek admission to Guam or to the Commonwealth during the transition program as a nonimmigrant worker under section 101(a)(15)(H) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(H)) without counting against the numerical limitations set forth in section 214(g) of such Act (8 U.S.C. 1184(g)). This subsection does not apply to any employment to be performed outside of Guam or the Commonwealth. Not later than 3 years following the transition program effective date, the Secretary of Homeland Security shall issue a report to the Committee on Energy and Natural Resources and the Committee on the Judiciary of the Senate and the Committee on Natural Resources and the Committee on the Judiciary of the House of Representatives projecting the number of asylum claims the Secretary anticipates following the termination of the transition period, the efforts the Secretary has made to ensure appropriate interdiction efforts, provide for appropriate treatment of asylum seekers, and prepare to accept and adjudicate asylum claims in the Commonwealth.

[margin: Deadline. Reports.]

"(c) NONIMMIGRANT INVESTOR VISAS.—

"(1) IN GENERAL.—Notwithstanding the treaty requirements in section 101(a)(15)(E) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(E)), during the transition period, the Secretary of Homeland Security may, upon the application of an alien, classify an alien as a CNMI-only nonimmigrant under section 101(a)(15)(E)(ii) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(E)(ii)) if the alien—

"(A) has been admitted to the Commonwealth in long-term investor status under the immigration laws of the Commonwealth before the transition program effective date;

"(B) has continuously maintained residence in the Commonwealth under long-term investor status;

"(C) is otherwise admissible; and

"(D) maintains the investment or investments that formed the basis for such long-term investor status.

"(2) REQUIREMENT FOR REGULATIONS.—Not later than 60 days before the transition program effective date, the Secretary of Homeland Security shall publish regulations in the Federal Register to implement this subsection.

[margin: Deadline. Federal Register, publication.]

"(d) SPECIAL PROVISION TO ENSURE ADEQUATE EMPLOYMENT; COMMONWEALTH ONLY TRANSITIONAL WORKERS.—An alien who is seeking to enter the Commonwealth as a nonimmigrant worker may be admitted to perform work during the transition period subject to the following requirements:

"(1) Such an alien shall be treated as a nonimmigrant described in section 101(a)(15) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)), including the ability to apply, if otherwise eligible, for a change of nonimmigrant classification under section 248 of such Act (8 U.S.C. 1258) or adjustment of status under this section and section 245 of such Act (8 U.S.C. 1255).

"(2) The Secretary of Homeland Security shall establish, administer, and enforce a system for allocating and determining the number, terms, and conditions of permits to be issued to prospective employers for each such nonimmigrant worker described in this subsection who would not otherwise be eligible for admission under the Immigration and Nationality Act (8 U.S.C. 1101 et seq.). In adopting and enforcing this system, the Secretary shall also consider, in good faith and not later than 30 days after receipt by the Secretary, any comments and advice submitted by the Governor of the Commonwealth. This system shall provide for a reduction in the allocation of permits for such workers on an annual basis to zero, during a period not to extend beyond December 31, 2014, unless extended pursuant to paragraph 5 of this subsection. In no event shall a permit be valid beyond the expiration of the transition period. This system may be based on any reasonable method and criteria determined by the Secretary of Homeland Security to promote the maximum use of, and to prevent adverse effects on wages and working conditions of, workers authorized to be employed in the United States, including lawfully admissible freely associated state citizen labor. No alien shall be granted nonimmigrant classification or a visa under this subsection unless the permit requirements established under this paragraph have been met. [Permits.] [Deadline.]

"(3) The Secretary of Homeland Security shall set the conditions for admission of such an alien under the transition program, and the Secretary of State shall authorize the issuance of nonimmigrant visas for such an alien. Such a visa shall not be valid for admission to the United States, as defined in section 101(a)(38) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(38)), except admission to the Commonwealth. An alien admitted to the Commonwealth on the basis of such a visa shall be permitted to engage in employment only as authorized pursuant to the transition program.

"(4) Such an alien shall be permitted to transfer between employers in the Commonwealth during the period of such alien's authorized stay therein, without permission of the employee's current or prior employer, within the alien's occupational category or another occupational category the Secretary of Homeland Security has found requires alien workers to supplement the resident workforce.

"(5)(A) Not later than 180 days prior to the expiration of the transition period, or any extension thereof, the Secretary of Labor, in consultation with the Secretary of Homeland Security, the Secretary of Defense, the Secretary of the Interior, and the Governor of the Commonwealth, shall ascertain the current and anticipated labor needs of the Commonwealth and determine whether an extension of up to 5 years of the provisions of this subsection is necessary to ensure an adequate number of workers will be available for legitimate businesses [Deadline.]

122 STAT. 858 PUBLIC LAW 110–229—MAY 8, 2008

in the Commonwealth. For the purpose of this subparagraph, a business shall not be considered legitimate if it engages directly or indirectly in prostitution, trafficking in minors, or any other activity that is illegal under Federal or local law. The determinations of whether a business is legitimate and to what extent, if any, it may require alien workers to supplement the resident workforce, shall be made by the Secretary of Homeland Security, in the Secretary's sole discretion.

Notice.
Federal Register, publication.

"(B) If the Secretary of Labor determines that such an extension is necessary to ensure an adequate number of workers for legitimate businesses in the Commonwealth, the Secretary of Labor may, through notice published in the Federal Register, provide for an additional extension period of up to 5 years.

"(C) In making the determination of whether alien workers are necessary to ensure an adequate number of workers for legitimate businesses in the Commonwealth, and if so, the number of such workers that are necessary, the Secretary of Labor may consider, among other relevant factors—

"(i) government, industry, or independent workforce studies reporting on the need, or lack thereof, for alien workers in the Commonwealth's businesses;

"(ii) the unemployment rate of United States citizen workers residing in the Commonwealth;

"(iii) the unemployment rate of aliens in the Commonwealth who have been lawfully admitted for permanent residence;

"(iv) the number of unemployed alien workers in the Commonwealth;

"(v) any good faith efforts to locate, educate, train, or otherwise prepare United States citizen residents, lawful permanent residents, and unemployed alien workers already within the Commonwealth, to assume those jobs;

"(vi) any available evidence tending to show that United States citizen residents, lawful permanent residents, and unemployed alien workers already in the Commonwealth are not willing to accept jobs of the type offered;

"(vii) the extent to which admittance of alien workers will affect the compensation, benefits, and living standards of existing workers within those industries and other industries authorized to employ alien workers; and

"(viii) the prior use, if any, of alien workers to fill those industry jobs, and whether the industry requires alien workers to fill those jobs.

"(6) The Secretary of Homeland Security may authorize the admission of a spouse or minor child accompanying or following to join a worker admitted pursuant to this subsection.

"(e) PERSONS LAWFULLY ADMITTED UNDER THE COMMONWEALTH IMMIGRATION LAW.—

"(1) PROHIBITION ON REMOVAL.—

"(A) IN GENERAL.—Subject to subparagraph (B), no alien who is lawfully present in the Commonwealth pursuant to the immigration laws of the Commonwealth on the transition program effective date shall be removed from the United States on the grounds that such alien's presence in the Commonwealth is in violation of section 212(a)(6)(A)

of the Immigration and Nationality Act (8 U.S.C. 1182(a)(6)(A)), until the earlier of the date—

"(i) of the completion of the period of the alien's admission under the immigration laws of the Commonwealth; or

"(ii) that is 2 years after the transition program effective date.

"(B) LIMITATIONS.—Nothing in this subsection shall be construed to prevent or limit the removal under subparagraph 212(a)(6)(A) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(6)(A)) of such an alien at any time, if the alien entered the Commonwealth after the date of enactment of the Consolidated Natural Resources Act of 2008, and the Secretary of Homeland Security has determined that the Government of the Commonwealth has violated section 702(i) of the Consolidated Natural Resources Act of 2008.

"(2) EMPLOYMENT AUTHORIZATION.—An alien who is lawfully present and authorized to be employed in the Commonwealth pursuant to the immigration laws of the Commonwealth on the transition program effective date shall be considered authorized by the Secretary of Homeland Security to be employed in the Commonwealth until the earlier of the date—

"(A) of expiration of the alien's employment authorization under the immigration laws of the Commonwealth; or

"(B) that is 2 years after the transition program effective date.

"(3) REGISTRATION.—The Secretary of Homeland Security may require any alien present in the Commonwealth on or after the transition period effective date to register with the Secretary in such a manner, and according to such schedule, as he may in his discretion require. Paragraphs (1) and (2) of this subsection shall not apply to any alien who fails to comply with such registration requirement. Notwithstanding any other law, the Government of the Commonwealth shall provide to the Secretary all Commonwealth immigration records or other information that the Secretary deems necessary to assist the implementation of this paragraph or other provisions of the Consolidated Natural Resources Act of 2008. Nothing in this paragraph shall modify or limit section 262 of the Immigration and Nationality Act (8 U.S.C. 1302) or other provision of the Immigration and Nationality Act relating to the registration of aliens.

Records.

"(4) REMOVABLE ALIENS.—Except as specifically provided in paragraph (1)(A) of this subsection, nothing in this subsection shall prohibit or limit the removal of any alien who is removable under the Immigration and Nationality Act.

"(5) PRIOR ORDERS OF REMOVAL.—The Secretary of Homeland Security may execute any administratively final order of exclusion, deportation or removal issued under authority of the immigration laws of the United States before, on, or after the transition period effective date, or under authority of the immigration laws of the Commonwealth before the transition period effective date, upon any subject of such order found in the Commonwealth on or after the transition period effective date, regardless whether the alien has previously been removed

from the United States or the Commonwealth pursuant to such order.

"(f) EFFECT ON OTHER LAWS.—The provisions of this section and of the immigration laws, as defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)), shall, on the transition program effective date, supersede and replace all laws, provisions, or programs of the Commonwealth relating to the admission of aliens and the removal of aliens from the Commonwealth.

"(g) ACCRUAL OF TIME FOR PURPOSES OF SECTION 212(A)(9)(B) OF THE IMMIGRATION AND NATIONALITY ACT.—No time that an alien is present in the Commonwealth in violation of the immigration laws of the Commonwealth shall be counted for purposes of inadmissibility under section 212(a)(9)(B) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(9)(B)).

"(h) REPORT ON NONRESIDENT GUESTWORKER POPULATION.— The Secretary of the Interior, in consultation with the Secretary of Homeland Security, and the Governor of the Commonwealth, shall report to the Congress not later than 2 years after the date of enactment of the Consolidated Natural Resources Act of 2008. The report shall include—

"(1) the number of aliens residing in the Commonwealth;

"(2) a description of the legal status (under Federal law) of such aliens;

"(3) the number of years each alien has been residing in the Commonwealth;

"(4) the current and future requirements of the Commonwealth economy for an alien workforce; and

"(5) such recommendations to the Congress, as the Secretary may deem appropriate, related to whether or not the Congress should consider permitting lawfully admitted guest workers lawfully residing in the Commonwealth on such enactment date to apply for long-term status under the immigration and nationality laws of the United States.".

(b) WAIVER OF REQUIREMENTS FOR NONIMMIGRANT VISITORS.— The Immigration and Nationality Act (8 U.S.C. 1101 et seq.) is amended—

(1) in section 214(a)(1) (8 U.S.C. 1184(a)(1))—

(A) by striking "Guam" each place such term appears and inserting "Guam or the Commonwealth of the Northern Mariana Islands"; and

(B) by striking "fifteen" and inserting "45";

(2) in section 212(a)(7)(B) (8 U.S.C. 1182(a)(7)(B)), by amending clause (iii) to read as follows:

"(iii) GUAM AND NORTHERN MARIANA ISLANDS VISA WAIVER.—For provision authorizing waiver of clause (i) in the case of visitors to Guam or the Commonwealth of the Northern Mariana Islands, see subsection (l)."; and

(3) by amending section 212(l) (8 U.S.C. 1182(l)) to read as follows:

"(l) GUAM AND NORTHERN MARIANA ISLANDS VISA WAIVER PROGRAM.—

"(1) IN GENERAL.—The requirement of subsection (a)(7)(B)(i) may be waived by the Secretary of Homeland Security, in the case of an alien applying for admission as a nonimmigrant visitor for business or pleasure and solely for entry into and

stay in Guam or the Commonwealth of the Northern Mariana Islands for a period not to exceed 45 days, if the Secretary of Homeland Security, after consultation with the Secretary of the Interior, the Secretary of State, the Governor of Guam and the Governor of the Commonwealth of the Northern Mariana Islands, determines that—

"(A) an adequate arrival and departure control system has been developed in Guam and the Commonwealth of the Northern Mariana Islands; and

"(B) such a waiver does not represent a threat to the welfare, safety, or security of the United States or its territories and commonwealths.

"(2) ALIEN WAIVER OF RIGHTS.—An alien may not be provided a waiver under this subsection unless the alien has waived any right—

"(A) to review or appeal under this Act an immigration officer's determination as to the admissibility of the alien at the port of entry into Guam or the Commonwealth of the Northern Mariana Islands; or

"(B) to contest, other than on the basis of an application for withholding of removal under section 241(b)(3) of this Act or under the Convention Against Torture, or an application for asylum if permitted under section 208, any action for removal of the alien.

"(3) REGULATIONS.—All necessary regulations to implement this subsection shall be promulgated by the Secretary of Homeland Security, in consultation with the Secretary of the Interior and the Secretary of State, on or before the 180th day after the date of enactment of the Consolidated Natural Resources Act of 2008. The promulgation of such regulations shall be considered a foreign affairs function for purposes of section 553(a) of title 5, United States Code. At a minimum, such regulations should include, but not necessarily be limited to— *Deadline.*

"(A) a listing of all countries whose nationals may obtain the waiver also provided by this subsection, except that such regulations shall provide for a listing of any country from which the Commonwealth has received a significant economic benefit from the number of visitors for pleasure within the one-year period preceding the date of enactment of the Consolidated Natural Resources Act of 2008, unless the Secretary of Homeland Security determines that such country's inclusion on such list would represent a threat to the welfare, safety, or security of the United States or its territories; and

"(B) any bonding requirements for nationals of some or all of those countries who may present an increased risk of overstays or other potential problems, if different from such requirements otherwise provided by law for nonimmigrant visitors.

"(4) FACTORS.—In determining whether to grant or continue providing the waiver under this subsection to nationals of any country, the Secretary of Homeland Security, in consultation with the Secretary of the Interior and the Secretary of State, shall consider all factors that the Secretary deems relevant, including electronic travel authorizations, procedures for reporting lost and stolen passports, repatriation of aliens, rates

of refusal for nonimmigrant visitor visas, overstays, exit systems, and information exchange.

"(5) SUSPENSION.—The Secretary of Homeland Security shall monitor the admission of nonimmigrant visitors to Guam and the Commonwealth of the Northern Mariana Islands under this subsection. If the Secretary determines that such admissions have resulted in an unacceptable number of visitors from a country remaining unlawfully in Guam or the Commonwealth of the Northern Mariana Islands, unlawfully obtaining entry to other parts of the United States, or seeking withholding of removal or asylum, or that visitors from a country pose a risk to law enforcement or security interests of Guam or the Commonwealth of the Northern Mariana Islands or of the United States (including the interest in the enforcement of the immigration laws of the United States), the Secretary shall suspend the admission of nationals of such country under this subsection. The Secretary of Homeland Security may in the Secretary's discretion suspend the Guam and Northern Mariana Islands visa waiver program at any time, on a country-by-country basis, for other good cause.

"(6) ADDITION OF COUNTRIES.—The Governor of Guam and the Governor of the Commonwealth of the Northern Mariana Islands may request the Secretary of the Interior and the Secretary of Homeland Security to add a particular country to the list of countries whose nationals may obtain the waiver provided by this subsection, and the Secretary of Homeland Security may grant such request after consultation with the Secretary of the Interior and the Secretary of State, and may promulgate regulations with respect to the inclusion of that country and any special requirements the Secretary of Homeland Security, in the Secretary's sole discretion, may impose prior to allowing nationals of that country to obtain the waiver provided by this subsection.".

(c) SPECIAL NONIMMIGRANT CATEGORIES FOR GUAM AND THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS.—The Governor of Guam and the Governor of the Commonwealth of the Northern Mariana Islands (referred to in this subsection as "CNMI") may request that the Secretary of Homeland Security study the feasibility of creating additional Guam or CNMI-only nonimmigrant visas to the extent that existing nonimmigrant visa categories under the Immigration and Nationality Act do not provide for the type of visitor, the duration of allowable visit, or other circumstance. The Secretary of Homeland Security may review such a request, and, after consultation with the Secretary of State and the Secretary of the Interior, shall issue a report to the Committee on Energy and Natural Resources and the Committee on the Judiciary of the Senate and the Committee on Natural Resources and the Committee on the Judiciary of the House of Representatives with respect to the feasibility of creating those additional Guam or CNMI-only visa categories. Consideration of such additional Guam or CNMI-only visa categories may include, but are not limited to, special nonimmigrant statuses for investors, students, and retirees, but shall not include nonimmigrant status for the purpose of employment in Guam or the CNMI.

(d) INSPECTION OF PERSONS ARRIVING FROM THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS; GUAM AND NORTHERN MARIANA ISLANDS-ONLY VISAS NOT VALID FOR ENTRY INTO OTHER

PUBLIC LAW 110–229—MAY 8, 2008          122 STAT. 863

PARTS OF THE UNITED STATES.—Section 212(d)(7) of the Immigration and Nationality Act (8 U.S.C. 1182(d)(7)) is amended by inserting "the Commonwealth of the Northern Mariana Islands," after "Guam,".

(e) TECHNICAL ASSISTANCE PROGRAM.—   48 USC 1807.

(1) IN GENERAL.—The Secretary of the Interior, in consultation with the Governor of the Commonwealth, the Secretary of Labor, and the Secretary of Commerce, and as provided in the Interagency Agreements required to be negotiated under section 6(a)(4) of the Joint Resolution entitled "A Joint Resolution to approve the 'Covenant To Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America', and for other purposes", approved March 24, 1976 (Public Law 94–241), as added by subsection (a), shall provide—

(A) technical assistance and other support to the Commonwealth to identify opportunities for, and encourage diversification and growth of, the economy of the Commonwealth;

(B) technical assistance, including assistance in recruiting, training, and hiring of workers, to assist employers in the Commonwealth in securing employees first from among United States citizens and nationals resident in the Commonwealth and if an adequate number of such workers are not available, from among legal permanent residents, including lawfully admissible citizens of the freely associated states; and

(C) technical assistance, including assistance to identify types of jobs needed, identify skills needed to fulfill such jobs, and assistance to Commonwealth educational entities to develop curricula for such job skills to include training teachers and students for such skills.

(2) CONSULTATION.—In providing such technical assistance under paragraph (1), the Secretaries shall—

(A) consult with the Government of the Commonwealth, local businesses, regional banks, educational institutions, and other experts in the economy of the Commonwealth; and

(B) assist in the development and implementation of a process to identify opportunities for and encourage diversification and growth of the economy of the Commonwealth and to identify and encourage opportunities to meet the labor needs of the Commonwealth.

(3) COST-SHARING.—For the provision of technical assistance or support under this paragraph (other than that required to pay the salaries and expenses of Federal personnel), the Secretary of the Interior shall require a non-Federal matching contribution of 10 percent.

(f) OPERATIONS.—   48 USC 1808.

(1) ESTABLISHMENT.—At any time on and after the date of enactment of this Act, the Attorney General, Secretary of Homeland Security, and the Secretary of Labor may establish and maintain offices and other operations in the Commonwealth for the purpose of carrying out duties under—

(A) the Immigration and Nationality Act (8 U.S.C. 1101 et seq.); and

122 STAT. 864 PUBLIC LAW 110–229—MAY 8, 2008

(B) the transition program established under section 6 of the Joint Resolution entitled "A Joint Resolution to approve the 'Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America', and for other purposes", approved March 24, 1976 (Public Law 94–241), as added by subsection (a).

(2) PERSONNEL.—To the maximum extent practicable and consistent with the satisfactory performance of assigned duties under applicable law, the Attorney General, Secretary of Homeland Security, and the Secretary of Labor shall recruit and hire personnel from among qualified United States citizens and national applicants residing in the Commonwealth to serve as staff in carrying out operations described in paragraph (1).

(g) CONFORMING AMENDMENTS TO PUBLIC LAW 94–241.—

48 USC 1801 note.

(1) AMENDMENTS.—Public Law 94–241 is amended as follows:

(A) In section 503 of the covenant set forth in section 1, by striking subsection (a) and redesignating subsections (b) and (c) as subsections (a) and (b), respectively.

(B) By striking section 506 of the covenant set forth in section 1.

(C) In section 703(b) of the covenant set forth in section 1, by striking "quarantine, passport, immigration and naturalization" and inserting "quarantine and passport".

48 USC 1801 note.

(2) EFFECTIVE DATE.—The amendments made by paragraph (1) shall take effect on the transition program effective date described in section 6 of Public Law 94–241 (as added by subsection (a)).

(h) REPORTS TO CONGRESS.—

President.
48 USC 1806 note.

(1) IN GENERAL.—Not later than March 1 of the first year that is at least 2 full years after the date of enactment of this subtitle, and annually thereafter, the President shall submit to the Committee on Energy and Natural Resources and the Committee on the Judiciary of the Senate and the Committee on Natural Resources and the Committee on the Judiciary of the House of Representatives a report that evaluates the overall effect of the transition program established under section 6 of the Joint Resolution entitled "A Joint Resolution to approve the 'Covenant To Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America', and for other purposes", approved March 24, 1976 (Public Law 94–241), as added by subsection (a), and the Immigration and Nationality Act (8 U.S.C. 1101 et seq.) on the Commonwealth.

48 USC 1806 note.

(2) CONTENTS.—In addition to other topics otherwise required to be included under this subtitle or the amendments made by this subtitle, each report submitted under paragraph (1) shall include a description of the efforts that have been undertaken during the period covered by the report to diversify and strengthen the local economy of the Commonwealth, including efforts to promote the Commonwealth as a tourist destination. The report by the President shall include an estimate for the numbers of nonimmigrant workers described under section 101(a)(15)(H) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(H)) necessary to avoid adverse economic effects in Guam and the Commonwealth.

(3) GAO REPORT.—The Government Accountability Office shall submit a report to the Congress not later than 2 years after the date of enactment of this Act, to include, at a minimum, the following items:

(A) An assessment of the implementation of this subtitle and the amendments made by this subtitle, including an assessment of the performance of Federal agencies and the Government of the Commonwealth in meeting congressional intent.

(B) An assessment of the short-term and long-term impacts of implementation of this subtitle and the amendments made by this subtitle on the economy of the Commonwealth, including its ability to obtain workers to supplement its resident workforce and to maintain access to its tourists and customers, and any effect on compliance with United States treaty obligations mandating non-refoulement for refugees.

(C) An assessment of the economic benefit of the investors "grandfathered" under subsection (c) of section 6 of the Joint Resolution entitled "A Joint Resolution to approve the 'Covenant To Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America', and for other purposes", approved March 24, 1976 (Public Law 94–241), as added by subsection (a), and the Commonwealth's ability to attract new investors after the date of enactment of this Act.

(D) An assessment of the number of illegal aliens in the Commonwealth, including any Federal and Commonwealth efforts to locate and repatriate them.

(4) REPORTS BY THE LOCAL GOVERNMENT.—The Governor of the Commonwealth may submit an annual report to the President on the implementation of this subtitle, and the amendments made by this subtitle, with recommendations for future changes. The President shall forward the Governor's report to the Congress with any Administration comment after an appropriate period of time for internal review, provided that nothing in this paragraph shall be construed to require the President to provide any legislative recommendation to the Congress. [48 USC 1806 note.] [President.]

(5) REPORT ON FEDERAL PERSONNEL AND RESOURCE REQUIREMENTS.—Not later than 180 days after the date of enactment of this Act, the Secretary of Homeland Security, after consulting with the Secretary of the Interior and other departments and agencies as may be deemed necessary, shall submit a report to the Committee on Natural Resources, the Committee on Homeland Security, and the Committee on the Judiciary of the House of Representatives, and to the Committee on Energy and Natural Resources, the Committee on Homeland Security and Governmental Affairs, and the Committee on the Judiciary of the Senate, on the current and planned levels of Transportation Security Administration, United States Customs and Border Protection, United States Immigration and Customs Enforcement, United States Citizenship and Immigration Services, and United States Coast Guard

personnel and resources necessary for fulfilling mission requirements on Guam and the Commonwealth in a manner comparable to the level provided at other similar ports of entry in the United States. In fulfilling this reporting requirement, the Secretary shall consider and anticipate the increased requirements due to the proposed realignment of military forces on Guam and in the Commonwealth and growth in the tourism sector.

48 USC 1806 note.

(i) REQUIRED ACTIONS PRIOR TO TRANSITION PROGRAM EFFECTIVE DATE.—During the period beginning on the date of enactment of this Act and ending on the transition program effective date described in section 6 of Public Law 94–241 (as added by subsection (a)), the Government of the Commonwealth shall—

(1) not permit an increase in the total number of alien workers who are present in the Commonwealth as of the date of enactment of this Act; and

(2) administer its nonrefoulement protection program—

(A) according to the terms and procedures set forth in the Memorandum of Agreement entered into between the Commonwealth of the Northern Mariana Islands and the United States Department of Interior, Office of Insular Affairs, executed on September 12, 2003 (which terms and procedures, including but not limited to funding by the Secretary of the Interior and performance by the Secretary of Homeland Security of the duties of "Protection Consultant" to the Commonwealth, shall have effect on and after the date of enactment of this Act), as well as CNMI Public Law 13–61 and the Immigration Regulations Establishing a Procedural Mechanism for Persons Requesting Protection from Refoulement; and

(B) so as not to remove or otherwise effect the involuntary return of any alien whom the Protection Consultant has determined to be eligible for protection from persecution or torture.

(j) CONFORMING AMENDMENTS TO THE IMMIGRATION AND NATIONALITY ACT.—The Immigration and Nationality Act (8 U.S.C. 1101 et seq.) is amended—

8 USC 1101.

(1) in section 101(a)(15)(D)(ii), by inserting "or the Commonwealth of the Northern Mariana Islands" after "Guam" each time such term appears;

(2) in section 101(a)(36), by striking "and the Virgin Islands of the United States" and inserting "the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands";

(3) in section 101(a)(38), by striking "and the Virgin Islands of the United States" and inserting "the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands";

8 USC 1158. Applicability.

(4) in section 208, by adding at the end the following:

"(e) COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS.— The provisions of this section and section 209(b) shall apply to persons physically present in the Commonwealth of the Northern Mariana Islands or arriving in the Commonwealth (whether or not at a designated port of arrival and including persons who are brought to the Commonwealth after having been interdicted in international or United States waters) only on or after January 1, 2014."; and

(5) in section 235(b)(1), by adding at the end the following:   8 USC 1225.
"(G) COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS.—Nothing in this subsection shall be construed to authorize or require any person described in section 208(e) to be permitted to apply for asylum under section 208 at any time before January 1, 2014.".

(k) AVAILABILITY OF OTHER NONIMMIGRANT PROFESSIONALS.—   8 USC 1182 note.
The requirements of section 212(m)(6)(B) of the Immigration and Nationality Act (8 U.S.C. 1182(m)(6)(B)) shall not apply to a facility in Guam, the Commonwealth of the Northern Mariana Islands, or the Virgin Islands.

### SEC. 703. FURTHER AMENDMENTS TO PUBLIC LAW 94–241.

Public Law 94–241, as amended, is further amended in section 4(c)(3) by striking the colon after "Marshall Islands" and inserting   48 USC 1804.
the following: ", except that $200,000 in fiscal year 2009 and $225,000 annually for fiscal years 2010 through 2018 are hereby rescinded; Provided, That the amount rescinded shall be increased by the same percentage as that of the annual salary and benefit adjustments for Members of Congress".

### SEC. 704. AUTHORIZATION OF APPROPRIATIONS.

There are authorized to be appropriated such sums as may be necessary to carry out this subtitle.

### SEC. 705. EFFECTIVE DATE.

(a) IN GENERAL.—Except as specifically provided in this section   48 USC 1806 note.
or otherwise in this subtitle, this subtitle and the amendments made by this subtitle shall take effect on the date of enactment of this Act.

(b) AMENDMENTS TO THE IMMIGRATION AND NATIONALITY ACT.— The amendments to the Immigration and Nationality Act made by this subtitle, and other provisions of this subtitle applying the immigration laws (as defined in section 101(a)(17) of Immigration and Nationality Act (8 U.S.C. 1101(a)(17))) to the Commonwealth, shall take effect on the transition program effective date described in section 6 of Public Law 94–241 (as added by section 702(a)), unless specifically provided otherwise in this subtitle.

(c) CONSTRUCTION.—Nothing in this subtitle or the amendments made by this subtitle shall be construed to make any residence or presence in the Commonwealth before the transition program effective date described in section 6 of Public Law 94–241 (as added by section 702(a)) residence or presence in the United States, except that, for the purpose only of determining whether an alien lawfully admitted for permanent residence (as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20))) has abandoned or lost such status by reason of absence from the United States, such alien's presence in the Commonwealth before, on, or after the date of enactment of this Act shall be considered to be presence in the United States.

122 STAT. 868 PUBLIC LAW 110–229—MAY 8, 2008

## Subtitle B—Northern Mariana Islands Delegate

48 USC 1751.

SEC. 711. DELEGATE TO HOUSE OF REPRESENTATIVES FROM COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS.

The Commonwealth of the Northern Mariana Islands shall be represented in the United States Congress by the Resident Representative to the United States authorized by section 901 of the Covenant To Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America (approved by Public Law 94–241 (48 U.S.C. 1801 et seq.)). The Resident Representative shall be a nonvoting Delegate to the House of Representatives, elected as provided in this subtitle.

48 USC 1752.

SEC. 712. ELECTION OF DELEGATE.

(a) ELECTORS AND TIME OF ELECTION.—The Delegate shall be elected—
 (1) by the people qualified to vote for the popularly elected officials of the Commonwealth of the Northern Mariana Islands; and
 (2) at the Federal general election of 2008 and at such Federal general election every 2d year thereafter.
(b) MANNER OF ELECTION.—
 (1) IN GENERAL.—The Delegate shall be elected at large and by a plurality of the votes cast for the office of Delegate.
 (2) EFFECT OF ESTABLISHMENT OF PRIMARY ELECTIONS.—Notwithstanding paragraph (1), if the Government of the Commonwealth of the Northern Mariana Islands, acting pursuant to legislation enacted in accordance with the Constitution of the Commonwealth of the Northern Mariana Islands, provides for primary elections for the election of the Delegate, the Delegate shall be elected by a majority of the votes cast in any general election for the office of Delegate for which such primary elections were held.
(c) VACANCY.—In case of a permanent vacancy in the office of Delegate, the office of Delegate shall remain vacant until a successor is elected and qualified.
(d) COMMENCEMENT OF TERM.—The term of the Delegate shall commence on the 3d day of January following the date of the election.

48 USC 1753.

SEC. 713. QUALIFICATIONS FOR OFFICE OF DELEGATE.

To be eligible for the office of Delegate a candidate shall—
 (1) be at least 25 years of age on the date of the election;
 (2) have been a citizen of the United States for at least 7 years prior to the date of the election;
 (3) be a resident and domiciliary of the Commonwealth of the Northern Mariana Islands for at least 7 years prior to the date of the election;
 (4) be qualified to vote in the Commonwealth of the Northern Mariana Islands on the date of the election; and
 (5) not be, on the date of the election, a candidate for any other office.