# MEMORANDUM OF AGREEMENT
## BETWEEN THE
## U.S. DEPARTMENT OF INTERIOR, OFFICE OF INSULAR AFFAIRS
## AND THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

**WHEREAS**, the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant") provides that, with certain limited exceptions, the immigration and naturalization laws of the United States currently do not apply to the Commonwealth of the Northern Mariana Islands ("Commonwealth");

**WHEREAS**, because the Commonwealth is not within the United States for purposes of the Immigration and Nationality Act ("INA" or "the Act"), see section 101(a)(38) of the Act, 8 U.S.C. § 1101(a)(38), aliens physically present in the Commonwealth currently do not have a right to apply for asylum or withholding of removal under section 208 or 241(b)(3) of the INA, 8 U.S.C. §§ 1158, 1231(b)(3);

**WHEREAS**, as a self-governing commonwealth in political union with and under the sovereignty of the United States, the Commonwealth is covered by certain treaty obligations of the United States, including obligations under the 1967 United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6224, 606 U.N.T.S. 8791 ("Protocol"), and the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, opened for signature Feb. 4, 1985, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 ("Convention Against Torture");

**WHEREAS**, the United States Department of the Interior, Office of Insular Affairs ("OIA") and the Commonwealth recognize the need to provide international protection as required by the Protocol and the Convention Against Torture to persons physically present in the Commonwealth; and

**WHEREAS**, the OIA and the Commonwealth recognize the need for effective federal and local law enforcement cooperation in addressing the problem of alien smuggling and trafficking in persons:

The OIA and the Commonwealth do hereby enter into a Memorandum of Agreement, and thereby agree to the following:

1) The Commonwealth will undertake, with the assistance of the Protection Consultant (as defined below) as described herein, to exercise its authority over immigration in a way that is consistent with the obligations of the United States under the Protocol and the Convention Against Torture. For the purposes of this Memorandum of Agreement, "Protection Consultant" shall mean the U.S.

COMMONWEALTH'S EXHIBIT I

Memorandum of Agreement Between the U.S. Department of the Interior, Office of Insular Affairs and the
Commonwealth of the Northern Mariana Islands

Department of Homeland Security, Bureau of Citizenship and Immigration Services ("BCIS") or, in the event that the BCIS does not agree to perform the obligations of the Protection Consultant hereunder in accordance with the terms and conditions set forth herein, "Protection Consultant" shall mean such other entity as the parties hereto shall mutually agree. The Commonwealth will create and maintain a procedural mechanism that provides a meaningful opportunity for an alien physically present in the Commonwealth to request, directly or through a representative, protection required by the Protocol or the Convention Against Torture. The Commonwealth will not remove or otherwise effect the involuntary return of an alien who has made such a request until that claim has been assessed and finally decided.

2)  Promptly following the execution of this Memorandum of Agreement, the Commonwealth and the OIA shall jointly request the BCIS to undertake to perform the duties of the Protection Consultant hereunder. The parties acknowledge that the BCIS shall be under no obligation to approve the foregoing request. The OIA shall offer to enter into an agreement with the Protection Consultant pursuant to which the OIA will agree to reimburse the Protection Consultant for the reasonable expenses of performing its duties hereunder in an amount not to exceed $300,000 per twelve-month period for two consecutive twelve-month periods. The parties acknowledge that the Protection Consultant will not be obligated to perform services hereunder that the OIA has not agreed to reimburse, and that the OIA and the Protection Consultant will not be obligated to devote resources to perform their respective duties hereunder in excess of the amount that the OIA will offer to reimburse pursuant to this Paragraph 2. For a period not to exceed two years from the date that BCIS or any other entity mutually acceptable to the parties commences the duties of the Protection Consultant hereunder (such two-year period, the "Performance Period"), the Protection Consultant will:

   (a) Subject to the limitations set forth in this Paragraph 2, accommodate reasonable requests by the Commonwealth to assist the Commonwealth in complying with the international obligations described in Paragraph 1 by providing reasonably available personnel to assess claims for protection under the Protocol or the Convention Against Torture and to advise the Commonwealth on the development of laws, regulations, policies and procedures that comply with such international obligations;

   (b) Upon assessing a claim for protection, advise the Commonwealth whether the claimant must be provided protection;

   (c) Provide Commonwealth officials with training in refugee law and the applicable requirements of the Convention Against Torture, interview techniques, and the necessary expertise to consider and assess claims for protection without the assistance of the United States Government; and

Memorandum of Agreement Between the U.S. Department of the Interior, Office of
Insular Affairs and the
Commonwealth of the Northern Mariana Islands

    (d) Assist the Commonwealth with the performance of identity and derogatory information (e.g., criminal history, national security-related information) database checks of applicants for protection in the Commonwealth under the Protocol or the Convention Against Torture, provided that such assistance is subject to any and all applicable laws, treaties, regulations, policies, agreements, or other such restrictions or conditions on access to or the disclosure of such information.

    The parties intend for Commonwealth officials to perform these functions by the conclusion of the Performance Period and upon the agreement of the Protection Consultant. The OIA will use its best efforts to cause the assistance described in Subparagraph 2(d) to continue to be provided beyond the Performance Period.

3)    The Commonwealth agrees not to remove or otherwise effect the involuntary return of any alien physically present in the Commonwealth who (a) expresses a fear of persecution or torture, (b) has been determined by the Commonwealth to qualify for protection in the Commonwealth under the Protocol or the Convention Against Torture and (c) continues to be eligible for such protection. Further, the Commonwealth agrees not to remove or otherwise effect the involuntary return of any alien whom the Protection Consultant has determined during the Performance Period to be eligible for protection in the Commonwealth under the Protocol or the Convention Against Torture, provided that the alien continues to be eligible for such protection. This paragraph shall not preclude the Commonwealth from removing such an alien, for the purpose of relocation or resettlement as described in Paragraph 5 below, to a country where the alien would not face a clear probability of persecution or torture for purposes of the Protocol and Convention Against Torture.

4)    The Commonwealth will accommodate reasonable requests by the Protection Consultant to monitor the Commonwealth's process for accepting claims for protection and the Commonwealth's assessment of those claims. The Commonwealth will implement any changes to its protection regime that are necessary to ensure compliance with the Protocol or the Convention Against Torture. The Commonwealth and the OIA (in consultation with the Protection Consultant) agree to good-faith consultation regarding the necessity and nature of any such changes.

5)    The Protection Consultant (with the assistance of the Department of State and, if it is not the Protection Consultant, the BCIS) and the Commonwealth will cooperate in finding a durable solution for any alien identified as meriting protection under the Protocol or the Convention Against Torture. Consistent with the Covenant, however, no person applying for or accorded protection under the Protocol or Convention Against Torture in the Commonwealth will be relocated to or resettled in the United States, as defined in section 101(a)(38) of the INA, on

**Memorandum of Agreement Between the U.S. Department of the Interior, Office of Insular Affairs and the Commonwealth of the Northern Mariana Islands**

account of his or her protection claim or protection status in the Commonwealth. Further consistent with the Covenant, and except as provided in Paragraph 9 of this Memorandum of Agreement and except to the extent assistance will be provided to the Commonwealth under Paragraph 2 of this Memorandum of Agreement, the United States Government will not accept or consider requests or applications for protection under the Protocol, the Convention Against Torture, or the INA by persons physically present in the Commonwealth.

6) The Commonwealth is committed to cooperating with the United States Government in investigating, preventing, and prosecuting the illegal movement of persons to the United States through the Commonwealth. The Commonwealth agrees that promptly, and not later than six months, following execution of this Memorandum of Agreement, the executive and legislative branches of the Commonwealth will draft, introduce, and make best efforts to have enacted legislation to establish as criminal offenses when committed intentionally:

   a) The smuggling of migrants or trafficking in persons;

   b) The production, procurement, possession, sale, and distribution of fraudulent documents when committed for the purpose of unlawful or fraudulent entry into the United States or the Commonwealth;

   c) Attempting to commit an offense set forth in subparagraphs a) and b) of this paragraph;

   d) Conspiracy to commit an offense set forth in subparagraphs a) and b) of this paragraph;

   e) Participating as an accomplice in the offenses set forth in subparagraphs a) and b) of this paragraph;

   f) Organizing or directing others to commit any offense set forth in subparagraphs a) and b) of this paragraph.

7) The legislation described in Paragraph 6 of this Memorandum of Agreement will permit cooperation between the Commonwealth and the United States with respect to the enforcement of those anti-smuggling and anti-trafficking provisions.

8) The parties agree to work cooperatively with other agencies of the United States Government, including, without limitation, the U.S. Department of Homeland Security, in implementing and enforcing the provisions of the Trafficking Victims Protection Act of 2000 ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (Oct. 28, 2000), that are applicable to the Commonwealth, see, e.g., section 107(e) of the TVPA; section 101(a)(15)(T) of the INA, 8 U.S.C. § 1101(a)(15)(T). In that effort, the Commonwealth, among other things, agrees to assist United States Government authorities in investigating and prosecuting acts of trafficking and identifying and protecting victims of trafficking.

4

**Memorandum of Agreement Between the U.S. Department of the Interior, Office of Insular Affairs and the Commonwealth of the Northern Mariana Islands**

9) This Memorandum of Agreement will not apply to aliens brought to the Commonwealth after having been interdicted by the United States (a) in international waters or (b) in waters or on vessels subject to the jurisdiction of the United States or the Commonwealth. In such cases, the United States Government will implement protection procedures consistent with the Protocol and Convention Against Torture.

10) Neither this Memorandum of Agreement nor any agency guidelines, procedures, instructions, directives, or rules or regulations implementing this Memorandum of Agreement in the United States or the Commonwealth will create, or will be construed to create, any right or benefit, substantive or procedural (including without limitation any right or benefit under any law or regulation of the United States or the Commonwealth) legally enforceable by any third party against the United States or the Commonwealth, their agencies or instrumentalities, officers, employees, or any other person. Nor shall this Memorandum of Agreement be construed to require any specific procedures for determining whether a person merits protection under the Protocol or Convention Against Torture.

11) This Memorandum of Agreement shall become effective upon the commencement of the Performance Period.

David B. Cohen
Deputy Assistant Secretary of the Interior
Office of Insular Affairs
U.S. Department of the Interior
Date: September 12, 2003

Juan N. Babauta
Governor
Commonwealth of the Northern Mariana Islands
Date: 09/12/03

# LETTER OF UNDERSTANDING

## BETWEEN

## U.S. CITIZENSHIP AND IMMIGRATION SERVICES

## ASYLUM DIVISION AND THE

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## OFFICE OF REFUGEE PROTECTION

On September 12, 2003, the U.S. Department of the Interior, Office of Insular Affairs and the Commonwealth of the Northern Mariana Islands (Commonwealth) entered into a *Memorandum of Agreement* (MOA) which established the role of the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS, formerly known as BCIS) as Protection Consultant to assist the Commonwealth in the creation and maintenance of a procedural mechanism to provide a meaningful opportunity for aliens in the Commonwealth to request protection pursuant to the United Nations Protocol Relating to the Status of Refugees and the Convention Against Torture. Paragraph 4 of the MOA provides that the "Commonwealth will accommodate reasonable requests by the Protection Consultant to monitor the Commonwealth's process for accepting claims for protection and the Commonwealth's assessment of those claims." Paragraph 3 of the MOA stipulates that "the Commonwealth agrees not to remove or otherwise effect the involuntary return of any alien whom the Protection Consultant has determined during the Performance Period to be eligible for protection in the Commonwealth under the Protocol or the Convention Against Torture, provided that the alien continues to be eligible for such protection."

Pursuant to the MOA, this *Letter of Understanding* (LOU) sets forth procedures for USCIS, as Protection Consultant to the Commonwealth, to conduct quality assurance reviews and to present comments and concurrence on protection decisions made by Commonwealth Administrative Protection Judges (APJs). This LOU also sets forth a mechanism for USCIS consultation with the Attorney General of the Commonwealth, or her designee, in situations where USCIS does not concur with the decision reached by an APJ, and/or USCIS believes that an alien physically present in the Commonwealth is eligible for protection.

This LOU confirms that the two-year Performance Period referenced in Paragraph 2 of the MOA began on June 21, 2004, when the first USCIS representative arrived in the Commonwealth, and that the period will end on June 21, 2006. During this two-year Performance Period, the parties to the LOU agree to the quality assurance review procedures set forth below.

1

### Quality Assurance Review of Protection Interviews

The Commonwealth agrees to allow USCIS, as Protection Consultant, to observe and provide constructive feedback on protection interviews conducted by the APJs. USCIS may monitor any interview conducted by an APJ, and to the extent possible during the interview or during recesses in the interview, may provide informal verbal feedback on the sufficiency of information gathered during the interview. USCIS may also provide quality assurance feedback on the interview in written comments to the APJ, as described below.

### Quality Assurance Review of Protection Decisions

The APJ will, for each case under consideration for protection, provide the interview notes, the interview recording, and the proposed written assessment or decision, to USCIS for review and comment. USCIS, as Protection Consultant, will make reasonable efforts to provide written comments to the APJ within seven (7) business days, and will notify the APJ in the event that additional time is required.

USCIS comments will address the sufficiency of testimony elicited at the interview and also the legal sufficiency of the APJ's proposed decision. The nature of USCIS comments will depend on the unique facts and circumstances of each case, and are intended to enhance the Commonwealth's ability to assess claims for protection. In each case, USCIS will indicate that it concurs, or does not concur, in the APJ's proposed decision.

The APJ will consider the written comments provided by USCIS, as Protection Consultant. If the APJ intends to proceed with a decision that USCIS has not concurred with, the APJ shall notify USCIS, and shall not issue the decision pending further discussion and resolution between USCIS Asylum Division Headquarters and the Attorney General of the Commonwealth, or her designee. During this discussion period, the Attorney General will not remove or otherwise effect the involuntary return of the alien.

If the APJ recommends granting protection, and USCIS does not concur, USCIS Asylum Division Headquarters will discuss and seek to resolve the impasse in a teleconference with the Attorney General's designee. After this consultation, the Attorney General's designee will make the final determination on the case.

If the APJ recommends denying protection, and USCIS does not concur. USCIS Asylum Division Headquarters will discuss and seek to resolve the impasse in a teleconference with the Attorney General's designee. If the Attorney General's designee and USCIS Asylum Division Headquarters cannot reach agreement, the Asylum Division will discuss and seek to resolve the impasse in a teleconference with the Attorney General. The Attorney General will determine how the case will be handled. However,

2

if USCIS has determined that the alien continues to be eligible for non-refoulement protection, the Commonwealth will not remove or otherwise effect the involuntary return of the alien to the country of persecution or torture, pursuant to Paragraph 3 of the MOA.

The quality assurance review process described above will provide the Commonwealth with the opportunity to fully develop the processes necessary to consider and assess claims for protection without the assistance of USCIS, as Protection Consultant, by the June 21, 2006 conclusion of the Performance Period.

This LOU shall take formal effect immediately upon signature of the parties listed below.

Joseph E. Langlois
Director, Asylum Division
U.S. Citizenship and Immigration
Services
Department of Homeland Security

Date: August 30, 2005

Pamela Brown
Attorney General
Commonwealth of the Northern
Mariana Islands

Date: 9/20/05

3