Kevin Lynch, Chief Prosecutor
Katie Busenkell, Assistant Attorney General
Division of Immigration Service
Commonwealth of the Northern Mariana Islands
Civic Center, Susupe
Saipan, MP 96950
(670) 664-2426 (voice)
(670) 234-7016 (fax)

**F I L E D**
Clerk
**District Court**

SEP 1 8 2008

**For The Northern Mariana Islands**
By_____
**(Deputy Clerk)**

Attorneys for the Commonwealth of the Northern Mariana Islands and the Attorney General of the Commonwealth of the Northern Mariana Islands, in his official capacity.

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **MOHAMMED KAMAL HOSSAIN,**<br><br>      **Plaintiff,**<br><br>   **v.**<br><br>**COMMONWEALTH OF THE**<br>**NORTHERN MARIANA ISLANDS and**<br>**MATTHEW GREGORY, in his official**<br>**capacity as Attorney General of the**<br>**Commonwealth of the Northern Mariana**<br>**Islands, and the UNITED STATES OF**<br>**AMERICA,**<br>      **Defendants.** | **Civil Action  08-0016**<br><br><br><br><br><br>**COMMONWEALTH'S EXHIBIT E TO**<br>**THE MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN SUPPORT OF**<br>**MOTION TO DISMISS** |

Respectfully submitted 18th day of September of 2008.

_____
Katie Busenkell (CNMI Bar T-0054)
Assistant Attorney General – Immigration Division
Office of the Attorney General

9/18/08
Date

1

COPY on
Original Filed
on this date

MAY 1 0 2002

Clerk
District Court
For The Northern Mariana Islands

1    Bruce L. Jorgensen
c/o Unit D-5, Miller's Estates
2    Capitol Hill, Saipan, MP  96950
c/o (670) 233-5501/2 (tel)
3    c/o (670) 233-5503 (fax)

4    Attorney for Plaintiffs

5          IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS
6

7    JUYEL AHMED, UTHAYACHANDRAN R.          Civil Action No. 00-0005
KANDIAH, JAYAKUMAR A.
8    SEVARATNAM, KANABASABAI                 FIFTH AMENDED
SELVALINGNAM, JANAKA P. H.              COMPLAINT FOR
9    NADUNGODAGE, MADPATHAGE D. U. D.        INJUNCTIVE,
SENANAYAKE, YU REN HUANG, LI            DECLARATORY, AND
10   TONG DENG, ZHI PING HU, YIN PING        FURTHER RELIEF;
GUO, XI CHENG JIN, LAN TING ZHANG,      EXHIBITS "A"-"Z", "A-1"-
11   QIN YIN, CHUN FANG YUE, HUI  PING       "Q-1", AND "1"-"6"
ZHANG, MHING ZHUO LING, LIN
12   ZHENG and JIAN SHAN ZHENG,

13          Plaintiffs

14          v.

15   UNITED STATES OF AMERICA,
COMMONWEALTH OF THE NORTHERN
16   MARIANA ISLANDS, COLIN POWELL in
his official capacity, JOHN ASCHROFT in
17   his official capacity, JOAQUIN AGULTO
TENORIO in his official capacity, ROBERT
18   TENORIO TORRES in his official capacity,
and DOES 7-25,

19          Defendants.

20

21          Caption Continued on Next Page

22   \\

23   \\

24   \\

COMMONWEALTH'S
EXHIBIT
E

| | |
|---|---|
| **Caption Continued from Preceding Page** | |
| RUI LIANG, LIAO DA NIAN, MOHAMMED KAMAL HOSSAIN and JANE ROE I, | Civil Action No. 00-0005 |
| **Plaintiffs** | |
| **v.** | |
| UNITED STATES OF AMERICA, COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, COLIN POWELL in his official capacity, JOHN ASHCROFT in his official capacity, JOAQUIN AGULTO TENORIO in his official capacity, ROBERT TENORIO TORRES in his official capacity, and DOES 7-25, | |
| **Defendants.** | |

## FIFTH AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND FURTHER RELIEF

Plaintiffs, through counsel, allege the following:

### PARTY PLAINTIFFS (Consolidated Action (Civil Action No. 00-0005)

1.      Plaintiff JUYEL AHMED is a citizen of the Islamic Republic of Bangladesh ("IRB") who is currently within the Commonwealth of the Northern Mariana Islands ("CNMI") and who, between July 1998 and March 2000, was imprisoned at the CNMI's Department of Labor and Immigration ("DOLI") prison.

2.      Plaintiff UTHAYACHANDRAN R. KANDIAH is a Sri Lankan citizen of Tamal ethnicity who is presently within the CNMI.

-2-

1      3.      Plaintiff JAYAKUMAR A. SEVARATNAM is a Sri Lankan citizen of

2  Tamal ethnicity who is presently within the CNMI.

3      4.      Plaintiff KANABASABAI SELVALINGNAM is a Sri Lankan citizen of

4  Tamal ethnicity who is presently within the CNMI.

5      5.      Plaintiff JANAKA P.H. NADUNGODAGE is a Sri Lankan citizen of

6  Sinhalhese ethnicity who is presently within the CNMI.

7      6.      Plaintiff MADPATHAGE D.U.D. SENANAYAKE is a Sri Lankan citizen

8  of     Sinhalhese ethnicity who is presently within the CNMI.

9      7.      Plaintiff YU REN HUANG is a citizen of the People's Republic of China

10  ("PRC") who is presently within the CNMI.

11      8.      Plaintiff LI TONG DENG is a PRC citizen who is presently within the

12  CNMI.

13      9.      Plaintiff ZHI PING HU is a PRC citizen who is presently within the

14  CNMI.

15      10.      Plaintiff YIN PING GUO is a PRC citizen who is presently within the

16  CNMI.

17      11.      Plaintiff XI CHENG JIN is a PRC citizen who is presently within the

18  CNMI.

19      12.      Plaintiff LAN TING ZHANG is a PRC cititzen who is presently within the

20  CNMI.

21      13.      Plaintiff QIN YIN is a PRC citizen who is presently within the CNMI.

22      14.      Plaintiff CHUN FANG YUE is a PRC citizen who is presently within the

23  CNMI.

24

15.     Plaintiff HUI PING ZHANG is a PRC citizen who is presently within the CNMI.

16.     Plaintiff MHING ZHUO LING is a PRC citizen who is presently within the CNMI.

17.     Plaintiff LIN ZHENG is a PRC citizen who is presently within the CNMI.

18.     Plaintiff JIAN SHAN ZHENG is a PRC citizen who is presently within the CNMI.

**PARTY PLAINTIFFS (Consolidated Civil Action No. 99-0046)**

19.     Plaintiff RUI LIANG ('Liang") is a PRC citizen who is presently within the CNMI.

20.     Plaintiff LIAG DA NIAN ("Nian") is a PRC citizen who is presently within the CNMI.

21.     Plaintiff MOHAMMED KAMAL HOSSEIN is an IRB citizen who is presently within the CNMI.

22.     Plaintiff JANE ROE 1 ("Roe") is a PRC citizen presently within the CNMI. Roe has filed this lawsuit using a pseudonym in place of Roe's actual name for the reason that special circumstances justify the use of this pseudonym, including the need to protect Roe and Roe's PRC-situated family members from harassment, injury, ridicule, serious risk of bodily harm, risk of retaliatory physical and/or mental harm, employer reprisals and governmental reprisals.

**PARTY DEFENDANTS (Both Consolidated Civil Actions)**

23.     Defendant UNITED STATES OF AMERICA ("U.S." and/or "Federal Government") is a governmental entity.

24.     Defendant COMMONWEALTH OF THE NORTHERN MARIANAS

ISLANDS ("CNMI" and/or "CNMI Government") is a governmental entity.

25.     Defendant COLIN POWELL ("Powell") is Secretary of the U.S.

Department of State ("State Department"), and is named as a Defendant in his official

capacity.

26.     Defendant JOHN ASHCROFT ("Ashcroft") is the U.S. Attorney General,

head of the U.S. Department of Justice ("Justice Department"), and is named as a

Defendant in his official capacity.

27.     Defendant JOAQUIN AGULTO TENORIO ("Tenorio") is Acting

Secretary of the CNMI Department of Labor and Immigration ("DOLI"), and is named as

a Defendant in his official capacity.

28.     Defendant ROBERT TENORIO TORRES ("Torres") is the CNMI

Attorney General, and is named as a Defendant in his official capacity.

29.     Defendants Does 7 – 25 ("Does" and/or "Doe Defendants")[1] are sued

herein under fictitious names for the reason that, despite diligent and good faith efforts to

obtain information, Does' true names, identities, and capacities are presently unknown to

Plaintiffs, except that they include but are not limited to persons and/or entities who have

injured and/or harmed Plaintiffs, who have violated rights and protections guaranteed to

Plaintiffs by effect of the Commonwealth Code, CNMI common law, the Commonwealth

---

[1]     Two previously-named Doe Defendants were later dismissed with prejudice as
party-defendants in this lawsuit.   Those defendants were: (i) former CNMI Assistant
Attorney General Robert Goldberg ("Goldberg"), a CNMI-licensed lawyer; and, (ii)
former DOLI Secretary Mark Zachares ("Zachares"), also a CNMI-licensed lawyer.  With
the naming of four new defendants in this Fifth Amended Complaint—Powell, Ashcroft,
Tenorio, and Torres—a total of five Doe Defendants have been identified to date.

1   Constitution, Federal statutory law (including but not limited to 28 U.S.C. sec. 1350),

2   Federal common law, the Constitution of the United States of America,  the 1951

3   Convention Relating to the Status of Refugees ("1951 Convention"),[2] the United Nations

4   Protocol Relating to the Status of Refugees ("1967 Protocol"),[3] the United Nations

5   Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment of

6   Punishment ("1985 Torture Convention"),[4] the Foreign Affairs Reformation and

7   Restructuring Act ("FARR Act"),[5] the Immigration and Naturalization Act, 8 U.S.C.A.

8   sec. 1157, the Restatement (Third) of Foreign Relations Law, International/Customary

9   Law (relating to human rights) binding on the Federal and CNMI governments by effect

10  of *jus cogens* and other principles,[6] the law of nations and/or treaties of the U.S. and/or

11  CNMI governments, and the Torture Victim Protection Act of 1991 ("1991 Alien Torts

12

13

14

---

15  [2]     (July 28, 1951), 19 U.S.T. 6259, 6275, T.I.A.S. No 6577, 189 U.N.T.S. 150; see
    also 7 C,C sec. 3401; Restatement (Third) of Foreign Relations Law, at secs. 102(1),
16  102(2), 111(1).

17  [3]     (Jan. 31, 1967), 10 U.S.T. 6223, T.I.A.S. No. 6577; see also, 7 CMC sec. 3401;
    Restatement (Third) of Foreign Relations Law, at secs. 102(1), 102(2), 111(1).
18

19  [4]     G.A.O.R. A/39/506 (1984), 23 I.L.M. 1027 (1984) (modified in 24 I.L.M. 535
    (1985)), S. Treaty Doc. No. 110-20, 100th Cong. 2d Sess. 7 (1988).
20

21  [5]     Pub. L. No. 105-277, §2242, 1999 U.S.C.C.A.N. §871.

22
    [6]     See e.g., 7 CMC §3401; Restatement (Third) of Foreign Relations Law, at
23  §§102(1)(a), 102(2), 701(b), 702(d)(e).

24

1   Claim Act" or "ATCA"),[7/] who have violated those laws/treaties to Plaintiffs' detriment,

2   who have otherwise harmed and damaged Plaintiffs or, in some manner presently

3   unknown to Plaintiffs, were engaged or shall engage in those activities or other activities

4   alleged in this civil action.

5        30.     Doe Defendants conducted the previously described activities, or intend to

6   conduct such activities, in an intentional or in an inequitable or in a negligent and/or

7   otherwise wrongful manner, which activities were or shall be a legal cause of injuries or

8   damages to the Plaintiffs, and/or were in some manner (or shall be) related to the named

9   Defendants.

10       31.     Plaintiffs and/or their representatives have made diligent and good faith

11   efforts to ascertain the full names and identities, and the extent and nature of interests, of

12   additional defendants, and the events upon which Plaintiffs' claims are premised.

13       32.     Plaintiffs remain unable at this time to identify with particularity Doe

14   defendants (and/or their nationalities and/or their titles and/or their relationships to

15   Defendants as employees or independent contractors or officers or directors or

16   shareholders) against whom Plaintiffs have additional prospective claims, and seek leave

17   to amend this Fifth Amended Complaint ("Complaint") in order to name and identify Doe

18   defendant if and when the identities of those various Doe defendants is more fully and

19   accurately determined.

20   \\

21   \\

22

23   [7/]     See Pub.L. 102-256, Mar. 12, 1992, 106 Stat. 73, §§2, 3(b), 28 U.S.C.A. §1350.

24

1          **JURISDICTION**

2          Plaintiffs repeat and reallege and incorporate herein by reference each and every

3     allegation contained in the preceding paragraphs.

4          33.     This Court has personal jurisdiction over the Plaintiffs.

5          34.     This Court has personal jurisdiction over Defendant U.S..

6          35.     This Court has personal jurisdiction over Defendant CNMI.

7          36.     This Court has personal jurisdiction over Defendant Powell.

8          37.     This Court has personal jurisdiction over Defendant Ashcroft.

9          38.     This Court has personal jurisdiction over Defendant Tenorio.

10         39.     This Court has personal jurisdiction over Defendant Torres.

11         40.     This Court has original subject matter jurisdiction over this civil action

12    pursuant to federal law including 28 U.S.C. §§1331/1350 and/or the Administrative

13    Procedure Act, 5 U.S.C. §702, and/or 42 U.S.C. §§1983 and 1985, in that Plaintiffs'

14    claims involve:

15              a.     the construction or interpretation of treaties and/or international

16         agreements, the law of nations, and/or international/customary law, and/or

17         international protocols (including the 1951 Convention, the 1967 Protocol [as

18         incorporated in customary international law through the Restatement] and the

19         1985 Torture Convention) to which the U.S. Government has acceded and to

20         which the CNMI Government is thereby bound and obligated pursuant, <u>inter alia</u>,

21         to the Restatement (Third) of Foreign Relations Law and principles of *jus cogens*;

22         and/or

23

24

b.      conduct made unlawful by effect of federal law--- including the

Alien Tort Claims Act—and CNMI law; and/or,

c.      conduct made unlawful by effect of the CNMI Constitution and/or

the Constitution of the United States of America.

41.     This Court, pursuant to federal law including 28 U.S.C. §1367 (a), has

supplemental jurisdiction over all other claims alleged by Plaintiffs in this civil action,

which claims form part of the same controversy.

42.     The factual and jurisdictional grounds upon which Plaintiffs' claims are

premised entitle Plaintiffs to equitable, injunctive, and declaratory relief, as well as to

legal relief including monetary damages and attorneys' fees.

43.     Venue of the claims at issue in this proceeding lies with this Court in

accordance with federal law including 28 U.S.C. §1391, and in accordance with other

legal and equitable principles.

44.     The CNMI is the situs of the wrongs committed against the Plaintiffs and

the witnesses and parties are, in the main, situated within the CNMI.

## BACKGROUND ALLEGATIONS COMMON TO ALL CLAIMS

45.     Plaintiffs repeat and reallege and incorporate herein by reference each and

every allegation contained in the preceding paragraphs.

46.     Plaintiffs include IRB national JUYEL AHMED, a practitioner of the

Muslim religion, who, as described in his February 24, 2000, declaration appended to this

Complaint and designated as Exhibit "A" and his supplemental February 27, 2000,

declaration appended to this Complaint and designated as Exhibit "B", has previously

been persecuted and tortured in Bangladesh, see, e.g., Exhibit "A" at ¶4, and who, if

1 | repatriated and forced to return to Bangladesh will be further persecuted and/or tortured

2 | by effect of Bangladesh governmental and/or institutional policies/procedures and/or lack

3 | of policies/procedures.

4 |     47.    Plaintiffs include IRB national Hossain who, as the result of having

5 | provided testimony on behalf of the U.S. in the criminal proceeding designated No. 1:96,

6 | CR 00037-001, <u>see</u>, Exhibit "1", has been subjected to threats of physical violence

7 | (including death) against himself and his IRB-situated family.  <u>See</u>, Exhibits "2" – "6".

8 | Despite this cooperation with U.S. law enforcement officials, as acknowledged in letters

9 | dated December 17, 1998 and November 23, 1999, from Assistant U.S. Attorney Gregory

10 | Baka, <u>see</u>, Exhibits "3" and "6", letters dated July 8 1998, and March 22, 1999 from U.S.

11 | Office of Insular Affairs Director Allen P. Stayman, <u>see</u> Exhibits "2" and "4", and others

12 | from the U.S. Department of Justice, <u>see</u> <u>e.g.</u>, Exhibit "5", neither the U.S. Government

13 | nor the CNMI Government has provided to Hossain and his family any of the protections

14 | Hossain has requested.

15 |     48.    Plaintiffs include Plaintiff Roe who, as the result of having challenged

16 | policies and procedures involving the CNMI garment industry, the CNMI's Department

17 | of Labor and Immigration ("DOLI") and/or asylum/refugee/torture protection issues, has

18 | been subjected to threats of physical violence and reprisal (including death) against

19 | herself and her PRC-situated family.

20 |     49.    Plaintiffs include Sri Lankan nationals who, if repatriated and forced to

21 | return to Sri Lanka, would be persecuted by the government of Sri Lanka, and by the

22 | effect of the violent 10-plus year civil war now raging in Sri Lanka between persons of

23 | Tamil and Sinhalse ethnicity.

24 |

50.    Plaintiffs include PRC nationals who, if repatriated and forced to return to PRC, would be persecuted and/or tortured by effect of inhumane policies adopted and perpetuated by the PRC Government, including, but not limited to, the PRC's well-documented and continuing persecution of the Falun Gong movement, the infliction of pain/torture upon PRC nationals by the PRC Government upon PRC nationals who have criticized their government in a manner similar to that of the Plaintiffs in this case, the PRC-based persecution of persons based on religion including persons who practice Catholicism, PRC-based persecution of female adults who give birth to more than one child, and/or other PRC Government policies.

51.    The U.S. Government is empowered with authority over all U.S. treaties, protocols, international human rights obligations, matters of international law and matters falling within the scope of and/or delegated to the U.S. Department of State, the U.S. Department of Justice (including the U.S. Immigration and Naturalization Service), and by effect of federal laws including the U.S. Immigration and Naturalization Act ("INA").

52.    The U.S. Government, by virtue of its sovereignty, has jurisdiction over all persons within the borders of the U.S. mainland, within all of the 50 U.S. states, and within all U.S. territories, commonwealths, and possessions—including the CNMI.

53.    The U.S. Government was required to serve as fiduciary to the CNMI prior to enactment of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant") in accordance with that entity established and recognized by the United Nations as the Trust Territory of the Pacific Islands ("TT").

1      54.    Throughout the TT's existence the U.S. Government's fiduciary duties

2  obligated the U.S. Government to provide, administer, protect, and otherwise regulate

3  human rights and immigration matters within the CNMI, including, but not limited to,

4  issues relating to asylum/refugee requests and protection, and requests for protection from

5  torture by persons situated within the CNMI who originated from PRC, Sri Lanka,

6  Bangladesh and elsewhere.

7      55.    Following enactment of the Covenant, the U.S. Government retained

8  control of various matters, including the application of the INA within the CNMI, under

9  various circumstances.

10      56.    The INA continues to be applicable today, within the CNMI, under various

11  circumstances.

12      57.    Following enactment of the Covenant, the U.S. Government retained

13  control, and today retains control, over various matters, including:

14      a.    the application of international human rights obligations within the

15  CNMI;

16      b.    the processing of, and due process relating to,

17  asylum/refugee/torture protection applications and obligations, within the CNMI;

18  and,

19      c.    the resolution of issues relating to asylum/refugee/torture

20  protection requests by, and related due process measures relating to, persons

21  within the CNMI who originated from Sri Lanka, Bangladesh, the PRC and

22  elsewhere.

23

24

58.    The U.S. Government has acceded to the 1967 Protocol which, together with customary/international law, the law of nations and the doctrine of *jus cogens*, mandates compliance by the U.S. with both the 1967 Protocol and the 1951 Convention.

59.    The U.S. Government has acceded to the 1985 Torture Convention ("1985 Torture Convention") which, together with customary/international law, the law of nations and the doctrine of *jus cogens*, mandates compliance by the U.S. with the 1985 Torture Convention.

60.    The U.S. has enacted the Alien Tort Claims Act ("ATCA"), the FARR Act, civil rights protections under 42 U.S.C. §§1983 et. seq., and other laws, mandating compliance by U.S. Government officials with those laws, and providing rights of action for the benefit of those subjected to violation of the terms of those laws.

61.    The U.S. Government's accession to the 1967 Protocol binds and obligates the CNMI Government as to both the 1967 Protocol and the 1951 Convention by effect of Article 1, sec. 102 of the Covenant.

62.    The U.S. Government's accession to the 1985 Torture Convention binds and obligates the CNMI Government as to both the 1985 Torture Convention by effect of Article 1, sec. 102 of the Covenant.

63.    The U.S. Government's enactment of the ATCA, the FARR Act, and 42 U.S.C. §§1983 et. seq., binds and obligates the CNMI Government and CNMI Government officials to comply with all portions of those laws by effect of Article 1, §§102 and 105 of the Covenant.

64.    The Convention, and the 1967 Protocol, having been adopted within the Restatement (Third) of Foreign Relations Law, at §§701 et seq., also constitutes CNMI

-13-

1   law independent of any CNMI-U.S. political relationship, and is binding and obligatory

2   within and upon the CNMI Government by effect of 7 CMC §3401.

3       65.    The CNMI, independent of the U.S. Government, is further bound and

4   obligated to comply with the 1967 Protocol, the 1951 Convention and the 1985 Torture

5   Convention by effect of customary/international human rights law statutorily binding

6   upon the CNMI by effect of 7 CMC §3401 which adopts Restatement (Third) of Foreign

7   Relations Law §§111(1), 102(1), 102(2), in addition to §701 et seq.

8       66.    The CNMI, independent of the U.S. Government, is also bound and

9   obligated to provide to Plaintiffs those protections made available via the 1967 Protocol,

10  the 1951 Convention, and the 1985 Torture Convention by effect of the law of nations

11  and the doctrine of *jus cogens.*

12      67.    Neither the Federal Government nor the CNMI Government has enacted

13  meaningful policies or procedures by which those governments adequately ensure that

14  they uphold their obligations to persons seeking asylum/refugee status within the CNMI

15  under either Federal law, or the 1967 Protocol and the 1951 Convention or in accordance

16  with customary/international human rights, the law of nations or the doctrine of *jus*

17  *cogens.*

18      68.    Neither the Federal Government nor the CNMI Government has enacted

19  meaningful policies or procedures by which those governments adequately ensure that

20  they uphold their obligations to persons seeking protection within the CNMI from those

21  activities deemed improper under the 1985 Torture Convention or from torture as such

22  torture is defined and deemed unlawful by effect of customary/international human rights

23  laws, the law of nations or the doctrine of *jus cogens.*

24

69.    On at least one prior occasion a person then situated within the CNMI sought asylum/refugee/torture protection with the assistance of Mr. Phil Kaplan via the Karidat office funded by the CNMI and Federal governments, which asylum applicant was eventually granted asylum, and then departed the CNMI to reside in New Zealand.

70.    On at least one prior occasion, during May-June 2000, there was transmitted to U.S. INS officials from the CNMI an asylum/refugee/torture protection application on behalf of a CNMI-situated person.  In response, INS officials in the Mainland U.S. caused to be transmitted to the CNMI-situated applicant a notification letter which, upon information and belief, advised the applicant to proceed to the Territory of Guam during a by-then-lapsed-multi-day time period, to undergo asylum fingerprinting.  Subsequently, upon further information and belief, CNMI-situated INS officer Oscar Martinez, after learning of this situation, notified the applicant's lawyer, CNMI-based attorney Paul Lawlor, that the notification letter would be retracted by INS officials in the near future.

71.    On at least one prior occasion during April 2000, CNMI-situated asylum/refugee/torture protection seekers, including Plaintiff Ahmed, boarded a United States naval vessel situated within the CNMI, at Saipan Harbor, requested that the vessel's Commanding Officer entertain their asylum/refugee/torture protection requests and provide asylum/refugee/torture protection processing, which request was denied while those persons were aboard the vessel and after the Commanding Officer had been provided relevant asylum/refugee/torture protection documentation pertaining to that request.  During this encounter, at least one CNMI-employed police officer attempted to board the U.S. naval vessel and to arrest Plaintiff Ahmed and his fellow-seekers, which

1   boarding and arrest were then prevented by the Commanding Officer who invoked and

2   explained his own Federal jurisdiction upon the vessel.

3         72.     The INS regularly publishes and distributes a document known as Form I-

4   590.

5         73.     Plaintiffs—physically present on Saipan in the CNMI---have each

6   completed a Form I-590, as exemplified by a sample Form I-590 application appended to

7   this Complaint and designated Exhibit "C".

8         74.     The I-590 forms completed by Plaintiffs have been transmitted to INS

9   offices situated at Saipan, Honolulu, Bangkok and Manila (see, e.g., Exhibits "D" – "F")

10   for processing by INS officials in accordance with INS asylum/refugee/torture protection

11   standards made applicable under U.S. law, but INS's Saipan representative Oscar

12   Martinez ("Martinez")—the INS official then assigned to operate the sole CNMI-situated

13   INS office—refused to accept Plaintiffs' I-590 applications, see, e.g., Exhibits "E" – "G",

14   refused to accept other documents transmitted to his INS office in Saipan, see, e.g.,

15   Exhibit "H", and has returned Plaintiffs' completed I-590 forms to Plaintiffs' attorney's

16   office.

17         75.     The I-590 forms completed by Plaintiffs have been transmitted to INS

18   offices situated in Saipan, Honolulu, Bangkok and Manila for processing by INS officials

19   in accordance with United Nations and/or Federal asylum/refugee/torture protection

20   standards made applicable under treaties and/or international law agreements, and/or

21   customary international law, and/or international protocols (including the 1951

22   Convention and the 1967 Protocol).

23

24

76.    Persons seeking protection under the 1985 Torture Convention are required, as a prerequisite, to exhaust asylum/refugee procedures.

77.    Plaintiffs have attempted to acquire the protections required to be made available pursuant to the 1985 Torture Convention, including, but not limited to, protection from torture and protection afforded by effect of non refoulement. See, e.g., Exhibit "F".

78.    On August 10, 1999, Mr. Martinez, the INS official then-assigned to operate the only CNMI-situated INS office, provided notice to Plaintiffs and other similarly situated persons that neither the CNMI-situated INS office manned by Mr. Martinez, nor any other INS office, will or are required to accept for submission and processing any I-590 forms from CNMI-situated applicants. See, e.g., Exhibits "E" and "G". This notice was and is false and/or contrary to law and had the intended purpose and effect of misleading the Plaintiffs to believe that they have no refugee/asylum/torture protection rights available to them under U.S. law and/or for the purpose of concealing information from Plaintiffs, suppressing and/or subverting and/or thwarting Plaintiffs' rights, and/or interfering with Plaintiffs' rights.

79.    Neither Mr. Martinez, any other U.S. official, nor any CNMI official, since August 10, 1999, has refuted, recanted or overruled Mr. Martinez's August 10, 1999 notice.

80.    On August 12, 1999, information pertaining to the CNMI Government's policy respecting I-590 applicants, asylum/refugee/torture protection, and the recent involvement of INS officials on the Island of Tinian was sought from both the CNMI Office of the Attorney General ("OAG") via letter to Acting Attorney General Maya

-17-

1   Kara, and from the CNMI's Department of Labor and Immigration ("DOLI") via letter to

2   DOLI Secretary Mark Zachares, pursuant to 1 CMC Division 9 (the CNMI "Open

3   Government Act").   See, Exhibit "I".

4       81.    Neither Mr. Zachares nor any other DOLI official has ever responded to

5   the August 12, 1999 Open Government Act request.

6       82.    On March 1, 2002, a follow-up request was transmitted in writing to

7   present CNMI Attorney General/Defendant Torres, and to his subordinate CNMI

8   Assistant Attorney General Andrew Clayton ("Clayton").   A copy of that letter, appended

9   as the first of sixteen exhibits appended to Plaintiffs' pleading, was filed with the Court

10  on March 21, 2002.

11      83.    To date, no documents, no materials, and no requested information, have

12  been provided by Ms. Kara, Mr. Zachares, Defendant Torres, Mr. Clayton, Defendant

13  Tenorio, any past CNMI Acting or Confirmed CNMI Attorney General, any OAG or

14  DOLI personnel, or any other CNMI representative or entity, in response to the August

15  20, 1999 Open Government Act request, or to the March 1, 2002 follow-up Open

16  Government Act request.

17      84.    Defendant CNMI, together with Defendant Torres and Defendant Tenorio,

18  and through others employed by the CNMI and/or supervised by Defendant Torres and

19  Defendant Tenorio, are responsible for the administration, supervision and enforcement

20  of laws applicable to and within the CNMI.

21      85.    Defendant U.S., together with Defendant Ashcroft and Defendant Powell,

22  and through others employed by the U.S. and/or supervised by Defendant Ashcroft and

23

24

-18-

1    Defendant Powell, are responsible for the administration, supervision and enforcement of

2    Federal laws applicable to the CNMI for the benefit of persons within the CNMI.

3         86.    Defendant CNMI hired and/or appointed Defendant Torres, Defendant

4    Tenorio, Goldberg, Zachares, Clayton, and other lawyers and/or persons, with Defendant

5    Torres and Defendant Tenorio now tasked with primary responsibility for the

6    administration, supervision and enforcement of CNMI asylum/refugee/torture protection

7    obligations, policies, and procedures, and with CNMI immigration laws.

8         87.    Defendant Ashcroft and Defendant Powell create, administer, supervise

9    and enforce—or neglect and/or fail to create, administer, supervise, and enforce—U.S.

10   policies and procedures and make or neglect/fail to make policy decisions, including, but

11   not limited to, policies and procedures relating to asylum/refugee/torture protection

12   within the U.S. and applicable within the CNMI.

13        88.    Defendant Torres and Defendant Tenorio create, administer, supervise and

14   enforce—or neglect and/or fail to create, administer, supervise, and enforce---CNMI

15   policies and procedures and make or neglect/fail to make policy decisions, including, but

16   not limited to, policies and procedures relating to asylum/refugee/torture protection

17   within the CNMI.  Goldberg, Zachares, and others, when formerly employed by the

18   CNMI and while at DOLI, performed and/or failed to perform similar functions.

19        89.    Defendant Ashcroft and Defendant Powell provide instruction and

20   direction and instruct and direct U.S.-employed personnel (and/or fail to do so),

21   including, but not limited to persons working at the U.S. Department of Justice (including

22   the Office of the U.S. Attorney and the INS) and the U.S. Department of State.

23

24

90.    Defendant Torres and Defendant Tenorio provide instruction and direction and instruct and direct CNMI-employed personnel (and/or fail to do so), including, but not limited to persons working at the Office of the CNMI Attorney General ("OAG"), and at DOLI including DOLI's prison facility.  Goldberg, Zachares, and others, when formerly employed by the CNMI, performed and/or failed to perform similar duties.

91.    Upon information and belief Goldberg's salary was paid by DOLI.

92.    Upon information and belief, Goldberg's salary, although paid by DOLI, was funded in whole or in part by the Federal government.

93.    Plaintiff AHMED was imprisoned at DOLI's prison facility between July 1998 and March 2000.  Plaintiffs Liang and Nian were similarly imprisoned in DOLI's prison facility during Fall/Winter 2000.

94.    Defendant CNMI, Defendant U.S., and Doe Defendants, in tandem with Goldberg, Zachares, and others,  devised, planned and implemented policies and procedures relating to the imprisonment of various DOLI prisoners, including Plaintiffs AHMED, LIANG AND NIAN.

95.    Defendant CNMI, Defendant U.S., and Doe Defendants, in tandem with Goldberg, Zachares, and others, devised, planned and implemented policies and procedures relating specifically and exclusively to the imprisonment of Plaintiffs AHMED, LIANG AND NIAN.

96.    In devising, planning and implementing policies and procedures relating to the imprisonment of Plaintiffs Ahmed, Liang and Nian, Defendant Goldberg authorized, condoned and acquiesced in ignoring and disregarding the liberty interest of Plaintiffs Ahmed, Liang and Nian.

97.    In devising, planning and implementing policies and procedures relating to the imprisonment of Plaintiffs Ahmed, Liang and Nian,  Defendant CNMI, Defendant U.S., and Doe Defendants, in tandem with Goldberg, Zachares, and others, authorized, ratified, condoned and acquiesced in those Defendants' adopting a custom and pattern of practice of ignoring and disregarding the liberty interests of Plaintiffs AHMED, LIANG AND NIAN, in violation of and disregard of the liberty interests guaranteed to AHMED, LIANG AND NIAN by effect of CNMI law, Federal law, the CNMI Constitution and the U.S. Constitution.

98.    Plaintiffs possess liberty interests and property rights to be free from arbitrary and indefinite and capricious detention, which interest/rights arise by effect of CNMI law, Federal law, the CNMI Constitution and the U.S. Constitution. See, e.g., 3 CMC secs. 4341(d), 4382(b), 4382(c).

99.    Zachares was appointed DOLI's Acting Secretary by effect of a CNMI memorandum dated February 11, 1998, during the then-CNMI-administration headed by former CNMI Governor Pedro P. Tenorio.  This designation was reiterated in a second CNMI memorandum dated May 4, 1998.  Three weeks later, on May 28, 1998, Zachares' appointment was confirmed, removing his "Acting Secretary" title, in lieu of the permanent "Secretary" position he then held through January 2002.

100.    On December 27, 2001, the Court ordered Defendant CNMI to provide materials to the court.  Only then—by way of a submission filed January 4, 2002, see, Exhibit "G-1", which submission Defendant CNMI did not voluntarily provide to Plaintiffs, id. at p.2, lines 16-21—did the CNMI and Zachares disclose, in Zachares' January 4, 2002 declaration, see Exhibit "H-1", the existence of a letter received 3 years

1  and 7 months earlier from then-INS Commissioner Doris Meissner to then-CNMI

2  Governor Tenorio dated May 15, 1998. See, Exhibit "I-1".

3      101.    The May 15, 1998 letter ("letter"), similarly, had never been disclosed by

4  Defendant U.S., the multitude of U.S.-employed attorneys in this proceeding, or anyone

5  connected to this proceeding since its inception 2 years and 8 months ago.

6      102.    The letter, in pertinent part, documents the CNMI's failure to recognize

7  and/or abide by CNMI and U.S. asylum/refugee/torture protection requirements, while

8  memorializing the CNMI's deportation of two Sri Lankan nationals at that time to their

9  home country despite their prior efforts---known to CNMI officials---to be afforded their

10  asylum/refugee/torture protection rights. Id. In part, the letter stated: "It is essential that

11  the CNMI stay the deportation of any individual identified by...the United States

12  Government as a potential refugee until appropriate resolution of that individual's claim

13  to refugee status." Id. at p.1, ¶3.

14      103.    Defendant CNMI, by and through Defendant Torres and Defendant

15  Tenorio, and in apparent tandem with and/or acquiescence and/or ratification by,

16  Defendant U.S. and/or Defendant Ashcroft and/or Defendant Powell and/or Doe

17  Defendants and/or their respective employees and agents, nevertheless continue—as

18  recently as two months ago, to deport CNMI-situated persons to their countries of origin,

19  despite the fact known to CNMI officials that such persons have submitted requests for

20  asylum/refugee/torture protections, which submissions are pending as the applicants are

21  nonetheless deported by the CNMI.

22      104.    The facts alleged in the previous example have been memorialized by

23  documents, including CNMI Superior Court pleadings, relating to PRC citizen Zhen Wen

24

-22-

1    Zhu, who was taken into custody on a recent Friday afternoon by CNMI officials, while

2    there telephoned CNMI resident Juan Santos ("Santos"), notified Mr. Santos that DOLI

3    would deport him the following Sunday, and was then whisked from the CNMI by

4    airplane as explained May 10, 2002 by Mr. Santos.  These documents include copies of:

5    (i) the I-590 application signed by Mr. Zhu and submitted on his behalf by CNMI-situated

6    attorney Joseph A. Arriola, Exhibit "J-1"; (ii) A cover letter drafted and signed by Mr.

7    Arriola which, together with the enclosed I-590 form, was then transmitted to various

8    U.S. and CNMI agencies, Exhibit "K-1"by certified mail and otherwise, Exhibit "L-1";

9    (iii) the written order by which CNMI Superior Court Judge David A. Wiseman, on

10   January 24, 2002, memorialized having received notice of the I-590 submission, Exhibit

11   "L-1" at p.1, lines 21-27; (iv) a CNMI-published newspaper article, published 12 days

12   later on February 5, 2002, in which Defendant Torres acknowledges the applicability of

13   asylum/refugee/torture protections to and within the CNMI, Exhibit "M-1"; (v) the notice

14   signed February 4, 2001 by Judge Wiseman, memorializing again both Judge Wiseman's

15   and the OAG's receipt of a copy and notice of Mr. Zhu pending asylum/refugee/torture

16   protection request, Exhibit "0-1", at p.2, ¶1 (Exhibit "N-1" omitted intentionally); and,

17   (vi) Judge Wiseman's subsequent order documenting that Mr. Wen was in fact ordered

18   deported by the CNMI Superior Court on February 14, 2002, Exhibit "P-1", before being

19   taken into CNMI custody, imprisoned at the DOLI jail, and physically removed from the

20   CNMI as reported by Mr. Santos.

21        105.    On April 18, 2002 in this proceeding, as documented by the transcript

22   excerpt appended as Exhibit "Q-1", the Court agreed with CNMI attorney Clayton "that

23   the Commonwealth has been embarrassed by this case", pointed out that "[t]he United

24

1  States or the Commonwealth has a duty to either promulgate some rules that are

2  consistent with the international treaties that the United States is a signatory of", and

3  remarked that "both of them can't sit on the side lines pointing the fingers at each other."

4  Id.

5  **FIRST CLAIM FOR RELIEF**

6       106.   Plaintiffs by this reference reallege and incorporate the allegations set forth

7  in the preceding paragraphs.

8       107.   Plaintiffs state this claim for declaratory and injunctive relief against

9  defendants Powell, Ashcroft, Tenorio and Torres, and\or other officials of the United

10  States of America who are presently unknown to plaintiffs, and\or other officials of the

11  Commonwealth of the Northern Mariana Islands who are presently unknown to plaintiffs,

12  in their official capacities, to enforce their rights to a determination of their status as

13  refugees and to be free from refoulement and deportation pending such determination

14  pursuant to federal law, including 42 U.S.C. sec. 1983.

15       108.   Plaintiffs have a well founded fear of being subject to personal and

16  political persecution, torture, inhumane treatment, punishment, loss of liberty, physical

17  and emotional pain and suffering, involuntary separation from their children, spouses and

18  other family members, and\or other severe harms cognizable under international law if

19  they are refouled or deported.  Plaintiffs can demonstrate that they would be threatened

20  and\or that there is a clear probability they would suffer these grievous injuries if they

21  were refouled or deported.

22       109.   Plaintiffs have a substantive right to seek refugee status pursuant to § 207

23  of the INA, and\or pursuant to international law.

24

-24-

110.    Plaintiffs have a substantive right to be free from refoulement pending a determination of their refugee status pursuant to § 207 of the INA and\or pursuant to international law.

111.    The Commonwealth of the Northern Mariana Islands has duties to determine plaintiff's eligibility for refugee status and protect plaintiffs from refoulement or deportation pending such determination arising under international law.

112.    The United States of America has duties to determine plaintiff's eligibility for refugee status pursuant to § 207 of the INA and to protect plaintiffs from refoulement or deportation pending such determination arising under international law.

113.    Defendants Powell, Ashcroft, Tenorio and Torres and\or other officials of the United States of America and\or the Commonwealth of the Northern Mariana Islands have duties, jointly and severally, to determine whether plaintiffs are eligible for refugee status and to protect plaintiffs from refoulement and deportation pending any determination of their eligibility for refugee status.

114.    In the alternative, defendants Tenorio and Torres, and\or other officials of the Commonwealth of the Northern Mariana Islands are under duty arising under international law to determine whether plaintiffs are eligible for refugee status and to protect plaintiffs from refoulement and deportation pending any determination of their eligibility for refugee status.

115.    Defendants Powell, Ashcroft, Tenorio and Torres, and\or other officials of the United States and\or the Commonwealth of the Northern Mariana Islands have and continue to deny plaintiffs of their right to a determination of their refugee status arbitrarily and without due process.

-25-

116.    Defendants Tenorio and Torres continue to threaten plaintiffs with immediate refoulement or deportation without having first ensured that plaintiff's eligibility for refugee status has been finally determined.

117.    Plaintiffs will suffer irreparable harm, political and personal persecution, pain, torture, imprisonment, denial of their civil rights, and denial of their human rights if they are refouled or deported.

118.    In the alternative, plaintiffs reasonably fear that they will suffer political and personal persecution, pain, torture, imprisonment, denial of their civil rights and denial of their human rights if they are refouled or deported.

119.    Plaintiffs now suffer fear, trepidation, humiliation, and severe emotional distress directly and proximately caused by defendants' continuing arbitrary and capricious failure and refusal to determine their eligibility for refugee status.

120.    Plaintiffs claim right to a declaration by this court of their rights under § 207 of the INA to a determination of their eligibility for refugee status by defendants Powell, Ashcroft, and\or other officials of the United States of America.

121.    Plaintiffs claim right pursuant to 28 U.S.C. § 2201 and\or this court's inherent powers to a declaration of their rights under international law to a determination by defendants Tenorio, Torres, and\or other officials of the Commonwealth of the Northern Mariana Islands of their eligibility for refugee status.

122.    Plaintiffs claim right pursuant to 28 U.S.C. § 1361, § 1651, § 2202, and\or this court's inherent powers to preliminary and permanent injunctions enjoining defendants Powell, Ashcroft, Tenorio, Torres, and other officials of the United States of America or the Commonwealth of the Northern Mariana Islands from arbitrarily and

-26-

1  capriciously continuing to deny plaintiffs of their right to a determination of their refugee

2  status without due process of law.

3      123.    Plaintiffs claim right pursuant to 28 U.S.C. § 1651, § 2202, and\or this

4  court's inherent powers to preliminary and permanent injunctions enjoining defendants

5  Tenorio and Torres from refouling or deporting plaintiffs at any time before their

6  eligibility for refugee status is finally determined under due process of law.

7      124.    Plaintiffs claim right to costs for bringing this action.

8      125.    Plaintiffs  claim right to attorney fees for bringing this action pursuant to

9  42 U.S.C. § 1988 and\or the Equal Access to Justice Act, (Pub. L. 96-481, Title II, Oct.

10  21, 1980, 94 Stat. 2325).

11

12              **SECOND CLAIM FOR RELIEF**

13      126.    Plaintiffs by this reference reallege and incorporate the allegations set forth

14  in the preceding paragraphs.

15      127.    Plaintiffs state this claim to enforce their rights to be free from torture and

16  other forms of cruel and inhuman treatment or punishment and to be free from

17  refoulement or deportation to a country where they might be subject to such treatment.

18      128.    Plaintiffs states this claim for relief against the Commonwealth officials

19  named herein in their official capacities pursuant to federal law including 42 U.S.C. §

20  1983, the United Nations Convention Against Torture and Other Forms of Cruel and

21  Inhuman or Degrading Treatment or Punishment (Convention Against Torture), and

22  international law.

23

24

129.    Plaintiffs states this claim for relief against the United States officials named herein pursuant to the Foreign Affairs Reform and Restructuring Act (FARR), Pub. L. No. 105-277, 1999 U.S.C.C.A.N. 871, the Convention Against Torture, and international law.

130.    The Convention Against Torture is jus cogens and binding on the Commonwealth of the Northern Mariana Islands.

131.    Plaintiffs have substantive rights to be free from torture, cruel and inhuman treatment, and degrading treatment or punishment arising under the FARR, the Convention Against Torture, and under international law.

132.    Both the United States of American and the Commonwealth of the Northern Mariana Islands are under mandatory duties to ensure that plaintiffs are not subject to torture, inhuman or degrading treatment or inhuman or degrading punishment or refouled or deported to a country where they might be subject to such treatment.

133.    Section 2242(b) of the Foreign Affairs Reform and Restructuring Act (FARR) required that the "heads of the appropriate agencies" prescribe regulations within 120 days to implement the United States' obligations under Article 3 of Convention Against Torture.

134.    Defendants Tenorio and Torres are heads of appropriate agencies within the meaning of the FARR.  Defendants Powell and Ashcroft have failed to prescribe regulations applicable in the Commonwealth of the Northern Mariana Islands, and have failed to consult with or take any acts to require defendants Tenorio or Torres to prescribe such regulations to implement the United States of America's obligations under Article 3 of the Convention Against Torture.

135.     Defendants Powell, Ashcroft, Tenorio, and\or Torres have and continue to arbitrarily and capriciously fail and refuse to take any acts to ensure plaintiffs are not subject to torture, inhuman, degrading treatment or punishment, or ensure plaintiffs are not refouled or deported to a country where they might be subject to such treatment.

136.     Plaintiffs claim right pursuant to 28 U.S.C. § 2201 and\or this court's inherent powers to a declaration of their rights to be free from torture, cruel and inhuman treatment, degrading treatment, or degrading punishment arising under the Convention Against Torture, the FARR, and under international law.

137.     Plaintiffs claim right pursuant to 28 U.S.C. § 1361, § 1651, § 2202, and\or this court's inherent powers to preliminary and permanent injunctions enjoining defendants Powell, Ashcroft, Tenorio, and\or Torres from subjecting plaintiffs to torture, cruel and inhuman treatment, and degrading treatment or punishment and enjoining them from refouling or deporting plaintiffs to a country where they might be subject to such treatment without due process of law.

138.     Plaintiffs claim right to a preliminary and permanent injunction mandating that defendants Powell, Ashcroft, Tenorio and\or Torres immediately prescribe regulations to ensure plaintiffs rights are protected under due process of law

139.     Plaintiffs claim right to costs for bringing this claim.

140.     Plaintiffs claim right to attorney fees for bringing this claim pursuant to 42 U.S.C. § 1988 and\or pursuant to the Equal Access to Justice Act, (Pub.L. 96-481, Title II, Oct. 21, 1980, 94 Stat. 2325).

\\

\\

**THIRD CLAIM FOR RELIEF**

141.    Plaintiffs by this reference reallege and incorporate the allegations set forth in the preceding paragraphs.

142.    Plaintiffs state this claim for relief to enforce their rights under the Alien Tort Claims Act and international law as against the Commonwealth of the Northern Mariana Islands.

143.    The Commonwealth of the Northern Mariana Islands, acting by and through Robert Goldberg, Assistant Attorney General for the Commonwealth of the Northern Mariana Islands, Mark Zachares, Secretary of the Commonwealth Department of Labor and Immigration, DOES 7-25, their supervisors, and others who are unknown to plaintiff, instituted an official government policy of "zero tolerance" toward aliens present in the Commonwealth.

144.    Part of the Commonwealth's zero tolerance policy included policies and practices of arbitrarily detaining aliens for prolonged periods of time.

145.    Part of the Commonwealth's zero tolerance policy included denying that aliens have any rights to seek refugee status, to be protected from refoulement or deportation while a determination was made as to refugee status, to be free from arbitrary and prolonged detention, or to be free from .

146.    Part of the Commonwealth's zero tolerance policy included purposely failing to disclose and affirmatively concealing all information and communications establishing the rights of aliens to apply for refugee status and be protected from refoulement or deportation pending a determination of refugee status.

1    147.    Part of the Commonwealth's zero tolerance policy included interfering

2    with, and misrepresenting these rights to all aliens in the Commonwealth, including

3    plaintiffs.

4    148.    Part of the Commonwealth's zero tolerance policy included preventing

5    plaintiffs from communicating with the outside world, or hiring or communicating with

6    an attorney with the purpose of denying plaintiffs of all assistance or relief from arbitrary

7    and prolonged detention.

8    149.    The Commonwealth's zero tolerance policy directly and proximately

9    caused plaintiffs Ahmed, Liang, and Nian to suffer prolonged arbitrary detention, physical

10    and emotional pain and suffering, fear, trepidation, severe emotional distress, loss of

11    liberty and freedom, loss of their right to work, and denial of their rights to equal

12    protection and due process.

13    150.    Plaintiffs claim right to compensatory and punitive damages against the

14    Commonwealth of the Northern Mariana Islands, and DOES 7-25, in their individual

15    capacities, pursuant to the Alien Tort Claims Act and RESTATEMENT (THIRD) OF THE

16    FOREIGN RELATIONS LAW OF THE UNITED STATES § 702.

17

18    **FOURTH CLAIM FOR RELIEF**

19    151.    Plaintiffs by this reference reallege and incorporate the allegations set forth

20    in the preceding paragraphs.

21    152.    Plaintiffs states this claim for relief to enforce their right to be free from a

22    conspiracy to deny them of their civil and constitutional rights pursuant to 42 U.S.C. §

23    1985.

24

153.    Plaintiffs have rights to apply for refugee status, to be free from refoulement and deportation, and to be free from arbitrary and prolonged detention, to be free from torture, and other forms of cruel and inhuman treatment or punishment under international law, to equal protection, and to due process. Defendants have arbitrarily and capriciously deprived plaintiff of these rights in violation of plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

154.    Defendants Tenorio, Torres, DOES 7-25, their supervisors and subordinates have and continue to collectively conspire and directly and proximately cause plaintiffs to suffer a deprivation of these rights on the basis of plaintiffs race, nationality, ethnicity, and\or alienage.

155.    Defendants have and continue to conspire together to withhold and conceal information, to misrepresent facts, to mislead with the purpose denying rights and inducing reliance, and to actually prevent plaintiffs as well as all other aliens in the Commonwealth from learning about or exercising their rights to apply for refugee status, to be free from refoulement or deportation, to be free from arbitrary and prolonged detention, to be free from torture and other forms of cruel and inhuman treatment or punishment, to equal protection, and to due process.

156.    As a direct and proximate cause and result of the conspiracy among defendants and their acts taken in furtherance of that conspiracy, plaintiffs have suffered harm and injuries including denial of their constitutional, civil and other rights under international law, physical and emotional pain and suffering, fear, trepidation, and severe emotional distress.

157.    Plaintiffs claim right pursuant to 42 U.S.C. § 1985 to compensatory and punitive damages in an amount to be shown at trail against defendants Tenorio, Torres, DOES 7-25, together with their supervisors and subordinates for conspiracy.

158.    Plaintiff claims right to costs for bringing this action.

159.    Plaintiff claims right to attorney fees for bringing this action pursuant to 42 U.S.C. § 1988.

**FIFTH CLAIM FOR RELIEF**

160.    Plaintiffs by this reference reallege and incorporate the allegations set forth in the preceding paragraphs.

161.    Plaintiffs state this claim to enforce their rights to be free from physical harm caused by the concealment of information by government officials pursuant to RESTATEMENT (SECOND) TORTS § 557A.

162.    Plaintiffs state this claim for relief under the common law of the Commonwealth for concealment against defendants Tenorio, Torres, DOES 1-25, and their supervisors and subordinates.

163.    For more than two (2) years, Defendants U.S., the CNMI, DOES 7-25, and Mark Zachares and Robert Goldberg intentionally and/or negligently concealed Defendants' knowledge or information concerning the acceptance and processing of asylum/refugee and torture protection applications by plaintiffs PRC, Sri Lanka and Bangladesh citizens within the CNMI, including but not limited to the claims now being asserted by Plaintiffs, and the unconstitutional and unlawful deprivations of their right to due process and equal protection under the United States Constitution and CNMI which

-33-

1    Plaintiffs and were thereby subjected by the Defendants.  (See Exhibit G1 letter from

2    Doris Meissner  U.S. Department of Justice to then Governor Pedro P. Tenorio, a copy of

3    which is attached hereto, and incorporated herein)

4          164.    Plaintiffs have also attempted to acquire the protections required to be

5    made available pursuant to the 1985 Torture Convention, including, but not limited to,

6    protection from torture and protection afforded by effect of non refoulement.  See, e.g.,

7    Exhibit "F".

8          165.    On August 10, 1999, Mr. Oscar Martinez, the INS official assigned to

9    operated the only CNMI-situated INS office, provided notice to Plaintiffs and other

10   similarly situated persons that neither the CNMI-situated INS office manned by Mr.

11   Martinez nor any other INS office will accept for submission and processing any I-590

12   forms in direct contradiction to United States law and procedure.  See Exhibits "E" and

13   "G" and Meissner letter.

14         166.    This statement implied, and Plaintiffs were fraudulently led to believe, and

15   did believe, that the INS office in the CNMI was not empowered to accept asylum

16   applications from CNMI-situated aliens.

17         167.    This statement was and is false intentionally misleading and contrary to

18   law, and  had the intended purpose and effect of misleading and misinforming the

19   Plaintiffs to believe that they had no refugee/asylum rights available to them under U.S.

20   law.

21         168.    Mr. Martinez, an employee of the United States  knew or should have

22   known that refuge/asylum petitions pursuant to INA sec. 207 were and are available to

23   alien persons situated outside the United States.

24

-34-

1   169.    Mr. Martinez knew or should have known that refuge/asylum petitions

2   pursuant to INA sec. 207 were available to alien persons situated in the CNMI.

3   170.    Neither Mr. Martinez, any other U.S. official, nor any CNMI official has,

4   since August 10, 1999, refuted, recanted or overruled Mr. Martinez's August 10, 1999,

5   notice, which constituted concealing knowledge or information that he was under an

6   affirmative duty not to conceal.

7   171.    On August 12, 1999, information pertaining to the CNMI Government's

8   policy respecting I-590 applicants and the recent involvement of INS officials on the

9   Island of Tinian was sought from both the CNMI Office of the Attorney General

10  ("OAG") via letter to Acting Attorney General Maya Kara, and from the CNMI's

11  Department of Labor and Immigration ("DOLI") via letter to DOLI Secretary Mark

12  Zachares, pursuant to 1 CMC Division 9 (the CNMI "Open Government Act"). See

13  Exhibits "I" and "J".

14  172.    Since Plaintiffs were unaware of the concealed knowledge or information,

15  and had relied upon Defendants to comply with Defendants' obligations to provide that

16  knowledge or information to Plaintiffs and others, Plaintiffs were misled by Defendants.

17  173.    Defendants' concealment of relevant knowledge and information from the

18  Plaintiffs was intentional and/or negligent.

19  174.    Defendants had a duty to disclose true and relevant information to them

20  and an affirmative duty not to mislead Plaintiffs to their detriment.

21  175.    Defendants' concealment of relevant knowledge and information from the

22  Plaintiffs was and is in violation of Restatement (Second) of Torts sec. 557A.

23

24

-35-