176.    Defendants' conduct subjects the plaintiffs and defendants to the jurisdiction of this court pursuant the Alien Tort Claims Act, 28 U.S.C. sec. 1350, in that the conduct committed by the Defendants will subject the  plaintiffs to torture or imminent fear of torture as describes in U.S. Public Law 102-256 the Torture Victim Protection Act of 1991.

177.    Defendants' concealment of relevant knowledge and information from the Plaintiffs has caused Plaintiffs to suffer, and to continue suffering, injuries and damages.

178.    Defendants are liable to the Plaintiffs as a consequence of the above-described concealment for all of the previously-described damages and injuries and for further consequential damages directly or indirectly resulting therefrom.

179.    In order to deter Defendants and others similarly situated from further engaging in the previously described wrongful, wanton and willful conduct, Plaintiffs further request that punitive damages be imposed against Defendants in an amount to be determined at trial.

180.    Plaintiffs claim right to compensatory and punitive damages in an amount to be shown at trial against the defendants named above.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request judgment granting them the following relief:

1.    Monetary damages in an amount to be proven at trial;

2.    Injunctive relief, in a manner to be more particularly described prior to or at trial, pursuant to all applicable legal and equitable considerations;

1        3.    Declaratory relief, in a manner to be more particularly described

2    prior to or at trial, pursuant to all applicable legal and equitable considerations;

3        4.    All legal and equitable remedies deemed appropriate under the

4    circumstances, including but not limited to any equitable remedies to be fashioned by the

5    court;

6        5.    All attorney's fees, costs, prejudgment interest, and postjudgment

7    interest, legally and equitably permissible, in an amount to be determined at

8    trial—together with a lodestar multiplier;

9        6.    All further legal and equitable relief deemed appropriate, or

10   fashioned by the court, under the circumstances.

11   Dated:  May 10, 2002.

12

13

14   Bruce L. Jorgensen
     Attorney for Plaintiffs

15

16

17

18

19

20

21

22

23

24

<u>Decl  ation/Verification of Ju   l Ahmed</u>

I, Juyel Ahmed, declare and verify, under penalty of perjury of the Commonwealth of the Northern Mariana Islands ("CNMI"), that:

1.    I am a Bangladesh citizen presently being imprisoned, by the CNMI Government, at the prison facility operated by the CNMI's Department of Labor and Immigration ("DOLI").

2.    I have been imprisoned by the CNMI, for an indefinite period, since July 1, 1998 (more than 20 months).

3.    My initial entry to the CNMI, as a tourist, was lawful. Subsequently, however, I was arrested by CNMI authorities for failing to depart the CNMI.

4.    Before my lawful entry to the CNMI, I was the victim of torture, by Bangladesh Government authorities.  That torture arose during the course of my arrest, imprisonment, and interrogation by Bangladesh police, during which police attempted to coerce a "confession" from me in various ways, including:

    a.    beating my body with wood/metal batons (breaking my left hip in the process);

    b.    inflicting lacerations on my body and, immediately afterwards, pouring salt into the bleeding lacerations;

    c.    slicing the bottoms of my feet, with a straight razor;

    d.    forcing my nose and mouth into boiling water.

5.    During the first year of my CNMI imprisonment, I was routinely permitted to communicate with persons who visited me at the prison, and via the prison telephone with persons outside the prison.

6.    Later, during July 1999, there began appearing in CNMI newspapers a variety of articles relating to prospective Federal/CNMI asylum/refugee proceedings, including those described in the appended documents labeled Exhibits "1"-"2".  In response, the CNMI's Secretary of Labor and Immigration issued what, in apparent effect, constituted a temporary "discontinuance" of new CNMI entry permits to Peoples' Republic of China citizens.  <u>See</u>, Exhibit "3".

7.    Nearly simultaneously with the appearance of those articles, the CNMI Government, upon information and belief at the express instruction of CNMI Assistant Attorney General Robert Goldberg:

    a.    terminated my right, and prevented my efforts, to communicate with persons who wished to visit me at the prison



EXHIBIT "A"

(including my brot. :); and,

      b.  terminated my right, and prevented my efforts, to communicate via the prison telephone with all persons outside the prison.

8.  During the following months, and until several weeks ago, the CNMI Government, upon information and belief at the express instruction of Mr. Goldberg, continued to preclude me from communicating with prison visitors.

9.  During the months described in the preceding paragraph, and continuing through the present, the CNMI Government, upon information and belief at the express instruction of Mr. Goldberg, has continued to preclude me from communicating with prison via the prison telephone (although, recently, I was able to gain temporary access to, and use of, that telephone).

10.  During the months described in the preceding paragraph, and continuing through the present, the CNMI Government, upon information and belief at the express instruction of Mr. Goldberg, and on those occasions when Mr. Goldberg was physically present at the DOLI prison, forbade prisoners from having access to or making use of newspapers, cigarettes, and other ordinary items.

11.  During the months described in the preceding paragraph, and continuing through approximately January 22, 2000, a fellow Bangladesh prisoner named Rofiqul Islam, and I, attempted to communicate with attorney Bruce L. Jorgensen in order to request that he represent us with respect to the indefinite imprisonment, related constitutional and legal deprivations, and other wrongful conduct, to which we were being subjected. Our efforts to communicate with prospective counsel were futile because we were not permitted to have contact with prison visitors or to use the prison telephone.

12.  On or about January 22, 2000, Mr. Islam, having been precluded from communicating with Mr. Jorgensen or other prospective counsel, was deported by the CNMI. This was, upon information and belief, two weekend days before Mr. Jorgensen caused to be filed (on Monday, January 24, 2000) the Liang, et.al. v. CNMI, et.al. CNMI Superior Court Special Proceeding No. 00-0050E habeas corpus matter, which had been contemplated by Mr. Goldberg and others the previous week, as it was the subject of discussion that week before Judge Munson and others (including Mr. Goldberg), in the Liang, et.al. v. U.S., et.al. Federal Court Civil Action No. 99-0046 matter.

13.  On February 23, 2000, through a series of intermediaries, I was finally able to contact Mr. Jorgensen. It was then that I finally able to learn about:

      a.  the CNMI's purported obligations to me and persons similarly situated, by effect of CNMI statutory law, Federal

statutory law, Federal/CNMI treaty obligations, and Federal/CNMI constitutional law, including:

1) those codified as CNMI statutory law, by effect of 7 CMC §3401, such as:

a) the <u>Restatement (Third) of Foreign Relations Law</u>, including:

i) §102(1)(a),(2) (<u>Sources of International Law/Customary International Law</u>);

ii) §111(1)(International Law and Agreements as Law of the United States (including both the <u>Convention Relating to the Status of Refugees</u> ("1951 Convention") and the <u>United Nations Protocol Relating to the Status of Refugees</u> ("1967 Protocol")

iii) §701(b)(<u>Obligation to Respect Human Rights</u>);

iv) §702(d)(e)(<u>Customary International Law of Human Rights</u>); and,

b) the <u>United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment</u>, G.A.O.R. A/39/506 (1984), 23 I.L.M. 1027 (1984)(modified in 24 I.L.M. 535 (1985)), S. Treaty Doc. No. 110-20, 100th Cong. 2d Sess. 7 (1988) (reprinting Convention), Art. 1-3 ("1985 Torture Convention");

2) those made equally binding upon the CNMI, including the <u>1951 Convention</u>, the <u>1967 Protocol</u>, and the <u>1985 Torture Convention</u>, by effect of Article I, §102 of the <u>Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America</u> ("Covenant"), and as noted in <u>CNMI v. Inabangan</u>, Cr.No. 98-0248, <u>Order Denying Motion....</u> at pp. 3-4 (CNMI Super.Ct. Aug.3, 1999);

3) international laws to which the Federal and CNMI governments are obligated by effect of <u>jus cogens</u> and similar doctrines; and,

4) various CNMI and Federal constitutional provisions (e.g., due process/equal rights) having legal effect; and,

b. various court rulings, pleadings, and related materials, copies of which are appended to this declaration, including:

1) <u>Tran v. Com. of the Northern Mariana Islands</u>, 780 F.Supp. 709, 714 (1991), <u>aff'd</u>, 993 F.2d 884 (9th Cir. 1993)(recognizing the CNMI's lack of any "policy on refugee status or political asylum"), Exhibit "4";

2) _.S. v. Shi, et.al._, Crim Io. 99-0030, _United_ States' Opposition    Dismissal...., at 3,    nes 10-13, 15-16, (D.N.Mar.Isl. Aug. 3, 1999), **Exhibit "5"**;

3) _In Re: Indefinite Detention Cases_, CV 98-674 TJH (JWJx) and cases listed in Appendix, _Memorandum Opinion_ (C.D.Cal. Jan. 27, 2000 (opinion in which Hon. Terry J. Hatter, Chief United States District Judge for the Central District of California, explained to the many Federal Magistrates under his supervision, that indefinite detention of immigration detainees, and suspension of substantive due process rights, is forbidden by effect of Ninth Circuit precedent (citing _Barrera-Echavarria v. Rison_, 44 F.3d 1441, 1448 (9th Cir.), _cert._ _denied_, 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed. 2d 407 (1995) and _Leng May Ma v. Barber_, 357 U.S. 185, 187, 78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246 (1958) in which it was noted that: "The Supreme Court has consistently recognized that 'our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission...and those who are within...after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely "on the threshold of initial entry."'"), **Exhibit "6"**;

4) _Uthayachandran R. Kandiah, et.al. v. U.S., et.al._, Civil Action No. 00-0005, _Complaint For Injunctive, Declaratory, And Further Relief_, (D.N.Mar.Isl. Feb. 10, 2000), **Exhibit "7"**.

5) materials relating to, and explaining in part, the _1985 Torture Convention_ (precluding _refoulement_ (return) to country of origin of any in danger of being subjected to severe pain or suffering, whether physical or mental, inflicted on a person for such purposes as punishing him for an act he or a third person has committed or is suspected of having committed, or for any reason based on discrimination of any kind), **Exhibit "8"**.

14. Based on the facts and considerations described above, I have authorized Mr. Jorgensen:

a. to continue with efforts, currently underway, to require the acceptance, processing, and meaningful/impartial disposition, of:

1) my application for Federal/CNMI asylum protection; and,

2) my simultaneous request for consideration under the _1985 Torture Convention_, _see_ **Exhibit "8"**, at §34.07;

b. to include me, as an additional Plaintiff, in _Uthayachandran R. Kandiah, et.al. v. U.S., et.al._, Civil Action No. 00-0005 (D.N.Mar.Isl.) and, by so doing, to:

1)    sure that I am not sub  ·ted, by either the Federal or CNMI Governments, to unlawful refoulement to Bangladesh; and,

2) initiate additional claims pursuant to 42 U.S.C. §1983 (and other theories of recovery) against various persons including those who, during the past 20 months, have acted under color of CNMI and/or Federal law; and,

c.   to seek by application under oath signed by Mr. Jorgensen on my behalf, and as permitted by 6 CMC §7102, issuance from the CNMI Superior Court of a writ of habeas corpus releasing me immediately from the indefinite and unlawful imprisonment to which I have been subjected during the past twenty (20) months.

Dated:    Saipan, MP, February 23, 2000.

_____

Juyel Ahmed

## SUPPLEMENTAL DECLARATION OF JUYEL AHMED

I, Juyel Ahmed, declare and verify, under penalty of perjury

of the Commonwealth of the Northern Mariana Islands ("CNMI"), that:

1.    I am a Bangladesh citizen presently being imprisoned, by the CNMI Government, at the prison facility operated by the CNMI's Department of Labor and Immigration ("DOLI").

2.    I have been imprisoned by the CNMI, for an indefinite period, since July 1, 1998 (more than 20 months).

3.    During a significant period of my imprisonment, a second Bangladesh citizen, named Rofigul Islam, was also imprisoned at the DOLI prison.

4.    Mr. Islam and I are members of the Muslim religion and, throughout our imprisonment at the DOLI prison, have attempted to practice our Muslim faith.

5.    During our imprisonment at DOLI, Mr. Islam and I were subjected to treatment different from other prisoners which treatment was initiated at the direction of CNMI Assistant Attorney General Robert Goldberg.  For example:

a.    Following the U.S. Senate oversight hearings relating to CNMI immigration policies, and Mr. Goldberg's return to Saipan from Washington, D.C., Mr. Goldberg came to the DOLI prison. There, Mr. Goldberg:

1)    Took Mr Islam and me aside, notified us that he had visited the Bangladesh Embassy during his trip to Washington, D.C., represented that the Bangladesh Embassy had refused to comply with various demands/"requests" Mr. Goldberg had made at the Bangladesh Embassy for issuance of passports, and attempted to coerce Mr. Islam and me into helping the Bangladesh Government acquiesce to Mr. Goldberg's demands/"requests";

2)    When Mr. Islam and I refused to comply with Mr. Goldberg's demands/"requests" at the DOLI prison, Mr. Goldberg responded by ordering that Mr. Islam and I be subjected to "24-hour lockdown" for three hundred and sixty five (365) days per year;

3)    As the direct result of Mr. Goldberg's orders, Mr. Islam and I were immediately subjected to "24-hour lockdown",

1

EXHIBIT "B"

throughout the following 2-week period, during which Mr. Islam and I were:

        a) Physically prevented from leaving our respective cells (called "rooms" by some DOLI guards);

        b) Not permitted to smoke cigarettes or to have access to smoking materials;

        c) Not permitted to play cards or have access to playing cards;

        d) Not permitted to read newspapers or have access to entertainment of any type; and,

        e) Not permitted to communicate with any persons (either in person or by telephone or by letter) other than the DOLI guards who periodically entered our DOLI cells; and,

    b.    Having continued to be forbidden from communicating (either in person or by telephone) with any persons outside the DOLI prison, I learned during December 1999, that:

        1) There had been delivered to DOLI guards, a week earlier, two (2) letters for me (one letter was from my mother in Bangladesh, and the second from my friend);

        2) Both letters had been opened, and photocopied by DOLI personnel, before being delivered to me;

        3) DOLI personnel retained possession of photocopies of both letters, in DOLI files, for Mr. Goldberg's use; and,

        4) Delivery of the letters, to me, had been delayed: a week had passed between the day the letters were received at the DOLI prison, and the date the letters were finally delivered to me by DOLI personnel.

    6.    The "24-hour lockdown", ordered by Mr. Goldberg to continue every day Mr. Islam and I remained in the DOLI prison, lasted for a two-week period, before being relaxed by DOLI guards (except while Mr. Goldberg is present at the DOLI prison).

    7.    Mr. Islam and I, additionally, were forbidden from transmitting letters to persons outside the DOLI prison, and from being able to communicate with any persons, such as family members, friends, or lawyers, who might be able to assist us or to explain to us the meaning and availablity of habeas corpus relief, equal protection under CNMI and Federal law, and other legal and equitable remedies.

8    Of all persons imprisoned at DOLI during the above-described times, Mr. Islam and I, upon information and belief, were the only persons of Bangladesh citizenship, and the only persons known by Mr. Goldberg to be practicing the Muslim religion.

Dated:    Saipan, MP, February 27, 2000.

*JUYEL AHMED*

Juyel Ahmed

GROUP II

Present address:

Department 95, PMB 16001, Saipan MP 96950

| Date of birth: (month/day/year) | Place of birth (city or town) | (Province) | (Country) | Present nationality: |
|---|---|---|---|---|
| 01/30/55 | Beijing | | PRC | PRC |

| Country from which I fled or was displaced : | On or about (month/day/year) |
|---|---|
| Peoples' Republic of China | August 5, 1992 |

Reasons (State in detail):

Applicant was inflicted with a gunshot wound caused by PRC security forces while applicant participated in pro-democracy demonstrations in Beijing. To avoid subsequent persecution, applicant escaped PRC with assista from otherPRC citizens. Applicant is also a practicing Christian, with more than one child, and is married to a U.S. Citizen. Applicant's co-demonstrato s believed to have been jailed or killed upon returning to PRC. Applicant ears jail, torture, or death by PRC officials if applicant is deported to P

My present immigration status is    Saipan, CNMI    is    Immigration Detention
                                    (Country in which residing)

Evidence of my immigration status is:

ot available: PRC officials refuse to issue passport hoping, instead for pplicant to be deported to PRC.

| Name of spouse: | Present address of spouse (if different) | Nationality of spouse: |
|---|---|---|
| Herring, Liang Mui | Same | United States |

My spouse ☒ will ☐ will not accompany me to the United States.

| Name of child (ren) | Date of birth | Place of birth | Present address (if different) |
|---|---|---|---|
| Si Chen Liang | 10/1/85 | Beijing | Beijing |
| | | | |
| | | | |
| | | | |

Place a mark (X) in front of name of each child who will accompany you to the United States.

2. Schooling or education

| Name and location of school | Type | Dates attended | Title of degree or diploma |
|---|---|---|---|
| Middle School | | through 6th grade | |
| High School | | 1971 | High School Graduate |
| | | | |

3. Military service    N/A

| Country | Branch and organization | Dates | Serial No. | Rank attained |
|---|---|---|---|---|
| | | | | |
| | | | | |

Form I-590 (Rev. 11-11-81)



EXHIBIT C

MESSAGE Chinese (C...

.O. Box 20099 GMF, Guam    Tel. (671) 477-8959

rean Presbyterian Church, Chinatown, Saipan NP

I [X] have [ ] have not been in the United States. (If yes, give the dates of any entry and departure and the

I [ ] have [X] have not been charged with a violation of law. (If yes have ever been charged with a violation of law, give date, place and nature of such charge and the final result.)

purpose of your entry (visitor, permanent resident, student, seaman, etc.)

have been to Guam. There, I married my wife. My Social Security Number 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.

This is Alien Registration Number:

I am being sponsored by (Name and address of United States sponsor:

I have the following close relatives in the United States:

| Name | Relationship | Present address |
| --- | --- | --- |
| erring, Liang Mui | Wife | Same as above |

Liang Mui Herring (my wife). Attached are my marriage documents.

I swear (affirm) that I have the contents of this registration subscribed by me including the attached documents, that the same are true to the best of my knowledge, and that corrections are based ( ) in ( ) were made by me at my request, and that this registration was signed y me with my full, true name.

(Complete and true signature of registrant)

8/30/99 | Signature of registrant

_Ri Liang_

(month/day/year)

DO NOT WRITE BELOW THIS LINE

(Signature and title of officer)

| INTERVIEW DATE | | APPROVED DATE |
| --- | --- | --- |
| Immigration Officer | | Officer in Charge |

**INSTRUCTIONS**

in form also will be executed, signed and submitted to the Officer in Charge of the nearest overseas office of the United States Immigration and Naturalization Service. When your name has been reached as a registrant you will be furnished additional instruction.

nstructions - A separate Registration Form must be executed by each registrant and submitted in one copy. A Registration Form in behalf of a child her 14 years of age shall be executed by its parent of guardian.

ublic reporting burden for this collection of information is estimated to average 15 minutes per response. If you have comments regarding the curacy of this estimate or suggestions for simplifying this form, you can write to both the U.S. Department of Justice, Immigration and Naturalization rvice Policy Directives and Instructions Branch (HQPDI), Washington, D.C. 20536 and to the Office of Management and Budget, Paperwork duction Project: OMB No. 1115-0087, Washington, D.C. 20503.

Bruce Lee Jorgensen
Attorney At Law*
MSV II Building, 2d Floor
Garapan Village
Saipan, MP 96950
(670) 233-5261 (tel)
(670) 233-5260 (fax)

*Admitted In all Hawaii State And Federal Courts; Ninth Circuit Court of Appeals; District Court of
the N. Mariana Islands; Republic Of Palau; High Court of the Trust Territory of the Pacific Islands

August 9, 1999 (CNMI)/August 8, 1999 (U.S. Mainland)

<u>Original via hand-delivery; copy via fax (670) 234-9159/233-7833</u>

Oscar Martinez
U.S. Department of Justice
Immigration and Naturalization Office
Horiguchi Building, Third Floor
Garapan Village
Saipan, MP  96950

    Re:  <u>U.S. Refugee Applicants/INS Form I-590 Processing</u>

Dear Mr. Martinez:

    During the past several weeks, several hundred Peoples'
Republic of China ("PRC") citizens now residing in the Commonwealth
of the Northern Mariana Islands ("CNMI"), have communicated to me
their intent to seek refugee status under United States ("U.S.")
laws and United Nations ("U.N.") human rights obligations made
applicable within the U.S. and the CNMI.

    Many of those CNMI-situated PRC citizens have now been
provided INS Form I-590 refugee applications.  They include a
Christian priest, a former Beijing news reporter, many women with
multiple children, and various political dissidents including Li
Falun Gong movement and China Democracy Party members.  For some,
the I-590 applications will be completed this week.

    Given the above-described circumstances, I am writing to
request that you notify me whether I-590 applications submitted on
behalf of PRC applicants will be accepted by your office, should be
transmitted to another INS office for processing, or will be wholly
rejected by INS officials.

    In the event that the applicants are not accepted for
processing by INS officials, copies will also be forwarded to U.N.
officials for processing.  Communications by and between P. Roy
Catalani (a Hawaii-based immigration law specialist), U.N.
attorneys, and me, are expected to continue this week.  Please let
me know whether you or other INS officials might be interested in
participating in those discussions.



EXHIBIT D

Oscar Marianas
August 9, 1999 (CN   )
Page Two

The U.N. refugee application processing time has reportedly been quite lengthy in past years.  One consequence of that delay has been the perception that CNMI-based U.N. applicants could not be deported from the CNMI or travel to the U.S. while applications were pending, but were required to remain for years in the CNMI.

I would also appreciate any information you, INS officials, and others, are willing to provide with respect to the so-called "Tinian boat people".  FOIA requests for production of that information are also in the process of being prepared.

One source represented to me that only 290 of the approximately 500 "boat people" were repatriated to the PRC from Tinian, and that the remainder were processed for refugee status by Federal officials, and then transported to the Mainland U.S.

Another source represented that CNMI Immigration/DPS personnel assigned to guard the "boat people" quarantine area were instructed by senior CNMI Immigration officials, to prevent anyone, and "especially lawyers", from entering the Tinian detention areas and conferring with the "boat people".

A third source claimed to have been advised, while providing services within a Tinian detention area, that Federal and CNMI officials there made clear their intent to keep quiet both the fact that many of the "boat people" detainees were being processed for refugee consideration with transit to the U.S., and the prospect that such an option might be available to all of the 12,000 or so PRC citizens now residing in the CNMI (even those here illegally).

Equally confusing is the position taken with respect to this situation by the Saipan Garment Manufacturers' Association ("SGMA") and/or recently attributed to SGMA Spokesperson Richard A. Pierce.  During an August 7, 1999 youth basketball game, CNMI attorney James E. Hollman was approached by Pierce who, Hollman later explained: (i) scathingly criticized the efforts being made by Catalani, me, and others, to assist prospective PRC refugees; and, (ii) expressed the view that my efforts amounted to "a deathwish".

When I later telephoned Pierce to confirm the "deathwish" view, he would not confirm or deny having expressed that view, and said "Don't bother me".  When personally asked about the "deathwish" view during a chance encounter today, Pierce glared at me, refused to respond, and stalked out of the restaurant.

I remain uncertain whether Pierce's "deathwish" view constitutes his personal opinion, an SGMA position, or an implicit threat against me.  If a threat, perhaps your office might be inclined to have Federal Bureau of Investigation officials consult

ith Pierce.  Or, if the "deathwish" view is an o icial SGMA
osition being relayed by Pierce, perhaps some question should be
aised concerning SGMA's commitment to ensuring that its PRC
mployees are afforded full and equal human rights protection in
he CNMI.

Pierce's view, in any event, certainly seems a departure from
is previously-portrayed "businesses for social responsibility"
ttitude.

As for seeking assistance or protection from within the CNMI,
t occurs to many that the present CNMI Immigration leadership
pparently acts at the whim of SGMA officials: imposing the July
7, 1999 ban on all PRC immigration to the CNMI; lifting the ban,
ine days later, to permit CNMI entry for only those PRC citizens
ired by Pierce's SGMA affiliates; and, in the process, claiming to
ave a firm grasp of a problem repeated 12,000 times by CNMI
mmigration leadership, i.e., the entry of 12,000 prospective PRC
efugee applicants into the CNMI during the past few years.

PRC citizens working in the CNMI are, after all, entitled to
he same human rights as the rest of us.  And, interestingly, it
as been the local community which has recognized and supported
hose rights, and our efforts to protect those rights: as opposed,
hat is, to the PRC employers, SGMA affiliates, and (reportedly)
he current CNMI Immigration leadership, apparently incensed at the
ublic mention or the prospect of those rights being exercised by
RC citizens in the CNMI.

Please contact me at your convenience if you have any
uestions or comments pertaining to any of the matters addressed in
his letter, or any related matter.

Respectfully yours,

Bruce L. Jorgensen

, Roy Catalani, Esq.
.mes E. Hollman, Esq.
.drew Painter, Esq., UNHCR
.chard A. Pierce
.gina Germain, Esq., Senior Legal Counsel, UNHCR
.n Whitney, Esq., INS General Counsel's Office



# Bruce Lee Jorgensen

Attorney At Law*

MSV II Building, 2d Floor

Garapan   Village

Saipan, MP  96950

(670) 233-6901/6902 (tel)

(670) 233-6903 (fax)

*Admitted  in all Hawaii State And Federal Courts; Ninth Circuit Court of Appeals; District Court of
the N. Mariana Islands; Republic Of Palau; High Court of the Trust Territory of the Pacific Islands

February 8, 2000 (CNMI)/February 7, 1999 (Hawaii)

Mr. Oscar Martinez
U.S. Department of Justice
Immigration and Naturalization Office
Horiguchi Building, Third Floor
Garapan Village
Saipan, MP  96950
via hand-delivery and
via certified mail/return receipt

Donald Radcliffe, District Director
Mary Osaka, Esq., District Counsel
U.S. Department of Justice
Immigration and Naturalization Office
595 Ala Moana Boulevard
Honolulu, HI  96813
via certified mail/return receipt

District Director
U.S. Department of Justice
Immigration and Naturalization Service
American Embassy (Bangkok)
Box 12
APO AP 96546-0001
via international mail/return receipt

Officer-in-Charge
U.S. Department of Justice
Immigration and Naturalization Service
American Embassy (Manila)
APO AP 96440
via international mail/return receipt



EXHIBIT E

Mr. Oscar Martinez, et.al.
February 8, 2000 (CNMI)
Page Two

Re:  INS Form I-590

Applicants' Names:

1.  Uthayachandran Rasamuthu Kandiah
2.  Jayakumar Arunthavam Sevaratnam
3.  Kanagasabai Selvalingam
4.  Janaka Prasanna Hewa Nadungodage
5.  Madpathage Don Urendra Dhammika Senanayake
6.  Yu Ren Huang
7.  Li Tong Deng
8.  Zhi Ping Hu
9.  Yin Ping Guo
10. Xi Cheng Jin
11. Lan Ting Zhang
12. Qin Yin
13. Chun Fang Yue
14. Hui Ping Zhang
15. Mhing Zhuo Ling
16. Lin Zheng
17. Jian Shan Zheng

Applicants' Locale:  Commonwealth of the Northern
                     Mariana Islands

Dear All:

Enclosed, for processing by United States Immigration and
Naturalization Service ("INS") officials, are seventeen (17) INS
Form I-590 applications.

The forms are being submitted on behalf of my clients,
described above, who presently reside within the Commonwealth of
the Northern Mariana Islands ("CNMI").  Messrs. Kandiah,
Sevaratnam, and Selvalingam are Sri Lankan citizens of Tamil
ethnicity.  Messrs. Nadungodage and Senanayake are Sri Lankan
citizens of Sinhalese ethnicity.  The remainder are citizens of the
Peoples' Republic of China.

To ensure that the I-590 application forms are not lost, the
original forms will be hand-delivered to Mr. Martinez' office,
while the forms transmitted by mail will be copies.

During an August 10, 1999 (CNMI time) telephone conversation,
Mr. Martinez notified me that neither the Saipan-situated INS
office, nor any other INS office, would accept for submission and
processing any I-590 forms completed by any CNMI-situated persons.
As a result of that purportedly unlawful conduct, there was filed
in the U.S. District Court for the Northern Mariana Islands, a

Mr. Oscar Martinez, et.al.
February 8, 2000 (CNMI)
Page Three

civil lawsuit titled Rui Liang and Liao Da Nian v. United States of
America, Commonwealth of the Northern Mariana Islands, and Does 1-
25, Civil Action No. 99-0046.

Since then, Mr. Martinez has steadfastly refused to accept
transmittal of documents hand-delivered to his Saipan office.  That
refusal, highlighted in the January 19, 2000 letter designated
Exhibit "i" (enclosed), culminated with his decision to place on
the ground outside his office an envelope and document hand-
delivered to him, moments earlier, on my behalf.

Consequently, there shall be filed tomorrow, in the U.S.
District Court for the Northern Mariana Islands, a second civil
lawsuit, naming the United States and CNMI governments as
defendants.

As a result of the first lawsuit, Messrs. Liang and Nian were
recently freed from imprisonment, with their claims for damages and
other relief pending.  Robert Stamerra, a Washington D.C.-based
INS employee, travelled 8,000 miles to interview them on Saipan.
And the CNMI and Federal governments, all the while, have strived
to keep intact the veil of secrecy with which they have shrouded
the entire asylum issue (refusing to produce even a single document
relating to prior or prospective CNMI/Federal written or verbal
asylum arrangement(s)).

So much for concepts like "Open Government", "Public
Servants", and "Government For The People".

In any event, the second lawsuit shall, similarly, seek legal
and equitable relief, including but not limited to an injunction
compelling INS officials to accept and process the I-590 forms
being submitted with this letter, restraining the CNMI and Federal
governments from arresting, imprisoning, and/or deporting my
clients, and an award of monetary damages, attorneys' fees, and
costs.

Please contact me at your earliest convenience if you have any
questions or comments pertaining to any of the matters addressed in
this letter, or any related matter.  Thank you for your anticipated
assistance.

Sincerely,

Bruce L. Jorgensen

Bruce L. Jorgensen

Encl. -seventeen (17) completed I-590 forms
      -copy of letter designated Exhibit "i"





# Bruce Lee Jorgensen
Attorney At Law*
Lizama Building, 2d Floor
P.O. Box 5682 CHRB
Saipan, MP 96950
(670) 233-3500 (tel)
(670) 233-3501 (fax)

*Admitted in all Hawaii State And Federal Courts: Ninth Circuit Court of Appeals: District Court of
the N. Mariana Islands: Republic Of Palau: High Court of the Trust Territory of the Pacific Islands

February 24, 2000 (CNMI)/February 23, 1999 (Hawaii)

Mr. Oscar Martinez
U.S. Department of Justice
Immigration and Naturalization Office
Horiguchi Building, Third Floor
Garapan Village
Saipan, MP 96950
via hand-delivery and
via certified mail/return receipt

Donald Radcliffe, District Director
Mary Osaka, Esq., District Counsel
U.S. Department of Justice
Immigration and Naturalization Office
595 Ala Moana Boulevard
Honolulu, HI 96813
via certified mail/return receipt

District Director
U.S. Department of Justice
Immigration and Naturalization Service
American Embassy (Bangkok)
Box 12
APO AP 96546-0001
via international mail/return receipt

Officer-in-Charge
U.S. Department of Justice
Immigration and Naturalization Service
American Embassy (Manila)
APO AP 96440
via international mail/return receipt

Herbert D. Soll, Esq.
Acting Attorney General
Commonwealth of the Northern Mariana Islands
Capitol Hill
Saipan, MP 96950
via facsimile: (670) 664-2349



EXHIBIT "F"

Mr. Oscar Martinez   t.al.
February 24, 2000 (CNMI)
Page Two


Re:  <u>Rui Liang, et.al. v. U.S., et.al.</u>, Civil Action No.
     99-0046, U.S. District Court for the Northern Mariana
     Islands

     <u>Uthayachandran Kandiah, et.al. v. U.S., et.al.</u>, Civil
     Action No. 00-0005, U.S. District Court for the Northern
     Mariana Islands

     INS Form I-590 Applicants:

          1.   Rui Liang
          2.   Liao Da Nian
          3.   Uthayachandran Rasamuthu Kandiah
          4.   Jayakumar Arunthavam Sevaratnam
          5.   Kanagasabai Selvalingam
          6.   Janaka Prasanna Hewa Nadungodage
          7.   Madpathage Don Urendra Dhammika Senanayake
          8.   Juyel Ahmed
          9.   Yu Ren Huang
          10.  Li Tong Deng
          11.  Zhi Ping Hu
          12.  Yin Ping Guo
          13.  Xi Cheng Jin
          14.  Lan Ting Zhang
          15.  Qin Yin
          16.  Chun Fang Yue
          17.  Hui Ping Zhang
          18.  Mhing Zhuo Ling
          19.  Lin Zheng
          20.  Jian Shan Zheng

     Applicants' Locale:  Commonwealth of the Northern
                          Mariana Islands

Dear All:

     Enclosed, for processing by United States Immigration and
Naturalization Service ("INS") officials, is an INS Form I-590
application being submitted on behalf of Mr. Juyel Ahmed.

     This brings to twenty (20) the total number of Form I-590
applicants now being represented in civil action nos. 99-0046 and
00-0005.

     By transmittal of this letter, please be advised that each of
the applicants also requests, from the Federal and CNMI
governments, protection from <u>refoulement</u> and from danger (in their

Mr. Oscar Martinez, et.al.
February 24, 2000 (CNMI)
Page Three


respective home countries) of being subjected to severe pain or suffering (physical/mental) being inflicted on them, respectively, for such purposes as punishment for various acts they or third persons have committed, or are suspected of having committed, or for reasons based on discrimination of any kind.  This request is made pusuant to the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, G.A.O.R. A/39/506 (1984), 23 I.L.M. 1027 (1984) (modified in 24 I.L.M. 535 (1985)), S. Treaty Doc. No. 110-20, 100th Cong. 2d Sess. 7 (1988) (reprinting Convention), Art. 1-3.

Please contact me at your earliest convenience if you have any questions or comments pertaining to any of the matters addressed in this letter, or any related matter.  Thank you for your anticipated assistance.

Sincerely,

Bruce L. Jorgensen

Bruce L. Jorgensen


Encl.       Completed Form I-590 application (Juyel Ahmed)



# Bruce Lee Jorgensen

**Attorney At Law\***
MSV II Building, 2d Floor
Garapan Village
Saipan, MP 96950
(670) 233-5261 (tel)
(670) 233-5260 (fax)

*\*Admitted  in all Hawaii State And Federal Courts; Ninth Circuit Court of Appeals; District Court of
the N. Mariana Islands; Republic Of Palau; High Court of the Trust Territory of the Pacific Islands*

August 10, 1999 (CNMI)/August 9, 1999 (U.S. Mainland)

<u>Original via hand-delivery; copy via fax (670) 234-9159/233-7833</u>

Oscar Martinez
U.S. Department of Justice
Immigration and Naturalization Office
Horiguchi Building, Third Floor
Garapan Village
Saipan, MP  96950

Re:  <u>U.S. Refugee Applicants/INS Form I-590 Processing</u>

Dear Mr. Martinez:

Thank you for advising me, during our telephone conversation this morning, that:

(i) your office will not accept any INS-distributed I-590 forms completed, for submission and processing, by any of the 12,000 or so CNMI-situated Peoples' Republic of China ("PRC") citizens;

(ii) no other INS office will accept any INS-distributed I-590 forms completed, for submission and processing, by any of the 12,000 or so CNMI-situated PRC citizens;

(iii) you will not disclose to me whether the PRC citizens recently detained on Tinian were interviewed by Federal officials relating to the PRC citizens' requests/applications for refugee/asylum status; and,

(iv) you will not disclose to me any information relating to any details involving the PRC citizens recently detained on Tinian, the Federal Government's involvement with those citizens' requests/applications for refugee/asylum status, or any other matter such as the number of those PRC citizens transported to the U.S. Mainland.



EXHIBIT "G"

Oscar Martinez
August 10, 1999 (Cn___)
Page Two


     The information requested in sub-paragraphs (iii)-(iv) shall
be requested by me via FOIA submission to the INS.  Please advise
me where within the INS, and to whom, the FOIA request must be
submitted.

     Thank you again for taking the time to briefly converse with
me this morning.

                     Respectfully yours,

                     Bruce L. Jorgensen


P. Roy Catalani, Esq.
Andrew Painter, Esq., UNHCR
Regina Germain, Esq., Senior Legal Counsel, UNHCR
Ron Whitney, Esq., INS General Counsel's Office
David Wood, Esq., U.S. Attorney, Saipan



**Bruce Lee Jorgensen**

Attorney At Law*

MSV II Building, 2d Floor

Garapan Village

Saipan, MP 96950

(670) 233-6901/6902 (tel)

(670) 233-6903 (fax)

*Admitted in all Hawaii State And Federal Courts; Ninth Circuit Court of Appeals; District Court of
the N. Mariana Islands; Republic Of Palau; High Court of the Trust Territory of the Pacific Islands

## January 19, 2000 (CNMI)

Robert Goldberg, Esq.                    Gregory Baka, Esq.
CNMI Office of the Attorney General      Asst. U.S. Attorney
Civil Division                           Horiguchi Bldg., 3d Floor
Second Floor, Administration Building    Garapan Village
Capitol Hill                             P.O. Box 50377
Saipan, MP 96950                         Saipan, MP 96950
via fax: 664-2349                        via fax: 236-2945

Re.  Liang, et.al. v. U.S., et.al., Civil Action No. 99-0046,
     U.S. District Court for the Northern Mariana Islands

Dear Counsel:

Enclosed are copies of two subpoenas personally served via
hand-delivery, this afternoon, upon Acting CNMI Attorney General
Maya Kara, and Federal INS representative Oscar Martinez.

While service was being effected upon Mr. Martinez, he
demanded to know from whom the materials originated. In response,
he was told that they were being delivered from me. He then
refused to accept delivery.

Next, Mr. Martinez demanded to know whether a service fee was
being paid, and the amount of any such fee. He then continued to
refuse to accept delivery of the envelope and subpoena.

Moments later, Mr. Martinez telephoned a man named "Greg" who
was later described by Mr. Martinez as "a U.S. Attorney". After
their conversation, Mr. Martinez indicated that he would not open
the envelope, feigning concern that the envelope might contain "a
bomb". He then wrote a mailing address onto a yellow "post-it"
sticker, which he affixed to the envelope bearing his subpoena. He
also represented that he was not willing to accept documents hand-
delivered to his office on my behalf: rather, he insisted, all
such documents would have to be "formally" transmitted to him
via U.S. mail.

While placing the envelope and subpoena on a nearby
counter top, Mr. Martinez continued to signify that he would not
"accept" delivery of those items. He remarked that the service



Robert Goldberg,    q.
Gregory Baka, Esq.
January 19, 2000
Page Two

being effected upon him amounted to "more" of what he termed my
"playing games".

Finally, Mr. Martinez picked up the envelope and subpoena,
walked to his office door, and placed the envelope and subpoena on
the ground outdoors (near the entrance to his office).

Please be advised that: (i) service of the subpoenas does not,
in any manner, constitute "playing games"; (ii) the fee paid for
effecting service was $10.00 per subpoena; and, (iii) the person
who served the subpoenas is my wife, Nestralda Mechaet Jorgensen
(who has repeatedly been instructed to refrain from answering
questions, and to avoid confrontational situations, while effecting
service of subpoenas).

Sincerely,

Bruce L. Jorgensen

Bruce L. Jorgensen

*handwritten notes in top-left margin:* to both; orig & copy; via hand-del; to AG's office; 8/12

Attorney At Law
MSV II Building, 2d Floor
Garapan Village
Saipan, MP 96950
(670) 233-5261 (tel)
(670) 233-5260 (fax)

*handwritten top-right:* ..e: 3:40 pm; ..c'd by:

*Admitted  In all Hawaii State And Federal Courts; Ninth Circuit Court of Appeals; District Court of
the N. Mariana Islands; Republic Of Palau; High Court of the Trust Territory of the Pacific Islands*

August 12, 1999 (CNMI)/August 11, 1999 (U.S. Mainland)

**Copy via facsimile; original via hand-delivery**

Maya Kara, Esq.                          Mark Zachares, Esq.
Acting Attorney General                  Secretary
Office of the Attorney General           Dept. of Labor & Immigration
Saipan, MP  96950                        Saipan, MP  96950

Re:  Open Government Act Request, 1 CMC Div. 9

Dear Ms. Kara and Mr. Zachares:

Based on recent communications with United Nations personnel,
it is my understanding that the United States ("US") considers the
Commonwealth of the Northern Mariana Islands ("CNMI") to be bound
by the US accession to the 1967 Protocol to the 1951 Convention
Relating to the Status of Refugees ("1951 Convention").  The US
Government, therefore, bears the responsibility for ensuring that
refugees seeking refugee/asylum status within the CNMI not be
subject to refoulement to their countries of origin in violation of
Article 33 of the 1951 Convention.

The US, through its CNMI-based INS employee Oscar Martinez,
has recently taken the position that neither the CNMI-situated INS
office, nor any other office, will accept for processing any INS-
published I-590 forms completed by CNMI-situated Peoples' Republic
of China ("PRC") citizens.

Given the situation described in the preceding paragraph, I am
writing to request that the CNMI Office of the Attorney General
("OAG") and the CNMI Department of Labor and Immigration ("DOLI")
make available to me for inspection within ten (10) days, and
pursuant to 1 CMC §9917, the following public records:

    (1) OAG's current policy, rules, and procedures for
accepting and processing refugee applications, and the
date(s) on which they were enacted;

    (2) OAG's current policy, rules, and procedures for
accepting and processing asylum applications, and the
date(s) on which they were enacted;



EXHIBIT

Maya Kara, Esq.
Mark Zachares, Esq.
August 12, 1999 (CN )
Page Two

(3) DOLI's current policy, rules, and procedures for accepting and processing refugee applications, and the date(s) on which they were enacted;

(4) DOLI's current policy, rules, and procedures for accepting and processing asylum applications, and the date(s) on which they were enacted;

(5) any current CNMI policy, rules, and procedures for accepting and processing refugee applications, not described in the preceding sub-paragraphs, and the date(s) on which they were enacted;

(6) any current CNMI policy, rules, and procedures for accepting and processing asylum applications, not described in the preceding sub-paragraphs, and the date(s) on which they were enacted;

(7) any current CNMI, DOLI, and OAG policy and procedures, for accepting and processing refugee applications, which have been modified within the past six (6) months, and the date(s) of modification;

(8) any current CNMI, DOLI, and OAG policy and procedures, for accepting and processing asylum applications, which have been modified within the past six (6) months, and the date(s) of modification;

(9) the name, address, and contact telephone number of each person employed by the US who participated within the past six (6) months in accepting and processing refugee applications on Tinian;

(10) the name, address, and contact telephone number of each person employed by the US who participated within the past six (6) months in accepting and processing refugee applications on Tinian;

(11) all written memoranda, facsimile transmissions, correspondence, and e-mail transmissions generated by and between DOLI, OAG, INS, US Department of Justice, and/or US Department of State officials, generated within the past three (3) months, which pertain to the accepting and processing of refugee applications on Tinian;

Mark Zachares, Esq.
August 12, 1999 (CNMI)
Page Three

(12) all written memoranda, facsimile transmissions, correspondence, and e-mail transmissions generated by and between DOLI, OAG, INS, US Department of Justice, and/or US Department of State officials, generated within the past three (3) months, which pertain to the accepting and processing of asylum applications on Tinian;

(13) all written memoranda, facsimile transmissions, correspondence, and e-mail transmissions generated by and between DOLI, OAG, INS, US Department of Justice, and/or US Department of State officials, generated within the past three (3) months, which pertain to the accepting and processing of refugee applications prepared within the CNMI;

(14) all written memoranda, facsimile transmissions, correspondence, and e-mail transmissions generated by and between DOLI, OAG, INS, US Department of Justice, and/or US Department of State officials, generated within the past three (3) months, which pertain to the accepting and processing of asylum applications prepared within the CNMI;

(15) all written memoranda, facsimile transmissions, correspondence, and e-mail transmissions generated by and between DOLI, OAG, INS, US Department of Justice, and/or US Department of State officials, generated within the past three (3) months, which pertain to the refugee application hearings within the CNMI;

(16) all written memoranda, facsimile transmissions, correspondence, and e-mail transmissions generated by and between DOLI, OAG, INS, US Department of Justice, and/or US Department of State officials, generated within the past three (3) months, which pertain to the asylum application hearings within the CNMI;

(17) all written memoranda, facsimile transmissions, correspondence, and e-mail transmissions generated by and between OAG, DOLI, and/or DPS relating to limiting persons not detained in the Tinian refugee detention center from meeting, communicating with, and/or conversing with, PRC citizens detained within the Tinian refugee center.

Maya Kara, Esq.
**Mark Zachares, Esq**
**August 12, 1999 (Ch   )**
**Page Four**

In the event that OAG or DOLI intends to deny my requests to inspect any of the public records to which access has been requested in this letter, please specify and explain the grounds upon which the denial is premised, as required by 1 CMC §9918(d).

Thank you for your anticipated assistance.

Sincerely,

Bruce L. Jorgensen

Bruce L. Jorgensen

cc:  P. Roy Catalani, Esq.,
     Catalani & Nakanishi
     1212 Davies Pacific Center
     841 Bishop Street
     Honolulu, HI  96813
     Fax:  (808) 536-3532

     Mr. Oscar Martinez
     U.S. Department of Justice
     Immigration and Naturalization Service
     Horiguchi Building, 3d Floor
     Saipan, MP  96950
     Fax:  (670) 234-7833

     Andrew Painter, Esq.
     United Nations High Commissioner
          For Refugees
     Regional Office for the United States
          of America & the Caribbean
     1775 K Street NW
     Suite 300
     Washington, D.C.  20006
     Fax:  (202) 296-5660



~~Un...~~ ~~of the Attorney~~
t Floor-Administration Building Capitol Hil'
Caller Box 10007, Saipan, MP 96950

**Attorney General/Civil Division**
Tel: (670) 664-2341
Fax (670) 664-2349

August 20, 1999

**Criminal Division**
Tel: (670) 664-2366/2367/2368
Fax: (670) 234-7016

**BY FAX**

Bruce L. Jorgensen, Esq.
Second Floor, MSV II Building
Garapan, Saipan, MP 96950

Re:    Open Government Act Request

Dear Mr. Jorgensen:

I write in response to your August 12, 1999 Open Government Act ("OGA") request, listing 17 numbered paragraphs relating to various immigration-related information ("Request").

We note that the Request is very unclear. Accordingly, we will attempt to respond to the Request as written, to the extent we can discern the meaning of the Request. Furthermore, the Request appears to seek very sensitive and highly confidential intelligence and investigative information. Naturally, such information cannot be produced. Nonetheless, we attempt to respond to the Request as follows:

First, the Request is clearly objectionable on numerous substantive grounds, including, but not limited to, vagueness, ambiguity, burdensomeness and overbreadth.

Second, some or all of the requested information may not fit within the statutory definition of a "public record." See 1 CMC § 9902(f).

Third, to the extent the Request seeks publicly available information, we refer you to Title 3 Division 4 of the Commonwealth Code (as amended by P.L. 11-5, 11-6, 11-33, 11-51, 11-58 and 11-60), related rules and regulations published in the Commonwealth Register, Executive Order 94-3 and immigration case law. Such information is publicly available in the Commonwealth Law Library, the District Court Law Library and the Office of the Attorney General.

Fourth, to the extent the Request seeks information in connection with any pending criminal or civil cases, you should comply with the applicable rules of procedure.



EXHIBIT    J

Page 2

See Com. R. Crim. P. 16 and 17(c); Com. R. Civ. P. 26, 34 and 45; Fed. R. Crim. P. 16 and 17(c); Fed. R. Civ. P. 26, 34 and 45; 1 CMC § 9918(a)(8).

Fifth, the requested information appears to be exempt from disclosure pursuant to the CNMI Constitution, the OGA and other applicable law concerning (inter alia) privilege, confidentiality protections, individual privacy, internal agency deliberations, investigative secrecy and law enforcement methods and sources. See CNMI CONST. Art. 1 § 10 and 1 CMC §§ 9902(f), 9903, 9917(a) and 9918(a)(4), (5), (7), (8) and (13). This list is illustrative, not exhaustive.

In a good-faith effort to cooperate (without waiving the above objections), we wish to advise you that the Office of the Attorney General exercises little or no authority with respect to immigration matters. See Executive Order 94-3 § 301(c)(2) (June 24, 1994). Furthermore, we note that the United States exercises exclusive jurisdiction with respect to foreign affairs and defense. See COVENANT § 104. Accordingly, you may wish to direct appropriate inquiries to appropriate federal agencies. Thank you.

Sincerely,

Maya B. Kara
Acting Attorney General

cc:    Governor
       Secretary of Labor and Immigration
       Public Information and Protocol Officer
       Oscar Martinez (I.N.S.)



# IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IN RE THE MATTER OF ) | GENERAL ORDER NO. 99-900 |
| ) | |
| ) | ORDER |
| *PRO HAC VICE* ADMISSIONS. ) | |
| ) | |
| ) | |

**PLEASE TAKE NOTICE** that all *Pro Hac Vice* admissions to the Courts of the Commonwealth of the Northern Mariana Islands shall expire on September 30, 1999 at 12:00 midnight. Thereupon,

1.  Any attorney who desires to be admitted or re-admitted *pro hac vice* shall submit a new application, accompanied by a certificate of good standing from the jurisdiction which he or she was last admitted _and_ a fee of Five Thousand Dollars (S5,000).[1]

2.  Unless a different expiration date is specified in a particular matter, all *pro hac vice* admissions shall expire 12 months from the date of admission.

3.  An attorney admitted *pro hac vice* shall associate with local counsel admitted to the practice of law in the Courts of the Commonwealth of the Northern Mariana Islands.

---

[1] Provided that this fee may be waived for attorneys who represent a governmental agency or instrumentality of the CNMI or the United States. The fee shall be paid directly to the NMI Department of Finance and the receipt thereof shall be attached to the application.

 

EXHIBIT K

4.  No attorney who resides or maintains an office in the Northern Mariana Islands may be admitted *pro hac vice*.

5.  An attorney who is already admitted *pro hac vice* in one case shall not be eligible to apply for admission in another case until the first case is closed.

No waiver of these conditions will be permitted except for good cause shown.

SO ORDERED this 23 day of August 1999.

_____
MIGUEL S. DEMAPAN, Chief Justice

_____
ALEXANDRO C. CASTRO, Associate Justice

_____
TIMOTHY H. BELLAS, Justice Pro Tem

Bruce L. Jorgensen
Lizama Building, 2.
P.O. Box 5682 CHRB
Saipan, MP 96950

(670) 233-3500 (tel)
(670) 233-3501 (fax)

6 CMC §7102 Signatory For
Habeas Corpus Applicant
Juyel Ahmed
(and Plaintiff's counsel in
Civil Action No. 00-0005,
U.S. District Court for the
Northern Mariana Islands)

Date: _____
Time: _____ 12:16
Rec'd by: _____

IN THE SUPERIOR COURT OF THE COMMONWEALTH

OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| JUYEL AHMED, | ) | Special Proceeding No. *00-0101A* |
| | ) | |
| Habeas Corpus Applicant | ) | APPLICATION FOR WRIT OF HABEAS |
| | ) | CORPUS; DECLARATION OF |
| v. | ) | JUYEL AHMED; EXHIBITS "1"-"8" |
| | ) | |
| COMMONWEALTH OF THE NORTHERN | ) | |
| MARIANA ISLANDS and CNMI | ) | |
| DEPARTMENT OF LABOR AND | ) | |
| IMMIGRATION, | ) | |
| | ) | |
| Respondents. | ) | |

JUYEL AHMED ("Applicant") hereby applies, by this written

application under oath signed by BRUCE L. JORGENSEN on Applicant's

behalf as permitted by 6 CMC §7102, for issuance of a writ of

habeas corpus.

The facts concerning Applicant's imprisonment, and the grounds

upon which Applicant maintains that imprisonment to be violative of

1

EXHIBIT 

the constitutional and legal protections to which Applicant is
entitled, are detailed in:

   a. the appended document titled Declaration/
Verification of Juyel Ahmed ("Declaration"), signed by Applicant
under penalty of perjury;

   b. the documents attached to the Declaration and
designated Exhibits "1"-"8"; and,

   c. all related facts, legal standards, and equitable
considerations, including but not limited to those described in the
record of Liang, et.al. v. CNMI, et.al., Special Proceeding No.
00-0050E (CNMI Super.Ct.  Jan. 24, 2000) which are incorporated
herein by reference.

  Additional facts/considerations of prospective relevance to
this application include the January 21, 2000 ruling, in Rui Liang
and Liao Da Nian v. United States of America, Commonwealth of the
Northern Mariana Islands, and Does 1-25, Civil No. 99-0046 (U.S.
District Court for the Northern Mariana Islands), by which:

   a. CNMI Assistant Attorney General Robert
Goldberg, CNMI Department of Labor & Immigration Secretary Mark
Zachares, and U.S. Immigration & Naturalization Service official
Robert Stamerra, were ordered by Judge Alex R. Munson in Liang,
et.al. v. U.S., et.al., to show cause why they should not be held
in contempt of the Federal Court's September 7, 1999 order, liable
for bad faith litigation conduct, disqualified from the Federal
Court proceeding (Goldberg/Zachares), and/or suspended (but not
disbarred) from the practice of law before the Federal Court

(Goldberg/Zachares)

    b. Judge Munson determined that, as a prefatory matter pursuant to 28 U.S.C. 2254, it would be appropriate for the <u>Liang, et.al. v. CNMI, et.al.</u> Applicants to seek habeas corpus relief from the CNMI Jdiciary, before relief in the nature of habeas corpus would be entertained in the Federal Court <u>Liang, et.al. v. U.S., et.al.</u> proceeding; and,

    c. Judge Munson ordered <u>Liang, et.al. v. U.S., et.al.</u> counsel of record to meet and confer, within 10-days of January 21, 2000, in an attempt to resolve the complete refusal (which continues to date) by Goldberg/Zachares, the CNMI Office of the Attorney General, and the CNMI Department of Labor & Immigration, to provide one iota of the public records and other materials sought more than 6 months ago pursuant to an <u>Open Government Act</u> request.

  Based on the above-described circumstances, Applicant requests that the Clerk of the Commonwealth Superior Court, pursuant to 6 CMC §7103, "<u>immediately</u> bring [this] application to the personal attention of a [CNMI Superior Court] judge", <u>id.</u> (emphasis added), and that the judge entertaining this application:

    1. "issue an order directing the person[s] against whom the writ is requested to show cause why the writ should not be granted....", 6 CMC §7104, at 1st sentence;

    2. direct the writ "to the person[s] having custody of" Applicant, <u>id.</u>, at 2d sentence; and,

    3. "set the time and place for hearing...as early as

3

the court or judg. .deems practicable, p--- ---, ------
days." Id., at 3d .entence (emphasis added)

The facts described in this application are declared under penalty of perjury of the Commonwealth of the Northern Mariana Islands.

Dated:    Saipan, MP, February 24, 2000.


_Bruce L. Jorgensen_
Bruce L. Jorgensen
7 CMC §7102 Signatory For
Habeas Corpus Applicants
Juyel Ahmed

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

JUYEL AHMED,                                    )     Special Proceeding No. 00-0101A
                                                )
        Applicant,                              )
                                                )
vs.                                             )     ORDER GRANTING
                                                )     TEMPORARY RESTRAINING ORDER
MAJOR IGNACIO CELIS, Supervisor                 )     AND EXPEDITED HEARING
of Labor and Immigration Detention              )
Center, COMMONWEALTH OF THE                     )
NORTHERN MARIANA ISLANDS and                    )
CNMI DEPARTMENT OF LABOR                         )
AND IMMIGRATION,                                )
                                                )
        Respondents.                            )
_____)

## I. PROCEDURAL BACKGROUND

This matter comes before the court on Applicant Juyhel Ahmed's ex parte motion for

issuance of a temporary restraining order and request for expedited hearing. The court, having

reviewed the record in this proceeding, including the memoranda, declarations, and exhibits,

makes the following findings:

## II. FACTUAL BACKGROUND

1.      In its Order of March 9, 2000, the court found that Applicant, a Bangladeshi national, was

        ordered detained and deported by this court because his tourist permit expired on

FOR PUBLICATION



November 24, 1994. *See CNMI v. Ahmed*, Civil Action No. 98-0704B (N.M.I. Super.Ct August 6, 1998). Pursuant to this court's Deportation Order, on August 6, 1998, Applicant was remanded to the custody of the Division of Immigration and ordered to surrender his passport. Applicant did not appeal the court's Deportation Order.

2. Although the court also ordered the Division of Immigration Services to place Applicant on the first available airline flight to the People's Republic of Bangladesh, Applicant has been held at the prison facility operated by the Government's Department of Labor and Immigration ("DOLI") since July 1, 1998.

3. Applicant, a practicing Muslim, contended that before his entry to the CNMI, he was the victim of torture by Bangladeshi authorities, and that if repatriated to return to Bangladesh, he would be persecuted and subjected to severe pain or suffering. Applicant's papers further reflected that he has applied for Federal and CNMI asylum and protection. Applicant has completed and submitted an I-590 form to the U.S. Immigration and Naturalization Service ("INS") and is one of several plaintiffs seeking injunctive, declaratory, and other relief in *Liang v. United States, et al.,*, Civil Action No. 99-046 (U.S. Dist. Court).

4. To challenge his detention, Applicant applied for a writ of habeas corpus. At the hearing on this matter, Applicant did not contend that by submitting an I-590 application and requesting protection under the 1985 Torture Convention or other international treaties, agreements and covenants, the Government was precluded from subjecting him to refoulement. Instead, Applicant argued that his involuntary detention for nearly two years violated protections and rights guaranteed to him under the constitutions of the Commonwealth and the United States.

5. Addressing this issue, the court accordingly ruled that Applicant's detention extended well beyond that necessary to effect removal and had become punitive imprisonment without due process in contravention of Applicant's fundamental rights under the Fifth Amendment and Article I, § 5 of the Commonwealth Constitution. This court therefore ordered that

2

1   unless the Government could effect deportation within ten (10) days of the court's order,

2   then Applicant was to be released.

3   6.   On March 10, 2000, Applicant filed a Notice of Appeal and Request for Expedited

4   Hearing on Habeas Corpus Application.

5   7.   On March 14, 2000, Respondents filed a status report advising the court that the travel

6   document necessary to effect deportation had been received and that Applicant will be

7   deported on March 16, 2000.

8   8.   The same day, Applicant filed the instant motion for temporary restraining order, for

9   reconsideration of the court's March 9 Order, and to withdraw, without prejudice, his

10   Notice of Appeal.  The Motion seeks an Order from this court commanding the CNMI and

11   all others to release Applicant immediately from custody pending final disposition of this

12   proceeding and precluding the CNMI from deporting Applicant from the CNMI and

13   returning him to his country of origin pending disposition of this proceeding and until such

14   time as his pending I-590 asylum application and request for protection under various

15   international covenants can be processed. [1]

## II. FINDINGS AND CONCLUSIONS

17   1.   Com. R. Civ. P.65(b) governs the issuance of temporary restraining orders and provides,

18   in material part, that:

> A temporary restraining order may be granted without
> written or oral notice to the adverse party or that
> party's attorney only if (1) it clearly appears from
> specific facts shown by affidavit or by the verified
> complaint that immediate and irreparable injury, loss,
> or damage will result to the applicant before the
> adverse party or that party's attorney can be heard in
> opposition, and (2) the applicant's attorney certifies to
> the court in writing the efforts, if any, which have
> been made to give the notice and the reasons

26   [1] Applicant also seeks an Order amending the court's March 9, 2000 Order to reflect that attorney Bruce Berline,
and not attorney Bruce Jorgensen, appeared at hearing on Applicant's habeas application.  The court has already
addressed this issue in its Errata dated March 13, 2000.

supporting the claim that notice should not be required.

2. Although courts may consider whether the movant has a reasonable probability of prevailing on the merits, and whether, on balance, the hardship to either litigant tips in favor of the movant, proof of immediate and irreparable injury to the movant is an "essential prerequisite" to a temporary restraining order. C. Wright, A. Miller, E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 2951 at 257, 265-68 (West 1999).

3. The court finds that Applicant has made a sufficient showing that unless a temporary restraining order issues he will suffer irreparable injury and irreparable harm before Respondents can be heard in opposition. The right of an alien to petition for political asylum may implicate due process guarantees, which guarantees may vanish absent relief from this court. Applicant asserts that notwithstanding his application for asylum, deportation is imminent. The Commonwealth apparently agrees, indicating that deportation will in fact transpire tomorrow. The Commonwealth is not willing to stipulate, moreover, either to Applicant's immediate release from DOLI imprisonment or to agree that Applicant's imminent deportation is precluded, as Applicant contends by CNMI law, Federal law, and/or International law (Motion at Exs. 1 and 4). The court therefore finds that unless the Application is granted, Applicant may well be without a remedy to seek a stay of the deportation order pending the resolution of these questions.

4. The court further concludes that the Motion raises important questions of fact and law that require briefing by all the parties. On the basis of these allegations in the Motion, the court finds that the balance of hardships in this case tips sharply in Applicant's favor. Applicant faces the prospect of imminent deportation and torture before his application for asylum and requests for protection can be reviewed. Since a temporary restraining order will preserve the status quo long enough to hold a hearing, the court finds these considerations sufficiently compelling to award the relief requested. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

4

5.    At the same time, the court finds that Respondents will suffer no injury were proceedings stayed pending a hearing on these issues. The court has already determined that Applicant's detention has extended well beyond that necessary to effect removal and has become punitive imprisonment without due process in contravention of his fundamental rights under the Fifth Amendment and Article I, § 5 of the Commonwealth Constitution. In light of the Government's failure to demonstrate that Applicant poses a danger to the community or a flight risk, the court finds that further detention by the Government is unwarranted during the pendency of these proceedings.

6.    Although Com. R. Civ. P. states, in relevant part, that no restraining order shall issue except upon the giving of security by the Applicant, Applicant is apparently without funds (Letter from Bruce Lee Jorgensen to Bruce Berline, Esq. dated March 13, 2000, attached as Ex. 3 to Motion). Accordingly, the court must, in this case, consider the issue of whether a bond is required. In connection with Applicant's habeas application, the court notes that the Government did not present any evidence of Applicant's criminal history, and this court made no finding that Applicant posed any danger to the community. Similarly, the Government did not present any evidence that Applicant posed a flight risk, and thus the court made no finding that Applicant would abscond, were he released from detention. The court may refuse to require security, in a situation such as this, moreover, when and if the restrained or enjoined party shows no likelihood of harm, when a case raises important questions, or where, as here, the amount of any bond would be based upon gross speculation. *See, e.g., Haitian Centers Council, Inc. v. McNary*, 789 F.Supp. 541 (E.D.N.Y. 1992).

7.    Pursuant to Com. R. Civ. P. 65(b), the court finds that Respondents have been provided with notice of the Motion and all Exhibits (Certification of Counsel at 4 ¶ 8; Letter to Robert Goldberg, Esq. dated March 9, 2000, attached to Mot. as Exh.5) and that to date, Respondents have filed no opposition or response.

## ORDER

On the basis of the foregoing, the court makes the following ORDER:

1.    Applicant's Motion for a Temporary Restraining Order is GRANTED.

2.    Applicant's Motion to withdraw, without prejudice, Applicant's Notice of Appeal, is GRANTED.

3.    The court's Order of Deportation in Civil Action No. 98-704(B) is hereby STAYED.

3.    Major Ignacio Celis, in his capacity as Supervisor of the Department of Labor and Immigration Detention Center and as custodian of Applicant, is directed to release Applicant from imprisonment forthwith. During the pendency of this Order and for any extensions thereof, Applicant shall be required to appear periodically before an immigration officer for identification, appear at all scheduled hearings before the court, and provide such information as the Attorney General may deem proper to assure Applicant's availability for deportation.

4.    The court finds that a further evidentiary hearing is necessary to address issues raised by the Motion and specifically, whether the Government may subject Applicant to deportation while present applications for asylum are pending. The Court therefore sets matter for hearing on preliminary injunction on March 23, 2000 at 1:30 o'clock p.m.

5.    This Order shall remain in effect for ten (10) days unless, within that time and for good cause shown, it is extended by the court or dissolved by agreement of the parties.

So ORDERED this 15 day of March, 2000.


TIMOTHY H. BELLAS, Associate Judge

6

3/08/2001
P. 3

# 2 Chinese press gov't to process asylum application

A lawyer for two Chinese nationals seeking asylum in the CNMI asked the U.S. District Court on Friday to junk a motion from the defense to quash a subpoena issued against a federal immigration officer.

The plaintiffs, through their counsel Bruce L. Jorgensen, said they opposed such motion filed by the federal government on behalf of Robert Stamerra, asylum officer of the U.S. Immigration and Naturalization Service, saying it is contrary to their sworn responsibilities to the people.

Rui Liang and Liao Da Nian, who last month were ordered released from detention at a CNMI immigration facility, are petitioning the federal court to force the Commonwealth and the federal governments to accept their asylum applications.

Mr. Jorgensen have filed amended motions asking the court to process immediately their applications for asylum, alleging that the conduct of the defendants who had ignored and violated ruling by Judge Alex R. Munson, warrants such move.

Both the U.S. and CNMI governments have been named defendants to the civil case, along with 25 other individuals. The plaintiffs had pressed the case after Mr. Stamerra reportedly interrogated Mr. Liao and attempted to question also Mr. Rui in violation of an earlier court order.

Mr. Jorgensen also claimed both federal and CNMI officials attempted to evade service of subpoenas for documents demanded by the plaintiffs on complaints of the defendants' contempt, bad faith litigation tactics and disregard for applicable professional ethics.

"Why, then, this veil of secrecy being perpetuated by federal government lawyers and Mr. Stamerra?" he asked in his latest motion Friday.

"In order to operate their governmental system 'for the people,' is it really necessary to hide from those people the facts of what procedures, ruled, agreements, and policies are [or are not] in effect to perform the duties those lawyers and Mr. Stamerra have been paid [by 'the people'] to perform?"

Mr. Rui and Mr. Liao, who earlier were detained on overstaying charges, have maintained in their asylum applications they are in danger of being "personally threatened or harmed" by authorities of the communist government if they are sent back to Beijing. *(Benhur C. Saladores)*

EXHIBIT "N"

# Asylum-seeker appeals to higher court

### By Ferdie de la Torre
### Variety News Staff



A BANGLADESHI national who has sought an asylum is appealing to the CNMI Supreme Court the trial court's order giving the Commonwealth more time to deport him.

Juyel Ahmed said the Superior Court's order unlawfully purports to allow the CNMI government to continue, for a period of 10 days, the 20-plus month period of his arbitrary/indefinite detention.

Ahmed, through counsel Bruce Jorgensen, said he has been detained for almost two years now at the Department of Labor and Immigration (DOLI) facility in violation of his civil rights protections guaranteed to him by effect of the Commonwealth and US Constitutions.

Jorgensen said the order issued last Thursday by Associate Judge Timothy H. Bellas unlawfully purports to allow the CNMI government to subject Ahmed to deportation.

Such deportation, Jorgensen pointed out, would violate the doctrine of non-refoulement (precluding Ahmed's repatriation to his country while there remain pending his present application for asylum).

Ahmed has sought asylum and asked the court to release him from indefinite detention.

Court records showed that Ahmed was ordered detained and deported by the trial court on Aug. 6, 1998 because his tourist permit expired in 1994.

Although the court asked the Immigration Services to place the Bangladeshi on the first available

Continued on page 26

## Asylum. . . Continued from page 5

airline flight to Bangladesh, he has been held at DOLI's prison facility since July 1998.

DOLI, through counsel Assistant Attorney General Robert Goldberg, explained that Ahmed himself is the reason for the prolonged detention because he has refused to provide or surrender his passport.

Ahmed said Goldberg stopped his visiting privileges and instituted measures that would prevent him from communicating with his attorney.

Judge Bellas ruled that further indefinite detention of Ahmed is unwarranted.

Bellas said Ahmed's detention has extended well beyond that necessary to effect deportation and has become punitive imprisonment without due process in contravention of his fundamental constitutional rights.

The judge ordered that should the government be unable to effect deportation within 10 days, Ahmed shall be released.

Jorgensen in a notice of appeal said the trial court's order is unlawful because there remains pending Ahmed's present application for protection under the United Nations conventions against torture and other cruel, inhuman or degrading treatment of punishment.



EXHIBIT "O"

TWELFTH NOR.   :    MARIANAS COMMONWEA. .1. .EGISLATURE

_1_ _ST._ _REGULAR_ SESSION, 2000                    H. R. No. 12- _12-032_

## A HOUSE RESOLUTION

Requesting the Office of the Attorney General and the
Northern Marianas Bar Association to investigate immediately
whether Bruce Lee Jorgensen is practicing law in
Commonwealth courts without a license or proper authority;
and for other purposes.

1    WHEREAS, the integrity of the Commonwealth's justice system partially

2    rests on the reputation of those who are duly authorized to practice law in the

3    Commonwealth; and

4    WHEREAS, the illegal practice of law by anyone, regardless whether the

5    person is legally trained, undermines, compromises and breeds insecurity in such a

6    system; and

7    WHEREAS, it has come to the attention of the House of Representatives, 12th

8    Northern Marianas Commonwealth Legislature, that a certain Bruce Lee Jorgensen

9    may be engaging in the unauthorized practice of law before the Commonwealth

10   courts; now, therefore, be it

11   RESOLVED, by the House of Representatives, 12th Northern Marianas

12   Commonwealth Legislature, that the House requests the Office of the Attorney

13   General and the Northern Marianas Bar Association immediately investigate

14   whether Bruce Lee Jorgensen is engaged in the unauthorized practice of law before

15   the Commonwealth courts; and be it

16   FURTHER RESOLVED, that the Speaker of the House shall certify and the

17   House Clerk shall attest to the adoption of this resolution and thereafter transmit a

18   copy to Mr. Herb Soll, Temporary Acting Attorney General, and Ret. Justice Ramon

19   G. Villagomez, President , Northern Marianas Bar Association.

EXHIBIT _"P"_



Date: 3/14/00

Introduced by: _____

Rep. Benigno R. Fitial