*MAR. 15. 2001*
*P. 03*

# House wants lawyer probed

**By Jojo Dass**
*Variety News Staff*

THE HOUSE of Representatives yesterday adopted a resolution asking the Attorney General's Office and the Northern Marianas Bar Association to "immediately" investigate whether attorney Bruce Lee Jorgensen is "authorized" to practice law in the commonwealth.

The move, officials said, stemmed from an immigration case in court involving a nonresident worker seeking habeas corpus and being represented by the lawyer.

House Resolution 12-32, which was introduced by Speaker Benigno R. Fitial (R-Saipan), stated that it "has come to the attention" of the lower chamber "that a certain Bruce Lee Jorgensen may be engaging in the unauthorized practice of law before the commonwealth courts."

"The illegal practice of law by anyone, regardless (of) whether the person is legally trained, undermines, compromises and breeds insecurity in such a system," the resolution also stated.

The House resolved to request AGO and NMBA to "immediately" looked into the matter.

In an interview however, Jorgensen pointed out that the CNMI law — 6 CMC 7102 — does not prohibit anyone from representing anybody over cases involving requests for habeas corpus before the court.

Jorgensen also stressed that the presiding judge on the case had apparently mistook his name for Bruce Berline in issuing a March 9, 1999 order on the case.

The court case involves a nonresident worker identified as Juyel Ahmed who has been imprisoned for over 20 months and is facing deportation for having allegedly overstayed in the commonwealth.

"Isn't it disappointing that a group of hard-hearted legislators, when confronted with the indisputable fact that CNMI officials have wrongly, arbitrarily, and indefinitely imprisoned a human being from another country, rather than mak(e) amends with that person and admitting fault where fault lies... attempt to impugn the only lawyer on this island who is willing to contribute free time and effort to help those hapless prisoners ?" Jorgensen raised.

"I would be happy to receive the assistance, in my endeavor to right an obvious wrong, from any member of the CNMI bar association. Its president, Mr. (Ramon G.) Villagomez or his associates can call me anytime and offer to me, or the helpless person I am helping, their free legal services. Where are they ?" he added.

Jorgensen also implied the resolution was done out of the "CNMI's hostile attitude towards me" which, he said, "reflects either complete ignorance or utter unwillingness to gather sufficient facts and law before making wholly baseless allegations."

# Bruce Lee Jorgensen

Attorney At Law*
Lizama Building, 2d Floor
P.O. Box 5682 CHRB
Saipan, MP 96950
(670) 233-5261

*Admitted in all Hawaii State And Federal Courts; Ninth Circuit Court of Appeals; District Court of
the N. Mariana Islands; Republic Of Palau; High Court of the Trust Territory of the Pacific Islands

March 15, 2000

Catherine Anderson
MCV News
Nauru Building, 3d Floor
Saipan, MP 96950

        Re.  <u>March 14, 2000 MCV News Broadcast</u>

Dear Ms. Anderson:

        During MCV's March 14, 2000 news broadcast, Assistant Attorney
General L. David Sosebee expressed his opinion that efforts made on
behalf of 20-plus month DOLI prisoner Juyel Ahmed, for habeas
corpus relief, amounted to an attempt to "skirt" the law respecting
CNMI Bar membership.

        Mr. Sosebee was exactly correct.  Those efforts constitute a
wholly lawful and proper means of skirting the CNMI judiciary's
implementation of what Mr. Ahmed, and others, perceive to be a
facially unconstitutional $5000.00 <u>pro hac vice</u> application
requirement which, in effect, deprives Mr. Ahmed and similarly
situated others, of their right to counsel of choice.

        And is there anything wrong with "skirting" the law?  Well,
just examine some of the following:

        (1) the skirt worn by Ms. Maya Kara as, over a two-plus
year span, she reigned and exerted authority as the CNMI's "Acting"
Attorney General in violation of law (and reputedly had attorney
Joey Arriola prosecuted, in a selective manner, for pointing out
Ms. Kara's unlawful foible) ; or,

        (2) the skirt under which the CNMI Legislature enacted
Public Law No. 11-105, by which it purported to authorize the CNMI
Judiciary to deprive minor children and others of their property
interests in bank accounts being maintained by CNMI courts, which
law appears facially unconstitutional, and pretextually enriches
the CNMI courts at the expense of those to whom fiduciary duties
are owed; or,



EXHIBIT "R"

Catherine Anderson
March 15, 2000
Page Two

(3) the skirt by which CNMI House of Representatives
Speaker Ben Fitial, in tandem with his buddies Willie Tan, Mark
Zachares, and Robert Goldberg, sought and/or acquiesced to and/or
facilitated and/or permitted the entry to the CNMI of thousands
upon thousands of persons from totalitarian regimes like the
Peoples Republic of China and Sri Lanka, and now attempt to shirk
the responsibility of affording those persons the legal protections
to which they are entitled (while, simultaneously, ignoring the
very fact that the entry of those persons, combined with their
ability to seek asylum and to give birth to U.S. citizen-infants,
is and shall continue to bring on the CNMI's demise); or,

(4) the holier-than-thou posture taken by CNMI Bar
Association officials with respect to my alleged "practicing law
without a license", which officials have done ZERO to help the very
indigents who came to me, as a last resort, to protect their
constitutionally and legally guaranteed interests; or,

(5) the sheer absurdity of Mr. Fitial calling upon the
Legislature to loosen all restrictions upon business in the CNMI,
while the CNMI Bar Association clings to the protectionist policy
of requiring persons practicing law in CNMI courts to take and pass
the CNMI bar examination (even if those persons, like me, have
taken and passed a State bar exam).....this, made even more absurd,
by the recognition that several CNMI Judges, including CNMI
Superior Court Associate Judge Virginia Sablan Olderheim (when she
is there) and former CNMI Supreme Court Special Justice Larry
Hillblom, never took and passed the CNMI bar examination.

Your March 15, 2000 broadcast included footage of a letter
from a concerned citizen which disparaged me.  MCV and you are
hereby released and waived from any and all liability for that
disparagement because, in my view, you simply reported the
disparagement and false allegations which comprised that
disparagement.

Please provide me with both a copy of the disparaging letter,
and the name of the person who hand-delivered that letter to you,
so that I can call the person, and speak with that person about
his/her apology/retraction, or in absence of that apology/
retraction, civil liabilities and damages.

As for Mr. Fitial's "resolution" calling for my lynching by
the hopelessly biased Office of the Attorney General and the CNMI
Bar Association (whose President, I am told, provides legal
services to Mr. Fitial's legislature), please be advised that the
CNMI-situated Chinese, Sri Lankan, and Bangladeshi citizens are
preparing an "anti-resolution", commending my efforts on their
behalf, and questioning the utter lack of services being provided

Catherine Anderson
March 15, 2000
Page Three

in this regard by the CNMI Bar Association.   Ask our esteemed CNMI
Bar Association leaders?   Our judicial officers?   Mr. Fitial?

Incidentally, if the restrictive bar admission policies
adopted by the CNMI Bar Association and the CNMI Judiciary are
really "for the benefit" of CNMi residents, and in place to ensure
that CNMI-situated lawyers are qualified to practice law in the
CNMI, why then are those attorneys most obligated to protect the
interests of CNMI citizens (e.g., our Assistant Attorney Generals)
permitted to practice law for two years, while employed by the CNMI
Government, without taking and passing the CNMI bar examination.

Am I, not a CNMI-licensed attorney, not lawyering circles
around those CNMI-licensed attorneys (like Mr. Goldberg) who
establish Nazi-like policies and procedures to the detriment of
DOLI prisoners being arbitrarily/indefinitely detained at the whim
of attorneys. Goldberg and Zachares?   Why are the CNMI-licensed
attorneys not helping with the free services I provide?   Why do
they not join in the fray?   Afraid of making enemies, so to heck
with the hapless indigents?   Nothing in it for them?

And shouldn't our esteemed Speaker, Mr. Fitial, be called upon
to exert some effort to read the law and familiarize himself with
the facts respecting habeas corpus proceedings, before he
wrongfully lambasts people, like me, by way of his legislative
"resolutions"?   Or, is he too busy dining with Messrs. Zachares and
Goldberg, at Mr. Tan's house?   They, after all, urged/permitted/
acquiesced to/facilitated admission to the CNMI of my clients of
Chinese, Sri Lankan, and Bangladeshi ancestry.

In closing, please transmit to Mr. Fitial my invitation to
examine the scars covering Mr. Ahmed's body...including those
inflicted by Bangladesh torturers using a straight razor to slice
open the bottom of Mr. Ahmed's feet.   Perhaps, then, the CNMI
public will view a more compassionate, and reasonable, side of Mr.
Fitial.

Respectfully yours,

Bruce L. Jorgensen

Catherine Anderson
March 15, 2000
Page Four


P.S.  Is there any truth to the rumor that Mr. Tan maintains a desk
in Mr. Fitial's office?  Or, perhaps, the rumor that, while Teno is
known as our Governor, Mr. Tan is known as the CNMI's Exalted
Ruler.


cc:    CNMI Bar Association
       CNMI House of Representatives
       CNMI Senate
       Marianas Variety
       Office of the Attorney General
       Pacific Daily News
       Saipan Tribune

*P. 07*
*SAIPAN TRIBUNE*

## OPINION

**Thursday 16 March 2000  7**

# Clients wanted!

## By CHARLES P. REYES JR.



Attention: Are you a deeply impoverished citizen of the Third World? Are you from mainland China or Bangladesh? Well, how would you like to be a permanent resident of a nice, tourism resort community in the Western Pacific?

"Impossible!" you say. Well, think again, because awaiting you at this very moment are the lovely islands of Tinian, Rota, and Saipan—otherwise known, collectively, as the Commonwealth of the Northern Mariana Islands.

The CNMI is a U.S. territory eager for your illegal alien arrival. Excuse me, I shouldn't say "illegal," because that's simply not true. There's no such thing as an "illegal alien" when you hail from mainland China, Bangladesh, Kosovo, or some other god-forsaken hell on earth.

You see, you have "rights", and I intend to claim those rights for you as your attorney. I know already that you are worried. But you need not be overly concerned. Do not let the word "attorney" frighten you out of participating in this wonderful federal program I am exploiting on your behalf, because, frankly, my dear clients, you don't need any money.

That's exactly right. You heard me correctly the first time. You do not need one red centavo, my persecuted and oppressed friends. You do not need show money at the airport. (In fact, you won't be using the airports. Better to come by boat and en masse at that.)

All you need is a half-way credible claim of political persecution and repression. I will take care of the rest.

All you need to do is board a raft, a boat—the filthier the better. Try and make it as disgusting as humanly possible.

When you get picked up by the U.S. Coast Guard or CNMI Immigration, just say, "I claim political asylum." and then promptly ask for me as your attorney. Believe me, I would be extremely delighted to help you folks out purely for humanitarian reasons, of course. Naturally, I will collect my attorney's fees from the local and federal governments. But that's beside the point. Your happiness is my primary concern, as always.

You may also rest assured: you will be fully entitled to compensation as well—especially if they incarcerate you for arriving without a visa or proper documentation. They have no right to incarcerate you. Here you are completely free.

Hey, it's not their bloody island. You belong here too. You have every right to claim political asylum and garner me precious attorneys fees. I don't give a darn how these ignorant indigenous people feel about it; they are powerless to act. They have absolutely no say in the matter.

Come to Saipan and let me represent you. Come by the hundreds. Come by the thousands. Come by the millions, if you can. The more cases—the better for you and me. But just come. Come at all costs. I promise that you will never regret it.

Never mind that my credentials are currently being questioned. Forget the possibility that I may not be licensed to practice law in this jurisdiction. The CNMI bar be damned. I am here to help you. Help me help you! I will not only show you the money; I will virtually guarantee you a fantastic place to stay.

---

*Strictly a personal view. Charles Reyes Jr. is a regular columnist of Saipan Tribune. Mr. Reyes may be reached at charlesraves@hotmail.com*



EXHIBIT "S"

## OPINION

Monday 14 February 2000  **7**

# Mr. Jerkinson's legal ploy

### By CHARLES P. REYES JR.

*Saipan Tribune 2/14/00*



Imagine an indigenous person who owns a ranch. Let's call this person Mr. Juan O. Gonzalez. Now suppose that Mr. Juan O. Gonzalez was working on his ranch one day, when in come 17 strange people trespassing on his private property.

Now bear in mind that Mr. Gonzalez is particular about his private property. He adores his privacy. He doesn't welcome trespassers. So Mr. Gonzalez has a fence around his ranch. He even has several unmistakable "PRIVATE PROPERTY, NO TRESPASSING" signs posted around his property.

But these strange people ignore Mr. Gonzalez's private property rights—call it his sovereignty—and proceed to encroach upon Juan's domain. So what does our hero Mr. Juan O. Gonzalez do?

Well, he takes out his shotgun and naturally rounds up these unwelcome intruders. He compels them to form a line and march straight out of his private property. He protects his sovereign domain.

But before Juan forces his intruders out of his ranch, an attorney shows up. Let's call this attorney Mr. Bruce Jerkinson. Mr. Jerkinson angrily shouts at Juan. He says to Juan: "Damn it, Juan. I want you to hold it right there. Don't you dare make another move, Juan. These are my clients—and you are not to eject them from your private property, you hear?"

Shocked, confused, angry and outraged, Juan says: "What the Flubb are you talking about, Mr. Jerkoffinson?! This is my private property. I have certain private property rights. I am the sovereign of my ranch. Get lost! In fact, just Flubb off! Leave me alone. This is none of your damn business."

At this point, Mr. Jerkinson pulls out his trusty briefcase and brandishes a document. "You see this, Juan," he says. "This document proves that you must allow these intruders to encroach upon your property whether you like it or not."

Juan peruses this document and exclaims: "Funny, I don't see my signature anywhere on that agreement, Mr. Jerkoffinson. I don't see how that has anything to do with me and my goddamn ranch. Why don't you get the flubb of my property before I put a hole in that there briefcase of yours, Mr. Jerkoffinson?"

To which Mr. Jerkinson replies, "Dang it there, Juan. My name is Jerkinson, not Jerkoffinson. You get that straight, you hear?"

"Jerkinson– Jerkoffinson—it still don't change the fact that I am not a party to that agreement of yours. I never agreed to give strangers free access to my ranch. I never even attended that there B.S. Convention on the Status of Refugees and all. I say flubb 'em."

"Look closer," demands Jerkinson. "You will find that your good old Uncle Sam was a party to the B.S. agreement on the status of BFS and Fs."

"Still don't see what that has to do with me," counters Juan. "That's my Uncle Sam's business. This here is my ranch."

"And how did you get this ranch of yours?" asks Jerkinson. "Well, I inherited it from my Uncle Pete A. Tenorio," says Juan.

"And didn't your Uncle Pete sign some kind of 'Covenant' agreement with your Uncle Sam?" asks Jerkinson.

"Yeah, as a matter of fact, I believe he did. But Uncle Pete didn't sign no B.S. Convention agreement. And, besides, this is not his property anymore; he gave it to me free and clear."

"No, no," says Jerkinson. "When your dear Uncle Pete signed that Covenant agreement, he gave Uncle Sam a blanket, permanent power of attorney to make decisions for him, his property, and his descendants, relatives (including you), and their property. And under this B.S. agreement, you are just going to have to turn back, put away that shotgun, let these folks stay on your property and compensate them for trying to kick them off. And while you are at it, make sure you include my attorneys fees, too."

*Strictly a personal view. Charles Reyes Jr. is a regular columnist of Saipan Tribune. Mr. Reyes may be reached at charlesraves@hotmail.com*



EXHIBIT "I"



## Office of the Attorney General

Floor-Administration Building Capitol Hill
Caller Box 10007, Saipan, MP 96950



Attorney General/Civil Division
Tel: (670) 664-2341
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366/2367/2368
Fax: (670) 234-7016

March 15, 2000

Hon. Alex R. Munson
Judge, U.S. District Court
P.O. Box 687
Saipan, MP 96950

Dear Judge Munson:

By a House Resolution of the Twelfth Northern Mariana Commonwealth Legislature, the Office of the Attorney General has been requested to investigate whether Mr. Bruce Lee Jorgensen is engaged in the unauthorized practice of law in the Commonwealth. A copy of the resolution is attached for your reference. Prior to the House Resolution, this office, in the course of handling a public inquiry on the same issue, became aware that Mr. Jorgensen is listed as a member of the bar for the U.S. District Court for the Northern Mariana Islands. Based upon my investigation, I am concerned that Mr. Jorgensen's membership may be in violation of the District Court rules, specifically, LR 83.5. The bases for my concerns are set forth below.

Mr. Jorgensen is not now nor has he previously been a member of the CNMI Bar. This was confirmed by a conversation with Mr. Glenn Robles, Secretary of the CNMI Bar Association on Friday, March 10, 2000.

On that same day, I conferred with your secretary who confirmed that Mr. Jorgensen is listed as a member of the district court bar and had been since 1986. It was not clear on what basis he was originally admitted. The issue of concern, however, deals with his continued membership rather than his initial admission.

The rules for admission to this court's bar are set forth in LR 83.5.a. <u>Admission to Practice</u>. That section sets forth the general rule for admission. The rule divides admission into two types. One of those types is the *pro hac vice* admission. That type is not applicable to Mr. Jorgensen.

The second type deals with general admission to the district court bar. This requires that applicants, for admission to <u>and continued membership in</u> the court's bar, be of good moral character and active members in good standing of the Commonwealth Supreme Court Bar, *i.e.*, the CNMI Bar Association. As noted above, Mr. Jorgensen is not now nor has he been in the past an active member in good standing of the CNMI Bar. Since he is not a member in good standing with the CNMI Bar, it seems that he is not eligible for continued membership in the District Court's bar under the requirements set forth in LR 83.5.a.

It should also be noted that Mr. Jorgensen does not fall within the exceptions set forth in LR 83.5.c <u>Attorneys for the United States and the Commonwealth</u>, as amended by the Court's General



March 15, 2000

Order No. 99-00002. There is no indication that he is employed by the United States government, the Commonwealth government, the Office of the Public Defender, Northern Marianas Protection and Advocacy Systems, Inc. (NMPASI), or the Micronesian Legal Services corporation.

If I have misread or misunderstood the local rules relating to continued membership in the District Court bar, I would appreciate your guidance. I would like to have my report to the Legislature be complete and accurate. If my understanding is correct, the Office of the Attorney General on behalf of the Commonwealth, would ask you to take appropriate action to remove Mr. Jorgensen from the District Court bar until such time as he complies with the requirements for admission.

Thank you for your assistance in this matter. If you have any questions, please feel free to contact me.

Sincerely,

L. David Sosebee
Chief, Civil Litigation

cc:    Gov. Pedro P. Tenorio
Rep. Benigno R. Fitial, Speaker of the House
Herbert D. Soll, Attorney General
Maya B. Kara, Governor's Legal Counsel
Julie Sandvold, Lt. Governor's Legal Counsel
Bruce L. Jorgensen

United States District Court
for the
Northern Mariana Islands
P.O. Box 687
Saipan, MP 96950

A. Munson
Judge

Tel: (670) 233-3283
233-2281
Fax: (670) 234-8282

March 16, 2000

L. David Sosebee, Chief
Civil Litigation
Office of the Attorney General
Commonwealth of the Northern Mariana Islands
Administration Building - 2nd Floor
Caller Box 10007
Saipan, MP  96950

Re: Enquiry About Status of Bruce Lee Jorgensen

Dear Mr. Sosebee:

I have received your hand-delivered letter of March 15, 2000, enquiring about the status of Mr. Jorgensen's membership in this court.

Mr. Jorgensen was admitted to practice in this court on October 20, 1986, before my tenure commenced. He met all the requirements for admission at that time and it is and has been the practice of this court that, once an attorney has been admitted, he or she remains an active member of the bar until retirement, death, or disbarment or other disciplinary action.

In 1990, the Northern Mariana Islands Bar Association expressed its desire that, other than for the exceptions set out in the Local Rules for government and public service attorneys, all members of the District Court bar should also be required to be members of the NMI Supreme Court bar. That request was implemented with the court's amended Local Rules in July of 1990. However, the amendment took effect from that date forward; all attorneys previously admitted to the District Court bar remained entitled to the privileges previously bestowed.



EXHIBIT V

L. David Sosebee, Chief
March 16, 2000
Page Two

The prospective nature of the 1990 amendment recognized that attorneys previously admitted to this court's bar had thereby acquired a protected property interest in their continuing ability to practice in this court.

Should you require additional information, please let me know. Until then, I remain

most sincerely,

Alex R. Munson

cc:    Bruce L. Jorgensen

*to AG, Gov.,*
*Lt Gov., A. Reps.,*
*ntg/n*

# Bruce Lee Jorgensen

Attorney At Law*

Lizama Building, 2d Floor

P.O. Box 5682 CHRB

Saipan, MP 96950

(670) 233-5261

*Admitted in all Hawaii State And Federal Courts; Ninth Circuit Court of Appeals; District Court of
the N. Mariana Islands; Republic Of Palau; High Court of the Trust Territory of the Pacific Islands*

March 16, 2000

<u>Transmit via facsimile: (670) 664-2349</u>

L. David Sosebee, Esq.
Acting Attorney General
Chief, Civil Litigation
(No Other Fancy Titles)
Commonwealth of the Northern
    Mariana Islands
Capitol Hill
Saipan, MP 96950

Re: <u>Liang, et.al. v. U.S., et.al.</u>, Civil Action No.
99-0046, U.S. District Court for the Northern Mariana
Islands

<u>Uthayachandran Kandiah, et.al. v. U.S., et.al.</u>, Civil
Action No. 00-0005, U.S. District Court for the Northern
Mariana Islands

<u>Ahmed v. Celis, et.al.</u>, Special Proceeding No. 00-0101A,
Superior Court of the Commonwealth of the Northern
Mariana Islands

Dear Mr. Sosebee:

This afternoon, Judge Alex R. Munson was kind enough to
provide to me a copy of your March 15, 2000 letter.

The letter intimated, to Judge Munson, that you had provided
a copy to me. In fact, you did not provide me with a copy.

Additionally, the letter stated that you had received prior to
March 14, 2000, a "public inquiry" regarding the false accusation
that I had somehow engaged in the unlawful practice of law.
Accordingly, I request pursuant to the CNMI's <u>Open Government Act</u>,
that you provide me, within 10 days, with all information
pertaining to that inquiry, including but not limited to the name
of the person(s) who initiated the inquiry, and copies of all
documents relating in any manner to the inquiry.



EXHIBIT "W"

L. David Sosebee, ⊿.
March 16, 2000
Page Two

Please also provide me with the legal and factual grounds upon which your selective investigation/enforcement activities are premised.

Alternatively, please indicate if and when you intend to launch a similar investigation with respect to attorney Maya Kara's apparently unlawful practice of law during her tenure as Acting Attorney General, which unlawful practice was purportedly found to have occurred by effect of a recent CNMI Superior Court ruling ousting Ms. Kara from that position.

Finally, please be advised that you shall be provided this one opportunity to apologize to me for what is perceived to be your tortiously unlawful and disparaging attempt to deprive me of my property interest (explicitly recognized in Judge Munson's March 16, 2000 letter to you. Absent receipt of your apology the matter of your intent, under color of law and in your personal capacity, to deprive me of my property rights, and related misconduct, shall be relayed for prosecution to my counsel of choice, Mr. Joey Arriola. See e.g., DeNieva v. Reyes, 966 F.2d 480 (9th Cir. 1992)($50,000.00 personal liability; former CNMI Immigration official deprived CNMI-situated person of constitutionally protected right to international travel); see also, Gorromeo v. Zachares and Goldberg, Civil Action No. 99-0018, Order Denying Defendants' Motion For Reconsideration (D. NMI Feb. 24, 2000), at p.2, lines 18-22 (case in which the court, previously, found that "no reasonable official---and particularly no attorney---could have believed that [several CNMI statutes] are constitutional...which establish as the law of the Commonwealth the wholesale disregard of rights explicitly guaranteed by both the United States Constitution and the Constitution of the Commonwealth...." The Commonwealth's zeal to retain control of its own immigration cannot be the basis for a disregard of fundamental constitutional principles." Id. (at Order Denying Defendants' Motion For Judgment On The Pleadings.... (D. NMI Feb. 2, 2000), at p.14, lines 6-13, 21; p.15, lines 1-2.

Congratulations, on looking foolish to a Federal Judge, wasting his time, perpetuating efforts to deprive a torture victim of his right to counsel of choice, and continuing to evade the protections your government is supposed to provide to Mr. Ahmed by effect of the laws you are supposed to know and to enforce.

Sincerely,

Bruce L. Jorgensen
Bruce L. Jorgensen

*P. 03*

Saipan    une    *MAR. 16. 2000*

# Court stops deportation of asylum seeker

Superior Court Associate Judge Timothy H. Bellas yesterday temporarily stopped the Department of Labor and Immigration from carrying out deportation order against Bangladesh national Juyel Ahmed.

In his order, Judge Bellas scheduled a hearing on March 23, 2000 to finally determine whether Mr. Ahmed should be deported while he has a pending application for asylum.

He has directed Maj. Ignacio Celis, supervisor of the Department of Labor and Immigration Detention Center, to release Mr. Ahmed from detention following certain conditions, which include regular appearance in court hearings and reporting to an immigration officer.

Earlier, Judge Bellas granted the habeas corpus petition of Mr. Ahmed, and gave DOLI 10 days to deport him, otherwise, he should be released without any condition.

Mr. Ahmed, who has been languishing in jail for almost two years now, came to the CNMI as a tourist but was detained by immigration officials because his permit to stay expired on Nov. 24, 1994. The deportation of Mr. Ahmed has been delayed due to the failure of DOLI to acquire from the Bangladesh government the necessary travel documents.

A practicing Muslim, Mr. Ahmed claimed that he was tortured by Bangladeshi authorities and he will be subjected to severe pain or suffering if he returned to his country. Such threats to his life has led Mr. Ahmed to apply for political asylum.

According to Mr. Ahmed, his involuntary detention for nearly two years has violated protections and rights guaranteed to him under the Constitutions of the Commonwealth and the United States.

But DOLI has informed the court that it has acquired the necessary travel documents to effect the deportation of Mr. Ahmed which has been set on March 16, 2000.

The court, however, immediately granted the petition of Mr. Ahmed to stop the deportation saying he has sufficiently shown that he will suffer irreparable injury and harm unless a temporary restraining order is issued. *(Lindablue F. Romero)*



# Jorgensen's status

p.03

By Ferdie de la Torre
*Variety News Staff*

U.S. DISTRICT Court for the NMI Judge Alex R. Munson yesterday informed the Attorney General's Office that attorney Bruce Lee Jorgensen is authorized to practice law in federal court after a government lawyer questioned his status.

Munson told L. David Sosebee, chief of the AGO's civil litigation, that Jorgensen was admitted to practice in federal court on Oct. 20, 1986 or before his (Munson) tenure commenced.

Munson pointed out that Jorgensen met all the requirements for admission at that time and "it is and has been the practice of this court that, once an attorney has been admitted, he or she remains an active member of the bar until retirement, death, or disbarment or other disciplinary action."

Munson in a letter explained Jorgensen's status after Sosebee inquired about the lawyer's membership in federal court.

Sosebee wrote to Munson Wednesday telling the judge that the AGO by a House resolution has been requested to investigate whether Jorgensen is engaged in the unauthorized practice of law in the CNMI.

Sosebee said based on his investigation, he is concerned that Jorgensen's membership may be in violation of the District Court rules.

Jorgensen is not now nor has he previously been a member of the CNMI Bar, said Sosebee, adding that CNMI Bar Association Secretary Glenn Robles confirmed that to him.

Sosebee said Munson's secretary also confirmed that Jorgensen is listed as a member of the district court bar and had been since 1986.

"It was not clear on what basis he was originally admitted. The issue of concern, however, deals with his continued membership rather than his initial admission," Sosebee told Munson.

In his response, Munson explained that in 1990 the NMI Bar Association expressed its desire that, other than for the exceptions set out in the Local Rules for government and public service attorneys, all members of the District Court bar should also be required to be members of the NMI Supreme Court bar.

That request, the judge said, was implemented with the court's amended Local Rules in July of 1990.

"However, the amendment took effect that date forward; all attorneys previously admitted to the District Court bar remained entitled to the privileges previously bestowed," Munson stressed.

"The prospective nature of the

Continued on page 42



# Munson. . .

Continued from page 3

1990 amendment recognized that attorneys previously admitted to this court's bar had thereby acquired a protected property interest in their continuing ability to practice in this court," he added.

Meanwhile, following Munson's clarification, Jorgensen yesterday gave Sosebee an opportunity to apologize to him for what he perceived to be tortuously

unlawful and disparaging attempt to deprive him of his property interest.

Jorgensen said that if Sosebee will not apologize, he will file a lawsuit through the counsel of his choice, Joseph A. Arriola.

"Congratulations, on looking foolish to a federal judge, wasting his time, perpetuating efforts to deprive a torture victim of his right to counsel of choice, and continuing to evade the protections your government is supposed to provide to Mr. Juval Ahmed by effect of the

laws you are supposed to know and to enforce," said Jorgensen in a letter to Sosebee.

It was Jorgensen and attorney Bruce Berline who exerted efforts for the release of Ahmed, an alleged torture victim and an asylum applicant who had been detained at the Department of Labor and Immigration for 20 months.

Jorgensen was also able to facilitate the release of two Chinese asylum seekers who were detained at DOLI facility for about four

# EDITORIAL

# Serves him right

FOR INFORMING aliens about the rights guaranteed by the U.S. and CNMI Constitutions to those who are on U.S. soil, attorney Bruce Lee Jorgensen has incurred the righteous wrath of the House leadership and the Attorney General's Office.

Mr. Jorgensen, whose legal advice was once sought by ranking legislators, is now suspected of "engaging in the unauthorized practice of law." This is brilliant. It subtly reminds all those lawyers out there who will provide free legal service to aliens who have been detained for 20 months—particularly if it's, to quote a judge, an "unwarranted," "punitive imprisonment"—that they are engaging in, well, naughty activities and the CNMI government will sic AGO on them. AGO may be unable to sue government officials who allegedly misspent millions of taxpayers' money; it may even fail to perform simple research regarding the admission rules of the U.S. District Court, thus "appearing foolish" to that court, as Mr. Jorgensen would so uncharitably put it. But, by God, AGO will surely go after any lawyer who has the audacity to actually know what the U.S. and CNMI Constitutions say. That is, we think, is the courageous and about-time message behind the actions taken by the House leadership and AGO.

In any event, Mr. Jorgensen and his associate, who is, incidentally, a former CNMI assistant attorney general, should have known better. What were they thinking? Why are they defending aliens who have been wrongly, arbitrarily and indefinitely detained? Don't they know that only people with "An Agenda" would do that, as certain enlightened quarters would say? Are they "pro-federal takeover"? Where do they think they are? On U.S. soil? Wait a minute. This *is* U.S. soil.

Nevertheless, Mr. Jorgensen shouldn't be telling those Chinese garment workers that they could seek asylum here. That is *so* wrong even if it's a legal question that could be brought to court. Even if it's true that those workers came from a country whose leaders would think nothing of mashing students with tanks and imprisoning elderly men and women who dare perform breathing exercises in public. Even if it wasn't Mr. Jorgensen who allowed that Bangladeshi—yes, from Bangladesh—posing as a tourist to enter the CNMI legally, mind you, and not inside a container aboard a cargo ship. Even if it's not Mr. Jorgensen who has been hiring alien workers from countries with sadistic governments. Even if there are such federal laws and international treaties pertaining to these asylum issues, what gives Mr. Jorgensen the right to inform these workers about them?

3/20/00    MARIANAS VARIETY P. 6

And please. Enough of that First Amendment and Bill of Rights mumbo-jumbo. That's not fair to the House leadership and AGO, as it could mean that they are wrong and Mr. Jorgensen was right to do what he's doing, which, of course, should not be the case. He is injecting crazy notions into the minds of our hardworking, non-complaining, properly-trained-to-be-docile-by-Beijing garment workers. As everyone knows, the whole issue is about the possible disruption to the $1 billion a year garment industry that Mr. Jorgensen's subversive activities could lead to. Not surprisingly, it was an ex-Willie Tan executive who introduced the House resolution calling for a probe into the nefarious activities of Mr. Jorgensen.

Of course, some people would even applaud his efforts; they could say that Mr. Jorgensen is proving that aliens here can seek justice even without "federal takeover," and that Marianas Americans, like most of their countrymen elsewhere in this nation, also do not tolerate violators of *their* laws that equally protect *everyone*, even "outsiders" and "guests."

Happily, not a single one of these people, despite being in the majority in this community, are members of the House leadership.



## *Marianas Variety*

Serving the Commonwealth for 27 years
Published Monday to Friday By Younis Art Studio, Inc.

Publisher:
Abed and Paz Younis

| | |
|---|---|
| Rafael H. Arroyo | Editor |
| Zaldy Dandan | Associate Editor |

P.O. Box 231, Saipan MP 96950-0231
Tel. (670) 234-6341/7578/9797/9272
Fax (670) 234-9271
© 2000, Marianas Variety
All Rights Reserved

Member of
The Associated Press (AP)

MEMBER SINCE 1980
NATIONAL
NEWSPAPER
ASSOCIATION



# BRUCE BERLINE
### ATTORNEY AT LAW

**LAW OFFICE OF BRUCE BERLINE**
LIZAMA BUILDING, SECOND FLOOR
P.O. BOX 5682 CHRB GARAPAN, SAIPAN MP 96950
PHONE (670) 233-3663
FACSIMILE (670) 233-5262

March 16, 2000

*Via fax: (670) 664-2349*

David Sosebee, Esq.
Assistant Attorney General
Commonwealth of the Northern
    Mariana Islands
Saipan, MP 96950

     Re:    *Ahmed v. Celis, et.al.*, Special Proceeding No. 00-0101A,
           Superior Court of the Commonwealth of the Northern
           Mariana Islands

Dear Mr. Sosebee:

    Yesterday, prior to the order from Judge Bellas, there was distributed an off-island notice in which court personnel and on-island counsel were notified that I will be off-island between this evening and March 28, 2000.

    Yesterday, however, there was issued an order in the *Ahmed* habeas corpus proceeding, which designates March 23, 2000 as the date for an <u>Ahmed</u> hearing.

    Since I will be off-island on March 23, 2000, will you stipulate, as a professional courtesy, to extend the hearing date to the week of March 27 and that, in the meantime, the *status quo* will be maintained with respect to Mr. Ahmed's current situation?

                Sincerely,

                Bruce Berline

cc:        Juyel Ahmed





Commonwealth of the Northern Mariana Islands
## Office of the Attorney General
2nd Floor-Administration Building Capitol Hill
Caller Box 10007, Saipan, MP 96950

**Attorney General/Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

March 15, 2000

**Criminal Division**
Tel: (670) 664-2366/2367/2368
Fax: (670) 234-7016

<u>**By Fax – 233-5262**</u>

Bruce L. Berline
P.O. Box 5682 CHRB
Saipan, MP 96950

Re:    Special Proceeding No. 00-0101A; Ahmed v. Major Ignacio Celis, supervisor of Labor and Immigration Detention Center, *et al.*



Dear Mr. Berline:

I have received your fax this afternoon requesting a stipulation to continue the hearing on the temporary injunction in the above referenced matter. I am not able to enter such a stipulation for the following reasons.

First, there is the nature of the case. Mr. Ahmed had been previously ordered deported and, but for his unwillingness to cooperate and produce his passport, would have been back in his homeland by now.

Second, the stipulation you requested extends past the time when the TRO will expire by its own terms. Such a stipulation would not be in the interest of the Commonwealth.

Finally, I am not the attorney of record in this case. That is Mr. Robert Goldberg. I will defer to his judgment in this matter. He is off-island until Monday, March 20, 2000. I will advise him of your request and my response. On his review, he may decide that a stipulation is in order. If he does, based on his knowledge of this case, I will defer to him.

Sincerely,

L. David Sosebee
Assistant Attorney General

cc:    Robert Goldberg, Assistant Attorney General


EXHIBIT "B-1"



# Off⋅ ⋅of the Attorney Gene 1

2nd Floor-Administration Building Capitol Hill
Caller Box 10007, Saipan, MP 96950

**Attorney General/Civil Division**
Tel: (670) 664-2341
Fax:(670) 664-2349

March 15, 2000

**Criminal Division**
Tel: (670) 664-2366/2367/2368
Fax: (670) 234-7016

**By Fax – 233-5262**

Bruce L. Berline
P.O. Box 5682 CHRB
Saipan, MP 96950

Re:     Special Proceeding No. 00-0101A; Ahmed v. Major Ignacio Celis, supervisor of Labor and
        Immigration Detention Center, *et al.*



Dear Mr. Berline:

The Superior Court has issued its order granting the TRO and an expedited hearing in the
above referenced matter. As you are the attorney representing Mr. Ahmed, this letter is directed to you
as his attorney in the case.

The order directed that Mr. Ahmed be released forthwith. That order has been transmitted to
Major Celis who is in the process of processing Mr. Ahmed for release.

The Order sets three conditions that your client is required to comply with during the
pendency of the Order and any extensions.

1.      He is required to appear periodically before an immigration officer for identification. I have
        advised Major Celis that Mr. Ahmed should appear daily during the time the Order is in effect.

2.      Mr. Ahmed is to appear at all scheduled hearings before the court.

3.      Mr. Ahmed is required to provide such information as the Attorney General may deem proper
        to assure the Applicant's availability for deportation. In this respect, the Office of the attorney
        General requires the following information:

    a.  A designation of the place where Mr. Ahmed will be residing during the pendency of the
        Order.

    b.  The location of Mr. Ahmed's passport and the name of the person having possession of
        the passport if it is not Mr. Ahmed.

    c.  Notice of any change of address within 24 hours of that change.



EXHIBIT "C-1"

Page 2
March 15, 2000

      Please take the necessary steps to assure that your client complies with the above requirements before noon tomorrow. Send all of the requested information to my attention.

      If you have any questions, please feel free to contact this office.

                    Sincerely,

                    L. David Sosebee
                    Assistant Attorney General

cc:    Secretary, Department of Labor and Immigration
       Robert Goldberg, Assistant Attorney General

*To Sosebee &
DOLI Petn. &
DOLI Aftno*

# Bruce Lee Jorgensen

**Attorney At Law***

Lizama Building, 2d Floor

P.O. Box 5682 CHRB

Saipan, MP 96950

(670) 233-5261

*Admitted in all Hawaii State And Federal Courts; Ninth Circuit Court of Appeals; District Court of
the N. Mariana Islands; Republic Of Palau; High Court of the Trust Territory of the Pacific Islands*

March 16, 2000

<u>Transmit via facsimile: (670) 664-2349</u>

L. David Sosebee, Esq.
Acting Attorney General
Chief, Civil Litigation
(No Other Fancy Titles)
Commonwealth of the Northern
    Mariana Islands
Capitol Hill
Saipan, MP 96950

> Re: <u>Liang, et.al. v. U.S., et.al.</u>, Civil Action No.
> 99-0046, U.S. District Court for the Northern Mariana
> Islands
>
> <u>Uthayachandran Kandiah, et.al. v. U.S., et.al.</u>, Civil
> Action No. 00-0005, U.S. District Court for the Northern
> Mariana Islands
>
> <u>Ahmed v. Celis, et.al.</u>, Special Proceeding No. 00-0101A,
> Superior Court of the Commonwealth of the Northern
> Mariana Islands

Dear Mr. Sosebee:

Juyel Ahmed's <u>habeas corpus</u> lawyer, Bruce Berline, met with me
today to discuss your March 15, 2000 letter, as it relates to the
above-captioned proceedings.

With respect to the conditions Mr. Ahmed has been required, by
effect of the temporary restraining order issued by Judge Bellas,
Mr. Berline and I agree that the order requires Mr. Ahmed to
periodically appear before DOLI officials.

Mr. Berline takes the position Mr. Ahmed should not be
required to appear daily. Mr. Ahmed is destitute, owns no means of
transportation, is not employed, and resides a considerable
distance from DOLI offices. Given those factors, and the fact that



EXHIBIT "D-1"

L. David Sosebee, E .
March 16, 2000
Page Two

Mr. Ahmed does have access to a telephone, Mr. Berline takes the position that that a weekly appearance requirement would be more reasonably appropriate, with daily contact between Mr. Ahmed and DOLI officials via telephone.

Additionally, Mr. Berline recognizes that the information required, in enumerated paragraph 2.b., to the extent it exists, is apparently in the custody and control of the CNMI Government, as documented by the Status Report recently submitted to the CNMI Superior Court by Mr. Goldberg.

Finally, it is my understanding that Mr. Ahmed attempted today to provide to Mr. Berline and me a description of the home in which Mr. Ahmed currently resides, but neither Mr. Berline nor I were present upon Mr. Ahmed's arrival.  Remember, Mr. Ahmed does not want to flee the CNMI; rather, he wants to stay here.

Sincerely,

Bruce L. Jorgensen

cc:  Juyel Ahmed
     Bruce Berline, Esq.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

JUYEL AHMED,                                    )        Special Proceeding No. 00-0101A
                                                )
        Applicant,                              )
                                                )
vs.                                             )        ORDER GRANTING APPLICATION
                                                )        FOR WRIT OF HABEAS CORPUS
COMMONWEALTH OF THE                             )        WITH CONDITIONS
NORTHERN MARIANA ISLANDS and                    )
CNMI DEPARTMENT OF LABOR                         )
AND IMMIGRATION,                                )
                                                )
        Respondents.                            )
                                                )

## I. PROCEDURAL BACKGROUND

This matter came before the court on March 6, 2000, 1999, in Courtroom 217A, on Applicant Juyhel Ahmed's Application for issuance of a writ of habeas corpus pursuant to 6 CMC § 7102. Bruce L. Jorgensen, Esq,. appeared on behalf of the Applicant, and Assistant Attorney General Robert Goldberg, Esq., appeared on behalf of the Commonwealth and the CNMI Department of Labor and Immigration ('the Government"). The court, having reviewed the memoranda, declarations, and exhibits, having heard and considered the arguments of counsel, and being fully informed of the premises, now renders its findings and conclusions in this written decision.

FOR PUBLICATION



EXHIBIT "E-1"

## II. FACTUAL BACKGROUND

1.  Applicant Juyel Ahmed, a Bangladeshi national, was ordered detained and deported by this court because his tourist permit expired on November 24, 1994. *See CNMI v. Ahmed,* Civil Action No. 98-0704B (N.M.I. Super.Ct. August 6, 1998) (Order of Deportation, attached as Ex. 1 to R. Verified Return). Pursuant to this court's Deportation Order, on August 6, 1998, Applicant was remanded to the custody of the Division of Immigration and ordered to surrender his passport. Applicant did not appeal the court's Deportation Order.

2.  Although the court also ordered the Division of Immigration Services to place Applicant on the first available airline flight to the People's Republic of Bangladesh, Applicant has been held at the prison facility operated by the Government's Department of Labor and Immigration ("DOLI") since July 1, 1998. Decl. of Juyel Ahmed (hereinafter "Appl. Decl." at ¶ 1).

2.  Following U.S. Senate oversight hearings relating to CNMI immigration policies and coverage by the media of certain court proceedings in which he is involved, Applicant charges that he was subjected to treatment different from other prisoners at the direction of CNMI Assistant Attorney General Robert Goldberg. Applicant maintains that, among other things, Mr. Goldberg has attempted to coerce him into helping the Bangladesh Government issue a passport.[1] Applicant asserts that when he refused to comply with Assistant Attorney General Goldberg's demands, Mr. Goldberg ordered Applicant to be placed on "24-hour lockdown" for 365 days per year. Appl. Supp. Decl. at ¶ 5. Applicant insists that at Goldberg's direction, he was prevented from leaving his cell, denied access to and use of newspapers, cigarettes, and other ordinary items, not permitted to play cards, forbidden access to entertainment of any type, precluded from making telephone calls, and prevented from communicating with others. *Id.* Applicant further

---

[1] See Supplement to Habeas Corpus Application, Supplemental Declaration of Juyel Ahmed (hereinafter, "Appl. Suppl Decl."), filed in this proceeding on February 24, 2000.

1     contends that Mr. Goldberg stopped Applicant's visiting privileges, directed that Applicant

2     be precluded from making telephone calls, and instituted measures that would prevent

3     Applicant from communicating with his attorney (*Id.* At ¶¶ 6-11).    In light of

4     Respondents' failure or refusal to provide public records and other materials sought in

5     Applicant's federal court proceeding, Applicant insists that it is appropriate for him to seek

6     habeas corpus relief (Appl. at 2-3).

7  3.     The Government does not dispute these allegations, but simply contends they are irrelevant

8     as to whether Applicant is "unlawfully imprisoned." *See* R. Verified Return at 4, N.3.

9     At the hearing in this matter, the Government argued that the Applicant himself is the

10     reason for the prolonged detention. Because Applicant has refused to provide or surrender

11     his passport,[1] the Government maintains that it has been forced to obtain Bangladeshi

12     travel documents, and, notwithstanding three meetings among CNMI representatives,

13     members of the State Department, and Bangladesh Embassy officials in Washington,

14     D.C., the Government has yet to receive them.  The Government contends that the only

15     travel document provided by the Bangladesh Embassy was defective and that a proper

16     travel document has been promised "as soon as possible" (Verified Return at 2).

17  4.     To challenge his detention, Applicant brings this Application for a writ of habeas corpus

18     pursuant to 6 CMC § 7103, contending, among other things, that his continued detention

19     violates CNMI and Federal substantive and procedural due process rights.[2]

20

---

21    [1] Applicant, a practicing Muslim, contends that before his entry to the CNMI, he was the victim of torture by

22  Bangladeshi authorities, and that if repatriated to return to Bangladesh, he would be persecuted and subjected to severe
pain or suffering (Appl. Decl. at ¶ 4).  Applicant's papers further reflect that he has applied for Federal and CNMI

23  asylum and protection.  Applicant has completed and submitted an I-590 form to the U.S. Immigration and
Naturalization Service ("INS") and is one of several plaintiffs seeking injunctive, declaratory, and other relief in *Liang*

24  *v. United States, et al.,* Civil Action No. 99-046 (U.S. Dist. Court).

25    [2] Appl. Decl. at ¶ 13(a)(4). Applicant also relies upon a panoply of materials and citations, virtually all of which
have been "incorporated by reference" into his Application. These include, but are not limited to, all CNMI statutory

26  law, Federal statutory law, Federal/CNMI treaty obligations, international law and Federal/CNMI constitutional law,
various court rulings, and all "related facts, legal standards, and equitable considerations, including but not limited

27  to those described in the record of *Liang v. CNMI, et al.,* Special Proceeding No. 00-00050E (CNMI Super. Ct. Jan.
24, 2000). The court notes that with regard to Special Proceeding No. 00-0050E referenced above, there were no facts

28

5.    On March 1, 2000, the Superior Court issued an Order to Show Cause directing Respondents to certify the true cause of Applicant's detention. In response, Respondents claim that the Application is defective under 6 CMC §§ 7102 and 7104, since Applicant has failed to name the person detaining him as a respondent (Verified Return at 3). Respondents further contend that the detention is lawful pursuant to this court's Deportation Order and is solely the result of Applicant's own misconduct (*Id.* At 2).

## III. QUESTIONS PRESENTED

1.    Whether Applicant's failure to name his present custodian as a respondent requires the court to deny the Application.

2.    Whether an alien subject to a non-appealable, final order of deportation can be detained indefinitely without violating due process of law.

3.    Whether a writ of habeas corpus should issue as a remedy for Applicant's challenge to the duration and conditions of his confinement.

## IV. ANALYSIS

1.    Traditionally, habeas corpus provides a remedy for a prisoner challenging the fact or duration of his confinement and seeking immediate or speedier release. *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Habeas corpus is also an available remedy to aliens challenging executive detention. *E.g., Chowdhury v. Celis*, Civil Action No. 97-1261, Original Action No. 98-001 (N.M.I. Sup.Ct. March 1, 1998) (Order re: Petitioner's Writ of Habeas Corpus). *See also Nyguen v. Fasano*, __ F.Supp.2d __, 2000 WL 144216 (S.D.Cal., Feb 01, 2000). As all parties concede, the law of the Commonwealth provides that "[e]very person unlawfully imprisoned or restrained of his or her liberty under any pretense whatsoever, or any person on behalf of an unlawfully imprisoned individual, may apply for a writ of habeas corpus to inquire into the cause of

that the court determined, as the Petition for habeas relief was withdrawn.

4

1   the imprisonment or restraint." 6 CMC § 7101. Pursuant to 6 CMC § 7105, the judge

2   hearing the application for a writ of habeas corpus and authorized to issue the writ shall,

3   "without delay or formality, determine the facts, grant the writ unconditionally, deny the

4   writ, or grant the writ on terms fixed by the court and discharge the person for whose

5   relief the application has been brought or make any order as to disposition that law and

6   justice may require.

7   2.   However, prior to reaching the merits of Applicant's claims, this court must first assess

8        whether, as Respondents contend, Applicant's failure to name the warden or

9        superintendent of the institution where he is now incarcerated bars his claim for relief.

10       The court finds that the failure to name the person detaining Applicant as a respondent in

11       this proceeding does not bar Applicant's claims.

12  3.   A mistake of form, as in naming the state rather than the warden in a habeas proceeding,

13       is a procedural rather than a jurisdictional defect. 17A C. Wright, A. Miller, E. Cooper,

14       FEDERAL PRACTICE AND PROCEDURE § 4268.1 at 490 (West 1999). The defect is easily

15       cured by amendment. *West v. Louisiana*, 478 F.2d 1026, 1029 (5th Cir. 1973). Since 6

16       CMC § 7102 only requires the Application to set forth "*if known*, the name of the person

17       who has custody over the person seeking relief," (emphasis added), and 6 CMC § 7105

18       permits this court to, among other things, "make any order as to disposition that law and

19       justice require," the court finds it appropriate in this instance to amend the petition on its

20       own initiative to add the Supervisor of the Department of Labor and Immigration

21       Detention Center as a respondent. *See Ashley v. Washington*, 394 F.2d 125, 126 at Note

22       1 (9th Cir. 1968). The Application will not, therefore, be denied on these grounds.

23  4.   The Due Process Clause of the Fifth Amendment to the United States Constitution and

24       Article I, section 5 of the Commonwealth Constitution protect the most basic and

25       fundamental of human rights, ensuring that no person will be deprived of life, liberty, or

26       property without due process of law. U.S. CONST. Amend. V; N.M.I. CONST. Art. I §

27

28

5

5.[4/] Above and beyond the procedural guarantee expl... in the Due Process clause itself, courts have recognized a limited "substantive" component that forbids the government to infringe certain fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 301-02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). These constitutional protections extend to all "persons" within the borders of the CNMI, including deportable aliens.[5/]

5.  There is, however, one exception to this rule. Based upon what has become known as the "entry fiction," a number of courts have ruled that aliens who are placed in exclusion proceedings before entering the United States are legally considered to be detained at the border and thus are not entitled to due process protection. *Id.* See also *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir.), *cert. denied*, 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995). As a result, the Due Process Clause affords an excludable alien no procedural protections beyond those procedures explicitly authorized by Congress. *Landon*, 459 U.S. at 32, 103 S.Ct. at 321. Excludable aliens, therefore, may be denied due process rights, including the right to be free of detention. *Vo v. Greene*, 63 F.Supp.2d 1278, 1282 (D.Colo. 1999)

6.  The entry fiction doctrine, however, is not applicable here. Applicant is a deportable, not an excludable alien. This distinction is critical. An excludable alien is one seeking admission to this country as a privilege. *Id.* Whereas courts generally do not recognize any constitutional rights regarding these applications, for the power to admit or exclude aliens is a sovereign prerogative, immigration laws distinguish between "those aliens who

[4/] The Fifth Amendment to the Constitution expressly applies within the Northen Mariana Islands as it does within each of the states. COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA (hereinafter, the" COVENANT") § 501. 48 U.S.C. § 1601 note, *reprinted* in Commonwealth Code at B-101 *et seq.*

[5/] Constitutional Convention of the Northern Mariana Islands, ANALYSIS OF THE CONSTITUTION OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (Dec. 6, 1976) (hereinafter "Constitutional Analysis") at 24 *Landon v. Plasencia*, 459 U.S. 21, 32-33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982).

1  come to our shores seeking admission...and those who are within the United States after

2  an entry, irrespective of its legality.  In the latter instance, the Court has recognized

3  additional rights and privileges not extended to those in the former category who are

4  merely 'on the threshold of initial entry."  *Leng May Ma v. Barber*, 357 U.S. 185, 78

5  S.Ct. 1072, 1073, 2 L.Ed.2d 1246 (1958); *see also Landon*, 459 U.S. at 32, 103 S.Ct.

6  at 321.[9/]

7  7.  Once aliens are admitted to this country, their constitutional status changes so that they

8  enjoy a right to due process.  *Landon*, 459 U.S. at 32, 103 S.Ct. at 321.[1/]  These

9  constitutional rights include a fundamental liberty interest in being free from incarceration

10  under the Fifth Amendment. A deportable alien who is indefinitely continued in the

11  custody of immigration suffers a deprivation of liberty.  *Nyguen v. Fasano*, 2000 WL

12  144216 at 10.

13  8.  The parties do not dispute that applicant is "within" the CNMI after lawful entry.

14  Although Applicant has committed no crime save that of staying beyond the expiration of

15  his tourist permit, he has been subjected to, at best indeterminate, and at worst, life

16  detention.  To determine whether this deprivation of liberty is impermissible punishment

17  or permissible regulation, the court examines whether the deprivation of liberty is imposed

18  for the purpose of punishment or in furtherance of regulatory goals.  *Id.*

19  9.  Plainly the CNMI has a legitimate sovereign interest in ensuring the removal of aliens

20  ordered deported and  preventing flight prior to deportation.  *See, e.g. Phan v. Reno* 56

21

22  [9/] *Accord Chl Thon Ngo v. Immigration and Naturalization Service*, 192 F.3d 390 (3d Cir. 1999) ( alien who is
23  on the threshold of initial entry stands on a footing different from those who have "passed through the gates";
    excludable aliens could be detained for lengthy periods when removal is beyond the control of the INS, provided that
24  appropriate parole provisions were in place)

25  [1/] *Accord Nyguen v. Fasano*, __F.Supp.2d __, 2000 WL 144216 (S.D.Cal. Feb.1, 2000); *Sok v. Immigration and
    Naturalization Services*, 67 F.Supp.2d 1166, 1169 (E.D.Cal. 1999); *Phan v. Reno* 56 F.Supp.2d 1149 (W.D.Wash.
26  1999); *Hermanowski v. Farquharson*, 39 F.Supp.2d 148, 157 (D.R.I. 1999). *But see Zadvydas v. Underdown*, 185 F.3d
    279, *reh'g denied*, 199 F.3d 441 (5th Cir. 1999). *petition for cert. granted*, Case No. 99–7791 (Jan. 11, 2000) (when
27  alien residents are subject to final deportation order, there is virtually no basis for distinguishing them from excludable
    aliens).

28

7

1    F.Supp.2d 1149, 1154-1156 (W.D.Wash. 1999). *See also United States v. Valenzuela-*
2    *Bernal*, 458 U.S. 862, 863-66, 102 S.Ct. 3440, 3444-46 (1982) (prompt deportation of aliens
3    is justifiable on the basis of legislative and executive policy, and on the practical and financial
4    difficulties associated with their continued detention). In light of the fundamental liberty
5    interest at stake, the court believes that heightened scrutiny, and not deferential review,
6    is appropriate to determine whether the restriction on Applicant's liberty is excessive in
7    relation to these purposes.[1/]

8    10.    The Ninth Circuit recognizes that immigration detention is not punishment. *Alvarez-*
9    *Mendez v. Stock*, 941 F.2d 956, 962 (9th Cir. 1991). Since detention is lawful only in aid
10    of deportation, if deportation never occurs, then indefinite detention of a deportable alien
11    is excessive. *Vo*, 63 F.Supp.2d at 1285 (concurring with the panel in *Phan*, that the court
12    must balance the likelihood of deportation against the potential danger of the applicant and
13    the risk that he will abscond). If it appears to the court that the government is unlikely
14    to deport the alien, then the Government's interest in detaining that alien becomes less
15    compelling and the invasion into the alien's liberty becomes more severe. Since detention
16    is only lawful in aid of deportation, it is "excessive" to detain an alien indefinitely if
17    deportation will never occur. When removal is not foreseeable, likely, or realistic,
18    detention becomes impermissible punishment. Under these circumstances, the alien should
19    presumptively be released unless the Government is able to demonstrate that the detention
20    is temporary and that it will be able to deport the alien in short order.

21    11.    In this case, the Government maintains that detention is foreseeable, likely and realistic.
22    It has represented to this court that proper travel documents will arrive shortly. At the
23    same time, Applicant has been detained nearly two years. The Government has not
24
25    [1/] While courts defer to the legislative and executive branches on substantive immigration matters, such deference
      does not extend to post-deportation order detention. *Phan*, 56 F.Supp. 2d at 1755; By observing the
26    excludable/deportable alien distinction, the *Phan* panel accorded far less weight to the plenary power doctrine, which
      counsels judicial deference to the executive and legislative branches on substantive immigration matters. *Id.* Since
27    the court found petitioners' liberty interest to be fundamental, it applied heightened scrutiny, not deferential review
      to petitioners' detention.
28

1  presented any evidence of Applicant's criminal history, and thus this court makes no

2  finding that Applicant is any danger to the community. Similarly, the Government has not

3  presented any evidence that Applicant poses a flight risk, and thus the court makes no

4  finding that Applicant will abscond. The court is troubled, moreover, by the absence of

5  procedures or safeguards in place to ensure that DOLI will ever comply with the Court's

6  Deportation Order directing DOLI to place Applicant on the first available airline flight

7  to the People's Republic of Bangladesh.

8  12.  The court therefore concludes that after some time in custody, when deportation is not

9  reasonably foreseeable, an Applicant's liberty interest will surpass DOLI's interest in

10  effecting the safe removal of aliens ordered to be deported. At this point, detention

11  becomes impermissible incarceration. In this case, however, the court need not decide

12  how long an Applicant must remain in custody before his rights outweigh the

13  Government's interest in effecting deportation because Applicant has been in custody for

14  nearly two years. The court finds that Applicant's detention has extended well beyond that

15  necessary to effect removal and has become punitive imprisonment without due process

16  in contravention of Applicant's fundamental rights under the Fifth Amendment and Article

17  I, § 5.

18  13.  In light of its Order below and because Applicant's papers suggest that his treatment at the

19  hands or direction of CNMI officials may have ceased, the court need not determine

20  whether the unrefuted allegations of differential treatment constitute unlawful

21  imprisonment for purposes of habeas relief under 6 CMC § 7101.

## V.  CONCLUSION

23  The court makes the following Orders:

24  1.  The Application is hereby amended to add Major Ignacio Celis, Supervisor, Department

25  of Labor and Immigration Detention Center, as a Respondent. The amended caption shall

26  read as set forth on Exhibit "A" hereto.

27

28

9

2.  The Government is directed to file a status report within ten (10) days of entry of this order advising the court whether travel documents have been obtained.

3.  During such time as Applicant remains in DOLI custody, Applicant's visiting, telephone and newspaper privileges shall be fully restored. Applicant shall be permitted to communicate with counsel. Unless the Government makes a showing that restrictions on these privileges are in fact necessary to serve some governmental interest, these privileges shall remain in effect.

4.  Should the Government be unable to effect deportation within ten (10) days, then Applicant shall be released. The release, however, need not be unconditional. To keep the Attorney General apprized of Applicant's availability for departure, Applicant may be required to appear periodically before an immigration officer for identification, give such information as the Attorney General may deem proper, and conform to restrictions on conduct or activities as prescribed, including the posting of a cash or property bond.

5.  Since this monitoring may become permanent, the conditions imposed by the Government, if any, must be the minimum needed to assure availability for deportation. Further, the conditions must be reasonable and capable of being modified for Applicant to satisfy them.

6.  If Applicant violates any conditions of his release, then DOLI may request the Attorney General to prosecute the violations as violations of Applicant's conditions of release. CNMI law provides for a method of punishing violations of conditions of release. Accordingly, further indefinite detention by the Government is unwarranted.

So ORDERED this 09 day of March, 2000.

TIMOTHY H. BELLAS, Associate Judge