LEONARDO M. RAPADAS
United States Attorney
MIKEL SCHWAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, GU 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

GREGORY G. KATSAS
Assistant Attorney General
DAVID J. KLINE
Director
VICTOR M. LAWRENCE
Principal Assistant Director
SAMUEL P. GO
Trial Attorney
Office of Immigration Litigation
District Court Section
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-9923
Fax: (202) 616-8962

Attorneys for Defendant United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOHAMMAD KAMAL HOSSAIN, | ) Civil Action No. 08-0016 |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| COMMONWEALTH OF THE | ) **REPLY IN SUPPORT OF MOTION TO** |
| NORTHERN MARIANA ISLANDS, and | ) **DISMISS OF DEFENDANT UNITED** |
| MATTHEW GREGORY, in his official | ) **STATES OF AMERICA** |
| capacity as Attorney General of the | ) |
| Commonwealth of the Northern Mariana | ) |
| Islands, and UNITED STATES OF | ) |
| AMERICA, | ) Hearing:     **October 16, 2008** |
| | ) Time:        **9:00 A.M.** |
| Defendants. | ) |

## I.    **INTRODUCTION**

In Plaintiff's Response and Opposition to Motion to Dismiss of Defendant United States of America and Commonwealth of the Northern Mariana Islands ("Opp."), Plaintiff makes clear that his only claim against Defendant United States is that Defendant United States violated Plaintiff's equal protection rights and right to due process. Opp. at 6, 8. Plaintiff also makes clear in his opposition that this claim against Defendant United States implicates the United States in only one manner: that pursuant to the Section 104 of the Covenant, Defendant United States "has complete responsibility for and authority with respect to matters relating to foreign affairs," and that "the lack of available processes for applying to bring his family members to the CNMI, such as are available for [refugees]/asylees in the U.S. violates equal protection, because these matters have international aspects and are matters of 'foreign affairs' under the Covenant." *Id.*[1]

Plaintiff's sole claim against Defendant United States fails, as the plain language of the Covenant overrides Plaintiff's claim that his requested immigration relief is a "foreign affair." Furthermore, Plaintiff fails to articulate in his Complaint where his alleged right to derivative protection is derived from, or how this right is extended to the CNMI. Plaintiff also fails to specify who is similarly situated to him, much less how his treatment differs from those similarly situated to him. For these reasons, Plaintiff's alleged equal protection claim against Defendant United States fails.

---

[1]    All of Plaintiff's other claims are against the Commonwealth of the Northern Mariana Islands ("CNMI"), such as CNMI's alleged failure to meet the obligations of federal treaties by failing to provide for any processes to apply for protection of family members outside the CNMI. *Id.* at 8.

[2]    On May 8, 2008, President Bush signed into law Pub. L. No. 110-229, the Consolidated Natural Resources Act of 2008, 122 Stat. 754 (CNRA). The CNRA, which has an effective date of June 1, 2009 (unless postponed by the Secretary of Homeland Security for up to 180 days), extends U.S. immigration law to the CNMI. Thus, not until the earliest date of June 1, 2009, would U.S. immigration apply in the CNMI. In addition, the CNRA specifically

Plaintiff's due process claim also fails for the foregoing reasons. While Plaintiff asserts that merely identifying his requested right to derivative protection is sufficient to state his claim, his failure to establish a basis or entitlement to his requested right causes his due process claim to fail.

Finally, res judicata operates to bar Plaintiff's Complaint. In Plaintiff's prior consolidated action against the United States in *Jiang Xui Ying v. United States*, Civ. Action Nos. 02-0023, 00-0005, 99-0046 (D.N.M.I.) ("Consolidated Action"), Plaintiff sought protection for his family located outside of the CNMI. Plaintiff entered into a settlement agreement, wherein Plaintiff and the United States released one another from any claims arising from the facts of the Consolidated Action.

## II.    <u>ARGUMENT</u>

**A.    Plaintiff Fails to State a Claim Against Defendant United States, as the Covenant's Express Provisions Override Plaintiff's Claim that His Requested Immigration Relief is a "Foreign Affair."**

The plain language of the Covenant § 503(a) clearly establishes that the immigration and naturalization laws of the United States do not apply to the CNMI. Covenant § 503(a) states as follows:

> The following laws of the United States, presently inapplicable to the Trust Territory of the Pacific Islands, will not apply to the Northern Mariana Islands except in the manner and to the extent made applicable to them by the Congress by law after termination of the Trusteeship Agreement: (a) except as otherwise provided in Section 506, the immigration and naturalization laws of the United States;

None of the exceptions in Covenant § 506 are applicable. The fact that there are exceptions in the Covenant, but not a foreign affairs exception as to immigration law, is significant.

The purpose of Section 503 of the Covenant is to allow the CNMI to control its own immigration. *Ahmed v. Goldberg*, 2001 WL 1842398 at *5 (D.N. Mar. I. 2001). This Court has recognized that CNMI's immigration authority includes asylum and refugee status within the CNMI. *Ahmed v. Goldberg*, 2001 WL 1842390 at *6 (D.N. Mar. I. 2001) (citing *Tran v. CNMI*, 780

1   F.Supp.709, 713 (D.N. Mar. I. 1991).

2          The plain language of the Covenant, as well as the applicable case law, firmly establishes that

3   Plaintiff's requested relief for a procedure to apply to bring his family members to the CNMI in

4   within the immigration authority of the CNMI, not Defendant United States.  Even Plaintiff's

5   Complaint avers that he is seeking the equivalent of relief under the Immigration and Nationality Act

6   ("INA") § 208(b)(3), a U.S. immigration law.  Complaint ¶ 16.  In contrast, Plaintiff cites no support,

7   case law or otherwise, that his request for derivative protection should be considered a "foreign

8   affair" under the Covenant.  All immigration matters, including derivative protection, involve

9   international aspects to some degree; but, in light of the directly applicable language from the

10  Covenant, and case law demonstrating that Plaintiff's requested procedure falls within the CNMI's

11  immigration authority, Plaintiff's circuitous argument to the contrary does not hold.

12         It is important to note that the Supreme Court, when considering a court's ability to review

13  immigration matters, has "long recognized the power to expel or exclude aliens as a fundamental

14  sovereign attribute exercised by the Government's political departments [to be] largely immune from

15  judicial control." *Fiallo v. Bell*, 430 U.S. 787, 791 (1977) (quoting *Shaughnessy v. Mezei*, 345 U.S.

16  206, 210 (1953)).  "[T]he power over aliens is of a political character and therefore subject only to

17  narrow judicial review."  *Id.* (quoting *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n. 21

18  (1976))(further citation omitted).  In this case, the CNMI, as the sovereign Government controlling

19  immigration within its borders, should have the power to reasonably exercise its authority without

20  judicial interference, especially from the United States, who expressly does not control immigration

21  in the CNMI pursuant to the Covenant at this time.

22         Furthermore, while Plaintiff asserts that he has a right to apply for derivative protection,

23

Plaintiff fails to articulate in his Complaint where this right is derived from, or how this right is extended to the CNMI. Plaintiff does not specify who is similarly situated to him, or how his treatment differs from those unidentified individuals similarly situated to him. Plaintiff cannot allege that he is similarly situated to those granted asylum in the United States, because the federal asylum provisions, which expressly apply to those asylees, expressly do <u>not</u> apply to Plaintiff, a resident of the CNMI.[2] Plaintiff fails to cite any case law, whether local or federal, wherein United States immigration law is recognized as applicable in the Commonwealth. The United States laws regarding asylee protection and the opportunity to apply for derivative protection are inapplicable and not relevant to Plaintiff's circumstances.

Plaintiff may allege that he is similarly situated to persons granted protection from refoulement within CNMI; however, these persons do not have the right to apply for derivative protection.[3] Plaintiff cannot and does not allege that his treatment differs from these persons, nor any other similarly-situated group. For the foregoing reasons, Plaintiff's equal protection claim against Defendant United States fails.

**B.    Plaintiff's due process claim also fails.**

---

[2]    On May 8, 2008, President Bush signed into law Pub. L. No. 110-229, the Consolidated Natural Resources Act of 2008, 122 Stat. 754 (CNRA). The CNRA, which has an effective date of June 1, 2009 (unless postponed by the Secretary of Homeland Security for up to 180 days), extends U.S. immigration law to the CNMI. Thus, not until the earliest date of June 1, 2009, would U.S. immigration apply in the CNMI. In addition, the CNRA specifically withholds the application of INA § 208, 8 U.S.C. § 1158 (i.e., the asylum provisions) until after December 31, 2014. Therefore, the remedies and relief available under U.S. immigration law are inapplicable in this case.

[3]    Plaintiff argues in his Opposition that "[d]uring the transition period, the CNMI would still have sole authority over deciding and adjudicated derivative family member applications, in a CNMI immigration hearing, not a U.S. immigration hearing." Opp. at 6. This is a misstatement of the law. First, currently there is no right to apply for derivative protection under CNMI law. Second, as noted in Defendants' clarification and fn. 2 of this Reply, under the CNRA, as of the start of the transition period (currently June 1, 2009, unless delayed for up to 180 days by the Secretary of Homeland Security), U.S. immigration laws apply. Thus, the U.S. government assumes control over immigration in the CNMI on the transition date, pursuant to the terms of the CNRA.

1   To the extent Plaintiff alleges that Defendant United States violated his due process rights

2   pursuant to Section 104 of the Covenant, which states that Defendant United States "has complete

3   responsibility for and authority with respect to matters relating to foreign affairs," such claim also

4   fails.  Again, the plain language of the Covenant clearly establishes that the CNMI is the sovereign

5   government that controls its own immigration, and such express language overrides the indirect

6   implication that Defendant United States has authority over these matters through the "foreign

7   affairs" provision.

8   Furthermore, Plaintiff fails to articulate in his Complaint and his opposition where this right

9   to derivative protection is derived from, or how this right is extended to the CNMI.  Plaintiff fails to

10  establish a liberty or property interest in applying for derivative protection, as he fails to prove any

11  legitimate claim of entitlement to this process. Plaintiff states only the "[t]he right to be able to make

12  an application and have a meaningful hearing, not any right to direct entry into the CNMI for any

13  person, is the due process and equal protection issue."  Opp. at 7.

14  Plaintiff asserts that merely identifying his requested right is sufficient at this stage, but this

15  falls short of a viable due process claim.  Plaintiff takes the position that since he has merely pled

16  that his constitutional rights were violated, he has satisfied Fed. R. Civ. P. 8's notice pleading

17  requirements.  *See* Opp. at 4-5.  However, this is not the case, as courts need to look beyond the

18  notice pleading to see if, in fact, a constitutional issue is raised.  *See, e.g., Catholic Social Services v.*

19  *Reno*, 134 F.3d 921, 927 (9th Cir. 1998) (the mere labeling of a claim as "constitutional" does not

20  make it so); *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995) (court must look beyond the label

21  attached to a claim and determine whether it truly raises a constitutional violation requiring judicial

22  intervention); *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 (9th Cir. 1986) (plaintiff will not

23

1  be allowed to "'conceal the true nature of a complaint through 'artful pleading'"). Plaintiff does not

2  state where his right to derivative protection is derived from, or why he is entitled to it. Without

3  such, Plaintiff fails to state a sufficient due process claim upon which relief can be granted.

4  **C.    Plaintiff's Complaint is Barred by the Doctrine of Res Judicata**.

5       Plaintiff claims that the Settlement Agreement between Plaintiff and the United States in the

6  Consolidated Action does not bar the present action because the CNMI's refoulement program did

7  not exist at the time the Settlement Agreement was executed. However, the fact that the CNMI's

8  refoulement program did not exist when the Settlement Agreement was executed does not prevent

9  Plaintiff's Complaint from being precluded by the doctrine of res judicata because the crux of both

10  the Consolidated Action and present action is the Plaintiff's continuing efforts to bring his family to

11  the CNMI.

12       Res judicata bars subsequent litigation of claims that were, or could have been, asserted in a

13  previous lawsuit between two parties on the same cause of action. *See Littlejohn v. United States*,

14  321 F.3d 915 (9th Cir. 2003) (Res judicata prevents relitigation of claims that could have been

15  asserted in a previous action between the same parties on the same cause of action, even if such

16  claims were not raised). To determine whether lawsuits involve the same "cause of action," a court

17  will consider: "(1) whether the rights or interests in the prior judgment would be destroyed or

18  impaired by the prosecution of the second action; (2) whether substantially the same evidence is

19  presented in the two actions; (3) whether the two actions involve infringement of the same right; and

20  (4) whether the two actions arise out of the same transactional nucleus of operative facts." *Id.; see

21  also* 47 Am. Jur. 2d Judgments § 478 (2008). The law does not require complete marriage of the

22  facts for a subsequent claim to be considered the same cause of action. *See generally Western Sys. v.*

23

1   *Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) ("The test for whether a subsequent action is barred is

2   whether it arises from the same 'transaction, or series of transactions' and the original action.").

3   Therefore, the CNMI's lack of a formal refoulement program when the Settlement Agreement was

4   executed does not negate that the fact that the Consolidated Action and the present case are based

5   upon the same operative facts.

6          In this case, this Court dismissed the Consolidated Action with prejudice because the parties

7   entered into the Settlement Agreement and the Court's dismissal operates as a judgment on the

8   merits.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 (9th Cir. 2006) (A court's

9   approval of a settlement constituted a final judgment on the merits).  Further, the basis of the

10  Consolidated Action and the present action are the same allegations of violence towards Plaintiff's

11  family in Bangladesh in connection with his involvement in *United States v. Kasem*, Criminal Case

12  No. 96-00037 and *United States v. Rahim*, Criminal Case No. 97-00026.  (S*ee Liang v. Goldberg*,

13  Civ. Case No. 99-0046, Second Amended Complaint filed on June 30, 2000, Exhibits 2, 3, and 6

14  attached to the United States' Motion to Dismiss as "Consolidated Exhibit 3").[4]  Moreover, the heart

15  of Plaintiff's Consolidated Action and the present action is an allegation that the United States

16  violated his rights by failing to provide him with a process that allows him to apply for protection for

17  his family.  It is disingenuous to make a distinction between the Consolidated Action and this case

18  by claiming that Plaintiff is not actually seeking derivative protection for his family, but merely an

19  administrative process to seek protection should he choose to do so.  Plaintiff's ultimate goal in both

20  the Consolidated Action and the present case is to bring his family located in Bangladesh to the

21

22  _____
    [4]     Exhibits 2, 3, and 6 were used to support identical language in the Fifth Amended Complaint in the
    Consolidated Action.  However, it seems that Plaintiff's counsel in the Consolidated Action inadvertently failed to
    attach the correct exhibits.

23

1   CNMI.

2        The law on settlement agreements is clear - settlement agreements are treated as any other

3 contract for contract purposes. *United Commer. Ins. Serv. v. Paymaster Corp.*, 962 F.2d 853, 856

4 (9th Cir. 1992). "The interpretation of contracts where the government is a party is governed by

5 Federal law." *Saints v. Winter*, 2007 U.S. Dist. LEXIS 63724 at *10, 2007 WL 2481514 at *4 (S.D.

6 Cal. 2007). Whether a contract is clear and unambiguous is a question of law. *Id.* at *10-*11. "In

7 determining whether a contract is ambiguous, [the] Court looks to the terms of the agreement itself."

8 *Id.* at *11. "Extrinsic evidence can be considered <u>only if</u> there is an ambiguity in the contract." *Id.*

9 (emphasis added)*; see also Environment Now! v. Espy*, 877 F. Supp. 1397, 1404 (E.D. Cal. 1994)

10 (criticized on other grounds by *Reservation Ranch v. United States*, 39 Fed. Cl. 696 (1996)) ("Parol

11 evidence is inadmissible to contradict a clear and unambiguous provision of a contract, where the

12 parties intended the written contract to be the complete and final expression of their agreement.").

13 Contrary to Plaintiff's assertion that he should be permitted to testify, or make affidavits, to define his

14 intent in the Settlement Agreement, the law does not permit him to do so because the plain language

15 in the agreement is direct and unambiguous.[5] Paragraph 4 of the Settlement Agreement provides

16 that Plaintiff "forever releases and discharges any and all claims, obligations, demands, causes of

17 action. . . of liabilities of any kind whatsoever. . . arising from the circumstances or occurrences

18 alleged in the Consolidated Action." *See* Settlement Agreement attached to Motion to Dismiss as

19

20   [5]     Plaintiff also claims in his Response to the United States' Motion to Dismiss that only his attorney signed the Settlement Agreement. This is of little consequence because Plaintiff's consent to the Settlement Agreement is

21 inferred from his acceptance of the payment provided in paragraph 1 of the Settlement Agreement (*see* Settlement Agreement attached to the Motion to Dismiss as Exhibit "1"). *Shelton v. Grubbs*, 568 P.2d 1128, 1129 (Ariz. Ct. App. 1977) ("A valid compromise and settlement is final, conclusive, and binding upon the parties and upon those

22 who knowingly accept its benefit.") (internal quotation omitted); *see also* 15 Am Jur. 2d Compromise and Settlement §37 (2008).

23

"Exhibit 1". Similar releases have been upheld as direct and unambiguous. *See e.g. Wong v. Cayetano*, 111 Haw. 462, 143 P.3d (Haw. 2006) (A settlement agreement that states that it releases all claims, "whether *known or unknown*, arisen, arising or *to arise in the future* and which concern or relate, directly or indirectly, to any or all of the following: . . . [a]ll claims relating to, concerning, involving or arising out of the Surcharge Claims" is unambiguous and not open for interpretation) (internal quotation omitted); *see e.g. Mardan Corp. v. C.G.C. Music*, 804 F.2d 1454 (9th Cir. 1986) (court upheld a settlement agreement that released "all actions, causes of action, suits. . . based upon, arising out of or in any way relating to the Purchase Agreement") (internal quotation omitted).  Thus, Plaintiff's Complaint is barred by the doctrine of res judicata because the clear language of the Settlement Agreement shows that Plaintiff intended to release any claim relating to seeking protection for his family located outside of the CNMI.

### III.    CONCLUSION

For the foregoing reasons, United States respectfully requests that this Court grant its motion to dismiss the Complaint with prejudice insofar as it relates to or seeks relief from them.

RESPECTFULLY SUBMITTED:  this 9th day of October, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam & NMI

 /s/ Jessica F. Cruz
JESSICA F. CRUZ
Assistant U.S. Attorney
MIKEL SCHWAB
Assistant U.S. Attorney

GREGORY G. KATSAS
Assistant Attorney General
DAVID J. KLINE
Director
VICTOR M. LAWRENCE
Principal Assistant Director

 /s/Samuel P. Go
SAMUEL P. GO

Trial Attorney

*Attorneys for Defendant United States*