Kevin Lynch, Chief Prosecutor
Katie Busenkell, Assistant Attorney General
Division of Immigration Service
Commonwealth of the Northern Mariana Islands
Civic Center, Susupe
Saipan, MP 96950
(670) 664-2426 (voice)
(670) 234-7016 (fax)

Attorneys for the Commonwealth of the Northern Mariana Islands and the Attorney General of the Commonwealth of the Northern Mariana Islands, in his official capacity.

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOHAMMED KAMAL HOSSAIN,<br>    Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS and MATTHEW GREGORY, in his official capacity as Attorney General of the Commonwealth of the Northern Mariana Islands, and the UNITED STATES OF AMERICA,<br>    Defendants. | Civil Action 08-0016<br><br><br>**DEFENDANT COMMONWEALTH'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing: October 16, 2008<br>Time: 9:00 a.m. |

NOW COMES the Defendants, the Commonwealth of the Northern Mariana Islands (the "Commonwealth") and Attorney General Matthew Gregory ("Attorney General"), in his official capacity, by and through the Assistant Attorney General Kathleen Busenkell, in a Reply to the Plaintiff's Opposition to the Defendants' Motion to Dismiss.

## BACKGROUND

On March 18, 2008, Plaintiff Mohammed Kamal Hossain ("Plaintiff") filed a Complaint for Declaratory, Injunctive, Compensatory, and Further Relief ("Complaint") against the United States, the Commonwealth, and the Attorney General. In the Complaint, the Plaintiff alleges violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Commonwealth Covenant, as well as the 1951 United Nations Convention Relating to the Status of Refugees ("1951 Convention") and the United Nations Convention Against Torture ("CAT").

On September 17, 2008, the Defendants filed respective Motions to Dismiss. Through their respective motions, the United States, the Commonwealth, and the Attorney General argued that the Plaintiff's Complaint should be dismissed in its entirety because: (1) the doctrines of *res judicata* and collateral estoppel bar the Plaintiff's current Complaint because the District Court issued a final order in 2003 dismissing with prejudice consolidated actions 02-0023, 00-0005, and 99-0046, all of which centered around the issue *non-refoulement* in the Commonwealth; and (2) Plaintiff failed to state a claim upon which relief can be granted under federal, local, or international law. In support of the Commonwealth's motion were exhibits, including but not limited to, the fifth and final Complaint filed in the above-mentioned consolidated civil cases, the 2003 Settlement Agreement, and an Order by the District Court dismissing the above-mentioned consolidated civil cases with prejudice.

On October 1, 2008, Plaintiff submitted an Opposition to the Defendants' Motions to Dismiss. Through the opposition, the Plaintiff argues: (1) the Complaint sets forth sufficient facts upon which relief can be granted; (2) Claim sets forth a violation of Due Process and Equal Protection Clauses of the U.S. Constitution; and (3) the doctrines of *res judicata* and collateral estoppel do not bar the Plaintiff's current claims for relief. More specifically, the Plaintiff

2

argues that his current Complaint is centered upon his inability to apply for derivative protection for his family members under the current Commonwealth *non-refoulement* program.

## ARGUMENT

For the purpose of brevity, the Commonwealth ("CNMI") will limit this reply to the points argued by the Plaintiff through the Opposition. In sum: (1) *res judicata* and collateral estoppel **do** bar the Plaintiff's Complaint because derivative protection for Plaintiff's IRB-situated family was discussed in the Fifth Amended Complaint ("5AC") (*see* 5AC, § 47), and thus dismissed through the 2003 Settlement Agreement, which was signed by the Plaintiff's then-counsel, Bruce Jorgenson, Esq, on behalf of his client(s). Thus, the subsequent Order of Dismissal, with prejudice, is an adjudication on the merits and a final decree barring the Court and/or parties from revisiting and/or re-litigating the issue of *non-refoulement* and/or derivative protection in the Commonwealth; and (2) Plaintiff fails to state a claim upon which relief can be granted under the United States Constitution, the Commonwealth Covenant, and/or in evaluating the applicability of federal immigration law to the Commonwealth at the present time.

**1. *Res judicata* and collateral estoppel bar the Plaintiff's complaint.**

The facts surrounding consolidated civil cases 02-0023, 00-0005, and 99-0046 clearly bar the Plaintiff from filing the present complaint against the Defendants. There can be no dispute regarding the following facts:

a. On September 2, 1999, Rui Lang and Liao Da Nian filed a complaint (CV 99-0046) against the United States and the Commonwealth seeking protection from *refoulement* under United States law and/or Commonwealth law, which was then non-existent. Ex. A of CNMI's Motion to Dismiss, Compl. (CV 99-0046), at ¶ 32-41, 52-57.

b. On June 30, 2000, Rui Lang, Liao Da Nian, *Mohammed Kamal Hossain*, and Jane Roe I filed a Second Amended Complaint ("SAC") in CV 99-0046, alleging the Commonwealth and the United States, as well as Does 1-25:

> [V]iolated rights and protections guaranteed to Plaintiffs by effect of the *Commonwealth Code*, CNMI common law, the *Commonwealth Constitution*, Federal statutory law (including but not limited to 42 U.S.C. §§ 1983/1985 and 28 U.S.C. § 1350), Federal common law, the *Constitution of the United States of America*, the *1951 Convention Relating to the Status of Refugees* ("1951 Convention"), the *United Nations Protocol Relating to the Status of Refugees* ("1967 Protocol"), the *United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment* ("1985 Torture Convention"), International/Customary law (relating to human rights) binding upon the Federal and CNMI governments by effect of *jus cogens* and other principles, the law of nations and/or treaties of the U.S. and/or CNMI governments, and the *Torture Victim Protection Act of 1991* ("1991 Alien Torts Claims Act"), who have violated those laws/treaties to Plaintiffs' [including Mohammed Kamal Hossain] detriment, who have otherwise harmed and damaged Plaintiffs or, in some manner presently unknown to Plaintiffs, were engaged or shall engage in those activities or other activities alleged in this civil action.

Ex. B of CNMI's Motion to Dismiss, SAC (CV 99-0046), at ¶ 8. The SAC specifically addressed Plaintiff Hossain's attempts at obtaining protection for his family members in paragraph 24, which states:

> Plaintiffs include Bangladesh national Hossain who, as the result of having provided testimony on behalf of the United States Government in Criminal Proceedings No. 1:96 CR 00037-001 [citation omitted] has been subjected to threats of physical violence and reprisal (including death) against himself, and his IRB-situated family [citation omitted]. Despite this cooperation with law enforcement officials, as acknowledged in letters dated December 17, 1998 and November 23, 1999 from Assistant Attorney General Gregory Baka [citation omitted], letters dated July 8, 1998 and March 22, 1999 from U.S. Office of Insular Affairs Director Allen P. Stayman [citations omitted] and others from the U.S. Justice Department, neither the Federal Government nor the CNMI have provided Hossain and his family any of the protections Hossain has requested.

SAC (CV 99-0046), ¶ 24.

c. On May 10, 2002, Plaintiffs in Consolidated Civil Actions 99-0046, 00-0005, and 02-0023 ("Consolidated Action 02-0023"), filed a Fifth Amended Complaint ("5AC"). This was the final complaint filed before the parties entered into a settlement agreement in 2003. The Complaint reiterated the alleged violations of local, federal, and international

4

law in paragraph 29 of 5AC. In paragraph 47 of the 5AC, Plaintiff Hossain reiterated his attempts to obtain refugee protection for himself and his IRB-situated family. Ex. E of CNMI's Motion to Dismiss, 5AC (CV 02-0023), at ¶ 29 and 47.

d. On August 1-4, 2003, counsel for the respective parties in Consolidated Civil Action 02-0023, signed on behalf of their respective clients, a settlement agreement that clearly and expressly provided the following, in part: (1) Plaintiffs were to be awarded $25,000.00 within twenty (20) calendars days of the execution date; (2) the Commonwealth was not to institute deportation proceedings against the Plaintiffs until a *non-refoulement* program, consistent with proposed legislation attached to the agreement as Exhibit A, was implemented in the Commonwealth and each Plaintiff was afforded the *minimum non-refoulement* protections outlined in Article 33 of the 1951 Convention and Article 3 of the CAT; (3) the Commonwealth, United States, and plaintiffs would enter into a stipulation dismissing the consolidated actions. The stipulation to dismissal was attached as Exhibit B to the settlement agreement; and (4) Plaintiffs would "forever release[] and discharge[] Commonwealth Defendants...from any and all complaints, claims, obligations, demands, causes of action, suits or debts or appeals whatsoever, in law, equity, or an administrative proceeding, known and unknown, that they ever had, now have, or may have arising from or related in any way to the Consolidated Action and the conduct of the litigation thereunder." Ex. F of CNMI's Motion to Dismiss, Settlement Agreement, at ¶1, 3, 10, and 12.

Each page of the agreement was initialed by the Plaintiffs' respective representative, and the last page bears the signature of each attorney, including "Bruce Lee Jorgenson on behalf of the Plaintiffs and Real Parties in Interest," which is dated August 1, 2003, who

      swore he had an "absolute and unrestricted right and capacity" to enter into the agreement on behalf of his clients, including Plaintiff Hossain.

   e. On August 6, 2003, the District Court received and signed the stipulated to Order of Dismissal, which dismissed with prejudice "all claims asserted against the Defendants Commonwealth of the Northern Mariana Islands…." Ex. G of CNMI's Motion to Dismiss, Stip. to Dismissal (CV 02-0023), Aug. 6, 2003.

Comparing the above facts to the present situation, it is clear that the Plaintiff wishes to re-visit and re-litigate a claim that has been adjudicated on the merits through the Stipulation of Dismissal and Order, signed by the District Court on August 6, 2003. More specifically, the Plaintiff wishes to re-litigate the issue of refugee protection for his IRB-situated family members.

However, as discussed in the Defendants' Motions to Dismiss, Plaintiff is barred by the doctrines of *res judicata* and collateral estoppel from revisiting this issue or claim that was actually litigated or could have been presented in an early case. *In re Imperial Corp. of America,* 92 F.3d 1503, 1506 (9th Cir. 1996). The Court issued an Order dismissing with prejudice Consolidated Action 02-0023. That would include the issues and/or claims the Plaintiff made or should have made in connection with paragraphs 8 and 24 of the SAC and paragraphs 29 and 47 of the 5AC. These paragraphs clearly described facts (i.e. protection for Plaintiff's IRB-situated family members) that gave rise to legal claims under local, federal, constitutional, and international law. When Plaintiff's attorney, Bruce Jorgenson, signed the settlement agreement, and the District Court signed the Stipulation for Dismissal and Order on August 6, 2003, Plaintiff "forever" released the Commonwealth from any and all claims related to paragraphs 8 and 24 of the SAC and paragraphs 29 and 47 of the 5AC.

Plaintiff attempts to cast doubt on the validity and enforceability of the settlement agreement by claiming he lacked intent and/or knowledge about the contents and terms of the agreement. However, in examining the facts, it is evident that Plaintiff *did* intend to enter into a settlement

agreement with the Commonwealth and the United States, and that he was aware of and had agreed to the binding terms of said agreement.

"[I]t is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987). But a "district court may enforce only complete settlement agreements." *Id.* (emphasis in original). To be enforced, the agreement must meet two requirements: (1) It must be a complete agreement. *Maynard v. City of San Jose,* 37 F.3d 1396, 1401 (9th Cir. 1994); and (2) The parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Harrop v. Western Airlines, Inc.,* 550 F.2d 1143, 1144-45 (9th Cir. 1977).

There is no question about the completeness of the settlement agreement, as each page bares the initials of an attorney and the final page bares the signature of the respective attorneys, in addition to a date. Furthermore, the Stipulation for Dismissal was submitted to the District Court upon executing the agreement.

Plaintiff raises an issue regarding *his* intent to be bound by the settlement agreement. The mutual intention of the parties has been determined by examining factors including the words used in the agreement, the surrounding circumstances under which the parties negotiated or entered into the contract, and the subsequent conduct of the parties. *UACC Midwest, Inc., v. City of Santa Cruz,* 2007 WL 174416* (N.D.Cal. Jan. 22, 2007)[1] (Applying state law to interpret the intent of parties to an agreement) (*citing Morey v. Vannucci,* 64 Cal.App.4th 904, 912, 75 Cal.Rptr.2d 573 (1998); *Hernandez v. Badger Construction Equipment Co.,* 28 Cal.App.4th 1791, 1814, 34 Cal.Rptr.2d 732 (1994)). First, the words of the settlement agreement are perfectly clear and unambiguous. There can be no question regarding the intent of the parties and/or the terms of the agreement. Furthermore, counsel Bruce Jorgenson

---

[1] Only the Westlaw Citation was available at the time of this Opposition was filed.

7

represented Plaintiff from the onset of litigation in CV 99-0046. To date, no claims have been made by the Plaintiff that Bruce Jorgenson provided ineffective assistance as counsel, which would cast doubt on the communication between counsel and client. Thus, the Court can safely presume that Bruce Jorgenson acted on behalf of his clients, with his clients' knowledge and consent, when he signed the settlement agreement and stipulation to dismissal.

Second, the settlement agreement itself is a negotiation that was signed by all the attorneys involved in the consolidated civil action. Clearly, the attorneys had reached a consensual agreement regarding conditions that would trigger a release of current and future, known and unknown, claims against the Defendants regarding *non-refoulement*.

Finally, in examining the subsequent conduct of the parties, it is evident that the parties mutually agreed upon the terms of the settlement agreement. Subsequent to executing the settlement agreement, and pursuant to paragraph 2 of the settlement agreement, the Commonwealth issued a check to G. Anthony Long in the amount of $25,000.00 for distribution among the plaintiffs.[2] The Commonwealth also implemented the proposed legislation concerning a *non-refoulement* program and refrained from initiating deportation proceedings against the Plaintiff until he had an opportunity to apply for refugee protection. On March 3, 2006, Plaintiff submitted an Application for Protection from Refoulement.[3] Ex. J. On August 22, 2006, Plaintiff was granted protection from *refoulement* through a letter issued by Administrative Protection Judge Dana Emery. Ex. K. Thus, the subsequent actions by the parties supports a finding that Plaintiff intended to enter into the settlement agreement, a

---

[2] At the time this motion was filed, two requests had been submitted regarding the confirmation of a check issued pursuant to the settlement agreement: (1) to G. Anthony Long, who declined to sign an affidavit to avoid taking a position adverse affect a former client; and (2) to the Commonwealth Treasury. The Commonwealth is awaiting a response from the Commonwealth Treasury, and upon receipt of confirmation, will submit an exhibit to the Court.

[3] Due to the confidential nature of the application, and the advice of the Administrative Protection Judge Melissa Simms, the Commonwealth is reluctant to submit this document in full into evidence. Therefore, the Commonwealth has limited the Exhibit to the first page of the Application that is stamped as received by the Commonwealth.

binding contract, and that the parties intended to be bound by the agreed upon terms once a mutual benefit was exchanged.

In consideration of the above, the Court should dismiss the Plaintiff's current complaint based on the doctrines of *res judicata* and collateral estoppel. The Plaintiff knowingly entered into a valid and enforceable settlement agreement in 2003. Based on that settlement agreement, the Commonwealth was released from any and all known and unknown claims that are related to Plaintiff's previous and present claims for *non-refoulement* protection. Furthermore, the parties stipulated to a dismissal of the claims, with prejudice, relying on the validity of the settlement agreement.

### 2. The facts of the case and the law cited by the Plaintiff fail to equate to a claim upon which relief can be granted.

Plaintiff argues that he has provided sufficient facts for *some* legal theory, thus he has stated a claim upon which relief can be granted. The Commonwealth is not disputing the *facts* presented through Plaintiff's complaint. However, the Commonwealth is asserting that under the Commonwealth's current *non-refoulement* program and immigration laws, there is no relief that can be granted to the Plaintiff with respect to granting him or his IRB-situated family members an opportunity to apply for derivative protection.

The Commonwealth's right to regulate it's own borders was preserved under Section 503 of the Commonwealth Covenant. N.M.I. Covenant § 503. In accordance with that right, the Commonwealth Legislature chose to implement the minimum requirements of a *non-refoulement* program set forth by the 1951 Convention and CAT, and afford those persons *present* in the Commonwealth an opportunity to apply for refugee protection. Until federal immigration is implemented in the Commonwealth, the federal position with regard to *refoulement* protection is simply not applicable in the Commonwealth. Furthermore, it is

important to note that extending refugee protection to individuals outside of the Commonwealth and/or the United States is not required under either international convention.

Plaintiff also restates his Equal Protection and Due Process claim under the Fourteenth Amendment of the United States Constitution. However, Plaintiff does so without explaining why his Equal Protection and Due Process claims pass constitutional muster. Plaintiff also makes an offering of the obvious - that merely because Congress enacts a certain law or regulation, that law or regulation is not deemed constitutional. Likewise, it can be argued that merely because Congress enacts a certain law or regulation, that law or regulation is not constitutionally required.

## CONCLUSION

For the foregoing reasons, the Commonwealth respectfully requests the Court grant its Motion to Dismiss Plaintiff's Complaint.

Respectfully submitted 9th day of October of 2008.

_/s/ Katie_
Katie Busenkell (CNMI Bar T-0054)
Assistant Attorney General – Immigration Division
Office of the Attorney General