1

1      IN THE UNITED STATES DISTRICT COURT

2      FOR THE NORTHERN MARIANA ISLANDS

3

4   MOHAMMED KAMAL HOSSAIN,            ) APPEAL NO. 08-17754
                                       ) D.C. No. 08-0016 - ARM
5            Plaintiff-Appellant,      )
                                       ) Garapan, Saipan
6        vs.                           ) Thursday, October 16, 2008
                                       ) 9:00 a.m.
7   COMMONWEALTH OF THE NORTHERN       )
    MARIANA ISLANDS, ET AL.,           ) **MOTION TO DISMISS**
8                                      )
             Defendants-Appellees.  )
9   _____

10

11

12          **BEFORE THE HONORABLE ALEX R. MUNSON**
            **CHIEF JUDGE, UNITED STATES DISTRICT COURT**
13             **FOR THE NORTHERN MARIANA ISLANDS**

14

    **APPEARANCES**:
15

16  For Plaintiff:      Omar Calimbas
                        Attorney at Law
17                      Micronesian Legal Services
                        P. O. Box 500826
18                      Saipan, MP 96950
                        Telephone: (670) 234-7729
19                      Facsimile: (670) 235-6101

20  For Defendants:     Jessica Cruz, Assistant U.S. Attorney,
                        Victor M. Lawrance, Principal Assistant
21                        Director, DOJ, Civil Division &
                        Kathleen R. Busenkell, Assistant Attorney
22                        General, Immigration Division, CNMI

23  _____

24              **SANAE N. SHMULL**
                **Retired Official Court Reporter**
                **P. O. BOX 27233 GMF**
25              **Barrigada, Guam 96921**

1    COURTROOM CLERK MS. MATSUNAGA:  Please rise.

2    THE COURT:  Good morning.  Please be seated.

3    COURTROOM CLERK MS. MATSUNAGA:  Your Honor, please,

4 this is Civil Action No 08-0016, *Mohammad Kamal Hossain v.*

5 *Commonwealth of the Northern Mariana Islands, et al.*, coming up

6 for a Motion to Dismiss hearing.

7    Will counsel please state your appearance?

8    MS. CRUZ:  Jessica Cruz for the United States, and I

9 have with me Victor Lawrance who's an attorney with DOJ's

10 Office of Immigration Litigation and he's here from Washington,

11 D.C.

12    MR. LAWRANCE:  Good morning, Your Honor.

13    THE COURT:  Good morning.

14    MS. BUSENKELL:  Kathleen Busenkell on behalf of the

15 Commonwealth.

16    MR. CALIMBAS:  Omar Calimbas with Micronesian Legal

17 Services.

18    THE COURT:  Good morning.

19    COURT REPORTER:  Can you speak up, please.

20    MR. CALIMBAS:  Omar Calimbas for the plaintiff.

21    THE COURT:  Yeah, I have a tentative ruling on both of

22 these motions.  The tentative ruling is to grant the motions.

23 I think that the case is *res judicata*.

24    The defendant was, or the plaintiff was aware of the

25 derivative actions as early as his Second Amended Complaint.

1  And after his Fifth Amended Complaint, even though that wasn't

2  in there, the settlement agreement agreed that he would waive,

3  for the consideration of $25,000.00, any rights that he knew

4  of, didn't know of that may arise in the future that in any way

5  were connected with this case.  And so rather than hearing from

6  the moving parties, I'd rather hear from the plaintiff, and

7  then I'll give the moving parties an opportunity.  You can make

8  any record that you deem necessary.

9          MR. CALIMBAS:  And you just wanted to hear on the

10  issue of *res judicata*?

11          THE COURT:  Okay, why don't you come to the lectern?

12          MR. CALIMBAS:  And you -- I just wanted to make sure

13  you wanted me to comment on the issue of *res judicata*?

14          THE COURT:  I don't particularly want you to comment

15  on anything; however, I will give you an opportunity to make

16  any record that you think you need to make.

17          MR. CALIMBAS:  Okay, thank you, Your Honor.  With,

18  with respect to the issue of *res judicata*, I think one thing

19  that wasn't mentioned in the motions to dismiss, in any of the

20  replies, was the purpose behind that doctrine.  And, basically,

21  it's to ensure that the party that sought to be precluded had a

22  full opportunity and fair opportunity to litigate in the

23  earlier case.

24          Now what was litigated in the earlier case and

25  was settled upon?  I think we can make definitely two

4

1   different claims here with this case and the prior case.

2          In discerning what the conditions for *res judicata*,

3   one thing that's clear is that there has to be identity with

4   certain aspect of the matters.  One of them, most particularly,

5   is with the cause of action.

6          The prior case, in the Fifth Amended Complaint, talks

7   of the rights of the plaintiff.  A settlement agreement under

8   its terms discusses the rights of the plaintiff with respect to

9   his refilement protections, non-refilement protections, that

10  is.

11         If you look at the settlement agreement especially

12  with respect to paragraph 3, it discusses the terms that

13  obligate the Commonwealth, that it will not remove the

14  plaintiff unless the minimum protections under the

15  International Covenants are established in the system.  It

16  talks about protecting the plaintiff from removal, the

17  plaintiffs.  It talks about the proposed legislation and

18  stating that if there's any amendments to the, those

19  legislations after the settlement agreement, it would not apply

20  to the plaintiff if facing removal.  It nowhere discusses any

21  issues regarding derivative asylum or derivative refugee

22  protection.

23         THE COURT:  Well, what about the settlement

24  agreement?  The settlement agreement contemplates that.

25         MR. CALIMBAS:  The settlement agreement contemplates

1    it with respect to paragraph 12, but only to the extent of any

2    claims related to the consolidated action.  Now that's subject

3    to interpretation.  Any claims related to the consolidated

4    action, we would argue, is with respect to the plaintiff's

5    claims protection, not with respect to the claim of family

6    reunification, which in fact is a whole other right and other

7    cause of action that this, this matter is involving.

8        THE COURT:  Well, in the Second Amended Complaint,

9    that was prayed for.

10       MR. CALIMBAS:  Well, that was --

11       THE COURT:  So the plaintiff had to know that he was

12   waiving any cause of action that could have been brought.

13       MR. CALIMBAS:  Well, I think we have to turn to the

14   settlement agreement and, which doesn't discuss that issue in

15   particular.  We have to, we have to make sure that *res judicata*

16   is applied properly.  And just because a settlement agreement

17   extends to claims related to the consolidated action previously

18   doesn't necessarily mean it would extend *ad infinitum*.

19       The complaint that was before the court, the most

20   recent one in that consolidated action, the Fifth Amended

21   Complaint, talks about the plaintiff's history.  It talks about

22   the violence that he was submitted to, the persecution in

23   Bangladesh, and that his family was submitted to, and the

24   threats involved there.  That was, that was his story.

25       What we're dealing with now is a different cause

1    of action, a different set of facts.  We're in a situation now

2    where he is wanting to exercise his right to family

3    association.  We're dealing with a fundamental right that's

4    been recognized by the U.S. Supreme Court.

5              THE COURT:  Well, let's talk about that for a moment.

6    His family has to be here in Saipan to get that.  That's issue

7    number one.  And issue number two, what is your position about

8    the United States?  They, the Commonwealth has plenary

9    authority over Immigration here, at least, until the minimum of

10    next year and maybe beyond that.

11              MR. CALIMBAS:  That's correct, but that doesn't allow

12    the U.S. Government to contravene the equal protection clause.

13    The Immigration and Nationality Act does not apply here for

14    now, but there are aspects of refugee protection under the,

15    under the Refugee Act of 1980 that do apply here.

16              For example, putting asylees aside, refugee protection

17    under federal law does not require presence in the U.S.

18    Refugee protection under INA, Section 207 --

19              THE COURT:  Well, you just said that the Commonwealth

20    has plenary authority over Immigration, not the United States,

21    didn't you?

22              MR. CALIMBAS:  That's correct.  It has plenary

23    authority.  But I would turn to a decision made by this court.

24    In fact, it was on a Motion to Dismiss in one of the earlier

25    related cases, *Jamil Ahmed*, *Jamil Ahmed* case, Civil Action

1    00-05.

2              COURT REPORTER:  What's the number again?

3              MR. CALIMBAS:  Civil Action No. 00-0005, in which this

4    court did discuss INA, Section 207, regarding refugee

5    protection and not asylum protection, and did comment in how

6    that would be, how it would have to apply to CNMI based

7    refugees, and that it would be absurd to have refugee

8    protection applied to any other refugee in the world except for

9    those in the CNMI.

10             THE COURT:  Well, was that the holding of the case?

11             MR. CALIMBAS:  No, that wasn't the holding, Your

12   Honor.  That was -- but the idea here is if that's allowed, we

13   have, we have different treatment.  We have a classification

14   issue that invokes Fourteenth Amendment issues, where you have

15   U.S. Government treating asylees and refugees differently in

16   the CNMI.

17             With respect to asylees, the U.S. Government basically

18   wipes its hand and said, "we're going to transfer that to the

19   CNMI Government."  But with respect to refugees, it's argued

20   that refugees may be able to avail of the protections under

21   INA, Section 207.

22             Under INA, Section 207 and the statutes promulgated

23   under that provision, it provides for a derivative status for

24   family members, basically, spouses and children as defined

25   under the INA.

1    So here we have the U.S. Government potentially

2 accepting those applications for refugees status and allowing

3 for family reunification for those refugees anywhere in the

4 world, including the CNMI, yet, saying for people who are

5 applying for non-refilement protection in the CNMI will defer,

6 will basically be abandoned and deferred to the CNMI

7 Government, and tacitly allow for non-family reunification.

8 And here, we have a classification.  We have a difference here,

9 a different treatment where asylees -- well, let me put it this

10 way -- where refugees applying for protection under the CNMI

11 law would be treated differently when they could easily apply

12 for refugee protection under Section 207 of the INA and get

13 family reunification.  And that's where we see the U.S.

14 Government having a problem with its policy there.

15    Just to close up on the *res judicata* issue, I think

16 with settlement agreements, again, the settlement agreement has

17 to show an -- there still has to be the conditions regarding

18 the identity of the cause of action, identity of parties,

19 identity of the subject matter.  I think what is evident is

20 that the cause of action is not identical in this situation.

21    We're dealing with a family reunification issue.

22 We're dealing with a fundamental right protected under the

23 Fourteenth Amendment that allows for a parent to raise his

24 family and make decisions on behalf of his children.  And this

25 has been acknowledged by the U.S. Supreme Court; and, in fact,

1  the Ninth Circuit in a dissent has discussed that issue in the

2  context of removal proceedings, and how international,

3  customary international law has evolved to the point where it

4  does recognize family reunification as a fundamental right.

5  And that's reflected in the recommendations under the 1951

6  Convention.  It is a provision in the international covenant on

7  civil and political rights.  It's also in the convention on the

8  rights of a child.

9            THE COURT:  Can that be waived?

10           MR. CALIMBAS:  The U.S. Congress can waive a -- the

11  U.S. Congress can make --

12           THE COURT:  I'm talking about the plaintiff.  Can the

13  plaintiff waive that right to effect a settlement?

14           MR. CALIMBAS:  I'd have to -- I could brief the court

15  on that matter.  I, I --

16           THE COURT:  Well, I don't need it.  I mean, you have

17  fundamental rights that you can waive.  Isn't that true?

18           MR. CALIMBAS:  I, --

19           THE COURT:  Miranda Rights.

20           MR. CALIMBAS:  I couldn't answer.  I --

21           THE COURT:  All right.

22           MR. CALIMBAS:  But my point is that in fact what we're

23  dealing here is with the different, with different rights and a

24  different cause of action.  And *res judicata* should not

25  apply in that situation.

THE COURT:  Would it apply if it said in the
settlement agreement, "And I waive any cause of action in the
future to bring my family to the CNMI."?

MR. CALIMBAS:  I believe that would be a stronger
argument for saying that *res judicata* applies.

THE COURT:  Well, what is the difference between that
and settling between all causes of action known at the time of
the settlement?  Because we know that the attorney and the
plaintiff knew that that was an issue because they had
previously raised it in an earlier Second Amended Complaint.

MR. CALIMBAS:  That's correct, and I think it's
significant that it's not, it wasn't raised in the most, in the
Fifth Amended Complaint.  And it's not, it's not clear in the
settlement agreement.

What's clear is when you look at the paragraphs and
you look at the language of all of the paragraphs in the
settlement agreement, especially what I was referring to in
paragraph 3, it's talking about protections for the plaintiff
*per se*.  It's talking about preventing removal of the
plaintiff.  It's talking protections that the plaintiff would
receive and not in regard to family reunification.

THE COURT:  I think you would have a much stronger
argument if the Second Amended Complaint didn't exist that had
the cause of action to bring his family here, because in the
settlement agreement he agrees that he is effecting the

1   settlement for all causes of action, known and unknown and a

2   whole bunch of other adjectives.  But anyway, do you have

3   anything further?

4          MR. CALIMBAS:  I wanted to make sure it's on the

5   record.  I'm not sure it's spelled out in the plaintiff's

6   briefs.  But just to point out that we believe the CNMI

7   Government definitely has an obligation under Section 102 of

8   the Covenant to conform to any U.S. treaties.  And I've named

9   several that the U.S. has acceded to.  And I believe those are

10  in the briefs.  And those treaties in the treaty provisions

11  would reflect a right to family reunification, and basically a

12  parent's right and even the child's right to family life, and

13  that the CNMI Government by not having those family

14  reunification provisions in its non-refilement protection

15  system would be contravening the Covenant.

16         THE COURT:  You may be right if we ever got there.

17  But it appears to the court that all of that's been waived in

18  the settlement agreement.

19         MR. CALIMBAS:  Thank you, Your Honor.

20         THE COURT:  Thank you.

21         Any counsel for the defense want to be heard, make any

22  record?

23         MS. CRUZ:  Your Honor, --

24         THE COURT:  Why don't you come up so that we can get

25  a good record?

1          MS. CRUZ:  Your Honor, I will be addressing the issues

2    of *res judicata,* and Mr. Lawrance will be addressing any

3    remaining issues in our Motion to Dismiss.

4          The crux of the plaintiff's prior lawsuit was the fact

5    that he was look, he was seeking a process to apply for asylee

6    or refugee status and to avail himself with the benefits of

7    those, of the asylee and refugee status, namely, protection

8    against violence, protection against torture, and protection

9    for his family located outside the CNMI.

10          Now the Ninth Circuit when it's considering whether

11    the cause of action in a subsequent lawsuit is the same cause

12    of action in a previous lawsuit, it looks to whether there's

13    substantially the similar evidence, whether there's the same

14    infringement of rights, and whether it's the same nucleus of

15    operative facts.

16          Here, the plaintiff is relying on the same incidents

17    of violence against his family that he relied upon in his

18    previous lawsuit, which is also shown in the Fifth Amended

19    Complaint about lawsuit.  He's also arguing for the same

20    process to seek protection for his family located outside the

21    CNMI.

22          The settlement agreement is clear on its face.  The

23    plaintiff waived and released any rights that he had to claims

24    arising out of the transactions or occurrences of the previous

25    lawsuit.  And clearly, as shown in the Fifth Amended Complaint,

1   protection for his family is something that he sought in his

2   previous lawsuit.  And the Settlement Agreement, along with the

3   Order of Dismissal with Prejudice, which was stipulated to by

4   the plaintiff as well as the United States, operates to bar his

5   claims, as being barred under the Doctrine of *Res Judicata*.

6        And unless the court has any questions, I have nothing

7   further.

8        THE COURT:  I don't.  Anybody else?

9        MR. LAWRANCE:  Good morning, Your Honor.  Victor

10  Lawrance for the United States.  Pleasure to be here from

11  Washington, D.C.

12       THE COURT:  Good morning.

13       MR. LAWRANCE:  I just want to say a few words with

14  respect to the equal protection argument raised by the

15  plaintiffs.

16       You know, they claim that as a refugee that they're

17  treated differently.  But the reality is that Mr. Hossain was

18  granted protection from refilement under the CNMI laws.  The

19  INA, the Immigration Nationality Act does not apply to the

20  CNMI.  And, as Your Honor mentioned, the CNMI has plenary, and

21  as counsel agreed, the CNMI has plenary authority over

22  Immigration up until at least June 1st, 2009, or it may be

23  extended up to a 180 days.

24       So, accordingly, Mr. Hossain is not similarly situated

25  to refugees or asylees under the Immigration Nationality Act.

1    He's subject to a different set of, a different law, the law of

2    the CNMI.  Therefore, no equal protection claim or due process

3    claim arises.

4            And that's really -- I'm not familiar with the DICTA

5    in the *Ahmed* opinion that plaintiff's counsel raised.  But

6    plaintiff counsel did indicate that that was just DICTA and not

7    holding of the court.

8            And therefore, I really have nothing else to add to

9    this unless Your Honor has any questions.

10           THE COURT:  I don't, Mr. Lawrance.

11           Ms. Busenkell, did you want to make any record?

12           MS. BUSENKELL:  No, Your Honor.  The Commonwealth

13   would rest on its motion.

14           THE COURT:  I am going to adopt my tentative ruling.

15   And I will issue a written order denying or granting both of

16   the motions, and possibly might add other than the *res judicata*

17   issue.  But I think that's primarily the reason why the court

18   is granting the motions.

19           There being nothing further to come before the court

20   at this time, we'll stand in recess.

21

22       (Court recessed at 9:25 a.m., Thursday, October 16, 2008.)

23

24

25   -------------------------------------------------------------

1    COMMONWEALTH OF THE                )

2    NORTHERN MARIANA ISLANDS          )      ss.

3    SAIPAN, MP                         )

4    _____ )

5

6          I, SANAE N. SHMULL, Retired Official Court Reporter

7    for the United States District Court for the Northern Mariana

8    Islands, do hereby certify:

9          That the foregoing Motion to Dismiss transcript in

10   *Mohammed Kamal Hossain v. Commonwealth of the Northern Mariana*

11   *Islands, et al.*, Civil Case No. 08-0016, consisting of 14

12   pages, was taken down by me stenographically and with a backup

13   tape-recording device at the time and place indicated herein.

14         That the foregoing record is a true and correct record

15   of the proceedings transcribed by me to the best of my ability

16   at the request of plaintiff Mohammed Kamal Hossain for appeal

17   purposes.

18         I further certify that I am not interested in the

19   events of the action.

20         IN WITNESS WHEREOF, I have subscribed my name and

21   signature this 20th day of February, 2009.

22

23

24                    _____/s/ Sanae N. Shmull_____
                          SANAE N. SHMULL
25                     Retired Official Court Reporter